ORIGINAL

FILED
DEC - 6 2006

Of Counsel:
BROOKS TOM PORTER & QUITIQUIT, LLP

Christian P. Porter Hawaii Bar No. 3744
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Telephone No.: (808) 526-3011
Facsimile No.: (808) 523-1171
Email: cporter@btpqlaw.com

Attorney for Plaintiffs
KINGMAN REEF ATOLL INVESTMENTS, L.L.C. and
KINGMAN REEF ATOLL DEVELOPMENT, L.L.C.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KINGMAN REEF ATOLL INVESTMENTS, L.L.C., a Hawaii limited liability company; KINGMAN REEF ATOLL DEVELOPMENT, L.L.C., a Hawaii limited liability company,** | **NO.** 06-828 L |
| **Plaintiffs,** | **COMPLAINT FOR MONETARY DAMAGES ARISING FROM TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE FIFTH AMENDMENT** |
| v. | |
| **THE UNITED STATES OF AMERICA; THE UNITED STATES DEPARTMENT OF INTERIOR; THE HONORABLE DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior; THE UNITED STATES FISH & WILDLIFE SERVICE; H. DALE HALL, in his official capacity as Director of United States Fish & Wildlife Service; JOHN DOES 1-10, JANE DOES 1-10, and DOE PARTNERSHIPS, CORPORATIONS, GOVERNMENTAL UNITS or OTHER ENTITIES 1-10,** | |
| **Defendants.** | |

**COMPLAINT FOR MONETARY DAMAGES ARISING FROM TAKING**
**OF PRIVATE PROPERTY IN VIOLATION OF THE FIFTH AMENDMENT**

1. Plaintiffs KINGMAN REEF ATOLL INVESTMENTS, L.L.C. ("KRAI") and KINGMAN REEF ATOLL DEVELOPMENT, L.L.C. ("KRAD" and together with KRAI, collectively, "Plaintiff") files this complaint for monetary damages against Defendants United States of America ("USA"), the United States Department of Interior ("DOI"), the Honorable DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior ("Secretary KEMPTHORNE"), United States Fish & Wildlife Service ("FWS") and H. DALE HALL, in his official capacity as Director of Defendant FWS ("Director HALL") (Defendants USA, DOI, FWS, Secretary KEMPTHORNE, Director HALL and Defendants DOES, as hereinafter defined, are collectively referred to herein as "Defendants") in connection with said Defendants' taking of Plaintiff's private property and related private interests in and to Kingman Reef Atoll. In support of this complaint, Plaintiff alleges as follows.

I.

**BRIEF INTRODUCTION**

2. Kingman Reef Atoll ("Kingman Reef") is an emergent coral reef with a central lagoon and surrounding waters located approximately 900 nautical miles south of Hawaii.

3. In 1922, Lorrin A. Thurston annexed Kingman Reef to the United States and claimed legal ownership of the same for The Island of Palmyra Copra Company ("Copra Co."). On August 14, 1922, Copra Co. conveyed Kingman Reef to Ellen Fullard-Leo.

4. By mesne conveyances, title to Kingman Reef was held collectively by Leslie Fullard-Leo, Dudley Fullard-Leo and Ainsley Fullard-Leo. On November 17, 2000, title to Kingman Reef was conveyed to Plaintiff KRAI.

5. From 1922 to the present, Plaintiff KRAI and its predecessors-in-interest have owned Kingman Reef.

6. From 1922 to 2001, neither the Territory of Hawaii, State of Hawaii nor Defendants made any claim of title to Kingman Reef nor recorded any document claiming the same.

7. On January 18, 2001, Defendant DOI issued Order No. 3223 establishing a National Wildlife Refuge at Kingman Reef ("Kingman Reef NWR").

8. The Kingman Reef NWR was the final act in a series of actions by FWS to acquire Kingman Reef in complete disregard of the asserted interests of its rightful owner - Plaintiff KRAI and the Fullard-Leo Family of Hawaii, which has owned Kingman Reef since 1922, and Plaintiff KRAD's leasehold interest therein.

9. The Kingman Reef NWR unlawfully wrests title to Kingman Reef from Plaintiff KRAI and the Fullard-Leo Family to allegedly place ownership in the hands of the United States Government. The Kingman Reef NWR takes from Plaintiff and the Fullard-Leo Family the entire bundle of rights encompassed by ownership including all of their rights and entitlements to access, use, enjoy the ecological value and provide for measured development of economic opportunities at and around Kingman Reef.

10. The Complaint is based on the United States' categorical and regulatory taking of Plaintiff's privately owned interests in certain real property and contractual interests in such privately owned real property without just compensation in violation of the Fifth Amendment to the United States Constitution. The Plaintiff has brought this action for payment of just compensation for the United States' unconstitutional taking of its property.

