IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al., Plaintiffs, | No. 06-828L |
| v. | Judge Marian Blank Horn |
| THE UNITED STATES, Defendant. | |

**INDEX OF EXHIBITS ATTACHED TO DEFENDANT'S ANSWER**

| Exhibit No. | Description |
|---|---|
| A | Executive Order No. 6935 (December 29, 1934) |
| B | Executive Order No. 8682 (February 14, 1941), as corrected by Executive Order No. 8729 (April 2, 1941) |
| C | Letter dated April 20, 1937, from L. and Ellen Fullard-Leo to Honorable Samuel Wilder King |
| D | Letter dated March 29, 1938, from Townsend & Lewis (ofr Ellen Fullard-Leo) to The Secretary of the Navy |
| E | Letter dated April 26, 1938, from G.J. Rowcliff, Judge Advocate General of the Navy, to Messrs. Townsend & Lewis |
| F | Finding of No Significant Impact re: Proposed Kingman Reef National Wildlife Refuge, dated January 17, 2001 |
| G | Secretary of the Interior Order No. 3223, Subject: Kingman Reef National Wildlife Refuge, dated January 18, 2001 |

# Executive Order

## PLACING CERTAIN ISLANDS IN THE PACIFIC OCEAN UNDER THE CONTROL AND JURISDICTION OF THE SECRETARY OF THE NAVY

### WAKE ISLAND, KINGMAN REEF, AND JOHNSTON AND SAND ISLANDS

By virtue of and pursuant to the authority vested in me by the act of June 25, 1910, ch. 421, 36 Stat. 847, as amended by the act of August 24, 1912, ch. 369, 37 Stat. 497, and as President of the United States, it is ordered that Wake Island located in the Pacific Ocean approximately in latitude 19°17′28″ N. and longitude 166°34′42″ E. from Greenwich, Kingman Reef located in the Pacific Ocean approximately in latitude 6°24′37″ N. and longitude 162°22′ W. from Greenwich, and Johnston and Sand Islands located in the Pacific Ocean approximately in latitude 16°44′32″ N. and longitude 169°30′59″ W. from Greenwich, together with the reefs surrounding all the aforesaid islands, as indicated upon the diagram hereto attached and made a part of this order, be, and they are hereby, reserved, set aside, and placed under the control and jurisdiction of the Secretary of the Navy for administrative purposes, subject, however, to the use of the said Johnston and Sand Islands by the Department of Agriculture as a refuge and breeding ground for native birds as provided by Executive Order No. 4467 of June 29, 1926.

This order shall continue in full force and effect unless and until revoked by the President or by act of Congress.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,

*December 29, 1934.*

[No. 6935]

DEFENDANT'S EXHIBIT A
No. 06-828L
PENGAD-Bayonne, N. J.


Toki Pt
Heel Pt
Kulai Pt
Lagoon
Peacock Pt
Nautical Miles
KINGMAN REEF
Nautical Miles
3 ft high
Sand I
Johnston I
JOHNSTON ISLAND
AND
SAND ISLAND

# Executive Order 8682--Establishing naval defensive sea areas around and naval airspace reservations over the islands of Palmyra, Johnston, Midway, Wake, and Kingman Reef

Source: The provisions of Executive Order 8682 of Feb. 14, 1941, appear at 6 FR 1015, 3 CFR, 1938-1943 Comp., p. 894, unless otherwise noted.

