[illegible] MEETING OF THE ISLAND OF PALMYRA COPRA CO.,
Friday April 28th 1922.

A meeting of the directors of the Island of Palmyra Copra Company Ltd., was held at 121 Kaiulani Avenue on Friday April 28th 1922 at 8 p.m. attended by L. Fullard-Leo, Chairman, D.A.Lyons F.E. White, J.B. Stickney and secretary E.Fullard-Leo.

It was moved seconded and carried that the reading of the minutes of the previous meeting, March 30th be approved as read.

The Secretary submitted a written request from Mr. L.A. Thurston that he and a party of three be permitted to make the next trip to Palmyra remaining over one trip of the boat. It was thought that a good class of publicity could be secured for the Company in this way and while it was a risk in that they would have to be sent for even if trade did not warrent sending the boat within a specified time, it was moved, seconded and carried that permission be granted Mr. Thurston, and the secretary was instructed to negotiate with him and Ed. Benner to have the latter accompany the party.

The secretary reported that as the Company had been awarded the Navy fish contract for May, and at the rate the fish were selling, trip # 3. expected in any day now would suffice to meet that, but that we were operating under high expenses and by discussing the matter with Hoshina, it was though that it would be more economical if he were paid 15% instead of 10% and assume all the overhead of stall rent, ice, delivery, paper etc., but that the 15% do not cover the Navy contract. After detailed discussion, it was moved, seconded and carried that the Secretary write Hoshina and make the above proposition to him to go into effect May 1st 1922

It was further moved, seconded and carried that in order to meet the expenses of landing fish here at 18¢ per lb., and make a reasonable profit, that the prices for May be established as follows:—Wholesale, 20¢ per lb, retail 22.1/2 and dressed 35¢ and that notices to this effect be posted at the stall and letters be sent to all our wholesale customers.

It was reported that a plan was on foot to claim Kingman's Reef, and Mr. White still believed that this Reef could be of inestimable value to this Company and should be claimed for the Company either on the out or homeward voyage of the Palmyra during her next trip. It was moved, seconded and carried that the secretary commission Edwin Benner to attend to this for the Company and to give him the necessary authority etc.,

The Secretary explained that while she was voted the sum of $100.00 at the last meeting in lieu of office, telephone, and personal services, the finances of the Company were such that it did not warrent paying this amount and rather than increase the liabilities of the Company, was willing to do the necessary secretarial work and operate her office as the company's head-quarters.

Edwin Benner, Jr. had resigned his position effective April 30th and although he was a great help, it was felt that the Company did not have a position to offer that justified keeping him from something better elsewhere. With him and Mr. White away, it was generally agreed thatbthe engineering Committee and every member of the Company would render what services they could to help out.

Mr. White outlined a plan whereby a stall could be opened at Aala Market and worked to great advantage with the co-operation of the owners of that market, and recited certain terms already mentioned to and by its representative Mr. Ayoy. The secretary was instructed to write and formulate an offer on these lines and ascertain whether Hoshina would manage both stalls.

Mr. Stickney [illegible] Mr. [illegible] [illegible] in which case he would be [illegible] to advantage. He was requested to correspond with [illegible].

[illegible]

A tentative offer of $175.00 per month was made by Capt. Petersen for the charter of the Palmyra and the secretary was instructed to accept this and agrange necessary pepers as it was better to have the boat worked than tied up.

Copies of minutes and financial statement were ordered sent to all shareholders not present. The meeting adjourned at 9.30 p.m.

[signature] Secretary-Treasurer.

EXHIBIT
"1"

FLF 000360

ISLAND OF PALMYRA COPRA COMPANY

PLANTATIONS: ISLAND OF PALMYRA, FANNING ARCHIPELAGO

OFFICES AND BUSINESS ADDRESS: HONOLULU, T. H.

315 Hawaiian Trust Building,
HONOLULU, T. H.,

May 3rd 1922.

Mr. Lorrin A. Thurston,
Honolulu, T.H.

Dear Sir,

As an agent of the Island of Palmyra Copra Co., Ltd., a corporation under the laws of the Territory of Hawaii, you are hereby commissioned to leave on the Company's motor-ship "Palmyra" on or about the 4th May 1922 and proceed to a certain group of coral atolls charted as "Kingman's Reef" situated approximately in longtitude 162. West and in latitude 6 North, not having been claimed by any other government or people, and take formal possession of the same on behalf of the United States of America, and claim the same for this Company.

