IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al., Plaintiffs, | No. 06-828L |
| v. | Judge Marian Blank Horn |
| THE UNITED STATES, Defendant. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF JURISDICTION**

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL (603) 230-2583
FAX (603) 225-1577
E-MAIL kristine.tardiff@usdoj.gov

OF COUNSEL:

Mariel J. Combs
Office of the Solicitor
United States Department of the Interior
Pacific Northwest Region
500 N.E. Multnomah St., Suite 607
Portland, OR 97232

Robert J. Smith
Office of the General Counsel
Navy Litigation Office
720 Kennon St., SE, Room 233
Washington Navy Yard, DC

March 30, 2007

## TABLE OF CONTENTS

I. Introduction and Summary of Argument . . . . . 1

II. Factual Background . . . . . 3

III. Argument . . . . . 10

A. Standard of Review for a Motion to Dismiss under RCFC 12(b)(1) . . . . . 10

B. Plaintiffs' Claims Are Subject to a Six-Year Statute of Limitations . . . . . 10

C. Plaintiffs' Takings Claims Accrued Approximately 70 Years Ago . . . . . 12

1. Plaintiffs' Takings Claims Accrued Between 1934 and 1938 . . . . . 13

2. Case Law Supports the Conclusion That Plaintiffs' Takings Claims Accrued Between 1934 and 1938 . . . . . 17

3. Plaintiffs' Time-Barred Claims Cannot Be Resurrected by the Government's Subsequent Administration of Kingman Reef . . . . . 21

IV. Conclusion . . . . . 23

## TABLE OF AUTHORITIES

### CASES

Ariadne Financial Services Pty. Ltd. v. United States,
133 F.3d 874 (Fed. Cir.) . . . . . . . . . . 11

Borough of Alpine v. United States,
923 F.2d 170 (Fed. Cir. 1991), cert. denied, 525 U.S. 823 (1998). . . . . . . . . . 11

Cedars-Sinai Medical Center v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993), cert. denied, 512 U.S. 1235 (1994). . . . . . . . . . 9, 10

Fallini v. United States,
56 F.3d 1378 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996) . . . . . . . . . . 12

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988). . . . . . . . . . 11

Indium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986). . . . . . . . . . 10

John R. Sand & Gravel Co. v. United States,
457 F.3d 1345 (Fed. Cir. 2006), pet. for cert. filed,
75 U.S.L.W. 3474 (U.S. Feb. 26, 2007).. . . . . . . . . . 1, 10, 11, 17, 20

LaMear v. United States,
9 Cl. Ct. 562 (1986), aff'd, 809 F.2d 789 (Fed. Cir. 1986) . . . . . . . . . . 12

Lingle v. Chevron U.S.A., Inc.,
544 U.S. 528 (2005).. . . . . . . . . . 1

Maclean v. United States,
454 F.3d 1334 (Fed. Cir. 2006).. . . . . . . . . . 23

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) (en banc). . . . . . . . . . 10

Owen Equip. & Erection Co. v. Kroger,
437 U.S. 365 (1978).. . . . . . . . . . 11

Pewee Coal Co. v. United States,
115 Ct. Cl. 626, 88 F. Supp. 426 (1950), aff'd, 341 U.S. 114 (1951). . . . . . . . . . 17, 18

Reynolds v. Army and Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988). . . . . . . . . . 10

Roth v. United States,
73 Fed. Cl. 144 (2006). . . . . . . . . . 14, 19

United States v. Gen. Motors Corp.,
323 U.S. 373 (1945). . . . . . . . . . 1

United States v. Gossett,
416 F.2d 565 (9th Cir. 1969), cert. denied, 397 U.S. 961 (1970). . . . . . . . . . 14, 18, 19

**CONSTITUTIONS**

U.S. Const. amend. V . . . . . . . . . . 1

**STATUTES**

28 U.S.C. § 2501. . . . . . . . . . 1, 3, 10, 23
48 U.S.C. §§ 1411 - 1419. . . . . . . . . . 3, 4
Act of June 25, 1910, ch. 421, 36 Stat. 847 . . . . . . . . . . 12
Act of August 24, 1912, ch. 369, 37 Stat. 497 . . . . . . . . . . 13

**REGULATIONS**

8 Fed. Reg. 5695 (May 1, 1943) . . . . . . . . . . 18

**RULES**

RCFC 12(b)(1). . . . . . . . . . 1, 9
RCFC 12(h)(3). . . . . . . . . . 1

**OTHER**

Executive Order 6935 (Dec. 29, 1934) . . . . . . . . . . passim
Executive Order 8682 (Feb. 14, 1941) . . . . . . . . . . 21
Executive Order 8729 (April 2, 1941). . . . . . . . . . 21

# INDEX TO EXHIBITS

## EXHIBITS ATTACHED TO DEFENDANT'S ANSWER:

| Exhibit No. | Description |
|---|---|
| A | Executive Order No. 6935 (December 29, 1934) (also attached to Complaint as Exhibit 12) |
| B | Executive Order No. 8682 (February 14, 1941), as corrected by Executive Order No. 8729 (April 2, 1941) (also attached to Complaint as Exhibit 13) |
| C | Letter dated April 20, 1937, from L. and Ellen Fullard-Leo to Honorable Samuel Wilder King |
| D | Letter dated March 29, 1938, from Townsend & Lewis (for Ellen Fullard-Leo) to The Secretary of the Navy |
| E | Letter dated April 26, 1938, from G.J. Rowcliff, Judge Advocate General of the Navy, to Messrs. Townsend & Lewis |
| F | Finding of No Significant Impact re: Proposed Kingman Reef National Wildlife Refuge, dated January 17, 2001 (also attached to Complaint as Exhibit 38) |
| G | Secretary of the Interior Order No. 3223, Subject: Kingman Reef National Wildlife Refuge, dated January 18, 2001 (also attached to Complaint as Exhibit 39) |

## EXHIBITS ATTACHED TO DEFENDANT'S MOTION:

| Exhibit No. | Description |
|---|---|
| 1 | Act of June 25, 1910, ch. 421, 36 Stat. 847 |
| 2 | Act of August 24, 1912, ch. 369, 37 Stat. 497 |

Defendant submits the following memorandum in support of its motion to dismiss Plaintiffs' claims for lack of jurisdiction pursuant to RCFC 12(b)(1) and RCFC 12(h)(3), on the ground that Plaintiffs' claims are time-barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501.

