# EXHIBIT K

To: Peter Savio

FACSIMILE

Fax #:

From: Robert P. Smith

Subject:

Date: Oct. 3 947-5429

Pages: 2, including this page.

Peter, the attached represents approval from our director in Washington, Jamie Clark, to proceed with detailed planning necessary for our Acquisition. Note that we desire to Acquire both Palmyra and Kingman, if that is the sellers' desire. I will transmit this to Col. Ralph Graves of the Corps with a cover letter emphasizing the need to do clean-up work.

From the desk of...
Robert P. Smith
Islands Ecoregion Manager
U.S. Fish and Wildlife Service
300 Ala Moana Blvd. Rm. 3108
Honolulu, HI 96813
Tel 808-541-2749

S 005786

# EXHIBIT L

# BROOKS TOM MILLER & PORTER

ATTORNEYS AT LAW
2700 GROSVENOR CENTER
737 BISHOP STREET
HONOLULU, HAWAII 96813

TELEPHONE: (808) 526-3011
TELECOPIER: (808) 523-1171
(808) 526-0121

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31
A
OCT 1997
RECEIVED
Fish & Wildlife
Enforcement
Honolulu, HI 96850

## LETTER OF TRANSMITTAL

TO: Mr. Robert Smith
U.S. Dept. of the Interior
Fish and Wildlife Service
Pacific Islands Ecoregion
300 Ala Moana Blvd. Room 3108
Honolulu, Hawaii 96813

DATE: October 10, 1997

RE: Fullard-Leo/Palmyra

FROM: Arlene S. Kishi

The Following Is (Are) Transmitted Herewith:

| Quantity | Description |
|---|---|
| 1 copy | right of entry letter agreement |
| 4 copies | Assumption of Risk and Release |

| | | |
|---|---|---|
| ( ) For Your Information | (X) For Necessary Action | (X) For Signature & Return |
| ( ) For Review & Comment | ( ) Per Your Request | ( ) For Signature & Forwarding |
| ( ) For Correction | ( ) Per Our Conversation | ( ) For Signature & Necessary Action |
| ( ) For Distribution | ( ) Approved | |
| ( ) For Recordation | ( ) Disapproved | |
| ( ) For Payment | (X) See Remarks Below | |

We have already received by fax the signed pages from The Nature Conservancy and The Orvis Company. As such, we would appreciate if you could have the letter agreement and the Assumption of Risk and Releases signed by your agency and the persons participating in the trip, and call me when they are ready to be picked up. We are having the Fullard-Leos and Palmyra Development sign separate copies. Thank you for your assistance.

By *Arlene S. Kishi*
Arlene S. Kishi

Δ π EXHIBIT 10
Deponent
Date Rptr.
WWW.DEPOBOOK.COM

October 17, 1997

U.S. Department of the Interior
Fish and Wildlife Service
Pacific Islands Ecoregion
300 Ala Moana Blvd.
Room 3108
Honolulu, Hawaii 96813

Attn: Robert P. Smith, Manager

The Nature Conservancy
Coastal & Marine Program
88 First Street
Suite 600
San Francisco, California 94105

Attn: Chuck Cook, Director

The Orvis Company
Manchester, Vermont 05254

Attn: Gwenn Perkins

Re: Palmyra

Ladies and Gentlemen:

This Agreement sets forth the terms and conditions covering your entry onto and use of the coral-covered atoll commonly referred to as "Palmyra". Palmyra consists of a group of about fifty islets located in the Pacific Ocean approximately 1,000 miles south of the Hawaiian Islands, at Latitude 5 degrees, 52 minutes North and Longitude 162 degrees 06 minutes West, approximately. Palmyra includes the territorial waters, surrounding reefs, beaches and lagoons, and extends 5-2/3 sea miles in an east-west direction and 1-1/3 sea miles in a north-south direction.

