IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al.,** | ) **No. 06-828L** |
| **Plaintiffs,** | ) **Judge Marian Blank Horn** |
| **v.** | ) |
| **THE UNITED STATES OF AMERICA; Defendant.** | ) |

# PLAINTIFFS KINGMAN REEF ATOLL INVESTMENTS, L.L.C.'S AND KINGMAN REEF ATOLL DEVELOPMENT LLC'S CORRECTED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

CHRISTIAN P. PORTER
Brooks Tom Porter & Quitiquit, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Tel: 808-526-3011
Fax: 808-523-1171
Email: cporter@btpqlaw.com

OF COUNSEL:

Therese Y. Cannata, CA Bar No. 88032
Cannata, Ching & O'Toole LLP
899 Ellis Street
San Francisco, CA 94109
Tel: 415-409-8900
Fax: 415-409-8904
Email: tcannata@ccolaw.com

# TABLE OF CONTENTS


Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Exhibits Attached to Plaintiffs' Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Index of Exhibits Attached to Defendant's Answer . . . . . . . . . . . . . . . . . . . . . . . . . . ix

I.. Introduction and Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. The Fullard-Leo Family's Title to Kingman Reef . . . . . . . . . . . . . . . . . . 2

B. The Executive Orders and World War II . . . . . . . . . . . . . . . . . . . . . . . . . 4

C. The Government Administered Kingman Reef Consistent with the Fullard -Leo Family's Ownership Rights . . . . . . . . . . . . . . . . . . . . . . . . . 6

D. The Government's Unconstitutional Taking of the Property in January 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A. The Motion Must be Denied Unless it is Beyond Doubt, Based on the Facts Presented, That The Court Has No Jurisdiction . . . . . . . . . . . . . . 11

B. There was No Taking, and the Statute of Limitations Did Not Begin to Run in 1934 or 1941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1. The Government's Jurisdiction Over Kingman Reef is not Ownership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

2. There Was Not, and Could Not be, a Taking Under the Pickett Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3. Takings Case Law Shows that the Executive Orders Did Not Constitute a Taking of Kingman Reef in 1934 or 1941 . . . . . . . 17

4. Under the Supreme Court's *Penn Central* Analysis, There was no Governmental Taking of Kingman Reef in 1934 or 1941 . . . . . 21

5. The Correspondence Between Plaintiff's Predecessor in Interest and the Government Did Not Establish a Taking . . . . . . . . . . . . 23

C. Even if the 1934 and 1941 Executive Orders "Interfered With" Plaintiffs' Property Rights, There was No Permanent Taking Until 2001 . . . . . . . 25

1. Any Governmental "Interference" With Kingman Reef was at Most a Series of Continuing Claims that Did Not Culminate and Become Clear Until 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2. To the Extent that the Government's Actions Before 2001 May Have "Interfered With" Plaintiffs' Property Rights, Any Claim That Might Have Accrued was For, at Most , a Partial or Temporary Taking, and Plaintiffs Retained Ownership of the Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

V. Appendix

| Exhibit No. | Description |
|---|---|
| 1. | 16 U.S.C. § 1271 (1968) |
| 2. | 28 U.S.C. § 2501 (1948) |
| 3. | Act of June 25, 1910, Ch. 421, 36 Stat. 847 |
| 4. | 32 CFR 761.4(d)(2); 41 Fed.Reg. 28,957 (1976) |
| 5. | Federal Rules of Civil Procedure, Rule 12(b)(1) |
| 6. | Exec. Order No. 10264, 3 C.F.R. 765 (1951) |
| 7. | Exec. Order No. 11045, 27 Fed. Reg. 8511 (August 21, 1962) |
| 8. | 25 Op. Att'y Gen. 292 (1904) |

# TABLE OF AUTHORITIES

## CASES

767 Third Avenue Associates v. U.S.,
48 F.3d 1575 (Fed. Cir. 1995) . . . . . . . . . . 19, 20

Bagwell v. U.S.,
21 Cl. Ct. 722 (1990) . . . . . . . . . . 11, 12

BW Parkway Associates Ltd. Partnership v. U.S.,
29 Fed. Cl. 669 (1993), pet. cert. denied, 514 U.S. 1015 (1995) . . . . . . . . . . 24

