IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al.,** | **No. 06-828L** |
| **Plaintiffs,** | **Judge Marian Blank Horn** |
| **v.** | |
| **THE UNITED STATES OF AMERICA; Defendant.** | |

**CORRECTED DECLARATION OF PETER SAVIO IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNDER FRCP 12(b)(1)**

CHRISTIAN P. PORTER, Hawaii Bar No. 3744
Brooks Tom Porter & Quitiquit, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Ph: 808-526-3011
Fax: 808-523-1171
Email: cporter@btpqlaw.com

OF COUNSEL:

Therese Y. Cannata, CA Bar No. 88032
Cannata Ching & O'Toole LLP
899 Ellis Street
San Francisco, CA 94109
Ph: 415-409-8900
Fax: 415-409-8904
Email: tcannata@ccolaw.com

**DECLARATION OF PETER SAVIO**

I, Peter Savio, hereby declare as follows:

1. I am the owner of Savio Realty, Ltd. , the President of Palmyra Development Co., Inc., and a member of plaintiff Kingman Reef Atoll Development L.L.C. I make this declaration based on my personal knowledge and am competent to testify as to the facts as stated herein.

2. From the 1950's-1960's to the mid-1980's, my mother Mary Savio, in her capacity as a real estate agent represented the Fullard-Leo family in various real property transactions.

3. Beginning in about 1970, I assisted my mother in the representation of the Fullard-Leo family.

4. In the mid-1980's, my mother retired and I took over representation of the family; from that time through and including the present date I have served as their real estate agent.

5. Since the 1980's, Savio Realty, Ltd. of which I am the owner and/or the Palmyra Development Co., Inc., of which I am the President, and Hawaiian Island Homes of which I am the owner and principal broker, have represented the Fullard-Leo family, and in particular, Leslie Vincent Fullard-Leo, Dudley Leinani Fullard-Leo and Ainsley Kahealani Fullard-Leo (collectively, "the Fullard-Leo family") in all transactions, inquiries, and/or other matters involving both Palmyra Island and Kingman Reef.

6. Kingman Reef's economic value and/or commercial use includes ecotourism, recreational fishing tourism, commercial fishing operations and a transfer station for fishing operations (*i.e.* fishing vessels coming in from distant areas, transferring the fish to a smaller boat and transporting it to Honolulu).

7. In 1991, I met with The Nature Conservancy ("TNC") to discuss, among other things, the sale and development of Kingman Reef. Jim Maragos, then with TNC, prepared a memorandum summarizing our meeting, dated August 19, 1991. He forwarded it to me for review and I made hand written corrections that reflected my understanding of what was stated at the meeting. Attached as **Exhibit A** is a true and correct copy of that memorandum with my hand interlineations. I specifically recall that during that meeting the U.S. Fish and Wildlife Service ("FWS") stated that it was keenly interested in Kingman Reef, and that we discussed whether the Fullard-Leo family would be interested in selling both Palmyra Atoll and Kingman Reef to TNC or the government. No one at that meeting questioned the Fullard-Leo family's legal title to Kingman Reef or suggested that the government owned Kingman Reef.

8. In the past 30 years, the Fullard-Leo family and/or I received at least ten (10) referrals from the Navy, possibly more. That is, a person would call me requesting permission to go to Kingman Reef, I would ask how he got my name, and he told me that a representative of the U.S. Navy (at Pearl Harbor) referred him. Not everyone who inquired about visiting Kingman Reef actually went there because it is logistically difficult to travel there. Because the Fullard-Leo family owns the fee title to Kingman Reef, the U.S. Navy, to my knowledge, referred such inquiries to the Fullard-Leo family and/or to me.

9. Some of the parties seeking permission to enter onto Kingman Reef, were HAM radio operators. Specifically, the various operators sought permission to broadcast from Kingman Reef. In order for their broadcasts from a particular location to be considered legitimate, however, they must obtain permission to broadcast from the legal owner of the property. Thus, the operators would contact the U.S. Navy to ascertain the identity of the legal

owner of Kingman Reef, and the Navy then referred them to the Fullard-Leo family. I received similar referrals during this same time period from the United States Coast Guard.

