IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al., | ) | |
| Plaintiffs, | ) | No. 06-828L |
| v. | ) | |
| | ) | Judge Marian Blank Horn |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF JURISDICTION**

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL (603) 230-2583
FAX (603) 225-1577
E-MAIL kristine.tardiff@usdoj.gov

OF COUNSEL:

Mariel J. Combs
Office of the Solicitor
United States Department of the Interior
Pacific Northwest Region
500 N.E. Multnomah St., Suite 607
Portland, OR 97232

Robert J. Smith
Office of the General Counsel
Navy Litigation Office
720 Kennon St., SE, Room 233
Washington Navy Yard, DC

May 11, 2007

# TABLE OF CONTENTS


I. SUMMARY . . . . . . . . . . 1

II. REPLY ARGUMENTS . . . . . . . . . . 2

A. The Statute of Limitations Began to Run Once Plaintiffs Were on Notice of a Potential Claim Against the United States . . . . . . . . . . 2

1. Plaintiffs Knew or Should Have Known of Their Claims Against the United States No Later Than 1938 . . . . . . . . . . 3

2. Plaintiffs' Mischaracterization of the 1937-38 Correspondence Does Not Change the Significance of That Correspondence to the Claim Accrual Inquiry . . . . . . . . . . 6

3. The Events Surrounding the 2001 Designation of Kingman Reef as a National Wildlife Refuge Are Not Relevant to the Claim Accrual Question Presented Here. . . . . . . . . . 9

B. The Question of Whether Plaintiffs' Claims Are Time-Barred is a Threshold Question of Jurisdiction That Must Be Determined Before The Court May Reach the Merits . . . . . . . . . . 11

C. Neither the Dickinson Stabilization Doctrine Nor the Continuing Claim Doctrine Can Revive Plaintiffs' Time-Barred Claims . . . . . . . . . . 15

D. Plaintiffs' Time-Barred Claims Are Not Revived by Creppel . . . . . . . . . . 17

III. CONCLUSION . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES

Adriadne Financial Services v. United States,
133 F.3d 874 (Fed. Cir. 1998), cert. denied, 525 U.S. 823 (1998). . . . . . . . . . . . . . . . . . . 16

Allen v. United States,
46 Fed. Cl. 677 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Amaliksen v. United States,
55 Fed. Cl. 167 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Appolo Fuels, Inc. v. United States,
381 F.3d 1338 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Banks v. United States,
314 F.3d 1304 (Fed. Cir.), cert. denied, 125 S. Ct. 486 (2003). . . . . . . . . . . . . . . . . . . . . 16

Barnett v. Brown,
83 F.3d 1380 (Fed. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

Brown Park Estates-Fairfield Dev. Co. v. United States,
127 F.3d 1449 (Fed. Cir. 1997) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Catellus Development Corp. v. United States,
31 Fed. Cl. 399 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cienega Gardens v. United States,
331 F.3d 1319 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Coastal Petroleum Co. v. United States,
228 Ct. Cl. 864 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Creppel v. United States,
41 F.3d 627 (Fed. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Ex parte McCardle,
74 U.S. (7 Wall) 506, 19 L.Ed. 264 (1868) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

John R. Sand & Gravel Co. v. United States,
457 F.3d 1345 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

L.E. Cooke Corp. v. United States,
27 Fed. Cl. 753 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Lingle v. Chevron U.S.A., Inc.,
544 U.S. 528 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

M&J Coal Co. v. United States,
47 F.3d 1148 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995). . . . . . . . . . . . . . . . . . . . . . 14

Maniere v. United States,
31 Fed. Cl. 410 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Marandola v. United States,
2007 WL 1051569, 4 (Fed. Cl. April 4, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mitchell v. United States,
10 Cl. Ct. 63 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rith Energy, Inc. v. United States,
270 F.3d 1347 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sacramento Municipal Utility Dist. v. United States,
62 Fed. Cl. 495 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Taylor v. United States,
73 Fed. Cl. 532 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Dickinson,
331 U.S. 745 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Dow,
357 U.S. 17 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATUTES**

28 U.S.C. § 2501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20

**INDEX OF ADDITIONAL EXHIBITS ATTACHED TO DEFENDANT'S REPLY BRIEF**

| Exhibit No. | Description |
|---|---|
| 3 | Excerpt of Deposition of Dudley Fullard-Leo, taken on April 11, 2007, in *Kingman Reef Atoll Investments, LLC v. United States Dept. of the Interior*, No. CV05-00151 (D. Hawaii).<br><br>Note: The transcript of this recent deposition has not yet been signed by the deponent. |
| 4 | Reports of Pan-American Airway Flights Produced to KRAI as part of Defendant's Initial Disclosures in *Kingman Reef Atoll Investments, LLC v. United States Dept. of the Interior*, No. CV05-00151 (D. Hawaii), Tab 190. |
| 5 | Excerpt of Deposition of Charles Cook, taken on March 26, 2007, in *Kingman Reef Atoll Investments, LLC v. United States Dept. of the Interior*, No. CV05-00151 (D. Hawaii).<br><br>Note: The transcript of this recent deposition has not yet been signed by the deponent. |
| 6 | Excerpt of Deposition of Robert P. Smith, former employee of the U.S. Fish & Wildlife Service, taken on April 2, 2007, in *Kingman Reef Atoll Investments, LLC v. United States Dept. of the Interior*, No. CV05-00151 (D. Hawaii).<br><br>Note: The transcript of this recent deposition has not yet been signed by the deponent. |

