IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al., | ) | |
| Plaintiffs, | ) | No. 06-828L |
| v. | ) | |
| | ) | Judge Marian Blank Horn |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR A PROTECTIVE ORDER PRECLUDING DEPOSITIONS UNDER RCFC 30(b)(6) AND THE DEPOSITION OF A FORMER INTERIOR EMPLOYEE**

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL (603) 230-2583
FAX (603) 225-1577
E-MAIL kristine.tardiff@usdoj.gov

Dated: March 11, 2008

# TABLE OF CONTENTS


DEFENDANT'S MOTION FOR A PROTECTIVE ORDER AND SUPPORTING MEMORANDUM . . . . . . . . . . 1

I. PROCEDURAL BACKGROUND. . . . . . . . . . 2

II. ARGUMENT. . . . . . . . . . 3

A. The Court Has Broad Discretion to Impose Limits on Discovery. . . . . . . . . . 3

B. The Rule 30 (b) (6) Deposition Notice Directed to the FWS.. . . . . . . . . . 6

C. The Rule 30(b)(6) Deposition Notice Directed to the Department of the Interior. . . . 12

D. The Rule 30(b)(6) Notice Directed to the Department of the Navy.. . . . . . . . . . 16

E. The Rule 30(b)(6) Deposition Notice Directed to the Department of State. . . . . . . . . 21

F. The Rule 30(b)(6) Deposition Notice Directed to GSA. . . . . . . . . . 24

G. The Subpoena and Deposition Notice Served on Former Interior Employee William Brown. . . . . . . . . . 26

III. CONCLUSION . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## FEDERAL CASES


Boston Edison Co. v. United States,
75 Fed. Cl. 557 (2007). . . . . . . . . . 5

Kingman Reef Atoll Investments v. United States,
Civ. No. 05-00151 JMS/BMK, 2007 WL 2630532, *4 (D. Haw. 2007). . . . . . . . . . 15, 19

Evergreen Trading, LLC v. United States,
75 Fed. Cl. 730 (2007). . . . . . . . . . 11

Forest Prods. Northwest, Inc. v. United States,
453 F.3d 1355 (Fed. Cir.2006). . . . . . . . . . 5

Hydramar, Inc. v. General Dynamics Corp.,
119 F.R.D. 367, (E.D. Pa. 1988). . . . . . . . . . 9

In re Indep. Service Organizations Antitrust Litigation,
168 F.R.D. 651 (D. Kan. 1996). . . . . . . . . . 10

JP Morgan Chase Bank v. Liberty Mutual Ins. Co.,
209 F.R.D. 361 (S.D.N.Y. 2002). . . . . . . . . . 9

United States v. Fullard-Leo,
331 U.S. 256 (1947). . . . . . . . . . 7


## FEDERAL STATUTES


28 U.S.C. § 2501. . . . . . . . . . 2


## RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS


RCFC 12(b)(1). . . . . . . . . . 2
RCFC 26(a)(1). . . . . . . . . . 4
RCFC 26(b)(2)(C). . . . . . . . . . 5
RCFC 26(c). . . . . . . . . . 1, 4, 5
RCFC 30(b)(6). . . . . . . . . . passim
RCFC 45(c). . . . . . . . . . 1, 5, 6, 28


## OTHER AUTHORITIES


Executive Order 13327 (Feb. 6, 2004). . . . . . . . . . 25, 26
Executive Order No. 6935 (Dec. 29, 1934). . . . . . . . . . 17, 25

## Index of Exhibits to Defendant's Motion for a Protective Order

| Exhibit No. | Description |
|---|---|
| 1 | Plaintiffs' Amended Notice of Taking Rule 30(b)(6) Deposition of the U.S. Fish & Wildlife Service (2/27/2008) |
| 2 | Plaintiffs' Amended Notice of Taking Rule 30(b)(6) Deposition of the U.S. Department of the Interior (2/27/2008) |
| 3 | Plaintiffs' Amended Notice of Taking Rule 30(b)(6) Deposition of the U.S. Department of the Navy (2/27/2008) |
| 4 | Plaintiffs' Amended Notice of Taking Rule 30(b)(6) Deposition of the U.S. Department of State (2/27/2008) |
| 5 | Plaintiffs' Amended Notice of Taking Rule 30(b)(6) Deposition of the U.S. General Services Administration (2/27/2008) |
| 6 | Plaintiffs' Deposition Notice and Subpoena to William Brown, and Plaintiffs' Amended Notice of Deposition of William Brown (2/26/2008) |
| 7 | Excerpts from Deposition of Georgia Shirilla, dated April 25–26, 2007, taken in Kingman Reef Atoll Investments, LLC v. United States, No. CV05-00151 (D. Hawaii). |
| 8 | Depositions Notices for Deposition of Georgia Shirilla: (1) Fourth Amended Notice of Taking Oral Deposition of Georgia Shirilla (Dep. Ex. 96); Fourth Amended Rule 30(b)(6) Deposition Notice to the U.S. Fish & Wildlife Service (Dep. Ex. 97); and Fourth Amended Notice of Taking Rule 30(b)(6) Deposition of the United States of America (Dep. Ex. 98). |
| 9 | Excerpts from Deposition of Robert P. Smith, dated April 2, 2007, taken in Kingman Reef Atoll Investments, LLC v. United States, No. CV05-00151 (D. Hawaii). |

| | |
|---|---|
| 10 | Letter from Donna Fitzgerald, Department of Justice, to Therese Cannata, Counsel for Kingman Reef Atoll Investments, LLC, dated July 3, 2007. |
| 11 | Extract from Letter CO NAS, Pearl Harbor, Subject: Annual Report for Fiscal Year 1921-22, documenting Palmyra Expedition on Sept. 15–26, 1921, that included inspection of Kingman Reef (US0008-9). |
| 12 | Navy Memorandum dated July 15, 1926, from Commanding Officer to Commander Mine Squadron Two. Subject: Report of Preliminary Survey of Kingman's Reef (US0037-40). |
| 13 | Navy Memorandum dated June 13, 1927, from Commander Mine Squadron Two, to Chief of Naval Operations. Subject: Survey of Kingman Reef (US0065-66). |
| 14 | Excerpts from Deposition of Dennis Pacht, dated May 2, 2007, taken in Kingman Reef Atoll Investments, LLC v. United States, No. CV05-00151 (D. Hawaii). |
| 15 | Defendant's Supplemental Responses to Plaintiffs' First Set of Requests for Production of Documents, dated December 13, 2007 |
| 16 | Defendant's Response to Plaintiffs' Request for Production of Documents (Set Two), dated November 19, 2007. |
| 17 | Excerpts from Deposition of Commander Jeff Good, dated May 15, 2007, taken in Kingman Reef Atoll Investments, LLC v. United States, No. CV05-00151 (D. Hawaii). |
| 18 | Excerpts from Deposition of Lieutenant Ramil Salvador, U.S. Navy, dated May 24, 2007, taken in Kingman Reef Atoll Investments, LLC v. United States, No. CV05-00151 (D. Hawaii), and Fourth Amended Notice of Taking Rule 30(b)(6) Deposition of the United States (Dep. Ex. 168). |

**DEFENDANT'S MOTION FOR A PROTECTIVE ORDER AND SUPPORTING MEMORANDUM**

Pursuant to the Court's scheduling order of February 28, 2008 (Doc. 52), Defendant United States hereby moves for a protective order under Rule 26(c) of the Rules of the United States Court of Federal Claims ("RCFC") to preclude the taking of depositions under RCFC 30(b)(6) of the Department of the Interior, the Fish & Wildlife Service, the Department of the Navy, the Department of State, and the General Services Administration. In addition, pursuant to RCFC 26(c) and 45(c), Defendant moves for a protective order with respect to a subpoena and deposition notice to William Brown, a former employee of the Department of the Interior.