## II.

## PARTIES

11. Plaintiff KRAI is a Hawaii limited liability company which owns and holds legal and equitable title to Kingman Reef. Mr. Dudley Fullard-Leo and Mr. Ainsley Fullard-Leo

(collectively, and sometimes together with Leslie Fullard-Leo, deceased, and Ellen Fullard-Leo, deceased, the "Fullard-Leo Family") are managers of Plaintiff KRAI. The Fullard-Leo Family owned and held title to Kingman Reef from the date of its annexation to the United States governmental jurisdiction in 1922 through and including November 17, 2000 when title to Kingman Reef was conveyed to Plaintiff KRAI on November 17, 2000 by way of a deed filed and recorded in the United States District Court for the District of Hawaii as Document No. 27.

12. Plaintiff KRAD is a Hawaii limited liability company which holds a leasehold interest from KRAI. Mr. Peter B. Savio is the member/manager of Plaintiff KRAI. On November 17, 2000, Plaintiff KRAD entered into a valid real property lease with Plaintiff KRAI concerning the use, development and protection of Kingman Reef. On November 17, 2000, Plaintiff KRAD also entered into a valid real property license agreement with Kingman Reef Enterprises, L.L.C., a Washington limited liability company concerning commercial fishing in and around Kingman Reef.

13. Defendant USA is a governmental entity that exercises sovereignty over Kingman Reef subject to the private ownership rights of Plaintiff.

14. Defendant DOI is an agency of Defendant USA, subject to and governed by the federal laws creating and controlling Defendant DOI. In August 2000, the administrative jurisdiction of Kingman Reef was transferred to Defendant DOI by the Department of Defense as "excess" to its requirements. On behalf of Defendant USA, Defendant DOI took final agency action by issuance of Secretarial Order No. 3223 on January 18, 2001 (the "Order") creating the Kingman Reef NWR and is presently acting in accordance with and is carrying out the terms of the Order.

15. Secretary KEMPTHORNE is the Secretary of the Interior. In this capacity, Secretary KEMPTHORNE is subject to and governed by federal laws creating and controlling Defendant DOI. On behalf of Defendant DOI, Secretary KEMPTHORNE's predecessor

Mr. Bruce Babbitt, developed and executed the Order and Secretary KEMPTHORNE is presently acting in accordance with and is carrying out the terms of the Order.

16. Defendant FWS is an agency of Defendant USA under Defendant DOI, subject to and governed by the federal laws creating and controlling Defendant FWS. Defendant FWS developed and issued a draft Environmental Assessment concerning the proposed establishment of the Kingman Reef NWR; developed and issued an Amended Environmental Assessment concerning designation of Kingman Reef as a NWR; and prepared and issued a Finding of No Significant Impact for the proposed Kingman Reef NWR on January 17, 2001. Defendant FWS is presently acting in accordance with and is carrying out the terms of the Order.

17. Director HALL is the Director of FWS. In this capacity, Director HALL is subject to and governed by federal laws creating and controlling Defendant FWS. Director HALL is presently acting in accordance with and is carrying out the terms of the Order.

18. Defendants JOHN DOES 1-10, JANE DOES 1-10, and DOE PARTNERSHIPS, CORPORATIONS, GOVERNMENTAL UNITS or OTHER ENTITIES 1-10 ("DOES") are persons or entities that may claim an interest in Kingman Reef and/or are, among other things, in some manner related to the aforementioned Defendants and their true names, identities, capacities, activities, and/or responsibilities are presently unknown to the Plaintiff or its attorneys.

19. Plaintiff KRAI owns in fee simple and possesses all of the atoll known as Kingman Reef situate at Latitude 6° 24' 37" North and Longitude 162° 22' West and surrounding reefs, lagoon and waters by virtue of a deed filed and recorded in the United States District Court for the District of Hawaii on November 17, 2000 as Document No. 27.

20. Plaintiff KRAI's predecessor-in-interest claimed and exercised ownership to Kingman Reef and annexed the same to the sovereignty of Defendant USA in 1922.

21. Defendants DOI's and FWS' assertion of ownership of Kingman Reef and implementation of the Order have resulted in the taking of Plaintiff's private property rights for a public purpose without the payment of just compensation.

## III.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this matter based upon: 28 U.S.C. §1491(a)(1).

23. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e) because this is an action against the United States, acting through an agency of the United States, and the Defendants reside in this district.

24. Plaintiff has suffered injury in fact and continue to suffer from the actions taken by Defendants.

25. There exists now between the parties hereto an actual, justiciable controversy in which Plaintiff is entitled to relief in the form of monetary damages because of the facts and circumstances hereinafter set out.

## IV.

## FACTS

### A. KINGMAN REEF BACKGROUND INFORMATION

26. Kingman Reef is located approximately 900 nautical miles southwest of Hawaii in the Pacific Ocean. Kingman Reef is approximately 33 nautical miles north of the Palmyra Atoll and essentially sits half-way between the Hawaiian Islands and Samoa at Latitude 6° 24' 37" North and Longitude 162° 22' West.