Pacific Ocean

By virtue of the authority vested in me by the provisions of section 44 of the Criminal Code, as amended (U.S.C., title 18, sec. 96), and section 4 of the Air Commerce Act approved May 20, 1926 (44 Stat. 570, U.S.C., title 49, sec. 174), the territorial waters between the extreme high-water marks and the three-mile marine boundaries surrounding the islands of Palmyra, Johnston, Midway, Wake, and Kingman Reef, in the Pacific Ocean, are hereby established and reserved as naval defensive sea areas for purposes of national defense, such as areas to be known, respectively, as "Palmyra Island Naval Defensive Sea Area", "Johnston Island Naval Defensive Sea Area", "Midway Island Naval Defensive Sea Area", "Wake Island Naval Defensive Sea Area", and "Kingman Reef Naval Defensive Sea Area" and the airspaces over the said territorial waters and islands are hereby set apart and reserved as naval airspace reservations for purposes of national defense, such reservations to be known, respective, as "Palmyra Island Naval Airspace Reservation", "Johnston Island Naval Airspace Reservation", "Midway Island Naval Airspace Reservation", "Wake Island Naval Airspace Reservation", and "Kingman Reef Naval Airspace Reservation".

At no time shall any person, other than persons on public vessels of the United States, enter any of the naval defensive sea areas herein set apart and reserved, nor shall any vessel or other craft, other than public vessels of the United States, be navigated into any of said areas, unless authorized by the Secretary of the Navy.

At no time shall any aircraft, other than public aircraft of the United States, be navigated into any of the naval airspace reservations herein set apart and reserved, unless authorized by the Secretary of the Navy.

The provisions of the preceding paragraphs shall be enforced by the Secretary of the Navy, with the cooperation of the local law enforcement officers of the United States and of the Territory of Hawaii; and the Secretary of the Navy is hereby authorized to prescribe such regulations as may be necessary to carry out such provisions.

Any person violating any of the provisions of this order relating to the above-named naval defensive sea areas shall be subject to the penalties provided by section 44 of the Criminal Code as amended (U.S.C., title 18, sec. 96), and any person violating any of the provisions of this order relating to the above-named naval airspace reservations shall be subject to the penalties prescribed by the Civil Aeronautics Act of 1938 (52 Stat. 973).

This order shall take effect ninety days after date hereof.

[EO 8682 amended by EO 8729 of Apr. 2, 1941, 6 FR 1791, 3 CFR, 1938-1941 Comp., p. 919]

---

Editorial note: Executive Order 9881 of Aug. 4, 1947, 12 FR 5325, 3 CFR, 1943-1948 Comp., p. 662, discontinued the Palmyra Island Naval Airspace Reservation and the Palmyra Island Naval Defensive Sea Area.

DEFENDANT'S EXHIBIT
B
No. 06-828 L
PENGAD-Bayonne, N.J.

RE-158.0/504.0/507.0
518.0/519.0

EXECUTIVE ORDER

8729

CORRECTING EXECUTIVE ORDERS NOS. 8680, 8682, AND 8683 OF FEBRUARY 14, 1941, ESTABLISHING CERTAIN NAVAL DEFENSIVE SEA AREAS AND NAVAL AIRSPACE RESERVATIONS

The phrase "the territorial waters between the extreme high-water marks in the three-mile marine boundaries" occurring in the first paragraph of Executive Orders Nos. 8680, 8682, and 8683 of February 14, 1941, establishing certain naval defensive sea areas and naval airspace reservations, is hereby corrected to read "the territorial waters between the extreme high-water marks and the three-mile marine boundaries."

/s/ Franklin D. Roosevelt

THE WHITE HOUSE

April 2, 1941.

THE NATIONAL ARCHIVES
FILED AND MADE AVAILABLE
FOR PUBLIC INSPECTION
APR 4 9:42 AM '41
IN THE DIVISION OF THE
FEDERAL REGISTER

DOC. NO. 114

C
O
P
Y

Encl (9)

Honolulu, T.H.
April 20th, 1937.

Honorable Samuel Wilder King,
Delegate to Congress from Hawaii,
Washington, D.C.

Dear Mr. King,

We are addressing you on the subject of- Kingman's Reef.
Its ownership presumably rests with the State or Navy Department, since
by one of these, use of it has been given to Pan-American Airways, and
has on two occasions been used during their trial flight this month to
Auckland, N.Z.