L. Fullard-Leo President.

C. Fullard-Leo Secretary-Treasurer.



EXHIBIT "2"

(2)

# ISLAND OF PALMYRA COPRA COMPANY

PLANTATIONS:
ISLAND OF PALMYRA
FANNING ARCHIPELAGO

OFFICES AND BUSINESS ADDRESS
HONOLULU, T. H.

315 Hawaiian Trust Building.
HONOLULU, T. H.

COPY

BE IT KNOWN TO ALL PEOPLE -

that on the Tenth day of May A.D. 1922, the undersigned, agent of the ISLAND OF PALMYRA COPRA CO., LTD., (an Hawaiian Corporation), landed from the motor-ship "Palmyra" doth, on this Tenth day of May A.D. 1922 take formal possession of this Island called "Kingman's Reef" situated in Longtitude 162°18'W West and in Latitude 6°23' North, on behalf of the United States of America, and claim the same for said Company.

Lorrin A. Thurston Agent,
The Island of Palmyra Copra Co., Ltd.,

Witnesses:

Capt Herman Charles Lemmel
John L Padgett
Mitler D Thaanum
Theodore T. Dranga
M Vasconcellos

I hereby certify that the foregoing is a correct copy of the certificate of possession, of "Kingman's Reef," the original of which is deposited in a glass jar on the island at the East end of the reef together with a copy of the Honolulu Star Bulletin of May 3 and Honolulu Advertiser of May 4, and an American flag which had first been hoisted on a pole on the island at the time of making the proclamation of possession which, the statement of procedure is on the [illegible]

EXHIBIT "3"

FLD 00439

(2)

This certificate

Statement of Procedure upon the annexation of "Kingman's Reef" to the United States of America, by and on behalf of the Island of Palmyra Copra Company Ltd by Lorrin A Thurston of Honolulu Territory of Hawaii

(1) On May 3, 1922, I was commissioned at Honolulu by the Island of Palmyra Copra Company Ltd. a Hawaiian Corporation as an agent of said company to proceed on the company's motor ship "Palmyra" to proceed to Kingman's Reef and take possession of the same on behalf of the United States of America, and claim the same as the property of said company.

(2) In accordance with said instructions I left Honolulu on the "Palmyra" 28 tons displacement on May 4. Pleasant trade wind weather entire distance to Kingman approximately 930 miles from Honolulu.

(3) May 9, at 12.45 P.M. sighted the breakers and shortly afterwards the Island at the East end of the reef. weather cloudy & N. Easterly [illegible] Ship ran along to E. and S. side trolling for fish, for about 5 miles. Breakers on shoal continuously along edge of interior lagoon, across which at a distance of about two miles, the surf could be seen breaking heavily. Anchored [illegible] and fished until 4 o'clock. Fish plentiful. At 4 P.M. hoisted anchor and proceeded west, looking for opening into lagoon. Heavy rain squall shut out vision and anchored in 4 fathoms on S side of reef. Rain continued with light N.E. trade wind. All hands turned in. Current running about 2 to 3 knots an hour to N.W. At 11 P.M. discovered anchor rope had parted—cut by the coral, and ship drifting N.W. at right angles to the wind. Dropped 2d anchor in 14 fathoms of water and spent night there.

(4) May 10, rainy—cleared at 8 a.m. Found we had drifted N.W. across the [illegible] reef on S side of lagoon and were at anchor in the lagoon, about a mile from 2d anchorage and close to reef. 8 A.M. raised anchor and proceeded eastward thru lagoon—breakers N side and shoal water S side—soon sighted island and surf ahead. Ran to within abt 800 ~~180~~ of island. Sounded 300 from inner edge of reef—46 fathoms. No bottom visible immediately alongside reef. Perfectly smooth up to and onto reef—not a ripple even

(5) 9.15. The 6 white men—Capt Lemuel, Mate Padgett & 4 of our party landed—Interval of about 400' of shoal between lagoon and island, partly awash, with water averaging 18"—holes up to 6' deep. Very rough walking over wonderful growth of living coral of many shapes, brilliant [illegible] of 6 a foot [illegible] diameter of [illegible]
[illegible]
[illegible]

(6) [illegible]

FLD 00440

Palmyra Island
May 13, 1922.

My Dear Mrs. Lee.

I have to ask your pardon for making report in the style of paper and the way in which this report is made. The explanation is that by some unaccountable mishap all of my writing paper got left behind, and no one else had any, except my small diary. So, apparently, all the available paper on which to report to you was the copy of the certificate which you furnished me. After it was covered I intended to continue on the margins of newspapers. But when about thru the proclamation sheet, one of the party discovered a supply of large sheets of this paper — probably a left over by Rock, as this is the type of paper which is used for pressing botanical specimens.