I. Introduction and Summary of Argument

The Fifth Amendment provides, "[N]or shall private property be taken for public use without just compensation." U.S. Const. amend. V. Private property rights, within the meaning of the Fifth Amendment, refers to the bundle or group of rights "inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it." United States v. Gen. Motors Corp., 323 U.S. 373, 377-78 (1945). See also John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1356 (Fed. Cir. 2006) ("Property rights in a physical thing consist of a bundle of rights, including the rights to possess, to use, and to dispose of the physical thing."), pet. for cert. filed, 75 U.S.L.W. 3474 (U.S. Feb. 26, 2007) (No. 06-1164). The right to exclude others – including the Government – is "perhaps the most fundamental of all property rights." Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 539 (2005); see also John R. Sand & Gravel Co., 457 F.3d at 1356.

In this case, Plaintiffs allege that their predecessors-in-interest acquired property rights to Kingman Reef in 1922, and that those rights were conveyed to them in November 2000. Although the question of whether Plaintiffs acquired any compensable property rights to Kingman Reef in 1922 is disputed, that title dispute need not be reached or resolved in order for the Court to determine whether Plaintiffs' claim that those interests have been taken is time-

barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501.[1] Even assuming, *arguendo*, that Plaintiffs acquired private property rights to Kingman Reef in 1922, those rights were interfered with in 1934 when the United States – through the issuance of an Executive Order – clearly, unequivocally and very publicly indicated that Kingman Reef was public property that the United States was thereafter reserving and setting aside for military purposes. Control and jurisdiction over the property was assigned to the Secretary of the Navy, where it remained until 2000, when that control and responsibility was transferred to the Secretary of the Interior. Any private property rights held in Kingman Reef, including the right to exclude others from entering and using the property, were interfered with upon issuance of the 1934 Executive Order. Plaintiffs' actual knowledge of the 1934 Executive Order and the effect of that Order on their claim of private ownership of Kingman Reef is revealed in a series of letters from 1937 and 1938 in which Plaintiffs' predecessors-in-interest presented their claim to the Government and sought compensation. Those claims were denied, in writing, in 1938.

Based on these undisputed facts, Plaintiffs' takings claim involving Kingman Reef accrued as early as 1934, and certainly no later than 1938. Those claims are therefore time-barred by nearly 70 years, and Defendant's motion to dismiss Plaintiffs' claims for lack of jurisdiction should be granted.

---

[1]Although Defendant disputes Plaintiffs' allegation that their predecessors-in-interest acquired title to or an ownership interest in Kingman Reef in 1922, that factual dispute need not be resolved in order to determine whether Plaintiffs' takings claim is time-barred. Instead, the Court may assume without deciding that Plaintiffs acquired a property interest in Kingman Reef in 1922, as they allege. See Roth v. United States, 73 Fed. Cl. 144, 146 n.2 (2006) (assuming, for the purposes of determining whether a plaintiff's takings claims were time-barred, that the plaintiff had an ownership interest in the property allegedly taken).

## II. Factual Background[2]

Kingman Reef is a low-lying coral reef atoll located in the central Pacific Ocean, approximately 900 nautical miles south of Hawaii. Complaint ¶ 2; Answer ¶ 2; Compl. Ex. 33, p. 1-1; Compl. Ex. 38, p. 2-1. Kingman Reef, which consists of submerged and partially exposed coral reefs in a triangular shape that surround a central lagoon, is "one of the most pristine coral reef ecosystems in the Pacific. . . ." Compl. Ex. 33, p. 1-1. The emergent portion of Kingman Reef "consists of three coral rubble spits that have formed atop the eastern reef, providing resting and foraging sites for migratory birds and possible basking areas for threatened green sea turtles." Id. Although Kingman Reef supports "a diversity of marine invertebrates, algae, fishes, marine mammals, and sea turtles and [is] an important foraging ground for Pacific migratory seabirds[,]" Compl. Ex. 33, p. 1-1, the reef "is unsuitable for human habitation, due to the small size of emergent land spits and lack of fresh water." Compl. Ex. 38, p. 2-1; see also Compl. Ex. 26, p. 57 (Kingman Reef "is awash most of the time" and "is a maritime hazard and the atoll is unusable for practical purposes").

The first recorded western contact with Kingman Reef was by Captain Fanning, an American whaler, in 1798. The reef was also visited by its namesake, Captain W.E. Kingman, in the American ship Shooting Star in 1853. Compl. ¶ 34; Compl. Ex. 26, p. 57; Compl. Ex. 36 (Doc. 13, p. 17). In 1860, the United States Guano Company claimed Kingman Reef as a United

---

[2]In accordance with the Court's Order of February 9, 2007 (Doc. 8), Plaintiffs have filed copies of the documents referred to in their complaint. See Plaintiffs' Exhibits 1-39 (Docs. 9-13, filed Feb. 22, 2007). These documents are cited herein as "Compl. Ex." Additional documents referenced in and filed with Defendant's Answer are cited herein as "Answer Ex." In addition, the parties have filed a Joint Statement of Stipulated Facts that summarizes some of the chronological events that are detailed herein.