1. LESLIE VINCENT FULLARD-LEO, Trustee under that certain unrecorded Living Trust of Leslie Vincent Fullard-Leo dated February 12, 1986, as amended; DUDLEY LEINANI FULLARD-LEO, Trustee of the Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995; AINSLEY A.K. FULLARD-LEO, Trustee of the

Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992, and PALMYRA DEVELOPMENT CO., INC. (collectively, "Permitter") hereby grants to you and the employees and invitees who have signed the Assumption of Risk and Release attached hereto as Attachment 1 (collectively, "Permittee") permission to enter upon and across Palmyra and the adjoining property commonly known as "Kingman Reef" (collectively, the "Property") for the following purposes in connection with Permittee's possible purchase of the Property:

a. surveying and evaluating (including by catch-and-release fishing and scuba diving) in-shore and off-shore gamefish habitats and fish stocks;

b. reviewing and inspecting existing infrastructure on the Property;

c. surveying forested lands and bird populations;

d. searching beaches for signs of turtle nesting activities; and

e. attempting to communicate from the Property by short-wave radio.

Permittee agrees to confine its activities at the Property to the purposes represented above. Without limiting the generality of the foregoing, Permittee represents and warrants that Permittee will not enter the Property for purposes of researching the possible use of the Property for temporary or permanent storage of nuclear waste or other Hazardous Materials (as defined in paragraph 17 below). Breach of these conditions will void this permit and may preclude future permission to enter the Property.

2. Following receipt by Permitter of an executed copy of this letter agreement ("Agreement"), Permittee may enter onto and use the Property for the purposes specified in this Agreement from October 16, 1997 through October 25, 1997; provided, however, that this permit may be terminated or suspended by Permitter for good cause any time by 48-hour notice to Permittee. Permitter encourages Permittee to obtain insurance to cover the activities of Permittee in connection with the Property, and if such insurance is obtained, Permittee shall deliver to Permitter, together with the executed Agreement, a certificate thereof naming Permitter as an additional insured.

3. All personal property taken onto or placed upon the Property by Permittee shall remain the property of Permittee and shall be removed by Permittee before leaving the Property.

4. Permittee shall carry out and dispose of all debris and trash caused by or resulting form any activities or use by Permittee in connection with the Property and leave the area in a clean and orderly condition. If Permittee fails to dispose of its debris and trash or to remove its personal property or to leave the area in the same condition as existed before entry, Permitter may (but shall not be obligated to) dispose of such debris and trash, remove such personal property and/or restore the area to the same condition as existed before Permittee's entry, and Permittee shall be responsible for all charges and expenses incurred by Permitter. Permitter shall not be responsible for any personal property left on the Property by Permittee.

5. Permittee will abide by and fully comply with all applicable laws, statutes, ordinances, rules and regulations made by Permitter and any governmental authority, while upon, crossing or using the Property or otherwise exercising its rights under this Agreement. Permittee will also obey all reasonable verbal instructions given by the resident manager of the Property.

6. Permitter makes no representations as to the condition of the Property to be entered upon by Permittee hereunder and does not represent or warrant the same to be in a safe or proper condition for the above-mentioned purposes or for any other purpose whatsoever. Permittee understands that the Property is in its natural state and may not be safe for its entry and use and assumes all risks from any source on and about the Property.

Without limiting the generality of the foregoing, Permittee acknowledges that the Property was used by the United States military during World War II for military activities. Other than such use, the Property has been virtually uninhabited and undeveloped. As such, the condition of the Property and its airstrip, buildings, grounds, plants, animals, fish, waters, lagoons and reefs, is unknown and could possibly be unsafe or dangerous. This includes, but is not limited to, the possible existence of unexploded bombs, animals and fish caught and fruits and vegetables picked at the Property which may be poisonous, and the condition of the waters in and around the Property for drinking, swimming, fishing or other purposes. In addition, Permittee acknowledges there are no medical facilities, equipment or supplies at the Property, and there is no assurance that any

food, beverages (including drinking water) or other provisions will be available at the Property.

7. Permittee has determined that the purposes described in this Agreement are fully appropriate and has further determined that the persons working on behalf of Permittee are operating within the scope of their employment and official responsibilities and that Permittee is fully responsible for their conduct, actions and all resulting consequences while on the Property. Consistent with this representation, Permittee shall release, indemnify and hold harmless Permitter, its affiliated entities, and their respective employees, officers, directors and agents against and from all losses, damages, claims, demands, suits and costs, including reasonable attorney's fees and expenses (collectively "Losses"), for personal injury, including but not limited to death, and property damage or loss arising out of, caused by or resulting from any activities by Permittee in connection with the Property.