Castro v. U.S.,
205 Ct.Cl. 534, 500 F.2d 436 (1974) . . . . . . . . . . 26, 28

Catellus Development Corporation v. United States,
26 Cl. Ct. 210 (1992) . . . . . . . . . . 20

Columbia Basin Land Protection Association v. Schlesinger,
643 F.2d 585 (9th Cir. 1981) . . . . . . . . . . 15

Creppel v. Unites States,
41 F.3d 627 (Fed. Cir.1994) . . . . . . . . . . 28

Cuban Truck and Equipment Company v. United States,
333 F.2d 873 (Ct. Cl. 1964), pet. cert. denied, 382 U.S. 844 (1965) . . . . . . . . . . 20

Ewald v. United States,
14 Cl. Ct. 378 (1988) . . . . . . . . . . 11

Holden v. U.S.,
38 Fed. Cl. 732, 737 (1997) . . . . . . . . . . 20

John R. Sand & Gravel Company v. United States,
457 F.3d 1345 (Fed.Cir. 2006), pet. cert. filed,
75 U.S.L.W. 3474 (Feb. 26, 2007) . . . . . . . . . . 17, 18, 24, 30

Juda v. United States,
6 Cl.Ct. 441 (1984) . . . . . . . . . . 11, 26, 29

Kemp v. United States,
65 Fed. Cl. 818 (2005) . . . . . . . . . . 11

Newhall v. Sanger,
92 U.S. 761 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nollan v. California Coastal Commission,
483 U.S. 825, 107 S. Ct. 3141 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23

Northern Lumber Co. v. O'Brien,
204 U.S. 190, 27 S. Ct. 249 (1907) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Penn Central Transportation Co. v. New York City,
438 U.S. 104, 98 S. Ct. 2646 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 21, 22,23

Roth v. United States,
73 Fed. Cl. 144 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Schultz v. United States,
5 Cl. Ct. 412 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Southern Utah Wilderness Alliance v. Bureau of Land Management,
425 F.3d 735 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Terteling v. United States,
334 F.2d 250, 254 (Ct. Cl. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26

United States v. Dickinson,
331 U.S. 745, 67 S. Ct. 1382 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26, 28

United States v. Fullard-Leo,
331 U.S. 256, 67 S. Ct. 1287 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13, 18, 19

United States v. Gossett,
416 F.2d 565 (9th Cir. 1969), pet. cert. denied, 397 U.S. 961 (1970) . . . . . . . . . . . . 15, 16

United States v. Pewee Coal Co.,
341 U.S. 114, 116, 71 S. Ct. 670 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Riverside Bayview Homes, Inc.,
474 U.S. 121, 106 S. Ct. 455 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## FEDERAL STATUTES

16 U.S.C. § 1271 (1968) . . . . . . . . . . 24

28 U.S.C. § 2501 (1948) . . . . . . . . . . 1, 2

Act of June 25, 1910, Ch. 421, 36 Stat. 847 . . . . . . . . . . 14

## RULES

32 CFR 761.4(d)(2); 41 Fed.Reg. 289,57 (1976) . . . . . . . . . . 5

Federal Rules of Civil Procedure, Rule 12(b)(1) . . . . . . . . . . 1, 3, 9

## OTHER

Exec. Order No. 6935 (1934) . . . . . . . . . . 1, 4

Exec. Order No. 8682, 3 C.F.R. 894 (1941) as amended by Exec. Order No. 8729 3 C.F.R. 919 (1941) . . . . . . . . . . 1, 4, 5

Exec. Order No. 10264, 3 C.F.R. 765 (1951) . . . . . . . . . . 14

Exec. Order No. 11045, 27 Fed. Reg. 8511 (August 21, 1962) . . . . . . . . . . 5

Government Accounting Agency in 1940, U.S. Insular Areas: Application of the U.S. Constitution 42 n.13 (GAO/OGC-98-5, Nov. 1997) . . . . . . . . . . 13