10. For anyone traveling to Kingman Reef, on instructions of the Fullard-Leo family, I required that the visitor obtain written permission and execute a release form.

11. During the negotiations for the sale of Palmyra Atoll, representatives of TNC and FWS traveled to Palmyra. At least one of these persons, Mr. Chuck Brady, visited Kingman Reef as well. Because there were continuing discussions about also selling Kingman Reef, we granted written permission for the group to visit both Palmyra and Kingman Reef. Attached as **Exhibit B** is a true and correct copy of the permission and release form used for a visit in 1997.

12. Also, during this time, the United States National Marine Fisheries Service ("NMFS") referred at least one fisherman seeking permission to enter Kingman Reef to the Fullard-Leos and/or me.

13. I have also had communications, by telephone and through letters, with representatives of the FWS (Robert Smith) and Western Pacific Region Fishery Management Council (Kitty Simonds) concerning fishery management issues in and around Kingman Reef. I spoke to them about the Fullard-Leo family's ownership of Kingman Reef and the family's right to control access to the waters in and around the property. At no point in time did Mr. Smith or Ms. Simonds indicate to me that they questioned the Fullard-Leo family's title to Kingman Reef or suggest that some person or entity other than the family owned the property.

14. Over the years, the Fullard-Leo family, as the legal owners of Kingman Reef, have received inquiries from both the U.S. Department of the Interior, FWS, the City & County of Honolulu, and the State of Hawaii to purchase Kingman Reef. I represented the Fullard-Leo

family in those negotiations and discussions.

15. On or about October 3, 1997, I received the handwritten note from Robert Smith of FWS, asking to purchase Kingman Reef. Attached as **Exhibit C** hereto is a true and correct copy of that note.

16. I was the lead negotiator on behalf of the Fullard-Leo family for the proposed purchase of Palmyra Atoll by TNC and FWS. Mr. Cook of TNC and Mr. Smith of FWS participated in those negotiations. Both Mr. Cook and Mr. Smith asked me on several occasions whether they could also purchase Kingman Reef. At one point, Mr. Cook suggested a price but I advised him that his number was too low for the Fullard-Leo family to even start down the road of discussing a sale of that property. At no point during my discussions with Mr. Smith and Mr. Cook did either of them indicate that they questioned (or denied) the Fullard-Leo family's title to Kingman Reef.

17. The first information that I received concerning the government's decision to take the property without compensating the Fullard-Leo family was in December 2000, when FWS announced it's proposed establishment of the Kingman Reef Wildlife Refuge.

18. As the Fullard-Leos' agent, I took appropriate action to stop unauthorized entry on or to Kingman Reef. For example, I intervened several times to stop a person from Kailua-Kona, Hawaii who was fishing commercially in and around Kingman Reef without permission.

19. Chuck Brady, Captain, U.S. Navy who provided support services for The Nature Conservancy, visited Kingman Reef twice in the late 1990's and on each visit requested permission to go to Kingman Reef.

20. In the 1980's, I was contacted by a representative of the government (possibly

from the U.S. Department of Interior) concerning the government's intent to buy property (i.e. islands) for displaced residents of the Bikini Islands. The government representatives indicated to me that they were interested in buying Palmyra Atoll and Kingman Reef subject to confirming that these areas were suitable. In connection with the government's inquiry, I went to Kingman Reef in a U.S. Air Force plane to inspect Kingman Reef and Palmyra Atoll. We did not land but we flew over Kingman Reef and I answered questions from the persons representing the Bikini Islands concerning the property.

21. At no time has the government ever restricted me from entering Kingman Reef itself, its airspace or surrounding waters, nor has the government ever indicated to me that I, acting as the Fullard-Leo family's agent, was not authorized or able to sell, convey or transfer any of its interest in Kingman Reef.

I declare under penalty of perjury under the laws of the United States and the State of Hawaii that the foregoing is true and correct.

DATED: Honolulu, Hawaii, this 2nd day of May 2007.

s/ Peter Savio
PETER SAVIO