Defendant United States hereby submits this reply brief in support of its motion to dismiss Plaintiffs' Fifth Amendment takings claims for lack of jurisdiction on the ground that those claims accrued no later than 1938 and are thus time-barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501 (Doc. 15). Plaintiffs oppose this motion (Doc. 30), but fail to meet their burden of proving that this Court has jurisdiction.

## I. SUMMARY

It is undisputed in this case that Plaintiffs' predecessors-in-interest had actual knowledge in the 1930's that the United States was claiming ownership of Kingman Reef and, at the same time, had rejected Plaintiffs' claim of private ownership to the Reef. This is enough to trigger the running of the statute of limitations. In an effort to breathe new life into their time-barred claims, Plaintiffs ignore the law regarding claim accrual and instead invite the Court to bypass the threshold jurisdictional question presented in this case and instead address the merits of a title dispute that dates back to at least the 1930's (and is the subject of a separate quiet title action pending in federal district court), and the merits of their takings claims. This back-door approach to litigating the merits of a time-barred claim should be rejected.

Plaintiffs also seek to avoid the statute of limitations in this case by invoking the Dickinson stabilization doctrine and the continuing claim doctrine. Neither doctrine applies in this case, where Plaintiffs' claims are based on a single distinct event: the government's rejection of Plaintiffs' claim of private ownership to Kingman Reef. This triggering event occurred in the 1930's, and Plaintiffs' takings claims accrued at that time. Plaintiffs' misplaced reliance on the stabilization and continuing claim doctrines does not provide a basis for reviving their time-barred claims.

## II. REPLY ARGUMENTS

### A. The Statute of Limitations Began to Run Once Plaintiffs Were on Notice of a Potential Claim Against the United States

Plaintiffs' opposition to Defendant's motion to dismiss is notable for its failure to address and apply the law with respect to when a claim against the United States accrues for the purposes of applying the statute of limitations. As set forth below and in Defendant's opening memorandum (Doc. 15-2) at 10-21, application of the proper claim accrual standard to the undisputed facts of this case demonstrates that Plaintiffs' takings claims accrued no later than 1938 and are thus time-barred.

The six-year statute of limitations applicable to Plaintiffs' claims against the United States begins to run "when all events have occurred which fix the liability of the Government and entitle the claimant to institute an action." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1355 (Fed. Cir. 2006) (citations omitted). Although there are various iterations of the "all events" test, the rationale underlying this singular test is the same:

> The rationale that underlies the "all events" test is the view that an individual is expected to act with reasonable diligence in the protection of his interests and will therefore become aware of acts of another that invade or injure those interests.

Mitchell v. United States, 10 Cl. Ct. 63, 67 (1986).

In applying this claim accrual rule, the Court of Federal Claims ("CFC") has repeatedly explained that "'[t]he clock starts as soon as the plaintiff is put on notice that inquiry into a possible claim is called for.'" Allen v. United States, 46 Fed. Cl. 677, 680 (2000) (quoting Wrona v. United States, 40 Fed. Cl. 784, 788 (1988) (quoting L.E. Cooke Corp. v. United States, 27 Fed. Cl. 753, 754 (1993))). See also Catellus Development Corp. v. United States, 31 Fed.

Cl. 399, 405 (1994) ("'[w]here the actions of the government are open and notorious, we have pointed out that plaintiff is on inquiry as to its possible injury. Once plaintiff is on inquiry that it has a potential claim, the statute of limitations begins to run.'") (quoting Coastal Petroleum Co. v. United States, 228 Ct. Cl. 864, 867 (1981)).