As explained below, there are significant jurisdictional issues in this case. The Court has allowed some discovery, but that discovery has been limited to the underlying question of title to or ownership of Kingman Reef and a few other issues. Given those limitations and the discovery already conducted, Defendant submits that the depositions noticed by Plaintiffs under RCFC 30(b)(6) and the subpoena and deposition notice served on a former Interior employee are unreasonable and unduly burdensome. To begin with, the historical facts relevant to the underlying question of title to or ownership of Kingman Reef are obtainable directly from the documents that have been disclosed or produced and are part of the record in this case. There are no individuals within the agencies with personal knowledge of or involvement with the relevant historic events, most of which occurred 60 to 70 years ago. Accordingly, it is inefficient, duplicative and unduly burdensome to require Defendant to designate 30(b)(6) witnesses to review the documents already in Plaintiffs' possession in order to testify as to facts that appear in those documents. In addition, many of the topics on which Plaintiffs seek to take depositions

were explored by Plaintiffs in prior depositions, including 30(b)(6) depositions. Other topics of inquiry exceed the scope of discovery allowed by the Court and have no relevance to the issues on which discovery has been allowed. Finally, Defendant objects to Plaintiffs' request for 30(b)(6) deponents to testify as to Defendant's legal analysis, theories, opinions and conclusions regarding title and ownership of Kingman Reef and the other limited issues on which discovery has been allowed. The facts relevant to any such analysis and opinions are contained in the documents already produced; any analysis and related opinions are necessarily privileged. Plaintiffs' request to depose Mr. Brown is objectionable for all of the same reasons.

## I. PROCEDURAL BACKGROUND

In this action, Plaintiffs[1] alleged that they acquired title to Kingman Reef in1922, and that Defendant's designation of Kingman Reef as a National Wildlife Refuge in 2001 constituted a taking of that private property. Compl., pp. 2-3 (Doc. 1). Defendant submits that the Court lacks jurisdiction over Plaintiffs' takings claims because such claims accrued no later than 1938 and are thus time-barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501. Def.'s Mot. to Dismiss (Doc. 15). Moreover, Plaintiffs did not acquire any private ownership interests in or title to Kingman Reef by virtue of their actions in 1922 and, consequently, do not have standing to bring a takings claim involving this property. Def.'s Answer, p. 23 (Doc. 7).

On March 30, 2007, Defendant moved under RCFC 12(b)(1) to dismiss Plaintiffs' takings claims as time-barred (Doc. 15). This motion was premised on the assumption – made only for the purposes of that motion – that Plaintiffs acquired a property interest in Kingman

[1]The term "Plaintiffs," as used herein, encompasses the named plaintiffs and their predecessors-in-interest, including the Fullard-Leo family and Palmyra Copra Company.

Reef in 1922, as they allege. As a result, neither party directly addressed the issue of ownership in its briefs to the Court. However, during a telephone conference with the parties subsequent to oral argument on Defendant's motion, the Court indicated that it was proving difficult to resolve the statute of limitations issue without also addressing standing and the underlying questions of title and ownership of Kingman Reef. During this same conference call, the Court identified and allowed discovery on four limited issues: (1) the underlying question of ownership and title to Kingman Reef; (2) claims and decisions concerning ownership and title by both parties; (3) the *ultra vires* issue as it pertains to the 1934 Executive Order; and (4) the *terra nullius* theory as it pertains to claims of title or ownership of Kingman Reef. See Joint Request for Further Instruction, filed Dec. 13, 2007 (Doc. 46); Order, dated Sept. 10, 2007 (Doc. 40) (allowing discovery "[a]s discussed with the parties" at the status conference of September 7).

To date in this case, Plaintiffs have served Defendant with three sets of interrogatories, three sets of requests for the production of documents, and requests for admissions. Defendant's search for and production of documents in the district court action and in this case has been far broader than the limited issues on which discovery has been allowed by this Court. These searches have included all known federal agencies with recent or historic involvement with Kingman Reef, as well as the National Archives and Records Administration ("NARA") regional facility in San Bruno, California, and the Franklin D. Roosevelt Presidential Library. From these searches, Defendant is producing all non-privileged documents that refer or relate to the underlying question of title or ownership of Kingman Reef that have been located.[2] Moreover,

[2] Most of this document production is complete. Defendant is presently completing a relevancy and privilege review of some additional documents from the Department of the Interior, including a very small number of documents located by Mr. Brown in response to

Plaintiff KRAI took fourteen depositions in the district court action, including 30(b)(6) depositions, that covered many of the same topics on which Plaintiffs seek to take additional deposition testimony on in this case.[3]

In addition to the discovery already conducted, Plaintiffs now seek to take Rule 30(b)(6) depositions of the U.S. Fish & Wildlife Service ("FWS"), the Department of the Interior ("Interior"), the Department of the Navy ("Navy"), the State Department, and the U.S. General Services Administration ("GSA"). Def. Ex. 1–5. Plaintiffs also served a subpoena and deposition notice on William Brown. Mr. Brown, the President and Chief Executive Officer of the Academy of Natural Sciences, served as Science Advisor to the Secretary of the Interior from April 1997 until January 2001.[4] Def. Ex. 6. Pursuant to RCFC 26(c), Defendant certifies that the parties have engaged in a lengthy meet and confer process that has included multiple telephone conversations and written correspondence. Although these efforts have narrowed the disputed issues, the parties have been unable to resolve their dispute over whether these depositions should occur, and therefore have agreed to present their dispute to the Court.

## II. ARGUMENT

### A. The Court Has Broad Discretion to Impose Limits on Discovery

Under RCFC 30(b)(6), a party may notice the deposition of a government agency. Such a

---

Plaintiffs' subpoena and related document production requests to him. See Section II.G., *infra*.

[3]The parties have agreed in this case that all of the discovery conducted in the district court action may be used in this case and that neither party is required to reproduce documents that were disclosed or produced in that action.

[4]See http://www.ansp.org/about/president.php (William Y. Brown biography) (last visited March 7, 2008).

notice must "describe with reasonable particularity the matters on which examination is requested." RCFC 30(b)(6). The government agency shall then designate the person or persons who will testify on its behalf "as to matters known or reasonably available to the organization." Id. However, the ability of a party to take the 30(b)(6) deposition of an agency or other organization is not without limits.