27. Kingman Reef is a low-lying coral reef atoll that is comprised of two small spits of emergent land, surrounding reefs, lagoon and waters. The emergent land and submerged coral reefs surround a central lagoon which ranges in depth from 50 to 250 feet.

28. Kingman Reef is currently an unincorporated United States territory.

29. Defendants FWS and DOI have described the value of Kingman Reef as "priceless".

30. Kingman Reef was administered by the Department of Navy from 1934 to 2000. On December 29, 1934, President Franklin D. Roosevelt signed Executive Order 6935 that placed Kingman Reef under the Secretary of the Navy for administrative purposes.

31. Subsequently, Executive Order 8682 dated February 14, 1941, as amended by Executive Order 8729 dated April 2, 1941, established Naval Defensive Sea Areas and Naval Airspace Reservations over "the territorial waters between the extreme high-water marks and the three-mile marine boundaries" surrounding Kingman Reef and a number of other Pacific islands, including Palmyra Island, "and the airspaces over the said territorial waters and islands", respectively, for national defense purposes. Thus, Executive Order 8682, as amended, did not impose restrictions over Kingman Reef itself.

32. The "object of the executive order [8682] was to give the commandant necessary authority to control subversive activities and safeguard the national defense." Furthermore, "proper provision [was directed to] be made under the authority given the Secretary of the Navy so as to permit bona fide residents of the areas reasonable means of transportation and communication to and from the islands."

33. Title to Kingman Reef is not now, nor has it ever been, held by Defendant USA or any governmental instrumentality or agency of Defendant USA. The private ownership of Kingman Reef is readily ascertainable from the public record and has been admitted and acknowledged by Defendant USA, the U.S. Senate, U.S. Navy, U.S. Department of Commerce and Defendant FWS.

## B. THE PRIVATE ANNEXATION AND PLAINTIFF KRAI'S OWNERSHIP OF KINGMAN REEF

34. Kingman Reef was allegedly first discovered in 1798 by Captain Edmund Fanning, and allegedly rediscovered by Captain W.E. Kingman in 1853.

35. In 1922, the Copra Co., a corporation under the laws of the Territory of Hawaii, through is agent Lorrin A. Thurston annexed Kingman Reef to Defendant USA and claimed ownership for the Copra Co.

36. Leslie Fullard-Leo and Ellen Fullard-Leo, the subsequent owners of Kingman Reef, were the President and Secretary-Treasurer, respectively of the Copra Co.

37. The Fullard-Leo Family owned and held title to Kingman Reef from 1922 to November 17, 2000 when title was transferred to Plaintiff KRAI, a limited liability company established by the Fullard-Leo Family.

38. On April 28, 1922, the Copra Co. noted in its Board meeting minutes that "[i]t was reported that a plan was on foot to claim Kingman's Reef . . . [and that] this Reef could be of inestimable value to this Company . . . ." and should be claimed "either on the out or homeward voyage of the Palmyra during her next trip."

39. On May 3, 1922, Copra Co. instructed and commissioned its agent, Lorrin A. Thurston, to proceed to the atoll known as "Kingman's Reef", and to take formal possession of said atoll on behalf of Defendant USA "and claim the same for Island of Palmyra Copra Company [the Copra Co]." The Commission was signed by "L Fullard-Leo, President" and "E Fullard-Leo, Secretary-Treasurer".

40. On May 10, 1922, Mr. Thurston landed on Kingman Reef from the company's ship "Palmyra" and did annex the atoll, its reefs and lagoon as instructed and claimed the ownership of same for the Copra Co. The annexation documents were signed by Mr. Thurston and five companions and read:

> that on the 10th day of May A.D. 1922, the undersigned, agent of the ISLAND OF PALMYRA COPRA CO., LTD (an Hawaiian Corporation), landed from the motor-ship "Palmyra" doth, . . . take formal possession of this Island called "Kingman's Reef" . . . on behalf of the United States of America, and claim the same for said Company.

41. The party built a cairn of coral slabs about four feet high and flew an American flag from a pole supported by the cairn. The formal certificate of possession, together with the flag and a copy of The Advertiser and The Star Bulletin of May 3, 1922 were placed in a glass jar and deposited in the base of the coral cairn.

42. Annexation was intended to and did vest title to Kingman Reef in the Copra Co. Annexation of Kingman Reef was not intended to and did not vest title in Defendant USA. Kingman Reef was annexed to the United States solely for purposes of extending the sovereignty of Defendant USA to Kingman Reef.

43. The Certificate of Annexation signed by Mr. Thurston expressly stated that he claimed Kingman Reef as the property of the Copra Co.

44. By letter dated May 13, 1922 from Mr. Thurston to Mrs. Ellen Fullard-Leo, Mr. Thurston confirmed that he claimed title to Kingman Reef for the Copra Co. and that she would be filing the claim at Washington, D.C. according to instructions from "Mr. Huber", who, upon information and belief, was the U.S. Attorney General for the Territory of Hawaii, at that time.