Some time ago we spoke to you of the possibility of in-
teresting the Government in the purchase of the Palmyra group but
feeling that a route to the South Pacific would soon materialize, de-
cided to await the outcome. It is now an actuality. Not only did we
secure this wonderful harbor for the United States but really preven-
ted the same being annexed for a foreign power. Meanwhile we are still
paying taxes on Kingman's which is included in the Palmyra nominal
assessment.

In annexing Kingman's Reef it was necessary to send our
boat there three times-the cost of this together with taxes and ac-
crued interest over a period of fifteen years lead us to believe that
we are entitled to compensation in the sum of forty thousand dollars.

We are advised that yours is the logical office to pre-
sent this claim. Should we have to make formal claim through legal
channels provision for legal fees was not considered in the above
claim. Enclosed please find copies of comparatively recent newspaper
comment that may serve to freshen your memory, but all data covering
the annexation and later survey by the Navy may be seen at the Navy
and State Departments.

We are both elderly (71 and 53) and no longer capable
of coping with conditions as before but feel that we must safe-guard
the future of our two young sons now eight and five years old respec-
tively. The above sum will only just clear our Hawaii real estate
holdings which at terrific sacrifice we were able to save but which
piece-meal had to be mortgaged for taxes and a livlihood during the
depression years.

Soliciting the favor of your esteemed interest and ser-
vice in this matter and hoping to hear from you at an early date, we
have the honor to remain, Sir,

Yours very truly,

SGD. L. FULLARD-LEO

SGD. ELLEN FULLARD-LEO

DEFENDANT'S EXHIBIT
C
NO. 06-828L

REPRODUCED AT THE NATIONAL ARCHIVES

NAVY DEPARTMENT
SECY'S OFFICE - RECD
RECEIVED
MAR 30 1938

TOWNSEND & LEWIS
120 BROADWAY
CABLE ADDRESS "TOWLEW"
NEW YORK

March 29, 1938.

QG (Kingman Reef)/A9-10 (370519)

RECEIVED
APR 2 1938
Office of Judge Advocate General.

The Honorable,
The Secretary of the Navy,
Washington, D. C.

Dear Sir:

On February 12, 1938 we received from the Department of State in Washington a letter in answer to our request of January 25, 1938 addressed to the Secretary of State in respect of the interests of Mrs. Ellen Fullard-Leo in the island known as Kingman's Reef located in the Pacific Ocean, 33 miles northwest of the Palmyra Islands and about 930 miles south of Honolulu.

The Department of State has informed us that copies of both of the foregoing letters were transmitted to the Secretary of the Navy for his information in the matter. This fact would appear to render unnecessary a further statement of the history of this atoll or of Mrs. Fullard-Leo's interests therein. As indicated in our letter of January 25th to the Secretary of State, it would seem that, as a result of the Executive Order of December 29, 1934, the Secretary of the Navy apparently concluded that the Department of State had denied the existence of the private property interests in Kingman's Reef claimed by Mrs. Ellen Fullard-Leo. We trust that the letters now in your

Filed by Sedgwick

DEFENDANT'S EXHIBIT
D
NO. 06-828L

REPRODUCED AT THE NATIONAL ARCHIVES

The Honorable,
The Secretary of the Navy, -2- March 29, 1938.

possession will clarify the position and remove any question as to Mrs. Fullard-Leo's legal rights, which we propose to protect, so far as possible, by appropriate legal proceedings.

It seems unnecessary to restate the costs incurred by Mrs. Fullard-Leo in connection with the annexation of Kingman's Reef for and in behalf of the United States, or to recount the steps taken by her to establish her presently existing legal rights to the private property interests in the atoll.

If you feel that any additional documents or information not now in your possession are necessary or desirable in establishing the validity of this title, we shall be pleased to facilitate your further inquiry.

Very truly yours,

Thompson and Lewis

REPRODUCED AT THE NATIONAL ARCHIVES

JAG(Kingman Reef)/A9-10(370519)
U

APR 26 1938

Sirs:

Reference is made to your letter of March 29, 1938, addressed to the Secretary of the Navy with respect to the alleged interests of Mrs. Ellen Fullard-Leo in the Island known as Kingman Reef located in the Pacific Ocean approximately thirty-three miles northwest of the Palmyra Islands and about 950 miles south of Honolulu.