The report can be revised and typewritten upon my return, or you can have it done right away, if you need it in connection with filing your claim at Washington. Mr. [illegible] can tell you if haste is necessary. I think that probably the actual taking possession and making the actual record, which has been done, will hold the island until your

(over)

EXHIBIT "4"

FLF 000057

have reasonable time in which to get the record to Washington. The statute fixes the time limit within which the record must be filed, I think. Be sure and consult Mr. Hake on point also.

The trip down was a perfect success, rather rainy, driving us below on several nights, altho crowded, we did not mind it particularly, as of the Captain and mate were steadfast [illegible] cheerfully concealed it. We were a day late in arriving at Kingman, as, owing to overcast sky the captain did not get a latitude observation for two days, and we consequently "laid to" for 8 hours the last night, for fear of bumping the reef in the dark.

The mate, by the way, is a wonderful cook so that we lived like Lords on his toothsome concoctions. He is also a good all round man.

My opinion of the Captain has also gone up greatly. He is ultra careful, a good navigator — we had run on dead reckoning for 2 days before arriving at Kingman's; and when he got a sight on the sun, we were only 9 miles from the island. He also handles the crew and gets along with them well. He also fishes with the best of them. It is a strenuous hard life, with no comforts and little relief. I think you will [illegible] interest of the company if you do not [illegible]

[illegible] to [illegible] It seems to me the five days ashore after the strenuous trip to Palmyra is not unreasonable, as they are working at unloading fish one day and loading ice [illegible] another; and [illegible] they are two Sundays on the trip, [illegible] which they work the same as on any other day. Under these circumstances they really have only one day extra [illegible]. The crew are the most willing, cheerful, spry and intense workers that I have ever seen. They fish every [illegible] until about 5 o'clock and then hoist out the ice from the boxes, [illegible] into small chips and pack the fish before going to bed. They worked until 8.30 in the evening the night we were at Kingman.

Capt Lemmel tells me that it is so wet on the return trip that the crew cannot occupy the forecastle and therefore have to come into the cabin to sleep. As there are 8 in the crew and 4 of us that means 10 at a time, allowing 2 on watch at a time. There is bunk space for 6 – 4 in the berths and 2 on the benches – leaving 4 for the floor which packs them like sardines. The fish box deck aft of the engine room is fine in pleasant weather for all purposes. The awning over this deck is non-waterproof and [illegible] like a sieve with a slight shower. When the spray and waves are coming over it will [be] untenable for sleeping.

The top of the deck house makes elegant sleeping quarters – provided it can be kept [illegible]. The [illegible] cloth which I got from Nelson for the purpose, [illegible] acts as a concentrator of the rain which [illegible] them [illegible]. The canvas [illegible] [illegible] but the chief trouble was that it [illegible] pitch after passing over the awning [illegible] that [illegible]

bellied down so that it not only acts as a reservoir, but [illegible] the persons below, making a place as wet, if not more so, than the open.

I have a suggestion for the consideration of your Ladyship - which combines the wisdom of our [illegible] also that of the Captain and mate. It is to put a water-proof awning over the deck house, on the following lines - (1) Raise the present awning pole [illegible] the boom. (2) Make a light frame work consisting of a post at each corner of the deck house, rising 2 ft. above the deck. These do not have to be nailed on but can be held in place by two large staples - one near the main deck and one near the level of the deck house top. (3) Connect the two posts on each side by a fore and aft batten, at the top of the posts. These can be notched at the ends to fit like notches at the top of the posts, and fastened either with cord or pins. The object of this batten is to keep the tent up off of the occupants. It is the most essential point in the scheme. (4) Put a tent of the closest weave canvas obtainable, over the awning pole and frame immediately, reaching at least a foot below the top of the deck house with cords at the bottom to tie it down close, so that the water cannot flow in between the tent and the house. There should also be [illegible]

July Fifteenth 1922.

Hon. Charles E. Hughes,

Secretary of State,

WASHINGTON, D.C.

Dear Sir,

This serves to advise you that it has been the good fortune of this Company to annex, on May 10th 1922, in the name of the United States of America, and for its own use, an atoll island charted as "Kingman's Reef" but never before claimed.

Herewith please find copy of certificate of possession and report by Mr. Lorrin A. Thurston, publisher of the "Honolulu Advertiser" who attended to the necessary formalities for the Company, as well as newspaper reports covering the matter.