States Territory under the Guano Islands Act of 1856, 48 U.S.C. §§ 1411 - 1419. Compl. Ex. 26, pp. 57-58; Compl. Ex. 36 (Doc. 13, p. 17).

In 1922, believing Kingman Reef to be unclaimed "by any other government or people," the Island of Palmyra Copra Company instructed its agent, Lorrin A. Thurston, to travel to Kingman Reef and claim it on behalf of the United States and for the company. Complaint ¶ 39; Compl. Ex.. 1-2. The company subsequently took the steps it believed necessary to claim title to Kingman Reef. Compl. Ex. 3-6. Plaintiff Kingman Reef Atoll Investment, LLC ("KRAI") claims to own Kingman Reef through mesne conveyances that relate back to the 1922 claim of the Island of Palmyra Copra Company. Compl. ¶¶ 35-37. Specifically, KRAI alleges that in 1922 title to Kingman Reef was transferred from Palmyra Copra Company to the company's President and Secretary-Treasurer, Leslie Fullard-Leo and Ellen Fullard-Leo. Id. ¶¶ 36-37, 46. KRAI alleges that the Fullard-Leo family held title from 1922 to November 17, 2000, when they transferred title to KRAI, a limited liability corporation created by the family. Id. ¶¶ 37, 63.t.

On December 29, 1934, President Franklin D. Roosevelt issued Executive Order No. 6935. This 1934 Executive Order "reserved [and] set aside" Kingman Reef and placed it under the Secretary of the Navy's "control and jurisdiction."[3] Compl. Ex. 12. The Executive Order, by its own terms, "shall continue in full force and effect until revoked by the President or by act of Congress." Id.

The effect of the 1934 Executive Order was not disputed by the Plaintiffs' predecessors-in-interest at the time. Instead, on April 20, 1937, the Fullard-Leo family wrote to the Hawaii

---

[3]The 1934 Executive Order also affects three other small Pacific islands and surrounding reefs that are not at issue in this case.

congressional delegate "on the subject of- Kingman's Reef," stating that "[i]ts ownership presumably rests with the State or Navy Department, since by one of these, use of it has been given to Pan-American Airways . . . ." Answer Ex. C. In this letter, the Fullard-Leos sought compensation for their efforts in "secur[ing] this wonderful harbor for the United States [and] preventing the same from being annexed for a foreign power." Id. The letter presents a claim for compensation in the amount of $40,000, which the Fullard-Leos described as the cost of sending their boat to Kingman Reef on three occasions plus taxes and accrued interest over a period of fifteen years (1922 to 1937). Id. The Fullard-Leos further stated that "[s]hould we have to make [a] formal claim through legal channels provision for legal fees was not considered in the above claim [of $40,000]." Id.

The attorneys for Ellen Fullard-Leo subsequently wrote to both the Secretary of State and the Secretary of the Navy regarding the interests of Mrs. Fullard-Leo in Kingman Reef. See Answer Ex. D. In the letter of March 29, 1938, to the Secretary of the Navy (which also references communications with the State Department), Ellen Fullard-Leo's attorneys stated,

> As indicated in our letter of January 25th to the Secretary of State, it would seem that, as a result of the Executive Order of December 29, 1934, the Secretary of the Navy apparently concluded that the Department of State had denied the existence of the private property interests in Kingman's Reef claimed by Mrs. Ellen Fullard-Leo.

Id. Referencing the earlier correspondence between the Fullard-Leos and the State Department, the attorneys further stated that "[w]e trust that the letters now in your possession will clarify the position and remove any further question as to Mrs. Fullard-Leo's legal rights, which we propose to protect, so far as possible, by appropriate legal proceedings." Id. (emphasis added).

The Navy responded to the Fullard-Leo claim with a letter from the Navy Judge Advocate

General (JAG) dated April 26, 1938. Answer Ex. E. In this letter, the Navy acknowledged that Fullard-Leo claimed title to Kingman Reef "based on the allegation that in 1922 Mr. Lorrin A. Thurston of Honolulu took possession of Kingman Reef on behalf of The Island of Palmyra Copra Company, Ltd., and that later Mrs. Fullard-Leo acquired the interest of that Company in the island." Id. However, the Navy rejected this claim of ownership, stating:

> The records show that Kingman Reef, otherwise known as "Dangers Rock", is a bonded guano island, it having been listed by affidavit of Captain W. W. Taylor on February 12, 1858, and his rights, through several assignments, were transferred to the United States Guano Company, and the island was bonded on February 8, 1880 (Moore's International Law Digest, Vol. 1, pp. 567-568).
>
> It will be noted that the island, including its reefs and tide and submerged lands, was under the control and jurisdiction of the United States long before the claim of Mrs. Fullard-Leo arose, and by Executive Order No. 6935, dated December 29, 1934, it was placed under the control and jurisdiction of the Navy Department. Under the circumstances, the showing made is not sufficient to uphold the claim of Mrs. Fullard-Leo.

Id.

On February 14, 1941, President Roosevelt issued a second Executive Order affecting Kingman Reef. Executive Order No. 8682 established and reserved several Naval Defense Sea Areas and Naval Airspace Reservations over certain Pacific Ocean islands and areas, including Kingman Reef. Compl. Ex. 13. The Kingman Reef Naval Defensive Sea Area encompasses "the territorial waters between the extreme high-water marks [and] the three-mile boundaries" surrounding Kingman Reef. Id.; Compl. Ex. 14. The airspace over this area is set aside and reserved as the Kingman Reef Naval Airspace Reservation. Id. Both areas are expressly set aside for national defense purposes. Id. The 1941 Executive Order further states that,

> At no time shall any person, other than persons on public

> vessels of the United States, enter any of the naval defensive sea areas herein set apart and reserved, nor shall any vessel or other craft, other than public vessels of the United States, be navigated into any of said areas, unless authorized by the Secretary of the Navy.