8. Activities not within the described purposes or outside of the Property area shall not be permitted under this Agreement.

9. Permittee shall not interfere with any work being performed, or other operations being carried out, or use being engaged in, on, or about the Property by, on behalf of, or authorized by Permitter.

10. Permittee agrees to at all times, with respect to the Property, use due care for public and personal safety. Permittee shall not harm or take any animals, marine life, plants or trees from the Property, except that Permittee may remove from the Property small samples of seaweed/limu and plankton for scientific observation and may perform catch-and-release fishing at the Property. Permittee shall be responsible for any such harm and shall compensate Permitter for all losses and expenses attributable to such harm or taking.

11. Permittee assumes the risk of all personal injury, losses and damages, and waives all claims, demands and rights to recovery for injury or damage, including but not limited to death arising out of injury or damage, on or about said premises, or caused by or resulting from any activities or use by Permittee in connection with said premises. Permittee shall be responsible for any claims for damage or injury caused by or resulting from any act or omission of the Permittee in connection with the Permittee's use of the premises described herein; provided, however, that the liability of any federal agency which is a

Permittee shall be as provided in the Federal Tort Claims Act (62 Stat. 869-986, 28 U.S.C. 2671-2681).

12. Permittee shall cause all individuals entering the property as employees, guests, agents or invitees of Permittee to read and execute the attached Assumption of Risk and Release form and return the executed copies to Permitter, c/o Palmyra Development Co., Inc., 931 University Avenue, Suite 105, Honolulu, Hawaii 96826, prior to entry, and shall indemnify and hold Permitter harmless from any loss, liability, claim or demand due to the failure to obtain such signed Assumption of Risk and Release form. Only those persons who sign the Assumption of risk and Release form shall be allowed onto the Property.

13. Permittee acknowledges that Permitter is permitting entry onto the Property at no charge to Permittee. Permittee will provide to Permitter at no charge a copy of all reports, studies, photographs, video tapes and sound recordings of the Property which are made by Permittee as a result of the trip.

14. Unauthorized investigations or use of study results for other than the stated purposes shall not be permitted without the prior written approval of Permitter, which may be given or withheld in Permitter's sole and absolute discretion.

15. This Agreement is the entire agreement of the parties with respect to the subject matter hereof and cannot be modified or canceled except by written instrument signed by both parties. This Agreement shall be interpreted in accordance with the laws of the State of Hawaii and the courts located in Honolulu, Hawaii shall have the jurisdiction over all disputes hereunder. Each party acknowledges that it has not entered into this Agreement in reliance upon any representation (written or oral, express or implied) of the other party not contained herein.

16. Permittee acknowledges that Palmyra Development Co., Inc. has entered into a License Agreement with C. Fresh Seafoods, Inc. ("Licensee"), pursuant to which Licensee has a license to engage in certain activities at the Property, including, but not limited to, establishing a base camp, commercial fishing, deep water sport fishing and diving. Permittee agrees that all indemnities made by Permittee in this Agreement in favor of Permitter, will run in favor of Licensee.

In addition, all of the indemnification provisions contained in this Agreement shall survive the term of this Agreement.

17. Permittee shall not cause or permit the release or discharge of any hazardous substances (as defined by 42 U.S.C. §9601(14) or petroleum products (or derivatives thereof) during the Permittee's performance of work associated with this Agreement. If any such release or discharge occurs, Permittee shall immediately advise Permitter in writing. If remediation of any such releases or discharges is required, then Permittee shall remediate such releases or discharges to the extent required by applicable federal, state and local laws and regulations. Permittee also agrees to cooperate with Permitter, to the extent allowed by law, in the submission of a claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, et seq.

The term "Hazardous Material Laws" as used in this Agreement shall mean all federal, state or local laws, ordinances or regulations, now or hereafter in effect, relating to environmental conditions, industrial hygiene or Hazardous Material on, within, under or about the Property or any improvements thereon.

The term "Hazardous Materials" as used in this Agreement shall mean any and all radioactive materials, asbestos, organic compounds known as polychlorinated biphenyls, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, hazardous wastes, toxic substances, and any and all other substances or materials defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," or "toxic substances," under any Hazardous Materials Laws.