Secretarial Order 3223 (2001) . . . . . . . . . . 10

25 Op. Att'y Gen. 292(1904) . . . . . . . . . . 14

INDEX OF EXHIBITS ATTACHED TO PLAINTIFFS' COMPLAINT:

| Document No. | Description |
|---|---|
| 1 | April 28, 1922, Island of Palmyra Copra Company Board meeting minutes |
| 2 | May 3, 1922, Island of Palmyra Copra Company letter from L. Fullard-Leo, President, and E. Fullard-Leo, Secretary - Treasurer, to Lorrin A. Thurston, its agent |
| 3 | May 10, 1922, Certificate of Claim to Kingman Reef by Lorrin A. Thurston, agent for the Island of Palmyra Copra Co., Ltd. |
| 4 | May 13, 1922 letter from Mr. Thurston to Mrs. Ellen Fullard-Leo |
| 5 | July 15, 1922 letter from E. Fullard-Leo, Secretary-Treasurer, the Island of Palmyra Copra Company, Ltd., to the Honorable Charles E. Hughes, Secretary of State, Washington, D.C. |
| 6 | August 14, 1922, Resolution of the Island of Palmyra Copra Company, Ltd. |
| 7 | September 28, 1922 letter from the Department of State, Washington, D.C. to the Island of Palmyra Copra Company, Ltd. acknowledging the August 24, 1922 letter. |
| 8 | July 9, 1926 letter to the Archives Commission from Lorrin A. Thurston |
| 9 | July 24, 1926 letter from the Archives of Hawaii to L.A. Thurston, Esq. |
| 10 | August 5, 1931 letter to Captain S.O. Swainson from L. Fullard-Leo |
| 11 | September 30, 1931 letter to L. Fullard-Leo from R.L. Faris, Acting Director, Department of Commerce, U.S. Coast and Geodetic Survey |
| 12 | December 29, 1934 Executive Order 6935 signed by President Franklin D. Roosevelt. |
| 13 | February 14, 1941 Executive Order 8682 signed by President Franklin D. Roosevelt. |
| 14 | April 2, 1941 Executive Order 8729 signed by President Franklin D. Roosevelt. |

15 April 18, 1941 Memorandum from the Chief of Naval Operations to the Commandant, Thirteenth Naval District.

16 Real property tax information (8-27-1941)

17 Several newspaper articles published regarding Copra Co.'s acquisition of Kingman Reef (1922 - 1995)

18 Pertinent pages of the check register and checks evidencing payment of real property taxes (1922 - 1958)

19 Notices of Real Property Assessments, Tax Bills and Real Property Returns (1938 - 1950)

20 August 19, 1991 memorandum prepared by Jim Maragos, The Nature Conservancy, Re minutes of meeting held at The Nature Conservancy.

21 August 1, 1997 letter from Peter Savio, President, Palmyra Development Co., Inc. to Mr. Joe Dettling

22 August 1997 Preliminary Project Proposal, Line Islands Units (Palmyra Atoll and Kingman Reef)

23 October 2, 1997 memorandum from the Director, United States Department of the Interior, Fish and Wildlife Service

24 October 3, 1997 letter to the U.S. Army Corps of Engineer at Fort Shafter, from Robert F. Smith, Pacific Islands Manager, U.S. Department of the Interior Fish and Wildlife Service

25 October 17, 1997 Memorandum on U.S. Department of Commerce, National Oceanic and Atmospheric Administration letterhead to WPFMC - Kitty M. Simonds, from GCSW - Judson J. Feder

26 November 1997 United States General Accounting Office Report to the Chairman, Committee on Resources, House of Representatives, U.S. Insular Areas, Application of the United States Constitution

27 August 25, 2000 letter from Department of the Navy, Office of the Assistant Secretary to the U.S. Department of the Interior

28 October 26, 2000 letter , from the United States Senate Committee on Appropriations to Bruce Babbitt, Secretary of the Interior

29 October 26, 2000 letter to the U.S. Department of Agriculture from U.S. Senate Committee on Appropriations

30 November 17, 2000 Deed conveying Kingman Reef to Plaintiff

31 November 17, 2000 Lease between Kingman Reef Atoll Investments, LLC, Lessor, and Kingman Reef Atoll Development, LLC, Lessee