1. Plaintiffs Knew or Should Have Known of Their Claims Against the United States No Later Than 1938

Defendant has moved to dismiss Plaintiffs' takings claims as time-barred on the ground that those claims accrued no later than 1938. The question of whether Plaintiffs' claims accrued at this time thus turns on the events prior to 1938 and a determination as to whether those events were sufficient to put Plaintiffs on inquiry that they had a potential claim against the United States involving Kingman Reef.[1]

As detailed in Defendant's opening memorandum at 13-17, the evidentiary record in this case reveals that Plaintiffs had actual knowledge of their claims against the United States in the 1930's. See also Joint Statement of Stipulated Facts, ¶¶ 4-7 (Doc. 16) ("Joint Facts"). Specifically, in 1934 President Roosevelt issued an Executive Order that reserved and set aside Kingman Reef and placed it under the control and jurisdiction of the Secretary of the Navy for administrative purposes. Compl. Ex. 12 (E.O. 6935). This Executive Order was issued pursuant to a 1910 statute known as the Pickett Act that authorized the President to "temporarily withdraw

[1]Defendant's reference to the "Plaintiffs" in this brief encompasses both Plaintiffs, who allegedly acquired their private property interests in Kingman Reef in 2000, and Plaintiffs' predecessors-in-interest with respect to Kingman Reef. Plaintiffs' purported acquisition of a property interest in 2000 does not reset the claim accrual clock. Instead, the failure of Plaintiffs' predecessors-in-interest to pursue their claims against the United States in a timely manner also precludes their successors-in-interest from pursuing such claims some 70 years after those claims first accrued.

from settlement, location, sale, or entry any of the public lands of the United States" and to reserve those public lands for "public purposes" to be specified in the order of withdrawal or reservation. Act of June 25, 1910, ch. 421, 36 Stat. 847 (attached to Def.'s Mem. as Exhibit 1).

Although the issuance of the 1934 Executive Order was arguably sufficient to put Plaintiffs on notice of their claims against the United States involving Kingman Reef, the Court need not rely on the Executive Order alone in determining that Plaintiffs' claims are time-barred. Instead, there is additional documentation in this case that demonstrates conclusively that Plaintiffs had actual knowledge of the 1934 Executive Order and that they understood that the Government's assertion of public ownership of Kingman Reef through that Order conflicted with their claim of private ownership of Kingman Reef. This knowledge is reflected in the 1937 and 1938 correspondence attached to Defendant's Answer as Exhibits C – E.

Specifically, in their 1937 letter to Hawaii's Congressional delegate the Fullard-Leo family acknowledged that the "ownership" of Kingman Reef "presumably rests with the State or Navy Department since by one of these, use of it has been given to Pan-American Airways . . . ." Answer Ex. C. In this same letter, Plaintiffs presented their claim for compensation for Kingman Reef, requesting $40,000 in compensation for their efforts in "secur[ing] this wonderful harbor for the United States [and] preventing the same from being annexed for a foreign power." Id. The 1937 letter also reveals that Plaintiffs understood at the time that it might be necessary to pursue their claim "through legal channels[,]" noting that their demand for compensation in the amount of $40,000 did not include any provision for legal fees. Id.

Plaintiffs' actual knowledge of their claim against the United States is further demonstrated by the 1938 letter from the attorneys for Ellen Fullard-Leo to the Secretary of the Navy, stating:

> As indicated in our letter of January 25th to the Secretary of State, it would seem that, as a result of the Executive Order of December 29, 1934, the Secretary of the Navy apparently concluded that the Department of State had denied the existence of the private property interests in Kingman's Reef claimed by Mrs. Ellen Fullard-Leo.

Answer Ex. D (emphasis added). This letter presents the Fullard-Leo family's claim that they possess "presently existing legal rights to the private property interests" in Kingman Reef. Id., p. 2. In asserting the validity of the Fullard-Leo's title to Kingman Reef, the Fullard-Leo family again emphasized that they would protect their "legal rights" to Kingman Reef "by appropriate legal proceedings." Id.

This is not a case in which the government failed to respond to Plaintiffs' claims or otherwise left the status of those claims in a state of uncertainty. Instead, by letter dated April 26, 1938, the Navy responded to Mrs. Fullard-Leo's claim of private ownership and private title to Kingman Reef. Answer Ex. E. The Navy unequivocally rejected those claims, finding that the showing made by the Fullard-Leos regarding their alleged ownership of Kingman Reef "is not sufficient to uphold the claim of Mrs. Fullard-Leo." Id.

Accordingly, the evidentiary record in this case demonstrates that as of April 1938:

(1) Plaintiffs' predecessors had actual knowledge regarding the 1934 Executive Order;

(2) Plaintiffs' predecessors understood that the government's assertion that Kingman Reef constituted public lands conflicted with their alleged private ownership of Kingman Reef;

(3) Plaintiffs' predecessors understood that they had a claim against the United States as a result of this apparent conflict over title to and ownership of Kingman Reef;

(4) Plaintiffs' predecessors in fact presented their claims to the government through a number of letters and, in those letters, sought compensation for their interests in Kingman Reef;

(5) those claims were denied by the government in 1938; and,

(6) despite acknowledging that they may need to pursue their claims through legal proceedings, Plaintiffs' predecessors did not do so following the 1938 denial of their claim by the Navy.