To begin with, discovery in this case is presently limited by the Court's prior instructions to the underlying question of ownership and title to Kingman Reef and the other related issues identified above that relate or potentially relate to the significant jurisdictional issues in this case. Plaintiffs are not entitled to conduct discovery on all aspects of their takings claims, such as whether a taking occurred in 2001.[5]

Additional limits on discovery are set forth in RCFC 26(b)(2)(C), which provides that

> [t]he frequency or extent of use of the discovery methods permitted under these rules shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; (iii) the burden or expense of the proposed discovery outweighs the likely benefit . . . .

In managing and addressing discovery issues, "[t]he court may act upon its own initiative after reasonable notice or pursuant to a motion under RCFC 26(c)." Rule 26(c) "tempers the breadth of discovery by authorizing the court, for good cause shown, to issue a protective order

---

[5]The government cannot take what the Plaintiffs do not have. Accordingly, if Plaintiffs did not acquire title to or any other private property interest in Kingman Reef in 1922, as they allege, then they have no standing to allege that any government actions after 1922 constituted a taking of their private property rights in Kingman Reef. Discovery is thus properly limited to the underlying question of title to or ownership of Kingman Reef.

'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" Boston Edison Co. v. United States, 75 Fed. Cl. 557, 561 (2007) (quoting RCFC 26(c) and citing 6 Moore's Federal Practice § 26.101 at 26-240). "To meet the 'good cause' standard of the rule so as to preclude a deposition, the party seeking a protective order must show 'that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden.'" Id. (quoting Forest Prods. Northwest, Inc. v. United States, 453 F.3d 1355, 1361 (Fed. Cir.2006)). For the reasons set forth below, good cause exists to preclude the 30(b)(6) depositions that Plaintiffs seek to take. Good cause also exists, under both RCFC 26(c) and RCFC 45(c), to preclude the deposition of former Interior employee William Brown.

B. The Rule 30(b)(6) Deposition Notice Directed to the FWS

The involvement of the FWS with Kingman Reef is relatively recent. In 2000, the Department of the Navy determined that its "[c]ontrol over and administrative jurisdiction of Kingman Reef, together with all reefs surrounding such island" was excess to Department of Defense requirements, and that Kingman Reef was "suitable for transfer to another Federal agency." Compl. Ex. 27, p. 1. On September 1, 2000, the Department of the Interior accepted custody of and accountability for Kingman Reef from the Navy, id., p. 2, and on January 18, 2001, the Secretary of the Interior established Kingman Reef National Wildlife Refuge and delegated administrative responsibility for the Refuge to the FWS. Compl. Ex. 39. As part of their discovery in this case, Plaintiffs seek to take a Rule 30(b)(6) deposition of the FWS on six topics of inquiry. Def. Ex. 1. Defendant objects on the grounds that this discovery is unreasonably duplicative and cumulative of prior discovery, including prior 30(b)(6) depositions; that the historical facts relevant to the underlying question of title to or ownership of Kingman

Reef are obtainable directly from the documents that have been disclosed or produced and are part of the record in this case; that topics on which Plaintiffs seek deposition testimony are irrelevant to the issues on which discovery has been allowed, or exceed the scope of allowed discovery; and that Plaintiffs are improperly seeking legal analysis or opinions under the guise of a 30(b)(6) deposition.

During the meet and confer process between the parties that preceded this motion, Plaintiffs emphasized that the heart of the inquiry in their revised deposition notice to the FWS is the title search and analysis of ownership rights. The amended deposition notice reflects this. For example, topic of inquiry number 2 requests that Defendant produce a Rule 30(b)(6) deponent from the FWS to address "[t]itle investigations and opinions regarding the ownership of Kingman Reef and Palmyra Atoll, including communications with The Nature Conservancy and Suzanne Case." Similarly, topic number 1 seeks testimony on "[t]he ownership interests of any person or entity in Kingman Reef prior to 2001." Topic numbers 5 and 6 seek testimony regarding "Defendant's claims, if any, to title to Kingman Reef" from 1922 to 2001, and "[t]he acquisition, purchase, transfer, [or] sale of Kingman Reef, including but not limited to the status of ownership in said property." Defendant objects to these and related topics on a number of grounds.

First, Defendant objects to Plaintiffs' request that it produce a Rule 30(b)(6) deponent to provide testimony regarding title investigations and opinions regarding the ownership of Palmyra Atoll. This case does not involve Palmyra. Moreover, the question of title to Palmyra was fully litigated between the Fullard-Leo family and the United States and resolved over 60 years ago. See United States v. Fullard-Leo, 331 U.S. 256 (1947). Conducting further discovery on a matter

that has already been fully litigated, that clearly exceeds the limits that the Court imposed on discovery in this case, and that has no relevance to this case, is patently unreasonable.

Second, Defendant objects to Plaintiffs' request that it produce a Rule 30(b)(6) deponent from the FWS to provide testimony regarding title investigations and opinions regarding the ownership of Kingman Reef on the ground that this discovery is unreasonably duplicative and cumulative of prior discovery. Plaintiffs previously deposed Ms. Georgia Shirilla, who is a Supervisory Realty Specialist for the FWS and is the Chief of the Branch of Realty for the region that includes Kingman Reef. Ms. Shirilla was deposed over the course of two days as both as a fact witness and as a Rule 30(b)(6) witness on a number of topics in Kingman Reef Atoll Investments, LLC v. United States, No. CV05-00151 (D. Hawaii).[6] Shirilla Dep. at 9-11 (Def. Ex. 7). During this deposition Plaintiffs questioned Ms. Shirilla extensively regarding the agency's investigation of title and about the conclusions that she made as a result of that investigation. Id. at 66-88, 88-91, 94-95, 103-107, 121-126, 132-133, 141-142, 176-177, 195-196, 201-210, 215-216. Ms. Shirilla testified that she did not order a title report concerning Kingman Reef. Id. at 114. She further testified that she consulted with attorneys in the Solicitor's Office of the Department of the Interior and received oral opinions from that office, but did not receive any written opinions from that office.[7] Id. at 254-256. Ms. Shirilla was also

---

[6]The Rule 30(b)(6) Notice to the FWS and the separate Rule 30(b)(6) Notice to the United States that Ms. Shirilla was produced in response to were marked at her deposition as exhibits 97 and 98 and are attached hereto as part of Defendant's Exhibit 8.

[7]Defendant confirmed in writing to Plaintiffs over 8 months ago that the Solicitor's Office did not have any written legal opinions on the issue of ownership of Kingman Reef in its records. See Letter from Donna Fitzgerald, Dept. of Justice, to Therese Cannata, dated July 3, 2007, at 5 (Def. Ex. 10). The undersigned counsel of record also reconfirmed, in connection with this case, that the Solicitor's Office did not prepare any written opinions of title regarding Kingman Reef.

questioned in detail regarding communications with The Nature Conservancy ("TNC") and Suzanne Case, who is a TNC attorney, which is part of topic of inquiry number 1.[8] Id. at 93, 95-96, 121-122, 127-130, 184. Plaintiffs also deposed Mr. Robert Smith, a retired FWS employee, on such topics.[9] Smith Dep. at 67-68, 115–117 (Def. Ex. 9). Plaintiffs' request for *another* FWS deponent to testify as to each of these matters is unreasonably cumulative and duplicative. This pattern of over-reaching discovery demands that serve no reasonable purpose appears throughout the deposition notices addressed herein.