45. On July 15, 1922, "E. Fullard-Leo, Secretary-Treasurer" of Copra Co. sent a letter to the Honorable Charles E. Hughes, Secretary of State, Washington, D.C., advising him, among other things, that the company annexed, on May 10, 1922,

> in the name of the United States of America, and for [Copra Co.'s] own use, an atoll island charted as "Kingman's Reef" but never before claimed.
>
> . . .
>
> According to the United States Attorney here, this notification is all that is necessary in addition to listing the same in our local tax returns, as the Palmyra Islands are a part of the county of Honolulu.

> Hoping that this is sufficient evidence that the same will be recorded and due credit given this Company and Territory . . . .

Enclosed was a copy of the proclamation of possession and report by Lorrin A. Thurston, "who attended to the necessary formalities for the Company, as well as newspaper reports covering the matter."

46. On August 14, 1922, the Fullard-Leo Family acquired direct ownership of Kingman Reef from the Copra Co. A resolution was introduced and unanimously adopted by the Copra Co. to convey to Ellen Fullard-Leo all of the company's rights of whatsoever nature in the newly annexed territory of Kingman Reef in return for "sundry unsecured loans."

47. On September 28, 1922, the Department of State, Washington, D.C., acknowledged receipt of the July 15, 1922 letter from the Copra Co., together with its enclosures, regarding the annexation and ownership by the Copra Co. of "Kingman's Reef", and the Copra Co.'s follow up letter of August 24, 1922, inquiring whether its July 15, 1992 was received. The Department of State did not dispute the Copra Co.'s claim to ownership of Kingman Reef.

48. By letter dated July 9, 1926 on The Honolulu Advertiser letterhead to "The Archives Commission Territory of Hawaii", Mr. Thurston recounted his visit to Kingman Reef in June 1926 as a guest on the "U.S.S. Whippoorwill, captain, Lieut. Poland, U.S.N." during which time he examined the record, jar and flag left by him in 1922 on Kingman Reef. To protect the flag and records against disintegration and the danger that the same may otherwise become valueless because the bottle top was rusted and cork partially rotted, Mr. Thurston removed the record and flag for deposit with The Archives Commission (a record left in the cairn in November 1924 by "W.G. Anderson and others" who visited Kingman Reef and inspected the bottle and its contents was also removed and deposited with The Archives Commission). A certificate evidencing the foregoing was signed by Captain Poland, enclosed in a bottle and left

in the cairn on Kingman Reef. A copy of Captain Poland's certificate was also deposited with The Archives Commission by Mr. Thurston.

49. Mr. Thurston's July 9, 1926 letter to The Archives Commission also recognized Mrs. Ellen Fullard-Leo's ownership of Kingman Reef. He transmitted the evidence that he placed at Kingman Reef in 1922 to the Archives so that it may be "kept on file in your office in Honolulu, subject to the order of the owner of said Kingman Island, or of the United States Government. I understand the present owner of said Kingman Island to be the (sic) Mrs. E. Fullard Leo of Honolulu, the successor of said Palmyra Company, Limited."

50. By letter dated July 24, 1926, the Archives of Hawaii acknowledged receipt of two glass containers - a fruit jar and a beer bottle - and Mr. Thurston's July 9, 1926 letter and entered them on its receiving books and stated that "they now form an official part of our Archives of Hawaii." The July 24th letter further acknowledged and quoted Mr. Thurston's July 9th letter.

51. Through the 1920's and 1930's, several news articles were published regarding Copra Co.,'s acquisition of Kingman Reef.

## C. DEFENDANTS ACKNOWLEDGE PLAINTIFF'S OWNERSHIP OF KINGMAN REEF

52. Defendants and their numerous departments, agents and officers regarded Kingman Reef as privately owned and admitted and acknowledged Plaintiff KRAI (and its predecessors) and the Fullard-Leo Family as the owner.

53. Department of Navy and Defendants FWS and DOI have administered Kingman Reef in a manner consistent with Plaintiff KRAI's /Fullard-Leo Family's ownership of Kingman Reef.

54. The Preliminary Project Proposal dated August 1997 (attached to a memorandum from the then FWS Director, Jane Rappaport Clark, to the Regional Director,

Region 1, FWS, approving the establishment of the "Palmyra Atoll National Wildlife Refuge and Kingman Reef National Wildlife Refuge") noted that:

> (a) Any "explorers wishing to visit Kingman Reef **must secure permission** from the Fullard-Leo family and the U.S. Coast Guard."
>
> (b) "Kingman Reef was annexed on behalf of the United States in 1922, by the Palmyra Copra Company (Fullard Leo family), and **the family claims ownership**. . . ."
>
> (c) "The **Landowners** are reportedly willing to sell their lands to prevent heirs from acquiring a large inheritance tax debt".
>
> (d) "Similarly, the **price for fee title** to Kingman Reef is unknown. Due to the negligible commercial real estate value, it might be possible to include it in the purchase price negotiated for Palmyra."