Your letter is not accompanied by a power of attorney authorizing you to act on behalf of Mrs. Fullard-Leo nor by documents to establish the validity of her title. The information given by you in previous correspondence with the Department of State indicates that the claim of title of Mrs. Fullard-Leo is based on the allegation that in 1922 Mr. Lorrin A. Thurston of Honolulu took possession of Kingman Reef on behalf of The Island of Palmyra Copra Company, Ltd., and that later Mrs. Fullard-Leo acquired the interest of that Company in the island.

The records show that Kingman Reef, otherwise known as "Dangers Rock", is a bonded guano island, it having been listed by affidavit of Captain W. W. Taylor on February 12, 1858, and his rights, through several assignments, were transferred to the United States Guano Company, and the island was bonded on February 8, 1860 (Moore's International Law Digest, Vol. 1, pp. 567 - 568).

It will be noted that the island, including its reefs and tide and submerged lands, was under the control and jurisdiction of the United States long before the claim of Mrs. Fullard-Leo arose, and by Executive Order No. 6935, dated December 29, 1934, it was placed under the control and jurisdiction of the Navy Department. Under the circumstances, the showing made is not sufficient to uphold the claim of Mrs. Fullard-Leo.

By direction of the Secretary of the Navy.

Respectfully,

G. J. Rowcliff
Judge Advocate General of the Navy.

Messrs. Townsend & Lewis
120 Broadway
New York, New York

DEFENDANT'S EXHIBIT
E
NO. 06-828L

U.S. Department of the Interior
FISH AND WILDLIFE SERVICE
Region 1, Portland, Oregon

# FINDING OF NO SIGNIFICANT IMPACT

## Proposed Kingman Reef National Wildlife Refuge
Line Islands, Central Pacific Ocean

The U.S. Fish and Wildlife Service (Service) has completed an Environmental Assessment (EA) for the proposed Kingman Reef National Wildlife Refuge (Refuge). The EA describes the Service's proposal and the affected environment and evaluates the effects of two alternatives (including the No-Action alternative) on the environment. A Conceptual Management Plan (CMP) complements the EA and provides information on management programs that may be implemented on the Refuge during the interim period, between Refuge establishment and completion of a Refuge Comprehensive Conservation Plan. The analysis in the EA documents the Service's evaluation of the environmental consequences of establishing an approved Refuge boundary and implementing Refuge management according to guidelines in the CMP, and is the basis for this Finding of No Significant Impact.

The proposed Refuge will allow the Service to protect and manage outstanding coral reef resources of Kingman Reef in perpetuity as part of the National Wildlife Refuge System. The affected environment at Kingman Reef is a remote oceanic coral reef atoll ecosystem that supports migratory seabirds and shorebirds, and a rich diversity of coral reef and other marine species including giant clams, more than 100 species of corals, a variety of other marine invertebrates, algae, hundreds of species of fish, endangered and threatened sea turtles, and marine mammals.

The long term, short term direct, indirect, and cumulative environmental effects of the alternatives were evaluated in the EA.

Under Alternative A, the No-Action alternative, the Service would not establish a Refuge at Kingman Reef, and the lagoon, reef, and associated waters would not have a protected boundary or receive active management by the Service under the auspices of the National Wildlife Refuge System.

Under Alternative B, the Service's selected alternative, a Refuge boundary will be approved that would include emergent lands, submerged lands and associated waters extending seaward 12-nautical miles from reefs exposed at low water, the extent of the territorial sea. This will protect the entire lagoon and reef complex and provide for conservation and management of the coral reef atoll ecosystem and other natural resources by the Service under the auspices of the National Wildlife Refuge System, in perpetuity. Alternative B will protect a total of approximately 483,702 acres including approximately 3.2 acres of emergent land and approximately 25,874 acres of coral reef habitat. This alternative was selected for implementation because it provides the highest level of protection and management for the outstanding marine resources of Kingman Reef.