According to the United States Attorney here, this notification is all that is necessary in addition to listing the same in our local tax returns, as the Palmyra Islands are a part of the county of Honolulu.

Hoping that this is sufficient evidence and that the same will be recorded and due credit given this Company and Territory, I have the honor to remain, Sir,

Faithfully yours,

[signature] Secretary-Treasurer,

THE ISLAND OF PALMYRA COPRA COMPANY LTD.,

EXHIBIT "5"

WHEREAS the Island of Palmyra Copra Co., Ltd., of Honolulu, T.H. did on the 10th day of May 1922 take possession of Kingman Island, situated in 6.23 North latitude, and 162.18 West Longtitude and basing its claim on discovery and occupation - the said island not being previously claimed for any country or person, and -

WHEREAS the Island of Palmyra Copra Co., Ltd., is indebted to E. Fullard-Leo for cash loans in excess of three thousand dollars, and having no asset with which to liquidate this particular debt, now therefore beit -

RESOLVED that the Island of Palmyra Copra Co., Ld., relinquish all rights of whatsoever nature in and to the premises above described, in favour of Ellen Fullard-Leo for a nominal consideration of one dollar.

presented by [signature]

Introduced at Shareholders' Meeting,
Honolulu, T.H. August 14th 1922.

EXHIBIT "6"

DEPARTMENT OF STATE
WASHINGTON

September 28, 1922

In reply refer to
[illegible] 811.[illegible]

Island of Palmyra Copra Company,
Honolulu,
Hawaii.

Gentlemen:

The Department acknowledges the receipt of your letter of July 15, together with its enclosures, and of your letter of August 24, 1922, regarding "Kingman's Reef".

I am, Gentlemen,

Your obedient servant,

For the Acting Secretary of State:

Second Assistant Secretary.

EXHIBIT
"7"

Hawaii's Morning Newspaper—364 Mornings Ea...
—Since 1856—

The Honolulu Advertiser
Hawaii's Territorial Newspaper

HONOLULU, HAWAII

ADDRESS ALL LETTERS
TO THE COMPANY

July 9,1926.

The Archives Commission
Territory of Hawaii.

Gentlemen:

In May, 1922, on behalf of the Palmyra Copra Company, Limited, an Hawaiian corporation, I visited and **annexed** Kingman Island and Reef, 33 miles or so from Palmyra. In accordance with law, a proclamation of annexation was read on the island; an American flag hoisted and the flag and a copy of the proclamation enclosed in a glass jar and buried in a rocky cairn built on the island.

In November, 1924, W.G. Anderson and others visited the island; inspected the record and flag and left a record of what they saw and did, which record was also enclosed in a glass bottle, which was also enclosed in said rocky cairn.

I have just visited Kingman Island again, June 1926, as a guest on the U.S.S. Whippoorwill, captain, Lieut. Poland, U.S.N., and examined said records. I found that the iron screw top of the glass jar containing the record, had rusted off; the cork partially rotted; some water in the jar and the record and flag both seriously affected by the water.

It was evident that unless a radical change was promptly made in the protection of the flag and record, they would at an early date disintegrate or otherwise become valueless.

I therefore removed them, and also the record left by Lt. W.G. Anderson, for deposit with your commission, for the benefit of whom it may concern.

EXHIBIT
"8"

Page 2.

This was done in the presence of Captain Poland and he signed a certificate of what happened, which certificate was enclosed in a bottle and left in said cairn on said Kingman Island.

A copy of said certificate is enclosed herewith, also the said original record of said annexation, and said American flag and said record by said W.G. Anderson, which I respectfully request may be placed and kept on file in your office in Honolulu, subject to the order of the owner of said Kingman Island, or of the United States Government. I understand the present owner of said Kingman Island to be the Mrs. E. Fullard Leo of Honolulu, the successor of said Palmyra Company, Limited.

I remain

Very truly yours,

Lorrin A. Thurston

Lorrin A. Thurston.

By Lorrin P. Thurston

LINDA LINGLE
GOVERNOR

RUSS K. SAITO
COMPTROLLER

KATHERINE H. THOMASON
DEPUTY COMPTROLLER

**STATE OF HAWAII**
DEPARTMENT OF ACCOUNTING
AND GENERAL SERVICES

ARCHIVES DIVISION
HAWAII STATE ARCHIVES
IOLANI PALACE GROUNDS
HONOLULU, HAWAII 96813

I, SUSAN SHANER, State Archivist of the Public Archives of the State of Hawaii, do hereby certify that the attached document is a true and correct copy of the letter from Lorrin A. Thurston to the Archives Commission, dated July 9, 1926, from the Hawaii State Archives Receipts, File "T"

on file in the STATE ARCHIVES, at Honolulu, State of Hawaii.