Id.

In 2000, the Navy identified its "control over and administrative jurisdiction of Kingman Reef" as "excess" to Department of Defense requirements. Compl. Ex. 27, p. 1. In accordance with applicable laws governing the disposal of Federal property, the Navy further determined that there were no environmental concerns with Kingman Reef and that "this property is suitable for transfer to another Federal agency." Id. Noting that the Department of the Interior had indicated that it was willing to "accept restoration of its administrative jurisdiction of Kingman Reef and all reefs surrounding such island[,]" the Navy transferred "custody and accountability for Kingman Reef" to the Department of the Interior. Id. The Department of the Interior accepted this transfer, subject to the 1934 and 1941 Executive Orders, which remained in effect. Id., pp. 1-2.

Prior to this transfer from Navy to Interior, the United States Fish and Wildlife Service (FWS) prepared a preliminary project proposal to study the addition of Palmyra Atoll[4] and Kingman Reef to the National Wildlife Refuge system. Compl. Ex. 23. The proposal to proceed with detailed planning on the establishment of these National Wildlife Refuges was approved by the Director of the FWS on October 2, 1997. Id. This planning process was to include compliance with the National Environmental Policy Act or "NEPA." Id.

---

[4]Palmyra Atoll is located about 35 miles south of Kingman Reef. Compl. Ex. 26, p. 57. Palmyra Atoll consists of approximately 52 vegetated, low-lying islets that encircle three lagoons and that are surrounded on the seaward side by coral reef flats. Compl. Ex. 23, p. 2.

On December 11, 2000, the FWS issued its Environmental Assessment (EA) for the Proposed Kingman Reef National Wildlife Refuge. Compl. Ex. 33. This EA described the proposed project and evaluated the environmental effects of two alternatives: the creation of the proposed refuge and a "no action" alternative. Id. The FWS sought public comments on the proposal for a thirty-day period following the release of the EA. Compl. Ex. 33 (Doc. 12, pp. 3, 5); Compl. Ex. 35 (Doc. 13, p. 1).

In letters dated December 22, 2000, and January 4, 2001, the Fullard-Leo family and KRAI submitted comments on the proposal through their attorneys asserting that the Fullard-Leo family had been the undisputed owners of Kingman Reef since 1922. Compl. Ex. 36 (Doc. 13, pp. 12-14) (Ltr. of Dec. 22, 2000); Compl. Ex. 36 (Doc. 13, pp. 10-11) (Ltr. of Jan. 4. 2001). The Fullard-Leo family's attorney further asserted that "[n]o local or federal government agency, including any department or division, has ever disputed the Fullard-Leo family's ownership of Kingman Reef."[5] Compl. Ex. 36 (Doc. 13, p. 13) (Ltr. of Dec. 22, 2000). By letter dated January 11, 2001, the FWS responded to these letters, stating:

> Your letters assert that the Fullard-Leo family are the owner of Kingman Reef. After reviewing the matter, we have found no substantiation to this claim. In 1934 and again in 1941, Kingman Reef was reserved, set aside, and placed under the control and jurisdiction of the Department of the Navy by Executive Orders (enclosed). We are aware of no evidence that the claim the Fullard-Leo family is asserting was ever recognized by the United States. In addition, we are aware of no evidence that the Fullard-Leos have, subsequent to the 1934 Executive Order, challenged the claim of the United States to Kingman Reef.

Compl. Ex. 37.

---

[5]The Fullard-Leos' comment letter makes no reference to the 1937 and 1938 correspondence discussed above.

The Fullard-Leo family, KRAI and KRAD submitted additional comments through their attorneys in a letter dated January 11, 2001. Compl. Ex. 36 (Doc. 13, pp. 28-52). In this comment letter, Plaintiffs and their predecessors-in-interest asserted that the Fullard-Leos had acquired title to Kingman Reef in 1922, had owned the reef since that time, and had transferred their title to KRAI on November 17, 2000. Id. (Doc. 13, pp. 29-30, 40-42).

On January 17, 2001, following the close of the public comment period, the FWS issued a Finding of No Significant Impact (FONSI) pursuant to NEPA. In the FONSI, the FWS determined that establishment of the refuge at Kingman Reef was "not a major federal action that will significantly affect the quality of the human environment." Compl. Ex. 38, p. 4 (Doc. 13, p. 64). The FWS noted that a private entity was claiming to be the owner of Kingman Reef and was challenging the government's claim of ownership, but further stated that documentation provided by the claimant had been reviewed, and that the Department of the Interior's Solicitor "believes that legal title holder of record is the Department of the Interior, with a reservation in favor of the U.S. Navy." Id., p. 2-2 (Doc. 13, p. 62).

On January 18, 2001, the Secretary of the Interior signed Order No. 3223 establishing the Kingman Reef National Wildlife Refuge (NWR) "to protect the natural character, including the fish, wildlife, plants, coral reef communities, and other resources of Kingman Reef and all reefs surrounding Kingman Reef." Compl. Ex. 39. The management of the Kingman Reef NWR pursuant to Secretarial Order No. 3223 is expressly subject to the Executive Orders of 1934 and 1941, which remain in effect. Id.