18. Permittee shall take every reasonable precaution to preserve and leave unaltered all places, if any, of historic and/or archaeological interest, and all objects, if any, of historic and/or archaeological interest, including without limitation antiquities and specimens of ancient art or handicraft which may be found in or on the Property. Upon the discovery of such objects or of any human remains in or on the Property, Permittee will leave the same untouched and will immediately notify Permitter of the type and location of such discovery.

19. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument. The submission of a party's signature transmitted by facsimile (or similar electronic transmission facility) shall be considered as an "original" signature for purposes of this Agreement. The party transmitting the facsimile shall immediately transmit by mail or by other delivery service the original signature page in the original and duplicate originals of this Agreement.

20. This Agreement may not be assigned, in whole or in part, by operation of law or otherwise, by Permittee without the prior written consent of Permitter, which consent may be given or withheld in Permitter's sole and absolute discretion.

21. Nothing in this Agreement shall be considered as offer to sell, lease or license the Property to Permittee, or an agreement or an indication of willingness to negotiate or accept a proposal from Permittee to purchase, lease or license the Property. There is currently no agreement or understanding of any kind between Permitter and Permittee regarding the sale, lease or license of the Property, and Permittee agrees that (a) any costs or expenses incurred and to be incurred by Permittee, were and will be incurred at Permittee's risk, and (ii) any decisions made and to be made by Permittee, were and will be made at Permittee's risk. Permittee acknowledges that Permitter is free to negotiate and enter into agreements with others regarding the Property, and that any negotiations that may commence between Permitter and Permittee may be terminated at any time without liability to any party.

22. Permitter owns all "treasure" (as hereinafter defined) located in and around the Property. Permittee shall immediately notify Permitter of any treasure discovered by Permittee, and shall not remove any items of treasure. For purposes of this Agreement, the term "treasure" shall mean all artifacts, antiquities, coins, bullion, jewels, and other valuable (whether for historic or other reasons) personal property which was not brought to the Property by Permittee.

23. Neither Permitter nor Permittee, nor their respective agents, representatives, employees, partners, officers or directors, shall disclose the subject matter or terms of this Agreement without the prior written consent of the other party, which may be withheld for any reason in such other party's sole discretion. None of the parties hereto shall issue any news release or make any other public statement, in each case relating to or connected with or arising out of this Agreement or the matter contained in this Agreement, without obtaining the prior approval of the other parties to the contents and the manner of presentation and publication thereof. All information, studies and reports relating to the Property obtained by Permittee, either by entry upon or examination and inspection of the Property, shall be confidential and will not be reproduced or disclosed to any person without the prior written consent of Permitter.

24. Any violation of the terms of this Agreement by Permittee will cause irreparable harm to Permitter, thereby

entitling Permitter to specific performance and/or an injunction, together with costs and attorneys' fees payable by Permittee, in addition to all other remedies available at law or in equity.

If the foregoing meets with your approval, kindly indicate your agreement by signing the original of this letter and returning the same to Palmyra Development Co., Inc., 931 University Avenue, Suite 105, Honolulu, Hawaii 96826. Should you require further assistance, please call Mr. Peter Savio at (808) 942-7701.

______________________________
LESLIE VINCENT FULLARD-LEO, Trustee

______________________________
DUDLEY LEINANI FULLARD-LEO, Trustee

______________________________
AINSLEY A.K. FULLARD-LEO, Trustee

PALMYRA DEVELOPMENT CO., INC.

By______________________________
Peter Savio, President

Permitter

U.S. DEPARTMENT OF THE INTERIOR
FISH AND WILDLIFE SERVICE

By______________________________
Name____________________________
Title___________________________

THE NATURE CONSERVANCY

By______________________________
Name______________________________
Title______________________________

THE ORVIS COMPANY

By______________________________
Name______________________________
Title______________________________

Permittee

ASSUMPTION OF RISK AND RELEASE

I would like to enter the property owned by LESLIE VINCENT FULLARD-LEO, Trustee under that certain unrecorded Living Trust of Leslie Vincent Fullard-Leo dated February 12, 1986, as amended; DUDLEY LEINANI FULLARD-LEO, Trustee of the Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995; AINSLEY A.K. FULLARD-LEO, Trustee of the Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992, and leased by PALMYRA DEVELOPMENT CO., INC. (the "Permitter") known as "Palmyra" (the "Property") and described in that certain letter agreement dated January ___, 1998 (the "Agreement") for the purposes described in the Agreement.