32 November 17, 2000 License Agreement between Kingman Reef Atoll Development, LLC, Licensor, and Kingman Reef Enterprises, LLC, Licensee

33 December 11, 2000 Environmental Assessment, U.S. Fish & Wildlife Service

34 December 11, 2000 Conceptual Management Plan, U.S. Fish & Wildlife Service

35 December 12, 2000 New Release by U.S. Fish & Wildlife Service

36 December 19, 2000 letter from Short Cressman & Burgess PLLC to National Wildlife Refuge System

December 23, 2000 letter from Mr. Fullard-Leo to U.S. Fish & Wildlife Service and National Wildlife Refuge System

December 29, 2000 letter from Western Pacific Regional Fishery Management Council to U.S. Fish & Wildlife Service

January 4, 2001 letter from Brooks Tom Porter & Quitiquit to National Wildlife Refuge System and U.S.Fish & Wildlife Service

January 11, 2001 letter Western Pacific Regional Fishery Management Council to U.S. Fish & Wildlife Service

37 January 11, 2001 letter from U.S. Department of Interior, Fish and Wildlife Service to Brooks Tom Porter & Quitiquit

38 January 17, 2001, U.S. Department of the Interior Fish and Wildlife Service's "Finding of No Significant Impact" dated January 17, 2001

39 January 18, 2001 Order No. 3223 signed by the Secretary of the Interior, United States Department of the Interior

INDEX OF EXHIBITS ATTACHED TO DEFENDANT'S ANSWER[1]:


| Document No. | Description |
|---|---|
| C. | Letter dated April 20, 1937 from L. And Ellen Fullard-Leo to the Honorable Samuel Wilder King. |
| D. | Letter dated March 29, 1938 from Townsend & Lewis to the Secretary of the Navy. |
| E. | Letter dated April 26, 1938 from G.J. Rowcliff, Judge Advocate General of the Navy, to Messrs. Townsend & Lewis. |


[1] This list includes only those documents cited in this opposition brief.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The Fifth Amendment requires the United States of America ("the government") to pay just compensation when it takes private property for public use. This case involves the taking by the government in January 2001 of property known as Kingman Reef Atoll ("Kingman Reef"), which is owned by Plaintiff Kingman Reef Atoll Investments, L.L.C ("KRAI").[1] The complaint was filed on December 6, 2006. The government has filed a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("F.R.C.P"), contending that the six-year time period in which to bring this action pursuant to 28 U.S.C. section 2501 has expired. In its moving papers, the government concedes that the Fullard-Leo Family owned Kingman Reef prior to the unlawful taking. The issue presented in this motion is whether a permanent taking accrued as early as 1934, pursuant to the 1934 Executive Order, *or* in January 2001 pursuant to an order by the Secretary of the Interior establishing the subject property as a wildlife refuge.

Neither the 1934 or 1941 Executive Orders ("Executive Orders") nor any conduct by the government in the years between 1922 and 2001 constituted an actionable taking of Kingman Reef. Contrary to the government's position, neither the Executive Orders, nor the 1938 letters between the government and plaintiffs' predecessors in interest, constituted an actual taking, triggering the six-year statute of limitations. Specifically, the government's motion must be denied for the following reasons: First, there was no taking until 2001, because placing Kingman Reef under the jurisdiction and control for administration purposes does not vest ownership rights in Kingman Reef in the government. Second, there can be no taking under the Pickett Act which, by its terms, does not affect private lands, and Kingman Reef had been privately owned by the

---

[1] As explained more fully *infra*, KRAI's predecessor in interest is the Fullard-Leo family. Plaintiff Kingman Reef Atoll Development L.L.C. ("KRAD") is a lessee of KRAI. Throughout this brief, KRAI and KRAD shall be collectively referred to as "plaintiffs."

Fullard-Leo family since 1922. Third, the Executive Orders did not effectuate a taking of Kingman Reef, because they did not divest the Fullard-Leo family of possession or control, or exclude them from Kingman Reef. Fourth, prior to January 18, 2001, there was no governmental action that would give rise to an actionable taking under the Penn Central analysis. Fifth, even if the Executive Orders interfered with plaintiffs' ownership interests in Kingman Reef, those orders were at most a partial and/or temporary taking, or part of a series of events constituting a continuing claim. There was no permanent taking of Kingman Reef until January 18, 2001.