These events are more than enough to conclude that Plaintiffs were on notice that they had a potential claim against the United States regarding Kingman Reef. The statute of limitations thus began to run no later than 1938. Plaintiffs were obligated to pursue their claims against the United States within six years of the date on which those claims accrued. Their failure to do so precludes this Court from exercising jurisdiction over those claims at this late date.

2. Plaintiffs' Mischaracterization of the 1937-38 Correspondence Does Not Change the Significance of That Correspondence to the Claim Accrual Inquiry

Significantly, Plaintiffs acknowledge that the dispute between the United States and the Fullard-Leo family over the ownership of Kingman Reef was known to the parties in the late

1930's.[2] See Pls.' Opp. at 4 (acknowledging that the government and the Fullard-Leo family exchanged correspondence in the 1930's arguing "about who might own" Kingman Reef); Pls.' Opp. at 23 (the correspondence of 1937 and 1938 "included a disagreement about whether the Fullard-Leo family had title to Kingman Reef"). However, Plaintiffs attempt to minimize the significance of the events of the 1930's by mis-characterizing those events, improperly arguing the merits of their takings claims, and asking the Court to ignore the events of the 1930's and instead focus on Plaintiffs' more recent efforts to re-assert their time-barred claim of private ownership in response to the government's recent change in its administration and management of Kingman Reef.

For example, Plaintiffs contend that the dispute between the Fullard-Leo family and the government in the 1930's "was about the Pan Am flights" and that the purpose of their letters was to stop those flights. Pls.' Opp. at 23. This characterization conflicts with the plain language of the referenced correspondence. The letter of April 20, 1937 from the Fullard-Leos to Congressional Delegate King makes reference to the use of Kingman Reef by Pan-American Airways ("Pan-Am") but does not demand that this use cease. Instead, the letter states that the ownership of Kingman Reef "presumably rests with the State or Navy Department," and requests $40,000 in compensation for the Fullard-Leos' interests in Kingman Reef. Answer Ex. C. The

---

[2] The current plaintiffs have no personal knowledge of the events of the 1930's. Plaintiff Kingman Reef Atoll Investments ("KRAI") is the Fullard-Leo family's limited liability company. Fullard-Leo family members and declarants Ainsley Fullard-Leo and Dudley Fullard-Leo, who are "members" of KRAI, were children in the 1930's. Decl. of Ainsley Fullard-Leo ¶¶ 1-4 (Doc. 30-15); Decl. of Dudley Fullard-Leo ¶¶ 1-4 (Doc. 30-16); Answer Ex. C (letter dated April 20, 1937, from the Fullard-Leos asserting claim to Kingman Reef and stating "we must safe-guard the future of our two young sons now eight and five years old respectfully."); Dep. of Dudley Fullard-Leo at 93-95 (excerpt filed herewith as Def.'s Ex. 3).

subsequent letter of March 29, 1938, from Mrs. Fullard-Leo to the Secretary of the Navy makes no reference to Pan-Am's use of Kingman Reef, but simply asserts Mrs. Fullard-Leo's claim of private property interests in Kingman Reef and seeks compensation. Answer Ex. D. The letter of April 26, 1938, from the Navy denying Mrs. Fullard-Leo's claim also makes no reference to Pan-Am's use of Kingman Reef.

Moreover, Plaintiffs' attempt to make a causal connection between their complaints to the government and the cessation of Pan-Am's use of Kingman Reef is unsupported by the evidentiary record. Indeed, contrary to Plaintiffs' assertions, contemporaneous reports of Pan-Am's activities show that the airline abandoned the "dangerous route" to New Zealand via Kingman Reef and Pago-Pago as a result of the January 1938 crash of its Samoan Clipper aircraft and loss of its crew. Def. Ex. 4. The evidentiary record offers no support for Plaintiffs' assertion that Pan-Am ceased its use of Kingman Reef because their predecessors complained to the United States about that use.

In addition, based on the unsupported causal link between the Fullard-Leos' letters of 1937 and 1938 and Pan-Am's cessation of its use of Kingman Reef in January 1938, Plaintiffs state that "there was no need for the Fullard-Leo family to pursue the matter further." Pls.' Opp. at 23. Plaintiffs further state that "[t]here was no further dispute between the Fullard-Leo family and the government about Kingman Reef for another seventy years." Id. Again, Plaintiffs' current characterization of events that occurred some seventy years ago is unsupported by the record. Contrary to Plaintiffs' assertion, the Fullard-Leo family, in its April 26, 1938 letter to the Secretary of the Navy, did continue to assert its claim of private ownership to the government and to seek compensation for its interests after Pan-Am ceased its use of Kingman Reef in

January 1938. Answer Ex. D. That claim was rejected by the Navy in April 1938. Answer Ex. E. The Plaintiffs decision not to pursue their rejected claims further, despite statements that they intended to do so (see Answer Ex. C and D), does not toll the statute of limitations as to their claims. Instead, the fact that there was "no further dispute" over Kingman Reef "for another seventy years," Pls.' Opp. at 23, is due to Plaintiffs' failure to act diligently with respect to their claims against the United States. Plaintiffs' failure to pursue their claims in a timely manner following the Navy's written rejection of those claims precludes this Court from exercising its jurisdiction.