Third, Defendant objects to Plaintiffs' request for a Rule 30(b)(6) deponent to testify as to Defendant's legal analysis, theories and opinions. The use of a 30(b)(6) deposition to discover an opposing party's legal analysis, theories, opinions or conclusions is improper. See JP Morgan Chase Bank v. Liberty Mutual Ins. Co., 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("depositions, including 30(b)(6) deposition, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means");

---

[8]This portion of the 30(b)(6) notices is part of Plaintiffs' ongoing effort to obtain a copy of a memorandum reportedly prepared by attorney Suzanne Case for TNC. During the telephone conference with the Court on January 8, 2008, TNC attorney Andrew Fogg described this document as a 20-page memorandum regarding ownership of Palmyra that included a 1-page discussion of Kingman Reef. Ms. Shirilla already testified that Ms. Case did not provide her with a copy of this memorandum (Def. Ex. 7, Shirilla Dep. at pp. 93-94), and Defendant confirmed during the call that it does not have a copy of this memorandum. The legal analysis and opinions of TNC or its counsel regarding title to Kingman Reef are privileged and irrelevant to the underlying question of title to or ownership of Kingman Reef. The question of whether Plaintiffs acquired title to Kingman Reef in 1922, as they allege, turns on the historic facts and the applicable law. The facts known to the parties are those set forth in the historic documents that have been disclosed or produced and that are part of the record in this case. The opinions, if any, of a third party on this matter have no probative value in this case.

[9]Smith testified that in 1997 or 1998 someone from TNC informed him Suzanne Case had researched title to Kingman Reef and had determined that "the Fullard-Leo family, at least in her view, did not own Kingman Reef." Smith Dep. at 67-68 (Def. Ex. 9).

Hydramar, Inc. v. General Dynamics Corp., 119 F.R.D. 367, 372 (E.D. Pa. 1988) ("a deponent in the course of a deposition may not be asked questions that would reveal expressly his or his lawyer's mental impressions, conclusions, opinions, or legal theories concerning the instant litigation"); In re Indep. Service Organizations Antitrust Litigation, 168 F.R.D. 651, 654 (D. Kan. 1996) (granting motion for protective order, finding that use of a 30(b)(6) deposition to discover the facts that a party will rely on for its defenses "is overbroad, inefficient, and unreasonable" and "also implicates serious privilege concerns").

Here, the topics of inquiry go well beyond fact discovery and quite clearly seek testimony on Defendant's legal analysis, theories, opinions and conclusions. In topic of inquiry number 2, Plaintiffs seek testimony on Defendant's "title investigations and opinions regarding the ownership of Kingman Reef[.]" Ms. Shirilla already provided testimony on these issues, including testimony that she spoke with attorneys in the Solicitor's Office of the Department of the Interior regarding title to and ownership of Kingman Reef. Ms. Shirilla's discussions with agency counsel regarding title investigations and opinions are privileged. The legal analysis and opinions of the agency attorneys on this matter is also privileged. Plaintiffs are not entitled to conduct discovery on the mental impressions and analysis of Interior's attorneys regarding the government's ownership of Kingman Reef or Plaintiffs' claim regarding Kingman Reef under the guise of a 30(b)(6) deposition. Other portions of Plaintiffs' deposition notice suffer from this same defect. For example, in topic of inquiry number 3, Plaintiffs seek testimony on "Kingman Reef as *Terra Nullius* and as unclaimed land prior to 1922." Any facts known to the FWS that would be relevant to the question of whether Kingman Reef was considered *terra nullius* prior to 1922 are derived from the historic documents that are part of the record. And, in topic of inquiry

number 4, Plaintiffs ask for a Rule 30(b)(6) deponent to testify regarding "[t]he Guano Act [of 1856], the 1934 Executive Order, the 1941 Executive Order and/or the Pickett Act [of 1910]." Any factual knowledge of the FWS regarding these laws and executive orders is derived from the text of the statutes and the orders themselves. The only other possible reason for Plaintiffs to seek deposition testimony about these laws and executive orders and related questions of law is to inquire about Defendant's legal analysis and opinions, which is not permissible. See Evergreen Trading, LLC v. United States, 75 Fed. Cl. 730 (2007) (granting motion for protective order precluding depositions of government employees involved in drafting certain Treasury regulations, finding that the views expressed by individual employees are "irrelevant in construing regulations or determining the validity thereof").

Finally, Plaintiffs are seeking a Rule 30(b)(6) deponent from the FWS to testify as to historical events or facts that predate the involvement of the FWS with Kingman Reef. As Plaintiffs are aware from the documents in the record and the deposition testimony of a number of current and former FWS employees, the FWS's interest in and involvement with Kingman Reef began in the 1990's and the FWS did not have administrative responsibility for Kingman Reef until January 2001. Nonetheless, Plaintiffs are requesting that Defendant produce a Rule 30(b)(6) witness from the FWS to address topics such as "Defendant's claims, if any, to title to Kingman Reef" from 1922 to 2001, and "[t]he ownership interests of any person or entity to Kingman Reef prior to 2001." FWS Dep. Notice, Topic of Inquiry Nos. 1 and 5 (Def. Ex. 1); see also Topic of Inquiry Nos. 3 and 6.[10] The historical facts that may be relevant to the underlying

[10]Defendant further objects to Plaintiffs' demand for deposition testimony regarding the transfer of Kingman Reef from Navy to Interior in September 2000. The facts regarding the transfer, which are detailed in documents provided to Plaintiffs and have been explored by

question of title to or ownership of Kingman Reef or the other limited topics on which discovery has been allowed are set forth in the ancient documents that are part of the record in this case. To the extent that the FWS has any knowledge, as an agency, of these historic facts, that knowledge necessarily derives from the documents that have been disclosed or produced and are part of the record. It is inefficient, duplicative and unduly burdensome to require Defendant to designate a Rule 30(b)(6) witness with no personal knowledge of the historic facts relevant to title and ownership to review the documents already in Plaintiffs' possession in order to testify as to facts that appear in those documents. Moreover, Ms. Shirilla was asked about her review of documents dating from 1922 through the late 1990's and testified that "[f]rom the documents [she] saw the government always claimed ownership" of Kingman Reef, both prior to and after the 1934 executive order. Shirilla Dep., pp. 195-196 (Def. Ex. 7). Further deposition on these topics is unreasonably duplicative and cumulative of prior discovery, and is not reasonably calculated to lead to the discovery of admissible evidence on any of the topics on which discovery has been permitted.

For all of these reasons, Defendant requests that the Court grant this motion for a protective order with respect to the 30(b)(6) deposition notice directed to the FWS.

C. The Rule 30(b)(6) Deposition Notice Directed to the Department of the Interior

In addition to seeking a Rule 30(b)(6) deponent from the FWS, plaintiffs also seek a Rule 30(b)(6) deponent from the Department of the Interior on 11 topics of inquiry that include all of

---

Plaintiffs in depositions taken in connection with the district court action, have no relevance to the underlying title to or ownership of Kingman Reef. See Pacht Dep. at 16-17, 69-73. 16-17, 69-73. (Def. Ex. 14). Further discovery on the transfer also goes well beyond the scope of discovery allowed by the Court.

the topics discussed above in the context of the notice to the FWS.