55. Further, Defendant FWS itself has admitted and acknowledged that Kingman Reef is privately owned by Plaintiff KAI. In the October 2, 1997 Project Proposal authorizing the evaluation of Kingman Reef for NWR status, Jamie Rappaport Clark, the then Director of FWS, specifically admitted the Fullard-Leo Family's ownership:

> . . .Explorers wishing to visit Kingman Reef ***must secure permission from the Fullard-Leo Family***.
>
> . . .
> Kingman Reef was annexed on behalf of the United States in 1922, by the Palmyra Copra Company(Fullard-Leo family), and the family claims ownership.
>
> The Service is proposing to study ***fee title acquisition*** of the Reef . . .
>
> ***The landowners [Fullard-Leo] are reportedly willing to sell their lands . . .***
>
> ***. . .the price for fee title to Kingman Reef is unknown.***

56. By letter dated October 3, 1997, to the U.S. Army Corps of Engineer at Fort Shafter, Robert F. Smith, Pacific Islands Manager for Defendant FWS noted, among other

things, that the enclosed memorandum from the then FWS Director Clark gave Defendant FWS approval to begin detailed planning toward the **acquisition** of Palmyra Atoll and Kingman Reef as units of the National Wildlife Refuge System.

57. Furthermore, the U.S. Department of Commerce, National Oceanic and Atmospheric Administration's report dated October 17, 1997 acknowledged the Fullard-Leos' ownership of Kingman Reef: "The Fullard-Leo family **owns** Palmyra Island and Kingman Reef, and may claim ownership or jurisdiction over ocean resources and/or submerged lands seaward of the low-water mark. The exact extent of the Fullard-Leo claims is not clear, probably extending to the lagoons and reefs surrounding the islands, and perhaps extending to the breadth of the 'territorial' waters."

58. In 1991, The Nature Conservancy met with Peter Savio, agent for the Fullard-Leo Family, to discuss, among other things, the sale and development of Kingman Reef. A memorandum prepared by Jim Maragos, The Nature Conservancy, dated August 19, 1991 stated, among other things, that Mr. Savio mentioned that the [Fullard-Leo family] claimed Kingman Reef and the buy-out option proposed by Mr. Savio should be seriously considered: "Transfer of Kingman Reef by the owners to the USFWS could also serve as compensation or mitigation for other impacts, and the USFWS is keenly interested in Kingman."

59. More recently, the United States General Accounting Office ("GAO") continued to acknowledge the Fullard-Leo Family's claim of ownership of Kingman Reef. The GAO's "Report to the Chairman, Committee on Resources, House of Representatives, U.S. Insular Areas, Application of the United States Constitution, (November, 1997)," specifically noted that: Kingman Reef has been claimed by the Fullard-Leo Family.

60. On October 26, 2000, the U.S. Senate Committee on Appropriations sent letters to Bruce Babbitt, then Secretary of the Interior, DOI, and Dan Glickman, Secretary of the Dept.

of Agriculture, U.S. Dept. of Agriculture, that Congress provided additional funding for "high priority land acquisitions" including, but not limited to "Palmyra Atoll/Kingman Reef".

61. In connection with the designation of the Kingman Reef NWR, on January 17, 2001, the FWS issued a Finding of No Significant Impact ("FONSI"). In its FONSI, the FWS noted that a private entity, *i.e.*, Plaintiff KRAI, claimed ownership of Kingman Reef.

62. The U.S. Navy has repeatedly acknowledged the Fullard-Leo Family's ownership of Kingman Reef and has asked for permission to have access to Kingman Reef. On numerous occasions since the imposition of Naval air and sea defensive zones in and around Kingman Reef in the 1940's, the Navy has directed requests for authorization to visit or access Kingman Reef to the Fullard Leo Family for review and approval.

**D. PLAINTIFF KRAI'S ACTS CONSISTENT WITH ITS OWNERSHIP OF KINGMAN REEF**

63. Plaintiff KRAI and its predecessors-in-interest have, since 1922 to the present, have acted consistent with their ownership of Kingman Reef:

a. By letter dated August 15, 1931, Mr. L. Fullard-Leo made a request to the commanding officer of the United States Geodetic Survey ship "Pioneer" to make detailed surveys of Kingman Reef and Palmyra. By letter dated September 30, 1931, the Department of Commerce, U.S. Coast and Geodetic Survey responded that his request would be given careful consideration when its then current program in Hawaii neared completion.

b. From 1922 through 1959, the Fullard Leo Family paid real property taxes to the Territory of Hawaii for both Palmyra Atoll and Kingman Reef on the same tax key. After 1959, Hawaii state taxes were not levied because neither Palmyra Atoll nor Kingman Reef were included in the lands of the State of Hawaii.