DEFENDANT'S EXHIBIT
F
No. 06-828 L

The Service is not proposing to open the Refuge to public visitation during the interim period. Opportunities for a Refuge public visitation program will be considered during the future development of a Comprehensive Conservation Plan.

With the exception of mooring buoys, the Service does not envision any facilities development at Kingman Reef. The design, construction, and operation of the buoys will undergo additional planning and environmental review prior to installation.

The Service would not open the waters of the Refuge to commercial fishing, and plans to establish guidelines for mariners that would include voluntary routing measures, such as areas-to-be-avoided. The guidelines would not be intended to infringe on international rights of innocent passage through the waters of the Refuge.

**Public Review**

As part of the public notice and review process, the EA and associated documents were made available for a 30-day public review and comment period that was open from December 11, 2000, through January 11, 2001. Newspaper articles, and an abstract in the State of Hawaii's Office of Environmental Quality Control newsletter, the *Environmental Notice*, informed the public of the project and the availability of the draft EA. During the public comment period, we received 18 letters from individuals, government agencies, and conservation and fishing groups. Conservation organizations strongly supported the proposed Refuge, while fishing interests opposed the proposed Refuge. The comments were considered in finalizing our decision document and environmental assessment.

**Effects of the Selected Alternative on the Social and Economic Environment**

A private entity claimed to own title at Kingman Reef. The Service requested that the Office of Solicitor, Department of the Interior, review the documents provided by the legal firm representing the claimants. The Solicitor believes the claim is not legally valid. Therefore, the proposed Refuge would not result in a significant adverse economic or regulatory taking on the private entity.

Because of its remote location and reservation as a Naval Defensive Sea Area (NDSA), access to and use of Kingman Reef for economic purposes has been restricted by proclamation, although Naval regulations do not preclude the right of foreign flag vessels exercising their right of innocent passage under international law.

Some comment letters stated a certain level of commercial fishing occurs nearby Kingman Reef. When considering the remote location of the atoll, the relatively low reported commercial harvests from within the Kingman Reef Exclusive Economic Zone (EEZ), current access and use restrictions by the Navy, and the opportunity for commercial fishing ventures to fish in the waters of the EEZ outside the 12-NM Refuge boundary, the Service concluded that there would be no significant adverse economic effects associated with Refuge establishment.

**Effects of the Selected Alternative on the Physical and Biological Environment**

The Refuge will enable the Service to protect and manage the atoll ecosystem at Kingman Reef in perpetuity. Refuge management will help to protect the coral reef ecosystem by controlling maritime access and uses within the 12-nautical mile Refuge boundary. Natural resources management programs such as marine debris removal, monitoring, research, and other actions will promote the long-term conservation of the coral reefs and other habitats for the benefit of the wildlife that live on the lands and in the waters of the Refuge. These actions are an enhancement over existing management of the area, and are expected to protect the high quality of existing resources and slightly enhance the atoll natural resources over time. Thus, establishment and management of the Refuge will not result in significant impact to the physical and biological environment.

**Effects on Endangered or Threatened Species, Migratory Birds, and other Federal Trust Species**

The Refuge will protect listed species and other Federal trust species and their essential habitats at Kingman Reef in perpetuity. Therefore, there is no significant impact to Federal trust species.

**Effects on Historic and Cultural Resources**

There is no evidence of permanent prehistoric human settlement on Kingman Reef, and there are no sites listed on or eligible for listing on the National Register of Historic Sites at Kingman Reef. If significant historic and cultural resources are found on the Refuge in the future, the Service will protect and manage them as required by the National Historic Preservation Act. Therefore, establishment and management of the Refuge will not have a significant effect on any historic and cultural resources that may be found on the Refuge.