Witness my hand and seal this 10th day of November, 2005 at Honolulu, State of Hawaii.

Luella H. Kurkjian

for SUSAN SHANER, STATE ARCHIVIST

July 24, 1926

L. A. Thurston, Esq.,
H o n o l u l u, T H
Dear Mr. Thurston:

This acknowledges receipt this day of two glass containers - a fruit jar and a beer bottle - received from you, with letter dated July 9, 1926 (Honolulu), the latter stating that they contain records of the annexation of Kingman's Reef (Island), in 1922 and 1924, by L.A. Thurston and W. G. Anderson, respectively, and further stating that both contaoners are deposited with the Archives of Hawaii commission, as objects of record, relqtive to the formal annexation of Kingman's Reef (Island) to the United States of America.

I beg to state that the jars, with their contents, the large fruit jar containing an American flag and papers, and the beer bottle with its record (the former ina serious state owing to the cork having rotted and permitted water to enter), have been entered on our receiving record books, together with your letter of July 9, 1926, and they now form an official part of our Archives of Hawaii.

Subject, however, as per provision in the last paragraph of your letter, page 2, that they are "subjectto the order of the owner of said Kingman Island, or of the United States Government. I understand the present owner of said Kingman Island to be Mrs. E. Fullard-Leo, of said Palymra Company, Limited."

I beg to thank you for depositing these valuable relics with the Government of the Territory of Hawaii, U S A.

Very truly yours,

A.P.Taylor,
Librarian.

EXHIBIT
"9"

LINDA LINGLE
GOVERNOR

RUSS K. SAITO
COMPTROLLER

KATHERINE H. THOMASON
DEPUTY COMPTROLLER

**STATE OF HAWAII**
DEPARTMENT OF ACCOUNTING
AND GENERAL SERVICES

ARCHIVES DIVISION
HAWAII STATE ARCHIVES
IOLANI PALACE GROUNDS
HONOLULU, HAWAII 96813

I, SUSAN SHANER, State Archivist of the Public Archives of the State of Hawaii, do hereby certify that the attached document is a true and correct copy of the letter from A.P. Taylor, Librarian, to L.A. Thurston, Esq., dated July 24, 1926, from the Hawaii State Archives Receipts, File "T" on file in the STATE ARCHIVES, at Honolulu, State of Hawaii.

Witness my hand and seal this 10th day of November, 2005 at Honolulu, State of Hawaii.

Luella H. Kurkjian
for SUSAN SHANER, STATE ARCHIVIST









EXHIBIT
"E"



Y. QUEEN AND WARD STREETS

# L. FULLARD-LEO
## BUILDING AND PLASTERING CONTRACTOR

*Manufacturer of*
CEMENT ROOF TILES
MOSAIC FLOOR TILES
CASSON CEMENT BUILDING TILES
HOLLOW PARTITION TILES
FIBROUS PLASTER CEILINGS
PANELS, MOLDINGS, CORNICES
IMITATION GRANITE STONE

*Modeling and Plastering in*
CEMENT, CAENSTONE, KELLASTONE
MAGNESITE

*Manufacturer of*
GARDEN FURNITURE
CEMENT BENCHES
SUN DIALS
JARDINIERS
ORNAMENTS
FOUNTAINS

Geodetic

Honolulu, Hawaii, U.S.A.,

Civil 417
Resp. Exh No 12 (1)
admitted

August 5th 1931

Captain S.O. Swainson,
United States Geodetic Survey Ship "Pioneer"
Honolulu, Hawaii.

Dear Sir,

My attention has been drawn to the good work that has been done in local waters and those of distant islands of the Hawaiian group by the Geodetic ship "Pioneer" under your command. Through this branch of the Department of Commerce, several Hawaiian ports have been made available to commercial freighters resulting in more and better local products being shipped out.

This letter serves as a formal application that should time and means permit, the "Pioneer" be allowed to survey the areas about Kingman's Reef and the Palmyra Islands, lying 900 odd miles to the Southeast of Honolulu.

These islands are luxuriously wooded, have tens of thousands of coconut trees (in fact the only coconut plantations in Hawaii) enjoy prolific bird-life, hold phosphate deposits and are the logical fishing grounds of Hawaii. In 1921-22 attempts were made to work the copra to be collected by boats from the nearby Fanning Island plantations, and fish for Honolulu but owing to the natural coral atoll formation that surrounds the group, even our small 30 ton gasoline schooner could not land close enough to make development practicable.