III. Argument

A. Standard of Review for a Motion to Dismiss under RCFC 12(b)(1)

A Rule 12(b)(1) motion to dismiss can either challenge the court's subject matter jurisdiction based on the sufficiency of the factual allegations contained in the complaint, or it can deny or controvert a plaintiff's jurisdictional allegations. In the latter case, "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction[,]" and the court, in establishing the jurisdictional facts, "is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings . . . ." Cedars-Sinai Medical Center v. Watkins, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993), cert. denied, 512 U.S. 1235 (1994). See also Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985) (in deciding a Rule 12(b)(1) motion, "the court can consider, as it did in this case, evidentiary matters outside the pleadings"), cert. denied, 479 U.S. 820 (1986). The plaintiff, in all instances, bears the burden of establishing jurisdiction by a preponderance of the evidence. Cedars-Sinai Medical Center, 11 F.3d at 1583; Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

In this case, Plaintiffs' Complaint references numerous documents. In accordance with the Court's Order of February 9, 2007 (Doc. 8), Plaintiffs filed copies of the relevant documents referred to in their Complaint. See Complaint Exhibits 1-19 (Docs. 9-13, filed Feb. 22, 2007). Defendant referred to several additional documents in its Answer, and filed copies of those documents as Exhibits A-G to its Answer (Doc. 7). Consideration of these exhibits is both necessary and proper to establish the jurisdictional facts of this case.

B. Plaintiffs' Claims Are Subject to a Six-Year Statute of Limitations

The statute of limitations applicable to Plaintiffs' takings claim is set forth in 28 U.S.C. §

2501 and provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." This six-year statute of limitations, which is a condition of the government's waiver of sovereign immunity, is a jurisdictional requirement for actions brought in the Court of Federal Claims. John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir. 2006). See also Martinez v. United States, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc) ("It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature."). As such, the six-year statute of limitations applicable to takings claims brought in this Court must be strictly construed by the Court and cannot be waived. Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). See also Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978) ("[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded"). Thus, the failure of a plaintiff to file its claims within the six-year statute of limitations precludes it from invoking the jurisdiction of this Court to adjudicate those claims. Ariadne Financial Services Pty. Ltd. v. United States, 133 F.3d 874, 878 (Fed. Cir.) (citing Borough of Alpine v. United States, 923 F.2d 170, 171 n.1 (Fed. Cir. 1991)), cert. denied, 525 U.S. 823 (1998); see also John R. Sand & Gravel, 457 F.3d at 1361 (holding that the Court of Federal Claims lacked jurisdiction to consider a takings claim that was barred by the statute of limitations).

In this case, Plaintiffs' Complaint was filed on December 6, 2006. Accordingly, their takings claims are barred by the applicable six-year statute of limitations unless they can establish, by a preponderance of the evidence, that those claims did not accrue until on or after

December 6, 2000.

C. Plaintiffs' Takings Claims Accrued Approximately 70 Years Ago

It is well established that "[a] takings claim accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." John R. Sand & Gravel Co., 457 F.3d at 1355 (citations omitted). Further, a takings claim only accrues if the plaintiff knew or should have known of the existence of the events fixing the government's alleged liability. Id. (citations omitted); see also Hopland Band of Pomo Indians, 855 F.2d at 1577 (a cause of action against the government first accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence"); see also LaMear v. United States, 9 Cl. Ct. 562, 575 (1986) (the statute begins to run when a "'plaintiff discovers, or by reasonable diligence could have discovered the basis of the lawsuit.'" (citation omitted)), aff'd, 809 F.2d 789 (Fed. Cir. 1986). The determination of when a claim has accrued is based on an objective standard. Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996).

In this case, Plaintiffs allege that their predecessors-in-interest acquired legal title to and ownership of Kingman Reef in 1922 through the actions of an agent. Compl. ¶¶ 3-5. Plaintiffs further allege that this title was transferred to them in 2000 and that their ownership interest in Kingman Reef was then taken by the United States in 2001, when the Secretary of the Interior designated Kingman Reef as a National Wildlife Refuge Compl. ¶¶ 8-10. Plaintiffs' contention that their ownership interest (if any) in Kingman Reef was not "taken" until 2001 is belied by the undisputed facts of this case. Even assuming *arguendo* that Plaintiffs actually acquired title to or an ownership interest in Kingman Reef in 1922, any claim that such title or interest was "taken"

by the United States accrued as early as 1934, when President Franklin D. Roosevelt issued an Executive Order that reserved and set aside Kingman Reef for public purposes, and certainly no later than 1938, when the United States rejected Plaintiffs' claim of private ownership and request for compensation in writing.

1. Plaintiffs' Takings Claims Accrued Between 1934 and 1938

In 1910, Congress granted the President authority to withdraw and reserve public lands of the United States for public purposes. The authorizing legislation specifically provides that:

> the President may, at any time in his discretion, temporarily withdraw from settlement, location, sale, or entry *any of the public lands of the United States* . . . and reserve the same for water-power sites, irrigation, classification of lands, or other public purposes to be specified in the orders of withdrawals, and such withdrawals or reservations shall remain in force until revoked by him or by an Act of Congress.

Act of June 25, 1910, ch. 421, 36 Stat. 847 (emphasis added) (attached hereto as Defendant's Exhibit 1).[6] Pursuant to this authorization, President Franklin D. Roosevelt issued the Executive Order at issue in this case on December 29, 1934. This 1934 Executive Order states, in relevant part,

> By virtue of and pursuant to the authority vested in me by the act of June 25, 1910, ch. 421, 36 Stat. 847, as amended by the act of August 24, 1912, ch. 369, 37 Stat. 497, and as President of the United States, it is ordered that . . . Kingman Reef located in the Pacific Ocean approximately in latitude 6°24′37″ N. And longitude 162°22′ W. from Greenwich, . . . together with the reefs surrounding all of the aforesaid islands, as indicated on the diagram hereto attached and made part of this order, be, and they are hereby reserved, set aside, and placed under the control and jurisdiction of the Secretary of the Navy for administrative

[6]Section 2 of the Act of June 25, 1910 was amended by the Act of August 24, 1912, ch. 369, 37 Stat. 497. The amendment is attached hereto as Defendant's Exhibit 2.