By signing below, I acknowledge that I have read and I understand, agree to and will be bound by, all of the terms contained in the Agreement. I recognize that there are special risks and dangers in my proposed activity and in entering onto the Property, and these risks can result in accidents causing personal or bodily injury, death, or damage to or loss of personal property. Being fully aware of these risks and facts, (I) I certify that I am fully capable of participating in this activity and that I do not have a physical or medical condition which would endanger myself or others from my participation in this activity; and (ii) I hereby voluntarily agree to assume all such risks and be responsible for any bodily harm, injury (including death) or loss, including loss of personal property, to myself, resulting from my participation in such activity.

Further, I hereby release and will hold harmless the Permitter and The Nature Conservancy, and each of their respective employees, agents, contractors, and subcontractors from any and all claims for injury (including death), damage or loss of any nature whatsoever arising or resulting from my entry onto the property and participation by me in this activity.

THIS AGREEMENT SHALL BE EFFECTIVE DURING THE ENTIRE PERIOD OF MY PARTICIPATION IN THIS ACTIVITY, AND IS BINDING UPON ME, MY HEIRS, SUCCESSORS AND REPRESENTATIVES. IF A MINOR (UNDER 21 YEARS OF AGE), THIS AGREEMENT IS SIGNED ON MY BEHALF BY MY PARENT OR GUARDIAN.

Date_____________________

_____________________________
[illegible]ger
[illegible] Wildlife Service

FLF 001652

ASSUMPTION OF RISK AND RELEASE

I would like to enter the property owned by LESLIE VINCENT FULLARD-LEO, Trustee under that certain unrecorded Living Trust of Leslie Vincent Fullard-Leo dated February 12, 1986, as amended; DUDLEY LEINANI FULLARD-LEO, Trustee of the Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995; AINSLEY A.K. FULLARD-LEO, Trustee of the Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992, and leased by PALMYRA DEVELOPMENT CO., INC. (the "Permitter") known as "Palmyra" (the "Property") and described in that certain letter agreement dated October ___, 1997 (the "Agreement") for the purposes described in the agreement.

By signing below, I acknowledge that I have read and I understand, agree to and will be bound by, all of the terms contained in the Agreement. I recognize that there are special risks and dangers in my proposed activity and in entering onto the Property, and these risks can result in accidents causing personal or bodily injury, death, or damage to or loss of personal property. Being fully aware of these risks and facts, (I) I certify that I am fully capable of participating in this activity and that I do not have a physical or medical condition which would endanger myself or others from my participation in this activity; and (ii) I hereby voluntarily agree to assume all such risks and be responsible for any bodily harm, injury (including death) or loss, including loss of personal property, to myself, resulting from my participation in such activity.

Further, I hereby release and will hold harmless the Permitter and each of its employees, agents, contractors, and subcontractors from any and all claims for injury (including death), damage or loss of any nature whatsoever arising or resulting from my entry onto the property and participation by me in this activity.

THIS AGREEMENT SHALL BE EFFECTIVE DURING THE ENTIRE PERIOD OF MY PARTICIPATION IN THIS ACTIVITY, AND IS BINDING UPON ME, MY HEIRS, SUCCESSORS AND REPRESENTATIVES. IF A MINOR (UNDER 21 YEARS OF AGE), THIS AGREEMENT IS SIGNED ON MY BEHALF BY MY PARENT OR GUARDIAN.

Date Oct 13, 1997

Robert R. Smith

Robert Smith
U.S. Fish and Wildlife Service

FLF 001653

ASSUMPTION OF RISK AND RELEASE

I would like to enter the property owned by LESLIE VINCENT FULLARD-LEO, Trustee under that certain unrecorded Living Trust of Leslie Vincent Fullard-Leo dated February 12, 1986, as amended; DUDLEY LEINANI FULLARD-LEO, Trustee of the Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995; AINSLEY A.K. FULLARD-LEO, Trustee of the Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992, and leased by PALMYRA DEVELOPMENT CO., INC. (the "Permitter") known as "Palmyra" (the "Property") and described in that certain letter agreement dated October ____, 1997 (the "Agreement") for the purposes described in the agreement.