The complaint in this case alleges a taking on January 18, 2001. As discussed below, there is substantial evidence — well beyond a preponderance — that the statute of limitations under 28 U.S.C. 2501 started to accrue on January 18, 2001. The complaint, being filed on December 6, 2006, is timely.

## II. STATEMENT OF THE CASE

### A. The Fullard-Leo Family's Title to Kingman Reef

Kingman Reef is a low-lying coral reef atoll that is comprised of two small areas of emergent land, surrounding reefs, lagoon and waters. Kingman Reef is an unincorporated United States territory located approximately 900 nautical miles southwest of Hawaii in the Pacific Ocean, essentially half-way between the Hawaiian Islands and Samoa. (Complaint ¶ 26.)

The history of Kingman Reef is well documented in various publications as well as official government records.[2] Kingman Reef was allegedly first discovered in 1798 by Captain Edmund

[2] Though the government has repeatedly claimed to have searched and found no record of the Fullard-Leo family's title to Kingman Reef, as of at least February 11, 1938, the government (specifically the U.S. Navy) had an *indexed* memorandum with documents setting forth the chronology of events demonstrating that the Fullard-Leo family's vested title in Kingman Reef. (Declaration of Christian P. Porter in Support of Plaintiffs' Opposition to Defendant's Motion to

Fanning and allegedly rediscovered by Captain W.E. Kingman in 1853. It remained *unclaimed* property – claimed neither by country nor persons – until 1922, when a private company from the U.S. Territory of Hawaii claimed Kingman Reef as a U.S. possession and concurrently took full and legal title to the property in the manner prescribed by the U.S. State Department. Later in 1922, that company transferred title to the Fullard-Leo family, which enjoyed all the privileges of private ownership in Kingman Reef from1922 until November 17, 2000, when KRAI acquired ownership. (See, Complaint, Appendix, Doc. 6.)[3] For purposes of this motion, the government does not dispute that the Fullard-Leo family, plaintiffs' predecessors in interest, had title prior to 1934.

Though it has a limited amount of emergent land, Kingman Reef has significant commercial value. Its commercial uses include ecotourism, recreational fishing, commercial fishing operations and a transfer station for fishing operations (*i.e.* fishing vessels coming in from distant areas, transferring the fish to a smaller boat and transporting it to Honolulu). (Declaration of Ainsley Fullard-Leo in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(1) ("A. Fullard-Leo Decl.") ¶ 3); (Declaration of Peter Savio in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(1) ("Savio Decl.") ¶ 6) In 2000, plaintiffs entered into a commercial fishing lease with a private company. (A. Fullard-Leo Decl. ¶ 24) The U.S. Fish and Wildlife Service ("FWS") and The Nature

---

Dismiss Under FRCP 12 (B)(1) (Porter Decl.") Ex. A.)

[3] From 1922 through 1959, the Fullard-Leo family paid real property taxes to the Territory of Hawaii for both Palmyra Atoll and Kingman Reef on the same tax key. After 1959, Hawaii state taxes were not levied because neither Palmyra Atoll nor Kingman Reef were included in the lands of the State of Hawaii. (Complaint, Appendix Docs. 18 and 19.)

Conservancy ("TNC"), both acting on behalf of the U.S. Department of the Interior ("DOI"), have made several offers to purchase Kingman Reef. (Savio Decl. ¶ 15 and Ex. C.)

**B. The Executive Orders and World War II**

On December 29, 1934, President Franklin D. Roosevelt signed Executive Order 6935, which placed Kingman Reef under the jurisdiction of the Secretary of the Navy for administrative purposes.[4] The government, and specifically the U.S. Navy, was interested in Palmyra and Kingman Reef for military purposes throughout the years leading up to World War II. In the case of the Palmyra Atoll, the government used the property as a military base during the war, and attempted to permanently take it from the Fullard-Leo family by filing an action to quiet title in the U.S. District Court. The U.S. Supreme Court decided title to Palmyra in favor of the Fullard-Leo family. See, United States v. Fullard-Leo, et al., 331 U.S. 256, 67 S. Ct. 1287 (1947). In the case of Kingman Reef, the government exchanged correspondence for a brief time in the late 1930's, arguing with the Fullard-Leo family about who might own the property. Then, perhaps in light of the outcome of the Palmyra case, or because Kingman Reef became less important strategically after the war, the government entirely dropped the subject for the next 60 years. (Answer, Appendix, Exs. C, D, E; Complaint, Appendix, Doc. 11).