3. <u>The Events Surrounding the 2001 Designation of Kingman Reef as a National Wildlife Refuge Are Not Relevant to the Claim Accrual Question Presented Here</u>

Plaintiffs' opposition brief says very little about the events of the 1930's that are relevant to the question of whether Plaintiffs' claims against the United States accrued no later than 1938. Instead, Plaintiffs' focus is on more recent events – from 1991 through 2001 – that relate to the designation of Kingman Reef as a National Wildlife Refuge. Plaintiffs' reliance on more recent events is misplaced since such events have no relevance to the question of whether Plaintiffs' takings claims accrued 50 to 60 years earlier, which is the question presented in Defendant's motion.

Although the more recent events relied upon by Plaintiffs are not relevant to Defendant's motion, Defendant notes here that it does not agree with Plaintiffs' interpretation of these more recent events and its characterization of certain documents and communications. For example, Plaintiffs state that "[t]he U.S. Fish and Wildlife Service ("FWS") and The Nature Conservancy ("TNC"), both acting on behalf of the U.S. Department of the Interior ("DOI"), have made

several offers to purchase Kingman Reef." Pls.' Opp. at 3-4 (citing Savio Decl. ¶ 15 and Ex. C). First, the cited declaration testimony and exhibit do not support the substance of the statement that TNC was acting "on behalf" of DOI or that any of these entities "have made several offers to purchase Kingman Reef."[3] Second, the recent depositions of TNC by Plaintiffs in their quiet title action reveal that TNC's negotiations with the Fullard-Leo family's representative, Peter Savio, were with respect to the acquisition of Palmyra, not Kingman Reef, and that when Kingman Reef was brought up in these discussions, it was brought up by Savio. See Dep. of Charles Cook, pp. 32-36, pp. 50-52, pp. 69-72 (Def. Ex.5). See also Dep. of Robert Smith, pp. 61-68 (Def. Ex. 6).

Plaintiffs' opposition brief also includes statements that stretch the evidentiary record in this case beyond reason. For example, Plaintiffs state that the Fullard-Leo family "enjoyed all the privileges of private ownership in Kingman Reef from 1922 until November 17, 2000, when KRAI acquired ownership." Pls.' Opp. at 3. Although the "privileges" of private ownership include the right to exclude others, particularly the government, see Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 539 (2005), the record reflects that the government unequivocally and unambiguously took the position in the 1930's that Kingman Reef was publicly owned and that the Fullard-Leos did not have any private property rights in or to Kingman Reef.[4] In addition, although Plaintiffs' opposition brief suggests that the Fullard-Leo family have traveled frequently

---

[3]The testimony of the Fullard-Leos reveals that they have no personal knowledge of any discussions regarding Kingman Reef or offers to purchase the Reef from TNC, FWS or DOI. See Decl. of Dudley Fullard-Leo ¶¶ 5-6 (Doc. 30-16); Decl. of Ainsley Fullard-Leo ¶¶ 5-6 (Doc. 30-15); Dep. of Dudley Fullard-Leo, pp. 76-79 (Def. Ex. 3).

[4]In addition, the Executive Order of 1941 subsequently excluded "any person, other than persons public vessels of the United States" from entering into the waters surrounding Kingman Reef without authorization from the Secretary of the Navy. Compl. Ex. 13; Compl. Ex. 14.

to Kingman Reef, a closer examination of the record and testimony reveals otherwise. For example, Dudley Fullard-Leo has testified that he has never physically been to Kingman Reef and has only flown over Kingman Reef twice in the 1990's, and each of those fly-overs were simply detours en route to nearby Palmyra during the time period when there were active negotiations regarding the acquisition of Palmyra. Decl. of Dudley Fullard-Leo ¶¶ 11, 17-18 (Doc. 30-16); Dep. of Dudley Fullard-Leo at 21-23 (Def. Ex. 3); Decl. of Ainsley Fullard-Leo ¶¶ 18-19 (Doc. 30-15).

Again, the recent events relied upon by Plaintiffs are not relevant to the question before the Court. Accordingly, any dispute over those facts need not be addressed or resolved in connection with Defendant's motion to dismiss. If, however, the Court should find that any events after 1938 are relevant to the determination of when Plaintiffs' claims against the United States involving Kingman Reef accrued, Defendant reserves the right to provide a more detailed response to Plaintiffs' recitation of the more recent events in their opposition brief which, as the examples cited above reflect, Defendant disputes in many respects.