The FWS is part of the Department of the Interior ("Interior"). As noted above, the Navy transferred Kingman Reef to the Department of the Interior on August 25, 2000, and Interior acknowledged and accepted that transfer on September 1, 2000. By Secretarial Order No. 3223, dated January 18, 2001, Kingman Reef was designated as a National Wildlife Refuge and administrative responsibility was assigned to the FWS. The FWS has administered Kingman Reef since that time. Accordingly, the matters known or reasonably available to the Department of the Interior are the same matters known or reasonably available to the FWS and Plaintiffs' request for a Rule 30(b)(6) deponent from Interior is unnecessarily duplicative of its request for such a deponent from the FWS. In particular, topic of inquiry numbers 1 through 5 in the Interior notice are identical or substantially the same as topic numbers 1 through 6 in the FWS notice. Compare Def. Ex. 1 with Def. Ex. 2. Accordingly, the request for a 30(b)(6) deponent from Interior on these topics is objectionable for all of the reasons stated above with respect to the deposition notice directed to the FWS.

In addition, topic of inquiry number 6 requests a 30(b)(6) deponent to testify as to a letter dated October 3, 1997, from Robert F. Smith, Pacific Islands Manager for the FWS, to the U.S. Army Corps of Engineers. This letter, which relates to "the cleanup of Palmyra Atoll" in the context of the planning process that preceded the separate designations of Palmyra and Kingman Reef as national wildlife refuges, has no relevance to the underlying question of title to or ownership of Kingman Reef, or to any of the other limited topics on which discovery has been allowed. Moreover, Plaintiffs have already deposed Robert Smith, the author of the letter in question. Smith Dep. at 131 (Def. Ex. 9). In addition, Plaintiffs' prior Rule 30(b)(6) deposition

notice to the FWS included this same topic of inquiry, Ms. Shirilla was produced in response to that notice in the district court action and Plaintiffs questioned her about this letter. Def. Ex. 8 (Dep. Ex. 97, FWS Dep. Notice, topic of inquiry 17); Shirilla Dep. at 223 (Def. Ex. 7). Plaintiffs' request for a 30(b)(6) deponent is duplicative and cumulative of discovery already conducted and, given the irrelevance of this letter to any of the topics on which discovery has been permitted by the Court, serves no reasonable purpose other than to harass and impose undue burden and expense on Defendant.

In topic of inquiry number 7, Plaintiffs seek a 30(b)(6) deponent to testify as to a Briefing Statement dated August 18, 1998, including who prepared the document, all versions of the document and any response. However, Plaintiffs already deposed both Robert Smith and Georgia Shirilla about this briefing statement. Smith Dep. at 127-131 (Def. Ex. 9); Shirilla Dep. at 171-178 (Def. Ex. 7). To the extent that Plaintiffs are seeking testimony about the "title review" referenced in that letter, Ms. Shirilla has provided fact testimony on this topic, and Plaintiffs are not entitled to inquire further regarding Defendant's legal analysis and opinions on ownership under the guise of a Rule 30(b)(6) deposition.[11]

In topic of inquiry numbers 8 and 10, Plaintiffs seek a 30(b)(6) deponent to testify regarding several letters from October 2000 regarding appropriations by Congress for land acquisitions by the Department of the Interior. This topic is not relevant to the underlying question of title to or ownership of Kingman Reef or any other topic on which discovery has

[11]Defendant notes that subsequent documents state Interior's conclusion regarding title. See, e.g., Answer Ex. F (Doc. 7, p. 11 ("A private entity claimed to own title at Kingman Reef. The [FWS] requested that the Office of Solicitor, Department of the Interior, review the documents provided by the legal firm representing the claimants. The Solicitor believes the claim is not legally valid."); Compl. Ex. 38 (Doc. 13, pp. 62).

been allowed by the Court.[12] In addition, these topics are objectionable because they are duplicative of topics identified in the 4th Amended Rule 30(b)(6) Deposition Notice to the FWS for which a deponent was previously provided. See Def. Ex. 8 (4th Amended FWS Notice, Topic of Inquiry numbers 7, 8, 13 and 19); see also Shirilla Dep. at pp. 290-296 (Def. Ex. 7). The request for another deponent on this irrelevant topic is unreasonably duplicative and cumulative of prior discovery, and unduly burdensome.

In topic of inquiry number 9, Plaintiffs seek a 30(b)(6) deponent to testify on "Kingman Reef as public lands of the United States of America at any time prior to January 18, 2001, and lists of public lands and reports to the U.S. Congress that Kingman Reef was and is public lands." In response to Plaintiffs' requests for production of documents on this same topic, we have confirmed that Kingman Reef was listed by the FWS in its Annual Report of Lands under its control for fiscal years 2001 through 2006, which is the most recent report available. Def.'s Suppl. Resp. to Pls' First Set of Requests for Production of Docs. (Def. Ex. 15). Defendant also confirmed in response to Plaintiffs' request for the production of "[a]ll documents maintained by the U.S. Department of the Interior, Bureau of Land Management demonstrating that Kingman Reef Atoll was public land of the United States[,]" that "Defendant's search of records maintained by the Bureau of Land Management ("BLM") did not produce any documents

[12] In the district court action, Plaintiff KRAI argued that the government sought and approved funding for the acquisition of Kingman Reef. The district court rejected this argument and found in its decision that "[i]n fact, the FWS's Budget Justification for fiscal year 2001 lists the 'Kingman Reef Wildlife Refuge' as an approved item for acquisition and states that 'Kingman Reef will be acquired via a no-cost transfer from the Department of Defense.'" Kingman Reef Atoll Investments v. United States, Civ. No. 05-00151 JMS/BMK, 2007 WL 2630532, *4 (D. Haw. 2007). See also id. *10 (finding that "[t]he record does not support Plaintiffs' claim" that the government sought federal funds to finance the purchase of Kingman Reef from them).

responsive to this request." Def.'s Resp. to Pls.' Requests for Production of Docs. (Set Two) (Def. Ex. 16). Accordingly, the document production in this case demonstrates that Interior has no such "lists" and Interior cannot provide 30(b)(6) testimony regarding the actions of other federal agencies. Moreover, the question of whether Kingman Reef was identified on any list of public lands or reports to Congress is not relevant to or probative of the underlying question of title to or ownership of Kingman Reef. Any other inquiry about "Kingman Reef as public lands of the United States" prior to 2001 goes to either historical facts, which are contained in the documents already disclosed or produced, or to Defendant's legal analysis of the question of title and ownership, which is not a proper subject for a 30(b)(6) deposition.

For all of these reasons, the Court should grant Defendant's motion for a protective order precluding a 30(b)(6) deposition of the Department of the Interior at this time.

D. The Rule 30(b)(6) Notice Directed to the Department of the Navy

Defendant's objections to the Rule 30(b)(6) notice directed to Navy are similar to the objections stated above with respect to the notices directed to Interior and FWS.