c. Over the past 30 years, the Fullard-Leo Family, Plaintiff KRAI and Peter Savio, Plaintiff KRAI's agent, received referrals from the U.S. Navy, U.S. Coast Guard and/or

U.S. National Marine Fisheries from persons and/or entities interested in entering upon and traversing across Kingman Reef.

d. Plaintiff KRAI was asked and did give permission to third parties from the private and pubic sector, *e.g.*, HAM radio operators, scuba divers, photographer, to access Kingman Reef.

e. Mr. Ainsley Fullard-Leo received a call from Petty Officer Miller (Pearl Harbor Naval Base) who referred him to a photographer who was inquiring about visiting and photographing Kingman Reef.

f. Mr. Peter B. Savio received many requests for access to Kingman Reef that were referred to him by the U.S. Navy at Pearl Harbor. Navy personnel that contacted him acknowledged that the Fullard-Leo Family owned Kingman Reef and that third party requests to access Kingman Reef were directed to the Fullard-Leo Family.

g. When unauthorized uses of Kingman Reef were discovered, the Fullard-Leo Family took appropriate action to stop those uses, *e.g.*, stopped person from Hilo, Hawaii who was fishing commercially in and around Kingman Reef without permission.

h. The Fullard-Leo Family's and Plaintiff KRAI's agent made voyages to Kingman Reef at their own expense in order to survey the Fullard-Leo's property.

i. Mr. Dudley Fullard-Leo, Mr. Ainsley Fullard-Leo, Mr. Leslie Fullard Leo and Mr. Peter Savio, among others, have visited Kingman Reef at numerous times since 1940's.

j. In 1940's, Leslie Fullard-Leo went to Kingman Reef on a ship called "Joyita" and in mid to late 1950's again visited the property via ship.

k. Chuck Bradey, Captain, U.S. Navy who provided support services for The Nature Conservancy, visited Kingman Reef twice in the late 1990's and on each visit requested permission from the Fullard-Leo Family to access Kingman Reef.

l. Martin Vitousek, University of Hawaii professor, requested permission to visit Kingman Reef beginning in the 1960's through 1980's. Mr. Vitousek planted coconut trees on Kingman Reef at the request of the Fullard-Leo Family.

m. In the late 1980's, Peter B. Savio went to Kingman Reef in a U.S. Air Force plane and inspected Kingman Reef.

n. Over the past 20 years, and as recently as 2002, Mr. Ainsley Fullard-Leo gave permission to Mr. Bill Austin, captain of the ship "Machais" to visit Kingman Reef.

o. In October 1995, Mr. Dudley Fullard-Leo's son, Bryant Fullard-Leo, accompanied Mark Collins to Kingman Reef to survey in and around Kingman Reef over a 2 week-period.

p. In 1997 or 1998, Mr. Ainsley Fullard-Leo and Mr. Dudley Fullard-Leo traveled to Palmyra and on the way had the pilot circle Kingman Reef to inspect and ensure that no unauthorized uses were evident.

q. In 1998 or 1999, Mr. Ainsley Fullard-Leo and his wife inspected Kingman Reef via air.

r. Over the years, the Fullard-Leo Family received inquiries from Defendants DOI and FWS and the City & County of Honolulu to purchase Kingman Reef.

s. In late 1980's, Mr. Ainsley Fullard-Leo accompanied the U.S. Coast Guard during one of its law enforcement air patrols to Palmyra and Kingman Reef.

t. On November 17, 2000, title to Kingman Reef was transferred from Leslie Vincent Fullard-Leo, Trustee, Ainsley A.K. Fullard-Leo, Trustee and Dudley Leinani Fullard-Leo, Trustee, to Plaintiff KRAI, the Fullard-Leo Family's limited liability company. The deed was properly filed and recorded in the United States District Court for the District of Hawaii on November 17, 2000 as Document No. 27. No similar deed has been filed and recorded by Defendants.

u. After acquiring title to Kingman Reef, Plaintiff KRAI entered into a valid real property lease with Plaintiff KRAD for the purpose of facilitating economic development opportunities for Kingman Reef.

v. In accordance with the private property rights vested by the master lease, on November 17, 2000, Plaintiff KRAD entered into a valid real property license agreement with Kingman Reef Enterprises, L.L.C. a Washington limited liability company for the operation of a commercial fishing base camp at Kingman Reef and to conduct commercial fishing in and around the waters of Kingman Reef for a term of thirty (30) years.

## V.

## THE UNCONSTITUTIONAL TAKING

64. Defendants knew the Fullard-Leo Family had a long history of asserting ownership of Kingman Reef, including actions consistent therewith. Kingman Reef was nonetheless declared a national wildlife refuge without their prior knowledge and consent.

65. Plaintiff's ownership and other related private property interests associated with Kingman Reef remained wholly undisturbed by Defendant USA until December 11, 2000.