**Other Effects**

The establishment and management of the Refuge will not significantly affect ambient noise, air quality, water quality, or public health and safety. Establishment and management of the Refuge will not change the unique characteristics of the geographic area, will not result in scientific controversy over effects, will not result in uncertain or unknown risks, and will not result in disproportionately high adverse environmental effects to a low-income population, minority population, or tribal group. The action will not be a precedent for establishment of a National Wildlife Refuge in a remote atoll area; or for the inclusion of submerged lands, coral reef resources, and pelagic marine species within the boundaries of a National Wildlife Refuge or under the management responsibilities of the Service. Because the Refuge is designed to conserve the natural environment of the atoll, and because of the current low level of use of the atoll and opportunities for commercial enterprises in nearby areas, there will be no significant long term, short term, or cumulative effects due to establishment and management of the Refuge.

**Supporting References**

U.S. Fish and Wildlife Service. 2001. Environmental Assessment for the Proposed Kingman Reef National Wildlife Refuge. Honolulu, HI.

**Public Availability of this Finding of No Significant Impact**

This Finding of No Significant Impact and supporting reference will be on file at the following office and will be available for public inspection. Interested and affected parties are being notified of this decision.

U.S. Fish and Wildlife Service
Pacific Islands Refuge Planning Office
Box 50088
Honolulu, Hawaii 96850
Phone: (808) 541-2749 / Fax: (808) 541-2756

**Determination**

Based upon my review and evaluation of the information contained in the supporting reference, I have determined that the action of approving a Refuge boundary that includes emergent lands, coral reefs, other submerged lands, and associated waters to the limit of the territorial sea (12 nautical miles from reefs awash at low water), and establishing a National Wildlife Refuge at Kingman Reef to be managed in accordance with a Conceptual Management Plan, is not a major Federal action that will significantly affect the quality of the human environment within the meaning of section 102(2)(C) of the National Environmental Policy Act of 1969, as amended. Accordingly, the Service is not required to prepare an environmental impact statement.

Issued in Portland, Oregon, January 17, 2001.

Regional Director, Region 1      Date 1/17/01

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

ORDER NO. 3223

**Subject:** Kingman Reef National Wildlife Refuge

Sec. 1 **Purpose.** On September 1, 2000, the Department of the Interior accepted restoration of its administrative jurisdiction over Kingman Reef from the Department of the Navy. The purpose of this Order is to establish the Kingman Reef National Wildlife Refuge (Refuge) to be administered by the Director, United States Fish and Wildlife Service (Director). This action is taken to protect the natural character, including the fish, wildlife, plants, coral reef communities, and other resources of Kingman Reef and all reefs surrounding Kingman Reef.

Sec. 2 **Authority.** The authority for this Order is derived from: 1) 43 U.S.C. §1458; 2) the National Wildlife Refuge System Administration Act of 1966, as amended, 16 U.S.C. §§ 668dd; 3) Reorganization Plan No. 3 of 1950; 4) the Fish and Wildlife Act of 1956, 16 U.S.C. §742f; 5) Executive Order 13089 dated June 11, 1998; and 6) Presidential Proclamation 5928 of December 27, 1988, 54 Fed. Reg. 777.

Sec. 3 **Establishment, Delegation and Administration.** Kingman Reef National Wildlife Refuge is hereby established. The authority of the Secretary for the civil administration of the Refuge is hereby delegated through the Assistant Secretary, Fish and Wildlife and Parks to the Director. The Refuge shall consist of the emergent areas of Kingman Reef and also of its surrounding submerged lands and waters out to the twelve (12) nautical mile Territorial Sea Boundary. The Director shall manage the Refuge under all applicable laws, policies and regulations that govern the National Wildlife Refuge System. Refuge management shall be undertaken consistent with the administrative control and jurisdiction exercised by the Secretary of the Navy pursuant to Executive Order 6935 of December 29, 1934, and Executive Orders 8682 and 8729 of February 14, 1941, and April 2, 1941, until and unless such administrative control and jurisdiction is extinguished.

Sec. 4 **Effective Date.** This Order is effective immediately.

Secretary of the Interior

Date: January 18, 2001

DEFENDANT'S EXHIBIT G
No. 06-828L
PENGAD-Bayonne, N. J.