Although a part of the Territory of Hawaii and assessed against me by the City and County of Honolulu just as any other holdings, the Territory has never been able to assist in a survey and even in its Land Court Registration resorted to the use of an old British Admiralty Chart.

At present our boat is out of commission and although many inquiries for the islands' natural resources continually come through the local Chamber of Commerce, boats cannot be chartered to attempt the navigation of the close in waters and lagoons.

The Palmyras are well enough known to local government authorities and the press and I would suggest that you make inquiries for your personal guidance, also that you peruse the College of Hawaii Publication Bulletin #4 covering the history, flora and fauna of Palmyra by Dr. Joseph Rock, with excellent illustrations. This could be seen at the public library.

EXHIBIT
"10"

FLF 000198

[Endorsed]:
Civil 417,
Resp. Exh No. 12
admitted in evidence
11-26-40

ADDRESS THE DIRECTOR
COAST AND GEODETIC SURVEY
AND NOT THE SIGNER OF THIS LETTER

AND REFER TO NO. 22-LE

DEPARTMENT OF COMMERCE
U. S. COAST AND GEODETIC SURVEY
WASHINGTON

September 30, 1931.

9859
No. ........
UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT
FILED
AUG 27 1941
PAUL P. O'BRIEN,
CLERK

L. Fullard-Leo,
Honolulu, T. H.

Gentlemen:

I have recently received from the Commanding Officer of the Ship PIONEER, your letter to him dated August 5, 1931, requesting that this Bureau make detailed surveys of Kingman Reef and Palmyra Island. I have also received the copies of the letters of L. A. Thurston to Admiral Simpson, dated July 15, 1922, and to Admiral Coontz, dated June 22, 1925, bearing on the history and importance of those islets. Please accept my thanks for this interesting information. It will be useful to us in planning future surveys.

This Bureau is concentrating on the completion of the surveys necessary to construct adequate charts of the waters immediately adjacent to the Hawaiian Islands and of those approaches to the islands used by transpacific shipping. With this end in view and because of the weather conditions characteristic of that locality the PIONEER is assigned, during the summer months, to surveys along the chain of reefs, shoals and islets lying between the main group of islands and Midway Island. During the winter months, she is assigned to surveys of the waters adjacent to the main group of islands.

Continuation of this program, which is designed to make available important information at an early date, makes it appear unlikely that consideration can be given to the survey of Kingman Reef and Palmyra Island until at least one of the seasonal projects outlined above has been completed. I assure you, however, that careful consideration will be given to your request when our program in Hawaii has reached an advanced stage of completion.

Very truly yours,

E. R. L. Faris

Acting Director.

EXHIBIT
"11"

# Executive Order

## Placing Certain Islands in the Pacific Ocean Under the Control and Jurisdiction of the Secretary of the Navy

### WAKE ISLAND, KINGMAN REEF, AND JOHNSTON AND SAND ISLANDS

By virtue of and pursuant to the authority vested in me by the act of June 25, 1910, ch. 421, 36 Stat. 847, as amended by the act of August 24, 1912, ch. 369, 37 Stat. 497, and as President of the United States, it is ordered that Wake Island located in the Pacific Ocean approximately in latitude 19°17′28″ N. and longitude 166°34′42″ E. from Greenwich, Kingman Reef located in the Pacific Ocean approximately in latitude 6°24′37″ N. and longitude 162°22′ W. from Greenwich, and Johnston and Sand Islands located in the Pacific Ocean approximately in latitude 16°44′32″ N. and longitude 169°30′59″ W. from Greenwich, together with the reefs surrounding all the aforesaid islands, as indicated upon the diagram hereto attached and made a part of this order, be, and they are hereby, reserved, set aside, and placed under the control and jurisdiction of the Secretary of the Navy for administrative purposes, subject, however, to the use of the said Johnston and Sand Islands by the Department of Agriculture as a refuge and breeding ground for native birds as provided by Executive Order No. 4467 of June 29, 1926.

This order shall continue in full force and effect unless and until revoked by the President or by act of Congress.