> purposes . . . .
> This order shall continue in full force and effect unless and until revoked by the President or by act of Congress.

Compl. Ex. 12 (E.O. 6935).

Relying on the 1910 statute authorizing the withdrawal or reservation of "any of the public lands of the United States," the 1934 Executive Order expressly reserves and sets aside Kingman Reef and places the area under the control and jurisdiction of the Department of the Navy for administrative purposes. Compl. Ex. 13. The issuance of Executive Order of 1934 under the authority of the 1910 Act is thus a clear, unequivocal and very public statement that it was the position of the United States as of 1934 that Kingman Reef constituted "public lands of the United States." Further, the reservation of Kingman Reef and dedication of the reef for public purposes through the issuance of an Executive Order in 1934 demonstrates that the United States was claiming ownership and exercising dominion over Kingman Reef. See United States v. Gossett, 416 F.2d 565, 568 (9th Cir. 1969) (finding that the issuance of Executive Orders in 1929 and 1931 withdrawing certain lands for public purposes "is convincing evidence that the Government was claiming ownership and exercising dominion over the property in those years"), cert. denied, 397 U.S. 961 (1970).

Plaintiffs allege that they acquired title to Kingman Reef in 1922, some twelve years before the 1934 Executive Order.[7] Accepting that allegation as true for the purposes of this motion (see n.1, *supra*), Plaintiffs' claim that their title to Kingman Reef was taken by the United States necessarily accrued as early as 1934 when the President issued an Executive Order that

---

[7]Defendant uses the term "Plaintiffs" herein to refer to both Plaintiffs KRAI and KRAD and their predecessors-in-interest, which include the Fullard-Leo family and the Island of Palmyra Copra Company.

treated Kingman Reef as "public lands of the United States" and then reserved and set aside those lands for public purposes, thereby precluding any settlement of or private claims to the property.

Moreover, there is no dispute that Plaintiffs had actual knowledge of the 1934 Executive Order and understood that the Government's asserted ownership of Kingman Reef conflicted with their own claim to Kingman Reef. Indeed, Plaintiffs' knowledge of these critical events is demonstrated by the undisputed fact that Plaintiffs sought compensation from the Government for Kingman Reef in 1937. Specifically, on April 20, 1937, the Fullard-Leo family wrote to the Hawaii congressional delegate "on the subject of- Kingman's Reef." Answer Ex. C. In this 1937 letter, the Fullard-Leo family acknowledged that the "ownership" of Kingman Reef "presumably rests with the State or Navy Department, since by one of these, use of it has been given to Pan-American Airways . . . ." Id. In this same letter, the Fullard-Leos sought compensation in the amount of $40,000 for their efforts in "secur[ing] this wonderful harbor for the United States [and] preventing the same from being annexed for a foreign power." Id. The Fullard-Leos further stated that "[s]hould we have to make [a] formal claim through legal channels provision for legal fees was not considered in the above claim [of $40,000]." Id.

Plaintiffs' actual knowledge regarding the import of the 1934 Executive Order is further evidenced by a letter of March 29, 1938, from the attorneys for Ellen Fullard-Leo to the Secretary of the Navy, stating:

> As indicated in our letter of January 25th to the Secretary of State, it would seem that, as a result of the Executive Order of December 29, 1934, the Secretary of the Navy apparently concluded that the Department of State had denied the existence of the private property interests in Kingman's Reef claimed by Mrs. Ellen Fullard-Leo.

Answer Ex. D (emphasis added). Referencing the earlier correspondence between the Fullard-Leos and the State Department, the attorneys further stated that "[w]e trust that the letters now in your possession will clarify the position and remove any further question as to Mrs. Fullard-Leo's legal rights, which we propose to protect, so far as possible, by appropriate legal proceedings." Id. (emphasis added).

Less than one month later, the Navy responded to the Fullard-Leo claim with a letter from the Navy Judge Advocate General (JAG) dated April 26, 1938. Answer Exhibit E. In this letter, the Navy explicitly rejected Mrs. Fullard-Leo's claim that she possessed private property interests in Kingman Reef as follows:

> The records show that Kingman Reef, otherwise known as "Dangers Rock", is a bonded guano island, it having been listed by affidavit of Captain W. W. Taylor on February 12, 1858, and his rights, through several assignments, were transferred to the United States Guano Company, and the island was bonded on February 8, 1880 (Moore's International Law Digest, Vol. 1, pp. 567-568).
>
> It will be noted that the island, including its reefs and tide and submerged lands, was under the control and jurisdiction of the United States long before the claim of Mrs. Fullard-Leo arose, and by Executive Order No. 6935, dated December 29, 1934, it was placed under the control and jurisdiction of the Navy Department. Under the circumstances, the showing made is not sufficient to uphold the claim of Mrs. Fullard-Leo.

Id. (emphasis added).

The record in this case thus reveals that Plaintiffs' predecessors-in-interest proceeded to seek compensation from the United States for the loss of their alleged private property interests in Kingman Reef as a result of the 1934 Executive Order. Plaintiffs' claim that they possessed private property interests in Kingman Reef, and their request for compensation for those interests, were denied in 1938. Plaintiffs' letters to the government threatening to bring

"appropriate legal proceedings" to protect their private property interests in Kingman Reef demonstrate that Plaintiffs knew or should have known that their claim against the United States had accrued. See John R. Sand & Gravel Co., 457 F.3d at 1361 (finding that letters from a plaintiff threatening suit against EPA were evidence that the plaintiff knew or should have known that its takings claims had accrued). Accordingly, the Court should conclude based on the undisputed facts of this case that Plaintiffs' takings claims involving Kingman Reef accrued as early as 1934 with the issuance of Executive Order No. 6935, and certainly no later than 1938.