By signing below, I acknowledge that I have read and I understand, agree to and will be bound by, all of the terms contained in the Agreement. I recognize that there are special risks and dangers in my proposed activity and in entering onto the Property, and these risks can result in accidents causing personal or bodily injury, death, or damage to or loss of personal property. Being fully aware of these risks and facts, (I) I certify that I am fully capable of participating in this activity and that I do not have a physical or medical condition which would endanger myself or others from my participation in this activity; and (ii) I hereby voluntarily agree to assume all such risks and be responsible for any bodily harm, injury (including death) or loss, including loss of personal property, to myself, resulting from my participation in such activity.

Further, I hereby release and will hold harmless the Permitter and each of its employees, agents, contractors, and subcontractors from any and all claims for injury (including death), damage or loss of any nature whatsoever arising or resulting from my entry onto the property and participation by me in this activity.

THIS AGREEMENT SHALL BE EFFECTIVE DURING THE ENTIRE PERIOD OF MY PARTICIPATION IN THIS ACTIVITY, AND IS BINDING UPON ME, MY HEIRS, SUCCESSORS AND REPRESENTATIVES. IF A MINOR (UNDER 21 YEARS OF AGE), THIS AGREEMENT IS SIGNED ON MY BEHALF BY MY PARENT OR GUARDIAN.

Date Oct. 13/97

[signature]
Dr. Charles Brady
U.S. Fish and Wildlife Service

# ASSUMPTION OF RISK AND RELEASE

I would like to enter the property owned by LESLIE VINCENT FULLARD-LEO, Trustee under that certain unrecorded Living Trust of Leslie Vincent Fullard-Leo dated February 12, 1986, as amended; DUDLEY LEINANI FULLARD-LEO, Trustee of the Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995; AINSLEY A.K. FULLARD-LEO, Trustee of the Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992, and leased by PALMYRA DEVELOPMENT CO., INC. (the "Permitter") known as "Palmyra" (the "Property") and described in that certain letter agreement dated October ___, 1997 (the "Agreement") for the purposes described in the agreement.

By signing below, I acknowledge that I have read and I understand, agree to and will be bound by, all of the terms contained in the Agreement. I recognize that there are special risks and dangers in my proposed activity and in entering onto the Property, and these risks can result in accidents causing personal or bodily injury, death, or damage to or loss of personal property. Being fully aware of these risks and facts, (I) I certify that I am fully capable of participating in this activity and that I do not have a physical or medical condition which would endanger myself or others from my participation in this activity; and (ii) I hereby voluntarily agree to assume all such risks and be responsible for any bodily harm, injury (including death) or loss, including loss of personal property, to myself, resulting from my participation in such activity.

Further, I hereby release and will hold harmless the Permitter and each of its employees, agents, contractors, and subcontractors from any and all claims for injury (including death), damage or loss of any nature whatsoever arising or resulting from my entry onto the property and participation by me in this activity.

THIS AGREEMENT SHALL BE EFFECTIVE DURING THE ENTIRE PERIOD OF MY PARTICIPATION IN THIS ACTIVITY, AND IS BINDING UPON ME, MY HEIRS, SUCCESSORS AND REPRESENTATIVES. IF A MINOR (UNDER 21 YEARS OF AGE), THIS AGREEMENT IS SIGNED ON MY BEHALF BY MY PARENT OR GUARDIAN.

Date 11 October 1997

Barbara A. Maxfield
Barbara Maxfield
U.S. Fish and Wildlife Service

ASSUMPTION OF RISK AND RELEASE

I would like to enter the property owned by LESLIE VINCENT FULLARD-LEO, Trustee under that certain unrecorded Living Trust of Leslie Vincent Fullard-Leo dated February 12, 1986, as amended; DUDLEY LEINANI FULLARD-LEO, Trustee of the Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995; AINSLEY A.K. FULLARD-LEO, Trustee of the Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992, and leased by PALMYRA DEVELOPMENT CO., INC. (the "Permitter") known as "Palmyra" (the "Property") and described in that certain letter agreement dated October ___, 1997 (the "Agreement") for the purposes described in the agreement.