Through Executive Order 8682, dated February 14, 1941, as amended by Executive Order 8729 dated April 2, 1941, the government established the Naval Defensive Sea Areas and Naval Airspace Reservations over the waters surrounding Kingman Reef and a number of other Pacific

---

[4] The government did not regard the mere act of placing a geographic area under the "administrative authority" of a government agency as synonymous with government ownership. While the government acknowledged that the Fullard-Leos owned Palmyra, it was concurrently administered by the Navy, and later DOI. (Complaint, Appendix, Doc. 26, page 41– 42.)

islands, including Palmyra, "and the airspaces over the said territorial waters and islands," for national defense purposes. The 1941 Executive Order did not impose restrictions over the emergent land and submerged reefs at Kingman Reef. In response to the Secretary of the Interior's concerns about undue burdens of residents of the areas (Porter Decl., Ex. B) the U.S. Navy responded and clarified as follows:

> 1. . . . The Department of Interior has been assured that the Navy Department has no desire or intention to unnecessarily restrict the activities of the United States citizens or nationals about their lawful occasions. The details of the administration should be worked out *with the idea of causing the least possible interference with vital industry or vested interests.*
> 2. . . . The object of the executive order [8682] was to give the commandant necessary authority to control subversive activities and safeguard the national defense. The *amount of control necessary* can best be judged by the commandant or his representative in command locally.

(Complaint, Appendix, Doc.15., [emphasis added].) The district commandants were directed to prepare regulations that would impose "the minimum of interference with vital industries and vested interests." (Porter Decl., Ex. C.) No such regulations were published specifically for Kingman Reef.

After World War II, concerns about national security in the Kingman Reef area diminished. President Kennedy repealed the 1941 Executive Order, as amended, in 1962. Exec. Order No. 11045, 27 Fed. Reg. 8511 (August 21, 1962).[5] The Navy abandoned virtually all interest and activity in the Kingman Reef area. In October 1999, a representative of the U.S. Navy stated, "I am unaware of any Navy usage [of Kingman Reef] in recent history. It may have

---

[5] A 1987 internal Navy memorandum noted that the Kingman Reef Naval Defensive Sea Area and Naval Airspace Reservation were no longer in effect. (Porter Decl. Ex. E.) This conclusion was not based on President Kennedy's 1962 Executive Order, but rather on a 1976 action by the Chief of Naval Operations. 32 CFR 761.4(d)(2); 41 Fed.Reg. 28,957 (1976). Regardless of whether they had been revoked or suspended, they were no longer in effect.

been occupied during WWII." (Porter Decl., Ex. D.)

### C. The Government Administered Kingman Reef Consistent With the Fullard-Leo Family's Ownership Rights.

In 1991, representatives of FWS and TNC met with Peter Savio, agent for the Fullard-Leo family, to discuss the sale and development of both Palmyra and Kingman Reef. Jim Maragos, then of TNC (now with FWS) attended the meeting and prepared a memorandum dated August 19, 1991, summarizing what was discussed. The memorandum stated, among other things, that Mr. Savio mentioned that the [Fullard-Leo family] claimed Kingman Reef and that "the USFWS is keenly interested in Kingman." (Complaint, Appendix, Doc. 20.)

In the Preliminary Project Proposal dated August 1997 (attached to a memorandum dated October 2, 1997, from the FWS Director, approving the establishment of the Palmyra Atoll National Wildlife Refuge and Kingman Reef National Wildlife Refuge), the government specifically acknowledged that the Fullard-Leo family controlled access to Kingman Reef *and* the government was preparing plans to purchase the property from the Fullard-Leo family:

- Any "explorers wishing to visit Kingman Reef *must secure permission* from the Fullard-Leo family and the U.S. Coast Guard."