B. The Question of Whether Plaintiffs' Claims Are Time-Barred is a Threshold Question of Jurisdiction That Must Be Determined Before The Court May Reach the Merits

Rather than applying the claim accrual standard discussed above in Section II.A. of this reply brief, Plaintiffs seek in their opposition brief to bypass the threshold question of jurisdiction and proceed directly to the merits of their claims. For the reasons explained below, the question of jurisdiction is a distinct inquiry that must be addressed before a court can reach the merits of a case. Accordingly, the Court should not entertain Plaintiffs' arguments on the merits at this juncture.

It is well established in this Court and in the Federal Circuit that "statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature." Martinez v. United States, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc). Accordingly, the question of whether a claim against the United States is barred by the applicable statute of limitations, like other jurisdictional inquiries, is a threshold question that must be addressed and resolved before the court can reach or consider the merits of the claim. See Barnett v. Brown, 83 F.3d 1380, 1383 (Fed. Cir. 1996) ("it is well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case *before* adjudicating the merits . . . ."); Marandola v. United States, 2007 WL 1051569, *4 (Fed. Cl. April 4, 2007) ("Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action."); Taylor v. United States, 73 Fed. Cl. 532, 537 (2006) ("Whether the court has jurisdiction to decide the merits of a case is a threshold matter."). Indeed, "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Taylor, 73 Fed. Cl. at 537 (citing Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)).

Here, Plaintiffs' opposition to Defendant's motion to dismiss their claims as time-barred is comprised of arguments on the merits of their takings claims and the merits of the underlying title dispute over Kingman Reef that is the genesis of their takings claims.[5] For example, Plaintiffs devote a substantial portion of their opposition brief to the argument that the actions of

[5]The title dispute is also the subject of the quiet title action filed by Plaintiffs in federal district court. It is Defendant's position that Plaintiffs' quiet title claims, like their takings claims, accrued no later than 1938 and are time-barred.

the United States in the 1930's, including the 1934 Executive Order, did not constitute a taking of their alleged ownership interest in Kingman Reef. See, e.g., Pls.' Opp. at 12 ( "the Executive Orders did not divest plaintiffs of title or possession of Kingman Reef . . . ."); id. at 14 ("There Was Not, and Could Not Be, a Taking Under the Pickett Act"); id. at 21-23 (arguing that the Executive Orders do not constitute a regulatory taking of Kingman Reef). The question of whether the Executive Orders issued with respect to Kingman Reef or any actions taken by Defendant resulted in a taking of Plaintiffs' alleged private property rights in Kingman Reef is a merits inquiry. It is not necessary to reach or resolve the question of whether a taking actually occurred in this case in order to determine when Plaintiffs' claims accrued. Instead, applying the "all events" test articulated above, the question presented here is: at what point in time were Plaintiffs on notice that they had a potential claim against the United States involving Kingman Reef? That inquiry is distinct from the question of whether a taking occurred.

In addition, Plaintiffs assert that the Pickett Act of 1910 – which is the authority relied upon for the issuance of the 1934 Executive Order that reserved and set aside Kingman Reef for public purposes – "did not provide authority for the taking of any property, including Kingman Reef, that was privately owned." Pls.' Opp. at 15. See also Pls.' Opp. at 14 (the Pickett Act "neither authorizes nor effectuates a taking of private land"). Plaintiffs' challenge to the validity of the 1934 Executive Order is misplaced in this case. First, it is well-established that a takings claimant must assume the validity of the government action or decision alleged to have caused a taking and cannot collaterally attack the validity of that action or decision in its takings claim.[6]

[6]For the same reason, Plaintiffs' collateral challenge to the 1934 Executive Order in their Opposition Brief at 27 n.12 is improper.

Appolo Fuels, Inc. v. United States, 381 F.3d 1338, 1351 n.7 (Fed. Cir. 2004); Rith Energy, Inc. v. United States, 270 F.3d 1347, 1352 (Fed. Cir. 2001). See also M&J Coal Co. v. United States, 47 F.3d 1148, 1154 (Fed. Cir.) ("Neither the Court of Federal Claims nor this court may entertain a collateral challenge to the validity of [the agency's] actions."), cert. denied, 516 U.S. 808 (1995). Second, the question of whether the issuance of the 1934 Executive Order resulted in a taking of any private property rights held in Kingman Reef at the time goes to the merits of Plaintiffs' takings claim, not to the question of claim accrual.