As above, Defendant objects to Plaintiffs' request that it produce a Rule 30(b)(6) witness to provide testimony as to historical facts. The Navy, like the other agencies, does not have a witness with any personal knowledge or direct involvement in events, Navy activities or actions and/or correspondence that occurred decades ago. For example, the documents in the record reflect communications between Mr. Thurston and Navy officials in Pearl Harbor regarding Kingman Reef in 1922 (Doc. 36-2, p. 1 of 17) and again in 1925 (Doc. 36-2, pp. 6-8 of 17). The records further reflect that the Navy inspected Kingman Reef in 1921 and conducted surveys of Kingman Reef in 1926 and again in 1927. Def. Ex. 11 (US0008-9); Def. Ex. 12-13 (US0037-40;

US0065-66). In addition, the records show that the Navy examined questions of ownership and sovereignty of Kingman Reef and other Pacific islands in 1934, prior to the President's issuance of Executive Order No. 6935 (Dec. 29, 1934), and looked into the ownership of Kingman Reef again in the mid-1930's. The numerous letters between the Fullard-Leo family and their representatives and the government during the 1937 to 1938 time period, including correspondence and documentation of meetings with the Navy, are also part of the record. See Answer Exs. D-E (Doc. 7); Doc. 36-4, pp. 1-2, 6. Internal Navy memorandum from this same time period regarding the ownership of Kingman Reef are also part of the record. See Doc. 36-4, p. 6; Doc. 30-5, pp. 2–5; Doc. 36-3.

The authenticity of these ancient documents is not disputed. In addition, to the extent that the Navy took a position on the topics listed in the amended deposition notice that relate to these historic facts and correspondence, that position is reflected in the documents that have been produced. A 30(b)(6) deponent could do no more than testify as to what the documents themselves state, which is an inefficient, extremely burdensome, expensive, and ultimately inappropriate way for Plaintiffs to discover historic facts. Accordingly, no reasonable purpose is served by a Rule 30(b)(6) deposition of the Navy with respect to the historic facts, events and/or correspondence that are relevant to the underlying question of title to or ownership of Kingman Reef, or any of the other issues on which discovery has been allowed. Accordingly, Defendant opposes such a deposition on the ground that the testimony sought is unreasonably cumulative and duplicative and the information sought through this testimony is obtainable directly from the

historic documents in question. This objection applies to topic numbers 1 through 9.[13] In addition, topic of inquiry numbers 1, 3, 4, 5 and 6 are identical to topics included in the 30(b)(6) deposition notices directed to the FWS and Interior. Compare Def. Ex. 3 with Def. Ex. 1–2. Defendant's specific objections to these topics are set forth above.

To the extent that Plaintiffs seek a 30(b)(6) witness from the Navy to testify as to more recent "[t]itle investigations and opinions regarding the ownership of Kingman Reef and Palmyra Atoll, including those by private parties such as The Nature Conservancy[,]" this request is also unreasonably cumulative and duplicative of prior discovery. In the district court action, Plaintiffs took the deposition of Dennis Pacht, the Navy real estate specialist who was directly involved in the process to transfer Kingman Reef from the Navy to Interior. Mr. Pacht testified that he was not aware of any title dispute involving Kingman Reef prior to the Navy's transfer of Kingman Reef to Interior in 2000. Pacht Dep. at pp. 57-58 (Def. Ex. 14). Mr. Pacht further testified that his office, which handles title work for the region where Kingman Reef is located, was not asked to and did not conduct title research on Kingman Reef. Id. at pp. 20-21; 34-36; 54-56; 79, 81. In addition, Mr. Pacht was asked about communications with TNC and testified that he did not have any communications with TNC. The request for a Rule 30(b)(6) deponent on this topic is thus duplicative, irrelevant, unreasonable and an unnecessary waste of resources.

---

[13] Some of these topics of inquiry are also irrelevant to any of the issues on which discovery has been allowed by the Court. For example, topic number 2 seeks testimony as to "[t]he Hydrographic Department's records, studies, surveys and/or communications concerning Kingman Reef." As noted above, those surveys occurred in the 1920's and documents related to those surveys have been produced. Moreover, testimony regarding surveys conducted some 80 years ago is not relevant to the underlying question of title or ownership of Kingman Reef, nor is the deposition of a Navy witness with no personal knowledge of these surveys likely to lead to the discovery of any relevant or admissible evidence.

In addition, in topic of inquiry number 7, Plaintiffs seeks a 30(b)(6) witness from the Navy to testify regarding inquiries for access to Kingman Reef between 1922 and 2000. This request is unreasonably cumulative and duplicative in that Plaintiffs conducted written discovery on this topic, responsive documents have been produced, and Plaintiffs already deposed a 30(b)(6) witness from the Navy regarding access issues in the district court action. See Dep. of Lt. Ramil Salvador at 9-12, 35-36, 40-41, 52-57 (Def. Ex. 18). Moreover, testimony regarding inquires for access to Kingman Reef is not relevant to the underlying question of title to or ownership of Kingman Reef, nor is further inquiry on access-related issues reasonably calculated to lead to the discovery of admissible evidence on the underlying question of title to or ownership of Kingman Reef or on any of the other limited issues on which discovery has been allowed.[14]

In topic of inquiry number 8, Plaintiffs seek a 30(b)(6) deponent from the Navy to testify as to the landing of planes at or near Kingman Reef by Pan American Airways. The documents in the record indicates that this activity occurred in the 1930's pursuant to a revocable permit issued by the Navy. See Def. Ex. 4 to Def.'s Reply Brief, dated May 11, 2007 (Doc. 31-3); Def.'s Suppl. Appx., Doc. 36-4, p. 21. The historic facts are set forth in the documents themselves and no purpose is served by a Rule 30(b)(6) deposition on this topic. In addition, this topic is irrelevant to the underlying question of title to or ownership of Kingman Reef or to any

[14]1The issue of access and control over access to Kingman Reef was raised by Plaintiff KRAI in the district court action as part of KRAI's argument that the government had abandoned its ownership of Kingman Reef. The district court rejected this argument, finding that "[a]lthough there is no evidence in the record that the Navy regularly patrolled Kingman Reef, the 1934 and 1941 Executive Orders, Navy regulations, and operating instructions, which remain in effect, make clear that the Navy controlled and continues to control entry into Kingman Reef [Naval Defensive Sea Area]." Kingman Reef Atoll Investments v. United States, Civ. No. 05-00151 JMS/BMK, 2007 WL 2630532, *10 (D. Haw. 2007).

of the other limited issues on which discovery has been permitted.

In topic of inquiry number 9, plaintiffs ask us for the production of a Rule 30(b)(6) deponent from the Navy to testify as to "[t]he transport of Plaintiff, Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio to or over Kingman Reef." Any transport "to or over" Kingman Reef is not relevant to or probative of the underlying question of title to or ownership of Kingman Reef. In addition, the facts regarding any such transport are known to these three individuals, each of whom has provided declaration or deposition testimony on this very topic. See Decl. of Ainsley Fullard-Leo (Doc. 30-15); Decl. of Dudley Fullard-Leo (Doc. 30-16); Dudley Fullard-Leo Dep. (Doc. 31-2, pp. 3-4 of 12). Moreover, Plaintiffs already took the deposition of Commander Jeff Good, U.S. Coast Guard. Commander Good was deposed as both a fact witness and as a 30(b)(6) witness for the United States with respect to the knowledge of the U.S. Coast Guard on a number of topics, including the transport of the Fullard-Leos to or over Kingman Reef. See Good Dep. at 18-29, 32-34, 61-62 (Def. Ex. 17). Given the irrelevance of these facts to the underlying question of title and ownership, and the fact that each of the individuals identified has personal knowledge of their transport over Kingman Reef and can (and have) testified to such, and the prior deposition on this topic, the burden and expense of a Rule 30(b)(6) deposition on this topic far outweighs any conceivable benefit.