66. Despite requests to extend the time period for public comment on the issue of ownership of Kingman Reef by Plaintiff and other interested persons which were denied by Defendants, on January 18, 2001, the Secretary of the Interior signed Order No. 3223 establishing the Kingman Reef National Wildlife Refuge administered by the Director of Defendant FWS.

67. On December 11, 2000, Defendant FWS issued a press release requesting comments on a draft Environmental Assessment ("Draft EA") and draft Conceptual Management Plan ("Draft CMP") prepared to support the designation of Kingman Reef as a National Wildlife Refuge.

68. In the Draft EA, Defendant FWS asserted for the first time through a public document Defendant FWS' ownership position concerning Kingman Reef that Defendant USA owned and held title to it.

69. Although Defendant FWS knew that for many years Plaintiff KRAI and the Fullard-Leo Family had asserted their ownership of and other property rights and interests in and to Kingman Reef, Defendant FWS did not provide Plaintiff and the Fullard-Leo Family in their capacities as "interested parties" with specific notice of Defendant FWS' ownership position.

70. The Draft EA and Draft CMP were ultimately obtained by the Fullard-Leo Family and Plaintiff and constituted the first notice to the Fullard-Leo Family and Plaintiff that Defendant USA claimed and asserted ownership of Kingman Reef.

71. The 30 day public comment period on the Draft EA and the Draft CMP strategically coincided with the busiest holiday and vacation season in the United Stated - - Christmas, Hanukkah, and New Years. Taking into account these holidays, the 30-day pubic comment period shrank to 20 business days.

72. Numerous parties, including the Fullard-Leo Family, Kingman Reef Enterprises, L.L.C. and Palmyra Pacific Seafoods, L.L.C. and the Western Pacific Fisheries Management Council, requested that the public comment period be extended by 30 days to allow adequate time to review, assess and respond to the proposed Kingman Reef NWR.

73. Defendant FWS summarily denied all requests for an extension of the public Comment Period. The apparent reason for Defendant FWS' denial of such requests was that an extension would have pushed the Kingman Reef FWS decision past January 20, 2001, and into the new Bush Administration.

74. Notwithstanding Defendant FWS' unreasonable and politically motivated refusal to extend the public comment period, Plaintiff timely submitted its comments to Defendant FWS

in regard to the proposed Kingman Reef NWR on January 11, 2001. Plaintiff's comments advised Defendant FWS of significant deficiencies in the Draft EA and Draft CMP. Examples of such deficiencies included the fact that Defendant FWS failed to inform the public of either Plaintiff's ownership claims to Kingman Reef or of Plaintiff's assertion of other real property rights, entitlements and interests in Kingman Reef.

75. On January 17, 2001, Defendant FWS issued a Finding of No Significant Impact ("FONSI") which concluded that although the Kingman Reef NWR was a major federal action it would not significantly affect the quality of the human environment. In the FONSI, Defendant FWS summarily dismissed Plaintiff's well-documented private ownership interests in Kingman Reef.

76. Prior to December 11, 2000, Defendant FWS had negotiated directly with the Fullard-Leo Family to <u>purchase</u> Kingman Reef. This position changed dramatically when Defendant FWS apparently decided it would be less bothersome and more convenient to simply assert ownership of Kingman Reef in the waning hours of the Clinton Administration.

77. On January 18, 2001, just one day after issuance of the FONSI and just two days before the inauguration of president Bush and the change of Administrations, former Secretary of the Interior Bruce Babbitt signed Secretarial order No. 3223 designating Kingman Reef as a National Wildlife Refuge. This final agency action was based in large part on the incorrect assertion that Defendant USA and not Plaintiff, owned Kingman Reef.

78. In effect, the Kingman Reef NWR prohibits public access to Kingman Reef, Prohibits fishing in over 450 square miles of some of the most productive open ocean fishing grounds in the world, and grants all rights to the use, enjoyment, and conservation of Kingman Reef to Defendant USA.

79. Kingman Reef NWR was the final action based on a process that was seriously flawed and failed to comply with the National Environmental Policy Act of 1969, 42 U.S.C. §

4231 *et seq.* ("NEPA") and the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.* ("APA").

80. On February 16, 2001, Plaintiff filed suit in the U.S. District Court for the District of Hawaii calling into question this final agency action and seeking to invalidate the Kingman Reef NWR as *inter alia*, violations of NEPA and APA. That action, styled *Kingman Reef Atoll Investments, L.L.C. et al vs. The United States Department of the Interior et al.*, Case No. 1-00122 SOM-LEK was dismissed on March 22, 2002.

81. On March 4, 2005, Plaintiff KRAI filed suit in the U.S. District Court for the District of Hawaii a Complaint for Declaratory Relief to Quiet Title in *Kingman Reef Atoll Investments, L.L.C. et al. vs. The United States of America, et al.*, Case No. CV05-00151 SOM BMK.[1] This case is currently pending.