FRANKLIN D ROOSEVELT

The White House,

*December 29, 1934.*

[No. 6935]

EXHIBIT "12"


Nautical Miles
Toki Pt
Heel Pt
Lagoon
Peacock Pt


KINGMAN REEF
Nautical Miles
3 ft high


Sand I
Johnston I
JOHNSTON ISLAND
AND
SAND ISLAND

EXECUTIVE ORDER 8682

ESTABLISHING NAVAL DEFENSIVE SEA AREAS AROUND AND NAVAL AIRSPACE RESERVATIONS OVER THE ISLANDS OF PALMYRA, JOHNSTON, MIDWAY, WAKE, AND KINGMAN REEF

Pacific Ocean

By virtue of the authority vested in me by the provisions of section 44 of the Criminal Code, as amended (U.S.C., title 18, sec. 96), and section 4 of the Air Commerce Act approved May 20, 1926 (44 Stat. 570, U.S.C., title 49, sec. 174), the territorial waters between the extreme high-water marks in the three-mile marine boundaries surrounding the islands of Palmyra, Johnston, Midway, Wake, and Kingman Reef, in the Pacific Ocean, are hereby established and reserved as naval defensive sea areas for purposes of national defense, such areas to be known, respectively, as "Palmyra Island Naval Defensive Sea Area", "Johnston Island Naval Defensive Sea Area", "Midway Island Naval Defensive Sea Area", "Wake Island Naval Defensive Sea Area", and "Kingman Reef Naval Defensive Sea Area"; and the airspaces over the said territorial waters and islands are hereby set apart and reserved as naval airspace reservations for purposes of national defense, such reservations to be known, respectively, as "Palmyra Island Naval Airspace Reservation", "Johnston Island Naval Airspace Reservation", "Midway Island Naval Airspace Reservation", "Wake Island Naval Airspace Reservation", and "Kingman Reef Naval Airspace Reservation".

At no time shall any person, other than persons on public vessels of the United States, enter any of the naval defensive sea areas herein set apart and reserved, nor shall any vessel or other craft, other than public vessels of the United States, be navigated into any of said areas, unless authorized by the Secretary of the Navy.

At no time shall any aircraft, other than public aircraft of the United States, be navigated into any of the naval airspace reservations herein set apart and reserved, unless authorized by the Secretary of the Navy.

The provisions of the preceding paragraphs shall be enforced by the Secretary of the Navy, with the cooperation of the local law enforcement officers of the United States and of the Territory of Hawaii; and the Secretary of the Navy is hereby authorized to prescribe such regulations as may be necessary to carry out such provisions.

Any person violating any of the provisions of this order relating to the above-named naval defensive sea areas shall be subject to the penalties provided by section 44 of the Criminal Code as amended (U.S.C., title 18, sec. 96).

EXHIBIT

"13"

EXECUTIVE ORDER 8682 CONT.

and any person violating any of the provisions of this order relating to the above-named naval airspace reservations shall be subject to the penalties prescribed by the Civil Aeronautics Act of 1938 (52 Stat. 973).

This order shall take effect ninety days after date hereof.

Franklin D Roosevelt

The White House,
February 14, 1941.

EO-158.0/504.0/507.0
518.0/519.0

EXECUTIVE ORDER

8729

CORRECTING EXECUTIVE ORDERS NOS. 8680, 8682, AND 8683 OF FEBRUARY 14, 1941, ESTABLISHING CERTAIN NAVAL DEFENSIVE SEA AREAS AND NAVAL AIRSPACE RESERVATIONS

The phrase "the territorial waters between the extreme high-water marks in the three-mile marine boundaries" occurring in the first paragraph of Executive Orders Nos. 8680, 8682, and 8683 of February 14, 1941, establishing certain naval defensive sea areas and naval airspace reservations, is hereby corrected to read "the territorial waters between the extreme high-water marks and the three-mile marine boundaries."

/s/ Franklin D. Roosevelt

THE WHITE HOUSE

April 2, 1941.

THE NATIONAL ARCHIVES
FILED AND MADE AVAILABLE
FOR PUBLIC INSPECTION
APR 4 9:42 AM '41
IN THE DIVISION OF THE
FEDERAL REGISTER

DOC. NO. 114

C
O
P
Y

EXHIBIT
"14"

Encl (9)

REPRODUCED AT THE NATIONAL ARCHIVES


NAV. Op13C-je April 17
Serial No. 92113
ORD. EG62/A16-3(401202-1)
ENG.
AERO.
C. & R.
Y. & D.
S. & A.
M. & S.
J. A. G.
M. G. C.
BUDGET
Op. 12.
Op. 13.
Op. 14.
Op. 16.
Op. 18.
Op. 20.
Op. 21.
Op. 22.
Op. 23.
Op. 30.
Op. 38.