Despite stating that they intended to bring "appropriate legal proceedings" to protect their private property interests in Kingman Reef, rather than pursuing their claims in a timely fashion Plaintiffs sat on their claims for decades. Following the receipt of the 1938 letter rejecting their claim of private ownership and corresponding request for compensation, Plaintiffs waited nearly 70 years before filing suit in this Court on December 6, 2006 and alleging that the United States had taken their ownership interest in Kingman Reef. Because Plaintiffs' takings claims accrued as early as 1934, and certainly no later than 1938, those claims should have been filed by the early 1940's. Plaintiffs' failure to bring their claims on a timely basis renders those claims time-barred. Consequently, this Court lacks jurisdiction to hear Plaintiffs' claims at this time and those claims should be dismissed.

### 2. Case Law Supports the Conclusion That Plaintiffs' Takings Claims Accrued Between 1934 and 1938

That any "taking" of Kingman Reef occurred as early as 1934 is well-supported by relevant case law. For example, in the case of Pewee Coal Company v. United States, the plaintiff alleged a taking of its private property (an operating coal mine) following the Government's decision to seize coal mines throughout the country in an effort to avert a strike.

Pewee Coal Co. v. United States, 115 Ct. Cl. 626, 88 F. Supp. 426 (1950), aff'd, 341 U.S. 114 (1951). The Government's actions stemmed from a 1943 Executive Order in which the President directed the Secretary of the Interior "'to take immediate possession, so far as may be necessary or desirable, of any and all mines producing coal in which a strike or stoppage has occurred or is threatened, * * * and to operate or arrange for the operation of such mines * * *.'" 341 U.S. at 115-16 (quoting Exec. Order 9340, 8 Fed. Reg. 5695, May 1, 1943). The court rejected the Government's assertion that no taking had occurred, finding that "this position cannot be maintained unless we say that the [1943 Executive Order and actions taken pursuant to that Order] were all pretense and sham." 88 F. Supp. at 429. The court declined to so find, holding instead that "the Government did in fact, as well as in name, take possession of plaintiffs' mine, and that it is liable for whatever consequences flow therefrom." Id. The Supreme Court affirmed that a taking had occurred, also pointing to the 1943 Executive Order and a contemporaneous secretarial order issued thereunder, as the relevant actions. 341 U.S. at 115-16. Although the Pewee Coal case did not involve a statute of limitations issue, the decision supports the conclusion here that the Executive Order issued by the President in 1934 is the triggering event for any claim by Plaintiffs that their interest in Kingman Reef has been taken.

The relevance of an Executive Order withdrawing and setting aside public lands for certain purposes to a title dispute involving such lands is also addressed in United States v. Gossett, 416 F.2d 565 (9th Cir. 1969), cert. denied, 397 U.S. 961 (1970). Gossett involved a dispute over the title and right to possession of certain lands in California. In resolving that dispute in favor of the United States, the court relied on two Executive Orders by which the lands in question had withdrawn from public entry for the purposes of a federal reclamation project.

The significance of these Executive Orders is apparent in the court's finding that "[t]he fact that the Executive Orders, withdrawing this land from public entry, were issued in 1929 and 1931 is convincing evidence that the Government was claiming ownership and exercising dominion over the property in those years." 416 F.2d at 568. The significance of the 1934 Executive Order in this case is no different.

Another analogous case supporting the conclusion that Plaintiffs' claims are time-barred is Roth v. United States, 73 Fed. Cl. 144 (2006). There, the plaintiff alleged a taking of his property (mining claims) by the Military Lands Withdrawal Act of 1999 (MLWA). 73 Fed. Cl. at 146. Although the MLWA cut off the plaintiff's access to his property by withdrawing the surrounding public lands and reserving those lands for military purposes, the court found that the MLWA simply replaced orders and notices that had been issued and published in the Federal Register in 1989. Id. at 146-47. Without resolving an underlying dispute as to whether the plaintiff owned the property interests allegedly taken (73 Fed. Cl. at 146 n.2), the court found that the plaintiff's takings claim accrued in 1989 when the government first "closed off access to their lands." Id. at 150. In so holding, the court further noted that the accrual of the plaintiff's takings claims was not delayed simply because the orders issued in 1989 were later "augmented or reinforced by statute." Id. at 152. In this case, as in Roth, any rights Plaintiffs had to the use and control of Kingman Reef as the alleged owner thereof were cut off by the 1934 Executive Order. Compl. Ex. 13. The correspondence between Plaintiffs and the government between 1937 and 1938 confirmed the effect of the 1934 Executive Order, and left no question that government had rejected Plaintiffs' claim of private ownership of Kingman Reef. The 1941 Executive Order reinforced the effect of the 1934 Executive Order by precluding access to and use of Kingman

Reef by all persons. Compl. Ex. 14. The designation of Kingman Reef as a National Wildlife Refuge in 2001 may have changed the Government's use and administration of Kingman Reef, but that designation is subject to and simply represents a continuation of the restrictions placed upon the property by the 1934 and 1941 Executive Orders. Compl. Ex. 39.