By signing below, I acknowledge that I have read and I understand, agree to and will be bound by, all of the terms contained in the Agreement. I recognize that there are special risks and dangers in my proposed activity and in entering onto the Property, and these risks can result in accidents causing personal or bodily injury, death, or damage to or loss of personal property. Being fully aware of these risks and facts, (I) I certify that I am fully capable of participating in this activity and that I do not have a physical or medical condition which would endanger myself or others from my participation in this activity; and (ii) I hereby voluntarily agree to assume all such risks and be responsible for any bodily harm, injury (including death) or loss, including loss of personal property, to myself, resulting from my participation in such activity.

Further, I hereby release and will hold harmless the Permitter and each of its employees, agents, contractors, and subcontractors from any and all claims for injury (including death), damage or loss of any nature whatsoever arising or resulting from my entry onto the property and participation by me in this activity.

THIS AGREEMENT SHALL BE EFFECTIVE DURING THE ENTIRE PERIOD OF MY PARTICIPATION IN THIS ACTIVITY, AND IS BINDING UPON ME, MY HEIRS, SUCCESSORS AND REPRESENTATIVES. IF A MINOR (UNDER 21 YEARS OF AGE), THIS AGREEMENT IS SIGNED ON MY BEHALF BY MY PARENT OR GUARDIAN.

Date 11 Oct 97

Elizabeth N. Flint
Elizabeth Flint
U.S. Fish and Wildlife Service

# EXHIBIT M

# BRIEFING STATEMENT

Prepared for: Secretary Babbitt
Submitted: August 18, 1998

STATE: HI

TITLE: Proposed Kingman Reef National Wildlife Refuge (NWR)

ISSUE: The Service is in the detailed planning stage for the establishment of the Kingman Reef NWR, Central Pacific Ocean.

BACKGROUND/STATUS:

o The Service is beginning detailed acquisition planning to establish the Kingman Reef National Wildlife Refuge. Kingman Reef features significant national trust resources. The area of the United States' jurisdiction includes the reef and other submerged lands and associated waters to the three-mile limit. Kingman Reef NWR would be managed as a unit of the Pacific Remote Islands National Wildlife Refuge Complex headquartered in Honolulu. There is no permanent emergent land at Kingman Reef, but threatened green sea turtles are reported to haul out on sand spits. The marine waters and coral reef ecosystems support a large population of migratory Pacific seabirds, and a diverse variety of marine organisms.

o The PPP for the proposed Kingman Reef NWR was approved on 10/02/97. The draft environmental assessment is in preparation and may be ready for public review in September 1998.

o Kingman Reef is an unincorporated U.S. possession and is not within the State of Hawaii. Title review would be needed to clarify ownership.

o The Kingman Reef acquisition should be pursued after the acquisition of Palmyra Atoll.

POSITIONS OF INTERESTED PARTIES:

o No contacts have been made regarding the establishment of the proposed Kingman Reef NWR.

DEPARTMENT/BUREAU PERSPECTIVE:

o Acquisition of Kingman Reef would provide long term management and protection for the significant trust resources and unique biological resources of the reef, lagoon, and marine waters. Secretary Babbitt is considering the status of Kingman Reef's marine environment as part of the U.S. Coral Reef Initiative.

---

CONTACT: Robert P. Smith, Pacific Islands Manager, (808) 541-2749.

Robert P. Smith
Pacific Islands Manager

Date

# EXHIBIT N

WESTERN
PACIFIC
REGIONAL
FISHERY
MANAGEMENT
COUNCIL

December 11, 1998

Mr Robert Smith
Pacific Islands Manager
USFWS
300 Ala Moana Blvd
Room 3-122
Box 50088
Honolulu
HI 96850

Δ π EXHIBIT 16
Deponent
Date Rptr.
WWW.DEPOBOOK.COM

Dear Bob:

Thank you for your letter of November 6th and the enclosed documents relating to USFWS plans for a wildlife refuge at Palmyra Atoll, with request for comments. I would also like to thank you on behalf of the Council for your presentation on Palmyra at the recent 98th Council meeting, and responding to questions from the Council members.