- "Kingman Reef was annexed on behalf of the United States in 1922, by the Palmyra Copra Company (Fullard Leo family), and the family claims ownership. . . ."

- "The **Landowners** are reportedly willing to sell their lands to prevent heirs from acquiring a large inheritance tax debt".

- "Similarly, the **price for fee title** to Kingman Reef is unknown. Due to the negligible commercial real estate value, it might be possible to include it in the purchase price negotiated for Palmyra"

- "[T]he price for fee title to Kingman Reef is unknown."

(Complaint, Appendix, Docs. 22 and 23.)

By letter dated, October 3, 1997, to the U.S. Army Corps of Engineers, Robert F. Smith, Pacific Islands Manager for FWS noted, among other things, that Director Clark had given FWS approval to begin detailed planning toward the acquisition of Palmyra Atoll and Kingman Reef as units of the National Wildlife Refuge System.

On the same day, Mr. Smith sent a handwritten note to Peter Savio, stating, "Peter, the attached represents approval from our director in Washington, Jamie Clark, to proceed with the detailed planning necessary for our acquisition. *Note that we desire to acquire both Palmyra and Kingman, if that is the seller's desire*." (Savio Decl. Ex. C; emphasis added.)

A memorandum dated October 17, 1997, by Judson Feder, an attorney with National Oceanic and Atmospheric Administration ("NOAA") (an agency within the Department of Commerce ("DOC"), stated, "the Fullard-Leo family owns Palmyra Island and Kingman Reef." (Complaint, Appendix, Doc. 25.) Notably, between 1991 and 1997, the principal discussion between Mr. Savio, on behalf of the Fullard-Leo family, and the government was not about ownership of the Kingman Reef itself but rather about who controlled the fishing rights within the three mile zone. The Fullard-Leo family wanted to restrict fishing in this area, and FWS appeared to support that conservation effort.[6] The DOC agencies, NOAA and National Marine Fishery Service ("NMFS"), opposed such restrictions on fishing. None of these agencies appeared to be aware of any restrictions on access to these areas, except those that might be imposed by the

[6] By letter to Mr. Savio dated, September 5, 1991, Robert Smith of FWS addressed this issue, thanking Mr. Savio for his "interest in conservation of wildlife resources at Palmyra and Kingman Reef." (Porter Decl., Ex. F.)

property owners (*i.e.* the Fullard-Leo family). (Complaint, Appendix, Doc. 25.) [7]

In November 1997, the United States General Accounting Office ("GAO") continued to acknowledged the Fullard-Leo Family's control and ownership of Kingman Reef. The GAO's "Report to the Chairman, Committee on Resources, House of Representatives, U.S. Insular Areas, Application of the United States Constitution, (November, 1997)," specifically noted that Kingman Reef had been claimed by the Fullard-Leo Family in 1922. (Complaint, Appendix, Doc. 26.) Indeed, the author of this report, T.E. Manase Mansur, stated in his letter to Mr. Savio, dated August 12, 1997: "Thank you for sending the information clarifying the rightful title of the Fullard-Leo's to Palmyra and Kingman Reef. The brief is well documented regarding the basis for clear title to the entire area of Palmyra and Kingman, including the surrounding reef." (Porter Decl., Ex. H.)

On October 26, 2000, the U.S. Senate Committee on Appropriations sent letters to Bruce Babbitt, then Secretary of the Interior, and Dan Glickman, then Secretary of Agriculture, stating that Congress provided additional funding for "high priority land acquisitions" including, but not limited to "Palmyra Atoll/Kingman Reef." (Complaint, Appendix, Doc. 28.)