The question of whether the Plaintiffs or their predecessors-in-interest actually owned private property rights in Kingman Reef at any point in time is also a merits-based inquiry that need not be resolved in order to determine whether Plaintiffs' takings claims are time-barred.[7] Contrary to Plaintiffs' assertion, Defendant has not and does not concede "that the Fullard-Leo Family owned Kingman Reef prior to the [alleged] unlawful taking." Pls.' Opp. at 1. The position of the United States is that Kingman Reef is publicly owned and that Plaintiffs did not acquire any private property rights to Kingman Reef in 1922, as they contend. Defendant stated

[7]Plaintiffs have the burden of proving that they were the owners of Kingman Reef on the date of the alleged taking. See United States v. Dow, 357 U.S. 17, 20-21 (1958) (only the owner of the property at the time of the taking is entitled to compensation under the Fifth Amendment); Cienega Gardens v. United States, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken"); Amaliksen v. United States, 55 Fed. Cl. 167, 171 (2003) ("Establishing title to the property allegedly taken is essential in asserting a taking"). Absent such an ownership interest, Plaintiffs have no standing to pursue a claim that Kingman Reef has been taken from them. See Sacramento Municipal Utility Dist. v. United States, 62 Fed. Cl. 495, 501 (2005) ("It is well established that the owner of real property has standing to assert a Fifth Amendment takings claim."); Maniere v. United States, 31 Fed. Cl. 410, 420-21 (1994) (proof of possessing an interest in the property at issue is required to establish standing in a takings case). Defendant has not moved to dismiss Plaintiffs' claim based on the lack of a compensable property interest at this juncture because of the statute of limitations issue and because of the related claims filed by Plaintiffs in federal district court under the Quiet Title Act.

this quite clearly in its opening brief. See Def.'s Mem. at 2 n.1 ("Defendant disputes Plaintiffs' allegation that their predecessors-in-interest acquired title to or an ownership interest in Kingman Reef in 1922"); Joint Facts, ¶ 2. However, Defendant further emphasized that any factual dispute over whether Plaintiffs acquired an interest in Kingman Reef in 1922 need not be resolved in order to determine whether Plaintiffs' takings claims are time-barred. Instead, Defendant noted that the Court could assume without deciding, as it has done in other cases, the Plaintiffs acquired a property interest in Kingman Reef in 1922. Def.'s Mem. at 2 n.1 and 14; Joint Facts, ¶ 2.

In sum, the question of whether Plaintiffs' takings claims accrued in the 1930's is distinct from and does not turn on the merits of their title dispute with the government or on the merits of the takings claims they allege in this case. Accordingly, the Court should follow the "well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case *before* adjudicating the merits[.]" Barnett v. Brown, 83 F.3d at 1383. Plaintiffs' invitation to address the merits of their claims at this juncture should be declined.

### C. Neither the *Dickinson* Stabilization Doctrine Nor the Continuing Claim Doctrine Can Revive Plaintiffs' Time-Barred Claims

Plaintiffs next seek to avoid the statute of limitations by invoking the Dickinson stabilization doctrine and the continuing claim doctrine. Pls.' Opp. at 25-27. Plaintiffs' reliance on both doctrines is misplaced.

First, the Dickinson stabilization doctrine is a limited doctrine that generally applies to cases involving a "continuing process of physical events" such as the intermittent flooding caused by a government dam at issue in United States v. Dickinson, 331 U.S. 745 (1947), or the

erosion of shoreline at issue in cases such as Banks v. United States, 314 F.3d 1304 (Fed. Cir.), cert. denied, 125 S. Ct. 486 (2003). The Federal Circuit has emphasized that "[t]he Dickinson stabilization principle . . . does not apply outside its context. Later cases have essentially confined the stabilization doctrine to the class of flooding cases from which it originated." Adriadne Financial Services v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998), cert. denied, 525 U.S. 823 (1998).

The Dickinson stabilization doctrine has no application here. The alleged taking in this case is not the result of intermittent or gradual government actions such as flooding. Instead, the government action that gives rise to Plaintiffs' takings claim is the government's rejection of Plaintiffs' claim of private ownership of Kingman Reef. The government rejected Plaintiffs' claim of private ownership, in writing, in 1938. There was nothing ambiguous, uncertain or intermittent about this rejection. Plaintiffs knew or should have known at that time that the government disputed their claim of private ownership to Kingman Reef. Nothing more was required to trigger the statute of limitations in this case.

Plaintiffs' reliance on the continuing claim doctrine is equally misplaced. The continuing claim doctrine – the applicability of which is largely confined to this Court's civilian and military pay cases – applies when a plaintiff's claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997). Conversely, "a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim." Id.