Finally, in topic of inquiry number 10, Plaintiffs seek testimony on "[t]he planned interdepartmental transfer of Kingman Reef from you to any other United States governmental agency or department." Dennis Pacht, the Navy real estate specialist who was directly involved in the process leading to the transfer of Kingman Reef from the Navy to Interior, already provided extensive deposition testimony on this subject. The request for a Rule 30(b)(6) witness

from the Navy to testify as to these same topics, is unreasonably cumulative and duplicative of this prior discovery. In addition, the referenced transfer, which occurred in 2000 (Compl. Ex. 27), is not relevant to or probative of the underlying question of title and ownership, including the question of whether the plaintiffs' predecessors-in-interest acquired private title to Kingman Reef in 1922, as they allege.

For all of these reasons, Plaintiffs' request for a 30(b)(6) deposition of the Navy, like the others noticed by Plaintiffs, should be precluded.

E. The Rule 30(b)(6) Deposition Notice Directed to the Department of State

The documents disclosures and production in the district court action and in this case indicate that the State Department's involvement with title, ownership and sovereignty issues regarding Kingman Reef is historic in nature. All State Department documents, which include correspondence to and from the State Department and some internal memoranda, are from the 1930's or earlier.[15] See Compl. Exs. 5, 7 Doc. 30-7, p.1; Doc. 36-3, pp. 1-12; Doc. 36-4, pp. 3-5 Plaintiffs continue to push for a 30(b)(6) deposition on the ground that the historic documents that they have reviewed place the State Department "at the epicenter" of the inquiry regarding title to and ownership of Kingman Reef. However, this so-called "epicenter" was 60 to 70 years ago or more. The amended deposition notice directed to the State Department reflects this significant fact by listing topics of inquiry that focus on these historic events and facts. Defendant's response to Plaintiffs' requests for production of documents regarding these historic events and facts included both a search of State Department records and NARA facilities. All

[15]Much of the correspondence between the Plaintiffs and the State Department from the 1937 to 1938 time period is already part of the record in this case. See Answer Exs. C-E (Doc. 7); Compl. Exs. 5 and 7.

State Department documents related to Kingman Reef located in these searches have been produced. Plaintiffs' demand that Defendant now produce a 30(b)(6) witness to testify for the State Department regarding historical facts is unreasonably duplicative and cumulative of prior discovery, and extremely burdensome and inefficient given that all of the facts known to the State Department as an agency appear in the historical record. This deposition, like the others discussed in this motion, should not be permitted.

The deposition notice directed to the State Department includes eight topics of inquiry. Topic numbers 1 through 4, and 6 through 8 are identical or substantially similar to topics 1 through 5 in the FWS notice and topics 1 through 5 and 9 in the Interior notice that are discussed above, and are objectionable for the same reasons. Compare Def. Ex. 4 (State Dept. notice with Def. Ex. 1–2 (FWS and Interior notices).

In addition, in topic of inquiry number 5 Plaintiffs seek testimony from the State Department about "[e]xcerpts from The State Department's memorandum dated November 9, 1934, regarding Kingman Reef[,]" which was prepared by the Department's Legal Advisor. Def. Ex. 4. Again, a 30(b)(6) deponent could do no more than testify as to what this memorandum states, which is unreasonably cumulative, duplicative and unnecessarily wasteful given that Plaintiffs have the 1934 memorandum in question. In addition, Plaintiffs are not entitled to take a 30(b)(6) deposition of the State Department for the purpose of obtaining privileged legal analysis or opinions regarding this 1934 memorandum.

Other topics of inquiry, in addition to seeking testimony on historic facts that may be found in the documents already produced, also appear to seek discovery of the government's legal analysis and opinions under the guise of a 30(b)(6) deposition. For example, topic of

inquiry number 3 seeks State Department testimony on “views, opinions, claims and studies concerning the ownership of Kingman Reef at any time prior to January 18, 2001.” To the extent that the State Department expressed any views or opinions, dealt with any claims to Kingman Reef, or undertook any relevant studies, that information is reflected in the documents that have been disclosed or produced and are in Plaintiffs’ possession. With respect to the content of those documents, at Rule 30(b)(6) deponent could do no more than testify as to what the documents themselves state. Such a deponent cannot offer any legal analysis regarding the documents or provide Plaintiffs with a legal opinion. These same objections apply to topic of inquiry numbers 4, 6 and 8.

Finally, in topic of inquiry number 7, Plaintiffs seek a Rule 30(b)(6) deponent from the State Department to testify as to “[r]ecords, lists, memoranda, reports to Congress and/or any other form, of documentation of the public land holdings of defendant prior to January 18, 2001, including any such list or record reflecting Kingman Reef as public lands of the United States.” Defendant objects to this topic because a State Department designee cannot testify regarding the records of other agencies, the request is duplicative of Plaintiffs’ document production requests and any such document located within the State Department’s records were produced, and the State Department records located that are potentially responsive to this request are historic documents. See, for example, Department of State, Legal Advisor, Memorandum, dated Nov. 7, 1934 (excerpt filed as Doc. 36-3, p. 1 of 15) (referring to a Navy memorandum that lists Kingman Reef as under the ownership of the United States).

Simply stated, no reasonable purpose is served by a Rule 30(b)(6) deposition of the State Department, and Plaintiffs’ request to take such a deposition should be rejected.

F. The Rule 30(b)(6) Deposition Notice Directed to GSA

During written discovery in this case, Plaintiffs requested "[c]opies of the U.S. General Services Administration's worldwide inventory of federal real property for each year that Kingman Reef Atoll appeared on said list." Def.'s Resp. to Pls.' Request for Prod. of Documents (Set Two), Request No. 1 (served Nov. 19, 2007) (Def. Ex. 16). Subject to and without waiving a number of objections, Defendant responded to the request for production of GSA records by identifying a number of GSA reports that appeared to be responsive to the request, and further stating that "[t]here is no reference to any property owned by the United States in Kingman Reef Atoll in any of these documents." Id. Although not required by the applicable discovery rules, Defendant also explained how these reports are compiled. Defendant's response included a reference to Executive Order 13327 (Feb. 6, 2004), which explains the reporting requirements relative to real property reports that GSA now prepares each year based on information that other federal agencies are required to submit. Notably, Executive Order 13327 excepts from reporting requirements "public domain land (including lands withdrawn for military purposes) or land reserved or dedicated for national forest, national park, or national wildlife refuge purposes except for improvements on those lands." E.O. 13327, Sec. 2. Kingman Reef is therefore excepted from the reporting requirements under Executive Order 13327. Notwithstanding this detailed response, Plaintiffs continue to demand a 30(b)(6) witness to testify about "[t]he creation and maintenance of the U.S. General Services Administration's worldwide inventory of federal real property *for each year that Kingman Reef Atoll appeared on said list*." (topic of inquiry number 3). As our prior discovery responses state quite clearly, Kingman Reef does not appear on the GSA reports identified and described in response to Plaintiffs' document production

requests. Moreover, whether Kingman Reef is or is not listed on the GSA reports in question has no bearing on the underlying question of title to or ownership of Kingman Reef. The request for a 30(b)(6) deponent on this topic is duplicative and serves no reasonable purpose.