82. The property interests of Plaintiff, which are believed to have a current market value well in excess of $54,500,000.00, have been directly confiscated, taken, and rendered wholly and completely worthless by the Kingman Reef NWR.

83. The Order for the Kingman Reef NWR claims ownership contrary to Plaintiff's well-documented and governmentally acknowledged property interests in Kingman Reef.

84. The Order for the Kingman Reef NWR effectively bars Plaintiff from entering, using or economically developing Kingman Reef which Plaintiff KRAI owns in fee simple and to which Plaintiff KRAD holds a leasehold interest.

85. Plaintiff KRAD's leasehold interest in Kingman Reef, which it was using to development economic opportunities on and around Kingman Reef, has been rendered worthless by the Kingman Reef NWR.

---

[1] Plaintiff's Notice of Related Case is being filed concurrently herewith. The related case does not assert any claim or cause of action for a Fifth Amendment taking or damages.

86. The actions of Defendant USA in enacting and administering the Kingman Reef NWR have taken valuable property interests of Plaintiff for a public use without payment of just compensation in violation of the Fifth Amendment to the United States Constitution.

87. Defendant USA has not offered any compensation for Plaintiff's property taken by the Kingman Reef NWR.

## VI.

## FIRST CAUSE OF ACTION

## CATEGORICAL TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

88. Plaintiff repeats, realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

89. The Fifth Amendment to the United States Constitution prohibits Defendant USA from taking private property for public use without just compensation. U.S. CONST. amend. V.

90. Plaintiff KRAI owns fee simple title to Kingman Reef.

91. Plaintiff KRAD holds a lawful leasehold interest in Kingman Reef and license agreement with Kingman Reef Enterprises, L.L.C.

92. Plaintiff and the Fullard-Leo Family have invested significant sums of money in perfecting and exercising the full range of its private property rights in and to Kingman Reef.

93. Through enactment of Secretarial Order No. 3223, Defendant USA has restricted public access to and assumed actual physical control of Kingman Reef, thereby ousting Plaintiff from ownership and barring Plaintiff from entering Kingman Reef and the surrounding waters.

94. Defendant USA has violated the Fifth Amendment by physically appropriating Kingman Reef with the intention and for the purpose of exercising complete dominion and control over it to the permanent exclusion of the title holder Plaintiff KRAI and its lessee, Plaintiff KRAD without paying just compensation.

95. By taking away Plaintiff's right to access and use Kingman Reef, real property owned in fee simple by Plaintiff KRAI, Defendant USA has extinguished the most fundamental property rights of Plaintiff KRAI and has interfered with private property interests of Plaintiff KRAD, flowing from Plaintiff KRAI's fee simple ownership. Defendant USA has permanently occupied and eliminated all economically viable use of Kingman Reef.

96. Defendant USA effected a categorical taking of Kingman Reef without payment of just compensation in violation of the Fifth Amendment.

## VII.

## SECOND CAUSE OF ACTION

## REGULATORY TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

97. Plaintiff repeats, realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

98. Government regulations that deny private property owners any or all economically viable uses of their property violate the Fifth Amendment, requiring compensation to be paid to the private property owners.

99. Defendants, by designating Kingman Reef a National Wildlife Refuge, have prohibited Plaintiff from entering Kingman Reef and the waters surrounding it. In addition, Defendants have banned all activities within the Refuge Boundaries, including commercial fishing in an area of approximately 450 square miles surrounding Kingman Reef.

100. Defendants' actions have denied Plaintiff any and all economically viable use of Plaintiff's fee simple ownership and leasehold interest of Kingman Reef.

101. Because of the Kingman Reef NWR designation, Plaintiff cannot even access, let alone economically use, Kingman Reef. Plaintiff's valuable property rights have been stripped of all worth by the designation.

102. In the event Defendant USA has not effected a categorical or *per se* taking, it has effected a complete and total regulatory taking by eliminating any and all economically viable use of Kingman Reef.

103. Defendant USA has not compensated Plaintiff for its regulatory taking of its private property and leasehold interests in violation of the Fifth Amendment.

## VIII.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays as follows:

104. Plaintiff respectfully requests that the Court order Defendant USA to pay them just compensation for the taking of their private property of $54,500,000.00 or in an amount equal to the fair market value of Plaintiff's property interests.

105. Plaintiff respectfully requests that the Court award to Plaintiff its reasonable attorneys' fees and costs incurred in the prosecution of this action.

106. Plaintiff respectfully requests that the Court issue such additional relief as it deems to be just and proper.

DATED this 4th day of December 2006.

BROOKS TOM PORTER & QUITIQUIT, LLP

By [signature]

CHRISTIAN P. PORTER, Hawaii Bar No. 3744
Attorney for Plaintiffs
KINGMAN REEF ATOLL INVESTMENTS, L.L.C. and KINGMAN REEF ATOLL DEVELOPMENT, L.L.C.
Telephone No.: (808) 526-3011
Facsimile No.: (808) 523-1171