Filed by PWP

APR 18 1941

From: The Chief of Naval Operations.
To: The Commandant, Thirteenth Naval District.

Subject: Administration of Naval Defensive Sea Areas and Air Space Reservations.

References: (a) Sec. Interior letter, dated Feb. 4, 1941, to Director of Bureau of Budget.

Enclosure: (A) Copy of reference (a).

1. Copy of reference (a) is forwarded for information. Particular attention is invited to the references to the blue fox industry in the Aleutian chain. The Department of the Interior has been assured that the Navy Department has no desire or intention to unnecessarily restrict the activities of United States citizens or nationals about their lawful occasions. The details of administration should be worked out with the idea of causing the least possible interference with vital industry and vested interests.

2. In the administration of these areas, it is not the intention of the Chief of Naval Operations to hamper the commandant by unnecessary regulation. The object of the executive order was to give the commandant necessary authority to control subversive activities and safeguard the national defense. The amount of control necessary can best be judged by the commandant or his representative in command locally. This office will review such measures as the commandant may recommend, for their possible repercussions upon the affairs of other departments of the government or upon international affairs.

3. Accordingly, the commandant is directed to submit for approval such regulations as seem to him necessary and desirable.

R. E. INGERSOLL
Acting

NAVY DEPARTMENT
SECY'S OFFICE - RECORD DIV.
RECEIVED
APR 18 1941

SECY'S OFFICE RECORD
FORWARDED
APR 18 1941

GPO 4-7774

EXHIBIT
"15"

FLD 00001

Civil 417
Resp. Exh. No. 15
admitted in evidence
11-28-40

No.
UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT
FILED
AUG 27 1941
PAUL P. O'BRIEN,
CLERK

PALMYRA ISLANDS AND KINGSMAN REEF.

| Year | Owner | Land Value | Impt. Value | Total | Tax Rates | Taxes. |
|---|---|---|---|---|---|---|
| 1911. | Deed from Elsie M. Wundenberg to Henry E. Cooper dated June 21st, 1911. | | | | | |
| 1912. | Henry E. Cooper | $ 5,000. | ----- | $ 5,000. | 1.100 % | $ 55.00 |
| 1913. | do | 2,500. | ----- | 2,500. | 1.115 % | 27.87 |
| 1914. | do | 2,500. | ----- | 2,500. | 1.170 % | 29.25 |
| 1915. | do | 2,500. | ----- | 2,500. | 1.265 % | 31.62 |
| 1916. | do | 2,500. | ----- | 2,500. | 1.273 % | 31.83 |
| 1917. | dO | 2,500. | ----- | 2,500. | 1.210 % | 30.25 |
| 1918. | do | 2,500. | ----- | 2,500. | 1.830 % | 45.75 |
| 1919. | do | 2,500. | ----- | 2,500. | 1.830 % | 45.75 |
| 1920. | do | 2,500. | ----- | 2,500. | 2.290 % | 57.25 |
| 1921. | do | 2,500. | ----- | 2,500. | 2.570 % | 64.25 |
| 1922. | do | 10,000. | ----- | 10,000. | 2.890 % | 289.00 |
| 1923. | do (2-Islands) | 600. | $ 100. | 700. | 3.067 % | 21.47 |
| 1924. | do | 600. | 100. | 700. | 2.747 % | 19.23 |
| 1925. | do | 600. | 100. | 700. | 2.796 % | 19.57 |
| 1926. | do | 600. | 100. | 700. | 3.337 % | 23.36 |
| 1927. | do | 600. | 100. | 700. | 3.497 % | 24.48 |
| 1928. | do | 600. | 100. | 700. | 3.526 % | 24.68 |
| 1929. | do | 600. | 100. | 700. | 3.769 % | 26.38 |
| 1930. | do | 600. | 100. | 700. | 3.794 % | 26.56 |
| 1931. | do | 600. | 100. | 700. | 4.003 % | 28.02 |
| 1932. | do | 480. | 100. | 580. | 4.011 % | 23.26 |
| 1933. | do | 480. | 100. | 580. | 2.887 % | 16.74 |
| 1934. | do | 480. | 100. | 580. | 3.026 % | 17.55 |
| 1935. | do | 480. | 100. | 580. | 2.994 % | 17.37 |
| | | | | | 3.098 % | 17.97 |
| | | | | | 3.101 % | 17.99 |
| | | | | | 2.924 % | 16.96 |
| | | | | | [illegible].088 % | 17.91 |
| | | | | | ---- | - $1,067.32 |

EXHIBIT "16"