Similarly, in John R. Sand & Gravel Company v. United States, the Federal Circuit addressed the question of claim accrual where the plaintiff alleged a taking of its leasehold interest in a 158-acre tract of property based on actions taken by the Environmental Protection Agency (EPA) in connection with the cleanup of hazardous waste buried on the property. 457 F.2d 1345 (Fed. Cir. 2006), pet. for cert. filed, 75 U.S.L.W. 3474 (U.S. Feb. 26, 2007) (No. 06-1164). The Federal Circuit found that the plaintiff's takings claim accrued in 1994, upon the completion of a fence that cut off the plaintiff's access to and use of certain portions of its property. 457 F.3d at 1357. The court found that EPA's presence destroyed the plaintiff's "right to exclude others from its leasehold, one of the most treasured rights of property owners" and also inhibited the plaintiff's "right to use the property free of interference." Id. at 1358. The court concluded that, by its actions, the Government "had effectively declared itself a co-tenant in possession of a portion of the property and that accordingly, [plaintiff's] takings claims accrued at that time." Id. Here, the claim accrual facts are even more compelling. Again, as detailed above, the United States, through the issuance of the 1934 Executive Order clearly and unequivocally indicated that it considered Kingman Reef to be public property that was thereafter reserved and set aside for military purposes. Any rights that Plaintiffs had to use, occupy or exclude others from Kingman Reef – including the Government – were cut off at this time. That Plaintiffs had actual knowledge of the 1934 Executive Order and the effect of that Order on its

claim of private ownership is evident in the correspondence between Plaintiffs and the government in 1937 and 1938. Accordingly, the evidence in this case supports the conclusion that Plaintiffs' takings claims accrued as early 1934, and no later than 1938. Regardless of the specific accrual date within that time period, Plaintiffs' claims have been time-barred for decades.

### 3. Plaintiffs' Time-Barred Claims Cannot Be Resurrected by the Government's Subsequent Administration of Kingman Reef

Although Plaintiffs' Complaint makes reference to the 1934 Executive Order, the Complaint is notable for the complete absence of any reference to the ownership claims and claims for compensation made by Plaintiffs' predecessors-in-interest in 1937 and 1938, and the Government's rejection of those claims in 1938. Ignoring these earlier events, Plaintiffs' Complaint suggests that they have maintained ownership, possession and control of Kingman Reef since 1922, and that the actions of the United States did not result in a taking of their ownership interests until 2001, when Kingman Reef was designated as a National Wildlife Refuge.

Contrary to Plaintiffs' allegations, the 2001 designation of Kingman Reef as a National Wildlife Refuge simply represents continuation of the Government's ownership and control of Kingman Reef, to the exclusion of all others, including Plaintiffs. As set forth above, Kingman Reef was considered by the Government to be public land when the President reserved and set aside Kingman Reef in 1934 and placed the reef under the "control and jurisdiction" of the Navy. Compl. Ex. 13. *Arguendo*, if the 1934 Executive Order was not notice enough to trigger the accrual of Plaintiffs' takings claims (and Defendant submits that it was), then the 1941 Executive Order excluding all persons from Kingman Reef and its surrounding waters and airspace

certainly was. See E.O. 8682 (Compl. Ex. 14) ("At no time shall any person, other than persons on public vessels of the United States, enter any of the naval defensive sea areas herein set apart and reserved, nor shall any vessel or other craft, other than public vessels of the United States, be navigated into any of said areas, unless authorized by the Secretary of the Navy.").

In 2000, the Navy identified its "control over and administrative jurisdiction of Kingman Reef" as "excess" to Department of Defense requirements. Compl. Ex. 27, p. 1. In accordance with applicable laws governing the disposal of Federal property, Kingman Reef was determined to be "suitable for transfer to another Federal agency." Compl. Ex. 27, p. 1. Custody of and accountability for Kingman Reef was thereafter transferred from the Department of the Navy to the Department of the Interior, subject to the 1934 and 1941 Executive Orders, which remain in effect. Id., pp. 1-2. In 2001, Kingman Reef was designated by the Department of the Interior as a National Wildlife Refuge. Compl. Ex. 39. This designation also specifies that "[r]efuge management shall be undertaken consistent with the administrative control and jurisdiction exercised by the Secretary of the Navy pursuant to Executive Order 6935 of December 29, 1934, and Executive Orders 8682 and 8729 of February 14, 1941, and April 2, 1941, until and unless such administrative control and jurisdiction is extinguished." Id.

Although the documents filed by the Plaintiffs as exhibits to the Complaint reveal that, in recent years, Plaintiffs have revived the assertion that they are the owners of Kingman Reef, those claims of ownership are based on the 1922 claim made by the Island of Palmyra Copra Company and the Fullard-Leo family. See Compl. Ex. 36 (Doc. 13, pp. 12-13, letter of Dec. 22, 2000); Compl. Ex. 36 (Doc. 13, pp. 15-16, letter of Dec. 23, 2000). As set forth above, the claim that this ownership interest has been taken accrued between 1934 and 1938, and therefore

became time-barred in the early 1940's. Plaintiffs' recent assertions of ownership can not revive their otherwise time-barred claims.[8]

## IV. Conclusion

For the reasons set forth herein, Defendant respectfully requests that the Court grant Defendant's motion to dismiss Plaintiffs' claims as time-barred under the applicable six-year statute of limitations, 28 U.S.C. § 2501.

Dated: March 30, 2007

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL (603) 230-2583
FAX (603) 225-1577
E-MAIL kristine.tardiff@usdoj.gov

[8]Defendant notes that any recent efforts by Plaintiffs to reassert their claim of ownership cannot operate to toll the applicable statute of limitations since that limitations period already has run. As explained by the Federal Circuit, "[i]f the statute [of limitations] has already run before the alleged tolling action commences, . . .there is nothing left to toll. In other words, tolling cannot be applied retroactively to extend a limitations period that has already expired before the tolling event occurs." Maclean v. United States, 454 F.3d 1334, 1337 (Fed. Cir. 2006).

OF COUNSEL:
Mariel J. Combs
Office of the Solicitor
United States Department of the Interior
Pacific Northwest Region
500 N.E. Multnomah St., Suite 607
Portland, OR 97232

Robert J. Smith
Office of the General Counsel
Navy Litigation Office
720 Kennon St., SE, Room 233
Washington Navy Yard, DC