With respect to USFWS plans for Palmyra and Kingman Reef, the Council has no objections in principle to the development of a wildlife refuge, should the USFWS be successful in acquiring the property from the Fullard-Leo family. However the acquisition of the island and subsequent development of a wildlife refuge should not compromise the Council's jurisdiction of fishing activities. It is the position of the Department of Commerce that the Western Pacific Council's jurisdiction over fishery activities within the EEZ extends to the shorelines of Palmyra and Kingman Reef, through the authority of the Magnuson Act.

Council concerns over jurisdiction stem from the USFWS document; *Proposed Palmyra Atoll National Wildlife Refuge, Conceptual Management Plan*, which states that the refuge boundary would extend to the 12 mile limit of the territorial seas. Is it the intention of the USFWS to prohibit commercial fishing within this 12 nmi boundary, in the same manner as at Midway? The Council would view this as an erosion of its authority and would resist such an initiative. The Council already has in place regulations covering fishing activities, including the waters around Palmyra. These include the exclusion of foreign fishing vessels unless through a foreign fishing agreement; the banning of gears such as gillnets and trawls, explosives and

KRE 000625

16

poisons; requirement for federal permits and federal logbooks recording for longline and precious coral fisheries (CFR Part 600).

We do not believe that commercial fishing activities in the Palmyra/Kingman EEZ represent serious threats to the wildlife on Palmyra Atoll. There does not appear to be the same problems of longline/seabird interactions as is the case with NWHI albatrosses. The scale of troll and handline fishery activity is likely to be limited, given the 1000 mile journey from Hawaii to Palmyra. We note that recreational troll fishing is permitted at Midway and would be included in the range of activities for tourist visitors to Palmyra, should a wildlife refuge be established. The Council is also taking regulatory action to ensure that **all fishermen** operating within the US EEZs of uninhabited islands such as Palmyra, will require a federal fishing permit and be obliged to complete federal log books, so that commercial and recreational fishing activity can be properly monitored.

The Council therefore requests that plans for the establishment of the refuge at Palmyra take account of the Council's jurisdiction within the EEZ. We would appreciate being kept informed of the progress to purchase the island and develop a wildlife refuge, and would be happy to meet with you and your staff to further discuss fishing activities around Palmyra.

Sincerely,

Kitty

Kitty M. Simonds
Executive Director

cc US Senator Daniel K. Inouye

cc NOAA General Counsel Jay Johnson

c\doc\uninhab\palmyra\smithlet.wpd

# EXHIBIT O

**From:** Kilian, Mike
**Sent:** Wednesday, October 06, 1999 12:55 PM
**To:** Dong, Steve M; Pacht, Dennis
**Subject:** RE: Need your Help.

As I mentioned earlier, Navy was designated the responsible federal agency to 'own' Kingman Reef for lack of any other appropriate interested agencies. We are stuck with it. If now, we have another interested agency such as USFWS, then Navy should have no problem transferring custodial responsibility to DoI. As long it is in federal ownership, Navy can deal with national security concerns involving the island.

I am unaware of any Navy usage in recent history. It may have been occupied during WWII.

I would open it up to NAVREGION. It is their call as to whether or not Navy has any operational requirement to retain plant account responsibility for the island.

-----Original Message-----
**From:** **Dong, Steve M**
**Sent:** Wednesday, October 06, 1999 12:17 PM
**To:** Kilian, Mike; Pacht, Dennis
**Subject:** Need your Help.

Got a call from DASN Cassidy. Our conversation regarding the Phoenix Islands has been corrected or recalibrated. The land in question is **Kingman Reef**. Appreciate if you can research and provide me data regarding the island and current or present usage. Do we want it. By discussions with Dennis the answer was no. Can we get rid of it? Are there others that should be included...Should I open this up to NAVREGION

Please keep close hold for now. Need Data for DASN Cassidy ASAP. Will call him back tomorrow AM. Thanks. Dennis/Mike perhaps you need to come up and be part of the call.

Steve