Over the past 30 years, the Fullard-Leo family and Peter Savio received calls from persons referred by the U.S. Navy, U.S. Coast Guard and/or the NMFS from persons and/or entities interested in entering upon and traversing across Kingman Reef. The Fullard-Leo family and Mr. Savio were asked to and did give permission to third parties from the private and pubic

---

[7] Exhibit G to Mr. Porter's declaration is a memorandum dated November 7, 1996, prepared by the Customs Service for Mark Collins, a licensee of the Fullard-Leo family, who was planning a fishing operation in and around Palmyra and Kingman Reef. Again, no mention is made of any governmental restriction on access or ownership rights.

sector to access Kingman Reef.[8] (Savio Decl. ¶¶ 8-12; A. Fullard-Leo Decl. ¶¶ 9-10; (Declaration of Dudley Fullard-Leo in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(1) ("D. Fullard-Leo Decl. ¶ 9). When unauthorized uses of Kingman Reef were discovered, the Fullard-Leo family took appropriate action to stop those uses. (Savio Decl., ¶18; A. Fullard-Leo Decl. ¶11.)

Members of the Fullard-Leo family traveled to Kingman Reef at their own expense in order to survey the property. In 1940's, Leslie Fullard-Leo went to Kingman Reef on a ship called "Joyita" and in the 1950's again visited the property via ship. In the late 1980's, Ainsley Fullard-Leo accompanied the U.S. Coast Guard during one of its law enforcement air patrols to Palmyra and Kingman Reef. In October 1995, Dudley Fullard-Leo's son, Bryant Fullard-Leo, accompanied Mark Collins, a commercial fisherman, to Kingman Reef to survey in and around Kingman Reef over a 2 week-period. In 1997 or 1998, Ainsley Fullard-Leo and Dudley Fullard-Leo traveled to Palmyra and on the way had the pilot circle Kingman Reef to inspect and ensure that no unauthorized uses were evident. In 1998 or 1999, Ainsley Fullard-Leo and his wife inspected Kingman Reef via air. In the 1980's, Peter B. Savio went to Kingman Reef at the request of the government in a U.S. Air Force plane to inspect Kingman Reef and Palmyra. (A. Fullard-Leo Decl. ¶¶ 18-19, 21-23; Savio Decl. ¶ 20; D. Fullard-Leo Decl. ¶¶ 11-13, 16, 18.) It never occurred to the Fullard-Leo family to seek authorization from any governmental entity for these visits because they were the rightful owners and no representative of the government ever told any member of the Fullard-Leo family that such authorization was necessary or appropriate.

---

[8] In 1998, U.S. Navy Capt. Brady, who represented NASA and assisted TNC and FWS in the acquisition of Palmyra, asked Ainsley Fullard-Leo for permission to test communications radio equipment at Kingman Reef. (A. Fullard-Leo Decl. ¶ 14; Porter Decl. Ex. I.)

On November 17, 2000, title to Kingman Reef was transferred from the Fullard-Leo family to KRAI, the Fullard-Leo family's limited liability company. The deed was properly filed and recorded in the United States District Court for the District of Hawaii on November 17, 2000 as Document No. 27. No similar deed has been filed and recorded by the government for the subject property. After acquiring title to Kingman Reef, KRAI entered into a lease with KRAD for the purpose of facilitating economic development opportunities for Kingman Reef. On November 17, 2000, KRAD entered into a license agreement with Kingman Reef Enterprises, L.L.C., a Washington limited liability company, for the operation of a commercial fishing base camp at Kingman Reef and to conduct commercial fishing in and around the waters of Kingman Reef for a term of thirty years. (Complaint, Appendix, Docs 31, 32.)

**D. The Government's Unconstitutional Taking of the Property in January 2001.**

Plaintiffs' ownership interests in Kingman Reef remained wholly undisturbed by the government until January 18, 2001. On that date, the government declared Kingman Reef a national wildlife refuge without consent of the owners of record and without compensation of any kind to the owners. The government's taking of Kingman Reef coincided with the establishment of the Palmyra Wildlife Refuge and the purchase of that property from the Fullard-Leo family.

On January 17, 2001, FWS issued a Finding of No Significant Impact ("FONSI") in which, FWS summarily dismissed plaintiffs' well-documented private ownership interests in Kingman Reef. On January 18, 2001, just one day after issuance of the FONSI and just two days before the inauguration of President Bush, then Secretary of the Interior Bruce Babbitt signed Secretarial Order No. 3223 designating Kingman Reef as a National Wildlife Refuge ("NWR").

The property interests of KRAI (ownership) and KRAD (leasehold), which are believed to