Here, Plaintiffs' takings claims are based on a single distinct event: the government's rejection of their claim of private ownership of Kingman Reef in 1938. The government's management and use of Kingman Reef as public land, including the 1934 Executive Order reserving and setting aside the Reef and placing it under the Navy's control and jurisdiction, as well as the 2001 establishment of the Reef as a National Wildlife Refuge, are not independent or distinct events for the purposes of the claim accrual inquiry. Nor is the 2001 designation "the culmination" of Defendant's actions, as Plaintiffs contend. Pls.' Opp. at 25. Instead, each of these government actions – from the 1934 Executive Order through the 2001 designation – are simply changes in the government's management and use of Kingman Reef. All of these actions are premised on the government's long-standing position that Kingman Reef is public property, as is the government's 1938 rejection of Plaintiffs' claim that they possessed private property rights to Kingman Reef. The government's position, including related rejection of Plaintiffs' claim of private ownership, were known to Plaintiffs in the 1930's. Those events are the genesis of Plaintiffs' takings claims. Under these circumstances, the continuing claim doctrine has no application here and cannot be relied upon by Plaintiffs to avoid the six-year statute of limitations that applies to their claims.

D. Plaintiffs' Time-Barred Claims Are Not Revived by *Creppel*

In their final argument, Plaintiffs assert that if the events of the 1930's put them on notice of their claims against the United States, the only claims that accrued at that time were temporary takings claim and that no permanent takings claim accrued until 2001. Pls.' Opp. at 28-30. This theory, which is merely a variation of Plaintiffs' unavailing continuing claim theory, is unsupported by the facts of this case and the law relied on by Plaintiffs.

On the law, Plaintiffs rely on Creppel v. United States, 41 F.3d 627, (Fed. Cir. 1994), in which the plaintiffs alleged both temporary takings and permanent takings based on the halting of a reclamation project, with the temporary taking occurring when the U.S. Army Corps of Engineers issued an order stopping the project, and a permanent taking occurring when a "final determination" on the matter was later issued by the Environmental Protection Agency. The CFC found that the plaintiffs' claims were barred by the applicable six-year statute of limitations, finding that "the Government could have taken nothing permanently because the property's value remained unchanged after the temporary taking precipitated by the [Corps'] Order." 41 F.3d at 633. The Federal Circuit affirmed the CFC's decision that the temporary taking claim was time barred, but reversed as to the permanent taking claim. In so ruling, the Federal Circuit found that the temporary taking period had ended with a federal district court order requiring the reclamation project to proceed. This action restored the value to the plaintiffs' properties and "[d]uring that time, the claimants regained their expectation of development, and could presumably have sold the land if they so wished." 41 F.3d at 632. Four months later, the district court rescinded its decision and issued a new order halting the project once again. The Federal Circuit found that this second action caused a new takings claim to accrue. Thus, it was only this four month break between the end of the alleged temporary taking period and the event that gave rise to the plaintiffs' permanent takings claims that prompted the Federal Circuit to treat these claims as separate for claim accrual purposes.

Unlike Creppel, which involved the regulation of privately owned property, the genesis of Plaintiffs' takings claims in this case is the underlying dispute over whether Kingman Reef is publicly owned or privately owned property. That dispute emerged in 1934, when Defendant

issued an Executive Order that reserved and set aside Kingman Reef for public purposes. Plaintiffs recognized the conflict between the government's assertion of public ownership and their claims of private ownership at the time, and presented that claim and requested compensation in 1937 and 1938 letters. Answer Exhibits C – D. Plaintiffs' claim of private property rights to Kingman Reef was rejected in the letter of April 26, 1938 from the Navy. Answer Ex. E.

This case is also factually distinguishable from Creppel in that the Executive Order issued in 1934 has never been lifted or rescinded. To the contrary, that Executive Order remains in effect. Although the government's management and use of this public property has changed over time, even the present management of Kingman Reef as a National Wildlife Refuge was expressly undertaken "consistent with the administrative control and jurisdiction exercised by the Secretary of the Navy pursuant to Executive Order 6935 of December 29, 1934, and Executive Orders 8682 and 8729 of February 14, 1941, and April 2, 1941, until and unless such administrative control and jurisdiction is extinguished." Answer Ex. G (Secretarial Order 3223, establishing the Kingman Reef National Wildlife Refuge). Accordingly, unlike the rather unique factual situation presented in Creppel, the 1934 Executive Order at issue in this case has never been lifted or rescinded in a manner that would allow the Court to find that the claims that accrued in the 1930's were only "temporary" and that a separate "permanent" takings claims accrued some 70 years later.

## III. CONCLUSION

For the reasons set forth above and in Defendant's motion and supporting memorandum (Doc. 15 and 15-2), Defendant respectfully requests that the Court find that Plaintiffs' takings

claims accrued no later than 1938 and that the Court dismiss Plaintiffs' takings claims as time-barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501.

Dated: May 11, 2007

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL (603) 230-2583
FAX (603) 225-1577
E-MAIL kristine.tardiff@usdoj.gov

OF COUNSEL:
Mariel J. Combs
Office of the Solicitor
United States Department of the Interior
Pacific Northwest Region
500 N.E. Multnomah St., Suite 607
Portland, OR 97232

Robert J. Smith
Office of the General Counsel
Navy Litigation Office
720 Kennon St., SE, Room 233
Washington Navy Yard, DC