In addition, topic of inquiry numbers 1 and 2 seeks testimony regarding other lists or reports of public lands. No such lists were located in the search of GSA records in connection with this case, and GSA cannot testify as to any lists or reports compiled by other agencies.

In topic of inquiry number 4, Plaintiffs seek to depose a GSA witness on "[t]he title and ownership of Kingman Reef." The underlying question of title and ownership of Kingman Reef will be resolved on the historic facts and the applicable law. GSA was not created until 1949, it has never had any administrative responsibility for Kingman Reef, and there is no indication in the voluminous record in this case that GSA had any involvement in the historic events, actions or communications regarding Kingman Reef that are relevant to that underlying question. Plaintiffs' demand that Defendant produce a GSA witness to testify as such matters is unreasonable, as is their refusal to withdraw this request prior to this briefing.

The final topic on which Plaintiffs seek a GSA witness is "[t]he GSA's involvement, if any, in the sale, purchase, transfer of Palmyra and/or Kingman Reef." However, Mr. Pacht, the Navy realty specialist who worked on the transfer of Kingman Reef, already testified that GSA had no role in the transfer of Kingman Reef. Pacht Dep. at 73 (Def. Ex. 14). Mr. Pacht explained in response to Plaintiffs' questions that the Navy determined that it had delegated authority to transfer Kingman Reef directly to Interior rather than going through GSA's disposal process for excess federal property. Id. at 16-17, 69-73. Plaintiffs' demand for a GSA witness on this topic after having learned through prior deposition testimony that GSA was not involved

in the transfer of Kingman Reef serves no reasonable purpose other than needless harassment of Defendant. In addition, the details of this transfer are not relevant to the underlying question of title to or ownership of Kingman Reef.

Accordingly, Plaintiffs' demand that Defendant produce a 30(b)(6) witness from GSA is unreasonably duplicative of prior discovery and is not reasonably calculated to lead to the discovery of admissible evidence on the underlying question of title to or ownership of Kingman Reef, or any of the other limited issues on which discovery has been allowed by the Court. Defendant therefore respectfully requests that the Court issue a protective order that precludes this deposition.

G. The Subpoena and Deposition Notice Served on Former Interior Employee William Brown

In addition to the 30(b)(6) deposition notices addressed above, Plaintiffs have served a subpoena and notice of deposition on William Brown, a political appointee who served as Science Advisor to Secretary of the Interior Bruce Babbitt during the second term of the Clinton Administration (1997 to 2001).[16] The subpoena and deposition notice include overly broad document production requests that exceed the scope of discovery allowed by the Court. In addition, Plaintiffs seek to take the deposition of Mr. Brown. However, such a deposition is not likely to lead to the discovery of any information relevant to or probative of the underlying question of title to or ownership of Kingman Reef, or any other issue on which the Court has allowed discovery.

[16]This subpoena was served on Mr. Brown on October 25, 2007. In accordance with RCFC 45(c)(1), Defendant first presented timely objections to this subpoena by letter dated November 8, 2007. The parties' meet and confer process has included additional discussions regarding the subpoena and related deposition notice.

Beginning with the documents production requests included in the amended deposition notice to Mr. Brown (Def. Ex. 6), Defendant has agreed to have Mr. Brown search for all documents in his possession that relate or refer to title to or ownership of Kingman Reef, or any of the other issues on which the Court has allowed discovery. Defendant also has agreed to produce all such non-privileged documents in Mr. Brown's possession and, if there are any privileged documents in Mr. Brown's possession, Defendant will provide Plaintiffs with a privilege log that identifies those documents and the privilege asserted. This undertaking is responsive to request for production numbers 1 through 3 and 6, as limited by the Court's prior instructions regarding the scope of discovery.

Defendant objects to the remaining document production requests as overly broad. For example, documents regarding Palmyra are irrelevant, beyond the scope of discovery and not likely to lead to the discovery of relevant or admissible evidence regarding the underlying question of title to or ownership of Kingman Reef. Documents regarding requests to Congress for appropriations are objectionable for the same reasons, particularly where it is undisputed that Kingman Reef was transferred from the Navy to the Interior in 2000. The remaining requests, when properly limited in accordance with the Court's discovery instructions, are duplicative of the requests to which Defendant has agreed to respond. When not so limited, these requests exceed the scope of discovery.

With respect to the requested deposition of Mr. Brown, Defendant objects to this deposition as unreasonably duplicative and cumulative of prior discovery, and as imposing an undue burden on a former employee. Defendant has not seen (nor have Plaintiffs identified) any documents indicating that Mr. Brown, who was the Secretary's Science Advisor, rendered any

opinion regarding title. Moreover, the facts relevant to the underlying question of title to or ownership of Kingman Reef are the historic facts that appear in the documents that are in Plaintiffs' possession. No purpose is served by deposing random current or former employees of the Department of the Interior (or any other federal agency), particularly absent any documentation that connects Mr. Brown to the question of title and ownership. Assuming for the sake of argument that Mr. Brown had conversations with agency attorneys regarding those questions, those discussions are necessarily privileged and cannot be discovered through a deposition of Mr. Brown. Similarly, even if Mr. Brown happens to have an opinion or views regarding title to or ownership of Kingman Reef, those personal views and opinions have no bearing on the underlying question of title to or ownership of Kingman Reef. In short, Plaintiffs have made no showing that there is a substantial need to depose Mr. Brown in order to gather facts relevant to the limited issues on which discovery has been permitted. Defendant therefore opposes the taking of this deposition as imposing an undue burden on a former Interior employee and requests that the Court preclude the taking of this deposition.

## III. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its motion for a protective order to preclude the taking of depositions under RCFC 30(b)(6) of the FWS, Interior, Navy, State Department and GSA, and to preclude the deposition of former Interior employee William Brown pursuant to the subpoena and deposition notice served on Mr. Brown.

Dated: March 11, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s/Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL (603) 230-2583/FAX (603) 225-1577
E-MAIL kristine.tardiff@usdoj.gov

OF COUNSEL:

Diane Hoobler
United States Department of the Interior
Office of the Solicitor
Pacific Northwest Region
500 NE Multnomah St., Suite 607
Portland, OR 97232

Robert J. Smith
Assistant Chief (Environmental Litigation)
Navy Litigation Office
720 Kennon Street, SE, Room 236
Washington Navy Yard, DC 20374-5013

J. Ashley Roach
United States Department of State
Office of the Legal Advisor
Oceans, International Environmental & Scientific Affairs
2201 C Street, NW
Washington, DC 20520-6419

Thomas Hawkins
Acting Deputy Assoc. General Counsel
Real Property Division
Office of General Counsel
General Services Administration
1800 F Street, NW
Washington, DC 20405