IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KINGMAN REEF ATOLL INVESTMENTS, L.L.C., a Hawaii limited liability company; KINGMAN REEF ATOLL DEVELOPMENT, L.L.C., a Hawaii limited liability company,** | **NO. 06-828L** |
| **Plaintiffs,** | **Notice of Deposition of William Brown** |
| **v.** | |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

NOTICE OF DEPOSITION OF WILLIAM BROWN

CHRISTIAN P. PORTER
Brooks Tom Porter & Quitiquit, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Tel: 808-526-3011
Fax: 808-523-1171
Email: cporter@btpqlaw.com

OF COUNSEL:

Therese Y. Cannata, CA Bar No. 88032
Michael M. Ching, CA Bar No. 209426
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111
Tel: 415-409-8900
Fax: 415-409-8904
Email: tcannata@ccolaw.com

TO: Kristine Tardiff
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Attorneys for Defendant

YOU ARE HEREBY NOTIFIED that Plaintiff KINGMAN REEF ATOLL INVESTMENTS, L.L.C., by and through its attorneys, Cannata, Ching & O'Toole, LLP, will take the deposition of WILLIAM BROWN, at 111 South Calvert Street, Suite 2700, Baltimore, Maryland, 21202 commencing at 10:00 a.m., December 3, 2007.

YOU ARE FURTHER NOTIFIED that William Brown is not a party to this action. So far as is known to the deposing party, Mr. Brown's business address and phone number are as follows:

William Brown
The Academy of Natural Sciences
1900 Benjamin Franklin Parkway
Philadelphia, PA 19103
Tel: 215-299-1016

Said deponent will be served with a deposition subpoena. A copy of the deposition subpoena is attached hereto as EXHIBIT A.

This deposition will be taken stenographically before a deposition officer who is duly authorized by law to administer oaths and take the testimony in the State of California.

Said deposition will be taken upon oral examination, pursuant to Rule 30 of the Federal Rules of Civil Procedure, and will continue from day to day until completed. You are invited to attend and cross-examine.

A list of all parties or attorneys for parties for whom this Notice of Deposition is being served is shown on the accompanying Proof of Service.

DATED: October 25, 2007

CANNATA CHING & O'TOOLE, LLP

By ______________________

Therese Y. Cannata, CA Bar No. 88032
Attorneys for Plaintiff Kingman Reef Atoll Investments, L.L.C.

# EXHIBIT A

AO88 (Rev. 12/06) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

Eastern DISTRICT OF Pennsylvania

Kingman Reef Atoll Investments, L.L.C., et al

V.

The United States of America

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 06-828L

TO: William Brown

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| 111 South Calvert Street, Suite 2700, Baltimore, Maryland, 21202 | 12/3/2007 10:00 am |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| 111 South Calvert Street, Suite 2700, Baltimore, Maryland, 21202 | 12/3/2007 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] | 10-25-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Therese Y. Cannata
Cannata, Ching & O'Toole, LLP 100 Pine Street, Suite 1775, San Francisco, CA 94111 (415) 409-8900

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

KRAI v. US, No. 06-828L (Fed. Cl.)
Def.'s Motion for a Protective Order
Exhibit 6

ATTACHMENT A

## DEFINITIONS

Unless context otherwise indicates, the following words and phrases shall have the meaning given here.

1. The terms "you" and/or "your" shall mean the deponent William Brown.

2. The term "this litigation" shall mean the action as above captioned styled *Kingman Reef Atoll Investments, L.L.C., et al v. The United States of America,* U.S. Court of Federal Claims No. 06-828L.

3. The term "Kingman Reef " means that certain atoll, the subject of this lawsuit, that is located approximately 900 nautical miles southwest of Hawaii in the Pacific Ocean and 33 nautical miles north of the Palmyra Atoll and essentially sits half-way between the Hawaiian Islands and Samoa at Latitude 6° 24' 37" North and Longitude 162° 22' West.

4. The term "person" shall mean and include all natural persons, corporations, general partnerships, limited partnerships, joint ventures, trusts, estates, unincorporated business entities or associations, governmental bodies or entities, and any and all other legal entities.

5. The term "document(s)" as used herein is defined to include any and all manner of written, typed, printed, reproduced, filmed or recorded material, including computer data, emails, and all photographs, maps, books, video recordings, pictures, plans or other representations of any kind, or anything pertaining, describing, referencing or relating, directly or indirectly, in whole or in part, to the subject matter of each request, and the term includes, but is not limited to, the following: (a) Any and all originals and all copies of any and all communications; (b) Any and all writings of any kind or type whatsoever; (c) Any and all tangible things or items, whether handwritten, typed, printed, tape recorded, electronic recordings, video-tape recorded, visually

reproduced, stenographically or otherwise reproduced; (d) Any and all books and pamphlets; (e) Any and all microtapes, microfilm, photographs, movies, recordings, tape recordings, and video-tape recordings, stenographically or otherwise reproduced; (f) Any and all diaries and appointment books; (g) Any and all cables, wires, memoranda, reports, notes, minutes and interoffice communications; (h) Any and all contracts and agreements; (i) Any and all other legal instruments or official documents; (j) Any and all deeds, leases, mortgages, assignments or other instruments relating to real property or personal property; (k) Any and all published material of any kind; (l) Any and all financial statements, balance sheets, profit and loss statements, statements of financial condition, income tax returns, worksheets, reports, projections, schedules, ledgers, books, records, and journals; (m) Any and all vouchers, expense accounts, receipts, invoices, bills, orders, billings and checks; (n) Any and all investigation or incident reports; (o) Any and all files and records, including, but not limited to, computer files, emails and all computer back-up disks and/or storage devices; (p) Any and all notes or summaries of conferences, meetings, discussions, interviews, or telephone conversations or messages; (q) Any and all phone message, phone logs, records of phone calls, faxes, fax logs, records of faxes sent and received; (r) Any and all writings, communications (including oral, visual or written) of things which the party upon whom this request is served intends or may use at the trial of the subject lawsuit or in any pleading to be filed in this lawsuit; (s) Any and all writings, communications (including oral, visual or written) or things which in any way relate or involve this subject lawsuit; (t) Any and all drafts or draft copies of any of the above; (u) Any and all amendments or changes to any of the above.

**DOCUMENTS REQUESTED**

1. All documents and communications that refer, relate to, or describe Kingman Reef Atoll.

2. All documents or communications that refer, relate to, or summarize the creation and execution of Executive Order 13089 on Coral Reef Protection signed on June 11, 1998.

3. All documents or communications that refer, summarize, describe or relate to the protection of Palmyra Atoll and/or Kingman Reef Atoll.

4. All documents that memorialize or constitute research on the ownership of Palmyra Atoll or Kingman Reef Atoll.

5. All documents or communications that refer, relate to, or constitute reports or studies prepared pursuant to Executive Order 13089, including section 5, subsections (a) – (d) of Executive Order 13089, regarding Palmyra Atoll and Kingman Reef Atoll.

6. All documents that refer to, relate to, summarize or describe title to Kingman Reef or any submerged reefs, lagoons or waters within a three-mile radius of Kingman Reef.

7. All documents that refer to, relate to, summarize or describe ownership of Kingman Reef or any submerged reefs, lagoons or waters within a three-mile radius of Kingman Reef.

8. All documents that refer to, relate to, summarize or describe the economic value of coral reefs, including without limitation appraisals, valuations, and feasibility studies.

9. All documents that refer to, relate to, summarize or describe the ownership of coral reefs, and submerged lands, lagoons or waters within a three-mile radius of coral reefs.

10. All documents or communications that refer, relate to or memorialize any requests to obtain congressional approval to appropriate money to purchase Palmyra Atoll and Kingman Reef Atoll.

11. All documents or communications that refer or relate to Order 3223 signed on January 18, 2001, establishing the Kingman Reef National Wildlife Refuge.

12. All documents or communications that refer, relate to or memorialize your discussions

with any person regarding the establishment of a National Wildlife Refuge over Kingman Reef Atoll.

13. All documents that refer, relate to, or memorialize any communications between you and Robert Smith regarding Kingman Reef Atoll.

14. All documents that refer, relate to, or memorialize any communications between you and any other person regarding Kingman Reef Atoll.

15. All documents or communications that refer or relate to any of the following: Ainsley Fullard–Leo, Dudley Fullard–Leo, Ellen Fullard–Leo, Leslie Fullard–Leo, Peter Savio, Kingman Reef Atoll Investments, L.L.C., Kingman Reef Atoll Development, L.L.C., Lorrin A. Thurston, and/or T.E. Manase Mansur.

16. Any documents or communications concerning this litigation.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al.,** | **No. 06-828L** |
| **Plaintiffs,** | **CERTIFICATE OF SERVICE** |
| **v.** | **RE: NOTICE OF DEPOSITION OF WILLIAM BROWN** |
| **THE UNITED STATES OF AMERICA; Defendant.** | |

**CERTIFICATE OF SERVICE**

CHRISTIAN P. PORTER
Brooks Tom Porter & Quitiquit, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Tel: 808-526-3011
Fax: 808-523-1171
Email: cporter@btpqlaw.com

OF COUNSEL:

Therese Y. Cannata, CA Bar No. 88032
Michael M. Ching, CA Bar No. 209426
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111
Tel: 415-409-8900
Fax: 415-409-8904
Email: tcannata@ccolaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two copies of NOTICE OF DEPOSITION OF WILLIAM BROWN will be duly served upon the following parties at their last known address by first class U.S. Mail, postage prepaid on October 25, 2007:

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environmental & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
kristine.tardiff@usdoj.gov

**DATED**: San Francisco, California, October 25, 2007.

By ______________________
LINA CHENG

DRAFT

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KINGMAN REEF ATOLL INVESTMENTS, L.L.C., a Hawaii limited liability company; KINGMAN REEF ATOLL DEVELOPMENT, L.L.C., a Hawaii limited liability company,** | **NO. 06-828L** |
| **Plaintiffs,** | **Amended Notice of Deposition of William Brown** |
| **v.** | |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

AMENDED NOTICE OF DEPOSITION OF WILLIAM BROWN

CHRISTIAN P. PORTER
Brooks Tom Porter & Quitiquit, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Tel: 808-526-3011
Fax: 808-523-1171
Email: cporter@btpqlaw.com

OF COUNSEL:

Therese Y. Cannata, CA Bar No. 88032
Michael M. Ching, CA Bar No. 209426
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111
Tel: 415-409-8900
Fax: 415-409-8904
Email: tcannata@ccolaw.com

TO: Kristine Tardiff
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Attorneys for Defendant

YOU ARE HEREBY NOTIFIED that Plaintiff KINGMAN REEF ATOLL INVESTMENTS, L.L.C., by and through its attorneys, Cannata, Ching & O'Toole, LLP, will take the deposition of WILLIAM BROWN, at ___________________________commencing at 10:00 a.m., _____________________, 2008.

YOU ARE FURTHER NOTIFIED that William Brown is not a party to this action. So far as is known to the deposing party, Mr. Brown's business address and phone number are as follows:

William Brown
The Academy of Natural Sciences
1900 Benjamin Franklin Parkway
Philadelphia, PA 19103
Tel: 215-299-1016

Said deponent will be served with a deposition subpoena. A copy of the deposition subpoena is attached hereto as ATTACHMENT A.

This deposition will be taken stenographically before a deposition officer who is duly authorized by law to administer oaths and take the testimony in the State of California.

Said deposition will be taken upon oral examination, pursuant to Rule 30 of the Federal Rules of Civil Procedure, and will continue from day to day until completed. You are invited to attend and cross-examine.

A list of all parties or attorneys for parties for whom this Notice of Deposition is being served is shown on the accompanying Proof of Service.

DATED: February ___, 2008

CANNATA CHING & O'TOOLE, LLP

DRAFT

By ______________________________

Therese Y. Cannata, CA Bar No. 88032
Attorneys for Plaintiff Kingman Reef Atoll Investments, L.L.C.

ATTACHMENT A

**DEFINITIONS**

Unless context otherwise indicates, the following words and phrases shall have the meaning given here.

1. The terms "you" and/or "your" shall mean the deponent William Brown.

2. The term "this litigation" shall mean the action as above captioned styled *Kingman Reef Atoll Investments, L.L.C., et al v. The United States of America,* U.S. Court of Federal Claims No. 06-828L.

3. The term "Kingman Reef " means that certain atoll, the subject of this lawsuit, that is located approximately 900 nautical miles southwest of Hawaii in the Pacific Ocean and 33 nautical miles north of the Palmyra Atoll and essentially sits half-way between the Hawaiian Islands and Samoa at Latitude 6° 24' 37" North and Longitude 162° 22' West.

4. The term "person" shall mean and include all natural persons, corporations, general partnerships, limited partnerships, joint ventures, trusts, estates, unincorporated business entities or associations, governmental bodies or entities, and any and all other legal entities.

5. The term "document(s)" as used herein is defined to include any and all manner of written, typed, printed, reproduced, filmed or recorded material, including computer data, emails, and all photographs, maps, books, video recordings, pictures, plans or other representations of any kind, or anything pertaining, describing, referencing or relating, directly or indirectly, in whole or in part, to the subject matter of each request, and the term includes, but is not limited to, the following: (a) Any and all originals and all copies of any and all communications; (b) Any and all writings of any kind or type whatsoever; (c) Any and all tangible things or items, whether handwritten, typed, printed, tape recorded, electronic recordings, video-tape recorded, visually

reproduced, stenographically or otherwise reproduced; (d) Any and all books and pamphlets; (e) Any and all microtapes, microfilm, photographs, movies, recordings, tape recordings, and video-tape recordings, stenographically or otherwise reproduced; (f) Any and all diaries and appointment books; (g) Any and all cables, wires, memoranda, reports, notes, minutes and interoffice communications; (h) Any and all contracts and agreements; (i) Any and all other legal instruments or official documents; (j) Any and all deeds, leases, mortgages, assignments or other instruments relating to real property or personal property; (k) Any and all published material of any kind; (l) Any and all financial statements, balance sheets, profit and loss statements, statements of financial condition, income tax returns, worksheets, reports, projections, schedules, ledgers, books, records, and journals; (m) Any and all vouchers, expense accounts, receipts, invoices, bills, orders, billings and checks; (n) Any and all investigation or incident reports; (o) Any and all files and records, including, but not limited to, computer files, emails and all computer back-up disks and/or storage devices; (p) Any and all notes or summaries of conferences, meetings, discussions, interviews, or telephone conversations or messages; (q) Any and all phone message, phone logs, records of phone calls, faxes, fax logs, records of faxes sent and received; (r) Any and all writings, communications (including oral, visual or written) of things which the party upon whom this request is served intends or may use at the trial of the subject lawsuit or in any pleading to be filed in this lawsuit; (s) Any and all writings, communications (including oral, visual or written) or things which in any way relate or involve this subject lawsuit; (t) Any and all drafts or draft copies of any of the above; (u) Any and all amendments or changes to any of the above.

**DOCUMENTS REQUESTED**

1. All documents and communications that refer to, relate to, or describe Kingman Reef

Atoll.

2. All documents that refer to, relate to, summarize or describe title to Kingman Reef or any submerged reefs, lagoons or waters within a three-mile radius of Kingman Reef.

3. All documents that refer to, relate to, summarize or describe ownership of Kingman Reef or any submerged reefs, lagoons or waters within a three-mile radius of Kingman Reef.

4. All documents or communications that refer, relate to or memorialize any requests to obtain congressional approval to appropriate money to purchase Palmyra Atoll and Kingman Reef Atoll.

5. All documents or communications that refer or relate to Order 3223 signed on January 18, 2001, establishing the Kingman Reef National Wildlife Refuge.

6. All documents that memorialize or constitute research on the ownership of Palmyra Atoll or Kingman Reef Atoll.

7. All documents or communications that refer or relate to any of the following: Ainsley Fullard–Leo, Dudley Fullard–Leo, Ellen Fullard–Leo, Leslie Fullard–Leo, Peter Savio, Kingman Reef Atoll Investments, L.L.C., Kingman Reef Atoll Development, L.L.C., Lorrin A. Thurston, and/or T.E. Manase Mansur.

8. Any documents or communications concerning this litigation.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KINGMAN REEF ATOLL )
INVESTMENTS, LLC a Hawaii )
limited liability company, )
)
Plaintiff, )
)
vs. ) No. CV05-00151JMS/BMK
)
THE UNITED STATES OF )
AMERICA; THE UNITED STATES )
Department of Interior; )
THE HONORABLE GALE A. )
NORTON, in her official )
capacity as Secretary of )
the Interior; THE UNITED )
STATES FISH & WILDLIFE )
SERVICE; STEVEN A. )
WILLIAMS, in his official )
Capacity as Director of )
United States Fish & )
Wildlife Service, et als., )
)
Defendants. )

DEPOSITION OF
GEORGIA SHIRILLA
Volume II
Taken in behalf of Plaintiff

* * *

April 26, 2007
1000 NE Multnomah
Portland, Oregon
8:50 a.m.

ATKINSON-BAKER, INC.
COURT REPORTERS
www.depo.com
(800) 288-3376

REPORTED BY: GWEN A. DICKSON, RPR
FILE NO.: A1036C7

APPEARANCES:

For the Plaintiff:

CANNATA CHING & O'TOOLE
BY: THERESE Y. CANNATA, ESQ.
899 Ellis Street
San Francisco, CA 94109
415.409.8900

BROOKS TOM PORTER & QUITIQUIT
BY: DONNA H. YAMAMOTO, ESQ.
841 Bishop Street, #2125
Honolulu, HI 96813

For the Defendants:

US DEPARTMENT OF JUSTICE
BY: DONNA SHEEHAN FITZGERALD, ESQ.
601 D St., NW
Washington, DC 20004
202.305.0476

Also Present:
Mariel J. Combs, Esq.
Department of the Interior



INDEX

Georgia Shirilla


| EXAMINATION BY: | PAGE |
|---|---|
| Ms. Cannata | 242 |
| Ms. Fitzgerald | 353 |


EXHIBITS


| | | |
|---|---|---|
| No. 106 | GAO report e-mail | 250 |
| No. 107 | Sullivan e-mail | 250 |
| No. 108 | Cook 3/3/98 letter | 266 |
| No. 109 | Cook 5/13/99 letter | 266 |
| No. 110 | Smith handwritten note | 311 |
| No. 111 | Ryan e-mail | 317 |
| No. 112 | Briefing statement | 317 |
| No. 113 | Shirilla 4/10/00 e-mail | 321 |
| No. 114 | Smith meeting request | 326 |
| No. 115 | Fetter 4/18/00 e-mail | 329 |




EXHIBITS (cont'd)


| | | |
|---|---|---|
| No. 116 | Ryan 5/10/00 e-mail | 331 |
| No. 117 | Ryan 6/6/00 e-mail | 332 |
| No. 118 | Pacht 6/14/00 e-mail | 332 |
| No. 119 | Letter to Berry | 335 |
| No. 120 | Ryan 8/29/00 e-mail | 335 |
| No. 121 | Ha 12/16/00 e-mail | 335 |
| No. 122 | Environmental Assessment | 349 |
| No. 123 | Ha 12/8/00 e-mail | 349 |


PME Exhibits referenced:
Nos.: 12, 14, 20, 21A/B, 63



* * *

GEORGIA SHIRILLA,
called as a witness having been previously sworn/affirmed to tell the truth, the whole truth, and nothing but the truth by the Reporter, testifies as follows:

CONTINUED DIRECT EXAMINATION

BY MS. CANNATA:

**Q. Ms. Shirilla, you're still under oath and we're resuming today and I'm going to show you a previously marked Exhibit 22.**

MS. FITZGERALD: Counsel, can you make it clear for the record that Ms. Shirilla is reappearing this morning after a full day yesterday?

MS. CANNATA: Yes. The record -- the timing on the record is there but the record will reflect that Ms. Shirilla has kindly returned today to provide more deposition testimony and that we went and did a full day yesterday and we thank her for coming back.

**Q. And I have a question for you. You indicated that you drafted this or had some part in drafting it. Is that correct?**

A. Could we maybe get a lamp?
**Q. Yeah, I'll call the front desk.**
**(Discussion held off the record.)**
**(Brief recess is taken.)**
**BY MS. CANNATA:**
**Q. Ms. Shirilla, would you kindly take a look at what's been marked as Exhibit 106 and 107.**
A. Yes. It's this one document. Correct?
**Q. Did I do this wrong?**
A. Here's 107. Sorry.
**Q. The first e-mail is dated October 16, 1997. Have you ever seen this e-mail prior to today, Ms. Shirilla?**
A. I don't believe so, no.
**Q. There is a reference to an information about Kingman Reef and if you look at -- the reason I showed you 106 is to put it in context. But if you look at Exhibit 107, it said: I found some stuff in our real estate division's file which I've asked my legal clerk to copy and mail to you.**
**Did you ever receive a packet of information from the Navy concerning Kingman Reef and the ownership of Kingman Reef?**
MS. FITZGERALD: I'm going to object for lack of foundation. There's been no foundation



laid that Georgia has ever seen Exhibit 107 or that this e-mail is being sent to Georgia.
MS. CANNATA: I understand. I'm not trying to imply that. Actually, I'm trying to imply that there's a packet in the U.S. government's possession from the Navy that seems to - like a file - about title and ownership to Kingman Reef. I'm trying to find out where it is and so I'm hoping that perhaps someone sent you a copy.
So it's really a search for this file. That's what I take it to mean. I may be incorrect but that's the purpose of my question.
MS. FITZGERALD: I'm going to object again. Your question is essentially testimony that there's some packet out there. You don't have any proof of that, for one, you're testifying regarding two e-mails which do not appear to have been sent to Georgia, do not have Georgia's name on them, and then you're asking Georgia to offer testimony on the e-mails. So I'm going to object to lack of foundation.
MS. CANNATA: Okay. Whatever. I'm trying to find out something so...
**Q. Did you ever at any point in time receive a packet from someone from the Navy regarding the**



**title and ownership of Kingman Reef, a packet of documents?**
A. I did not.
**Q. Did you ever receive any information from the Navy concerning the title and ownership of Kingman Reef?**
MS. FITZGERALD: Objection. Question is vague.
You can answer.
**Q. Go ahead.**
A. I had discussions about Kingman Reef.
**Q. Did you ever receive any documents from the Navy concerning title and ownership, historic documents I should say?**
A. They might have sent me a copy of the executive order, the 1934 executive order.
**Q. By the way, the 1934 executive order does not reference the word public land. Did you -- at the time that you received a copy of the 1934 executive order did you research what the Picket Act meant?**
MS. FITZGERALD: I'm going to object. The document is not being placed in front of Ms. Shirilla and you're asking her to provide testimony on a document that's she not seen.



**Q. Go ahead.**
A. I don't know the act by Picket Act, but I know that when those types of executive orders are issued and I think I mentioned yesterday that we have had those established many refuges in our system that those are federal lands.
**Q. Okay.**
A. That the executive of the United States through that order transfers custody, control or jurisdiction, whatever the case may be, to a specific federal agency for different purposes.
**Q. Okay. And did you, after seeing the 1934 executive order, seek a legal opinion concerning what it meant? Don't tell me what the legal opinion was because I have to lay a foundation if I'm going to try to suggest that that should be disclosed, but just did you see a legal opinion?**
A. I have talked to several attorneys about it.
**Q. In the Service?**
A. In the department.
**Q. Would you identify the persons to whom you spoke? Again, please do not reveal the content of your communications with them.**
A. I'm trying to think which ones. There

were two or three in the Washington office. I believe Larry Mellinger was one, I believe Robin Friedman was another. I don't know. I think it was one time talked to Allen Palisol.
**Q. Can you spell that?**
A. P-A-L-I-S-O-L, I believe. I might not be hundred percent on that one.
**Q. Okay. Anyone else?**
A. I had talked to an attorney representing the Navy.
**Q. Who is that?**
A. I'm drawing a blank of what her name was. I'm sorry Mariel is not here because I think she would remember her name.
I'm thinking -- I can't remember. Alice -- I don't remember her specific name.
**Q. Would Mr. Pacht probably know her name?**
A. Yes, I think he would.
**Q. Anyone else?**
A. I think there were others but I don't recall specific names of the other attorneys.
**Q. And these would have been attorneys that you consulted in general terms about the 1934 executive order?**
MS. FITZGERALD: Objection to the phrase



"in general terms."
**Q. About the 1934 executive order.**
A. Yes.
**Q. May I ask when you consulted these people? Again, do not disclose the content of the communications with them.**
A. I don't know when discussions started. I would guess 1999, 2000.
**Q. Okay.**
A. And 2000.
**Q. Did you receive any legal opinions from any of these individuals? Again, do not disclose the content of those.**
A. Oral opinions.
**Q. Did you receive any written opinions?**
A. Not that I recall.
**Q. Did you base your opinion or conclusion on title on advice received from counsel or on your own independent research or both?**
A. Both.
MS. FITZGERALD: I'm going to object. The question asks for attorney/client privileged information.
MS. CANNATA: I'm not asking her what the information was, I'm just asking her what formed



her opinion, not what -- not asking the content of what they told her that formed her opinion but just what formed it.
MS. FITZGERALD: But you're asking her what she did based on it and I think it's objectionable.
MS. CANNATA: I think -- for the record, I think that we can inquire about why someone did what they did; they can say on advice of counsel. And that's what I'm trying to sort out is whether she took action based on advice of counsel, which I think we're entitled to inquire about.
MS. FITZGERALD: Again, my objection is on the record.
MS. CANNATA: Sure.
**Q. So it was based on a combination as I understand it. Right?**
A. Could you restate the question?
**Q. Your opinion that you formed was based on a combination of your own independent research as well as the advice of counsel?**
MS. FITZGERALD: Objection; seeks attorney/client privileged information.
Just go ahead and answer.
A. I think I got lost in this. When you say



the opinion that I formed?
**Q. The opinion that you formed concerning the Fullard-Leo title to property or the United States government title to property; in other words, let me rephrase.**
**The opinion that you formed concerning the ownership of Kingman Reef was based upon your own independent research and the advice of counsel; is that accurate?**
A. It was first formed on my analysis and confirmed by others.
**Q. Okay. At the service who made the final decision concerning the opinion of title?**
**Does that question make sense? If it doesn't, I'll be happy to rephrase it?**
MS. FITZGERALD: I'm going to object because it assumes facts not in evidence.
**Q. Yes. And I understand that problem. I'm trying to find a way to get into the topic so I'm going to try this question, see if it makes sense.**
**Who, if anyone, at the Service made the final decision concerning the opinion of title to Kingman Reef?**
MS. FITZGERALD: Again, object; assumes

**budget for a particular year?**
A. Depending on what year it was.
**Q. He was the president at this time, I believe.**
A. Well, he started in --
**Q. President Clinton took office in 1992; is that right?**
A. That would be eight years. That's right.
**Q. And he left office in January of 2001. Correct?**
A. Is it January 1 or the 20th, 21st? I don't know.
**Q. In January of 2000.**
A. January of 2000, yes.
**Q. So President Clinton is -- was the president and it would have been in President Clinton's budget for whatever year the funds were appropriated. Right? The amount that Fish & Wildlife was requesting for Kingman Reef.**
A. No, not necessarily. I don't know if it was. I don't know if it was included in the president's budget.
**Q. Okay. Any other places that it would be besides --**
A. Oftentimes the president's budget has

Page 287

fewer projects than what is actually given money.
**Q. Okay. So how does Congress know what to do? What is communicated to them to tell them to add projects to the appropriations?**
A. Sometimes they decide on their own, sometimes there's lobbyists.
**Q. Does Fish & Wildlife have lobbyists?**
A. No.
**Q. So but in terms of the request by Fish & Wildlife for funds, the --**
A. Our requests go up through the channels in the budget process and is considered within the agency within the department if it should be a part of the president's budget.
**Q. And you said that often the president's budget is not -- there often has fewer projects that are actually -- than Fish & Wildlife is actually requesting money for. Right?**
A. For many years projects were added, some years projects are deleted.
**Q. Okay.**
A. It's not -- it varies from year to year.
**Q. And so how are they added or deleted if it's not in the president's budget?**
A. By Congress.

Page 288

**Q. And how does that process work?**
MS. FITZGERALD: Let me just put in an objection here.
First of all, we had a lot of testimony already this morning from Georgia regarding appropriations and I'm not sure why we're returning to the same subject again, but a lot of this has been asked and answered already.
MS. CANNATA: Actually, it hasn't been answered. She said I think but she doesn't know exactly how it works. I have to make a record on that because this is a 30(B)(6) deposition and it's my obligation to ask all the questions as opposed to sit back and say, well, she doesn't know. So I'm asking all the questions and if she has the answers, great, and if she doesn't then I come back to you and I say she didn't.
MS. FITZGERALD: That gets to my second point which is can you please point out to me where in the 30(B)(6) notice Georgia would be designated as somebody to speak to congressional appropriations?
MS. CANNATA: Yes, I can. Please look at number 19.
MS. FITZGERALD: What does that say?

Page 289

MS. CANNATA: Says that we've asked her to testify about the letter dated October 26, 2000 attached hereto as Exhibit 24.
COURT REPORTER: Slow down, please.
MS. CANNATA: -- that the U.S. Congress provide additional funding for high priority land acquisitions for, among others, Kingman Reef.
MS. FITZGERALD: And we've explained to you in a March 15 letter that Congress did not provide funds for the appropriation of purchase of Kingman Reef and Georgia is available and is able to respond to your questions regarding the letter and she is doing that, but what she is not able to do is provide testimony on behalf of Congress or provide testimony on other areas besides what is on the rule 30(B)(6) notice which is what you're getting into.
So you're asking her questions well beyond the rule 30(B)(6) notice and, quite frankly, our objections on this were noticed at least as to the issue regarding your questions about what Congress did or did not do. We've noticed that she was not going to be able to provide testimony on that. We provided you that notice on our March 15, 2007 letter and we provided that information to Judge

Page 290

Curran.
(The question is read back: And so how are they added or deleted if it's not in the president's budget?)
MS. FITZGERALD: Going to object. The question lacks foundation because Georgia cannot testify for Congress.
Go ahead and answer if you can, please, Georgia.
MS. CANNATA: Would you please read back the question so the question is before the witness without any objections?
(The question is read back.)
A. I can't speak for Congress.
**Q. How does Fish & Wildlife get that information to Congress?**
A. I just explained that Fish & Wildlife Service is a federal agency and that is made a part of the annual president's budget.
**Q. How did Congress -- have you ever -- do you know whether -- have you ever seen a document prepared by representatives of the Fish & Wildlife Service or the Department of Interior requesting funding for the acquisition of Palmyra Atoll and Kingman Reef?**



A. Have I ever seen a document from Fish & Wildlife to Congress requesting -- could you repeat it?
(The pending question is read back.)
A. No.
MS. FITZGERALD: I'm going to object as compound.
Go ahead and answer.
A. I have not.
**Q. Have you ever seen a document prepared by Fish & Wildlife Service requesting funding for Kingman Reef, for the acquisition of Kingman Reef?**
**Same question. She objected as compound so I'm separating it.**
A. Requesting funding from whom?
**Q. Congress.**
A. No.
**Q. Do you know -- can you tell me how Congress, if you know, was there a request for funding to acquire Palmyra Atoll and Kingman Reef in the presidential budget for the fiscal year 2000, if you know?**
A. I don't believe there was. I don't remember.
**Q. Was the request for funding, if you know**



**again, was the request for funding for acquisition of Palmyra and Kingman Reef added after the submission of presidential budget in fiscal year 2000?**
MS. FITZGERALD: Again, I'm going to object to this questioning as compound because you're putting Palmyra and Kingman Reef in together in the question and it's two different properties.
MS. CANNATA: Well, it isn't according to this exhibit. It's -- they are being treated -- it's Palmyra -- quote, Palmyra Atoll slash Kingman Reef. I can only tell you what the document says. Why the government puts it that way, I don't know. I'm trying to find out.
A. I have never seen any document, any request for funds that included any funding for the acquisition of Kingman Reef.
And just by the fact that Palmyra slash Kingman is written in some documents in early preliminary planning documents, I can assure you there was never any discussion within the federal government, within my agency about the need for any money to buy any property interest at Kingman Reef because it was already federally owned.
All of this money, when you see budget



documents that talk about money, was and did go to the acquisition of private property rights at Palmyra. So please don't be confused on that issue. There was never any discussion about getting funding for any private property rights, public federal monies because it was already federally owned.
**Q. When you say never a discussion you mean anywhere in the Fish & Wildlife Service; is that correct?**
A. And, I believe, outside within the department and I believe within the Navy.
**Q. May I ask how you would know whether or not the budget office or others in the Washington, D.C. central office did or did not have that conversation, a foundation for your conclusion that no one in the entire Fish & Wildlife organization nationwide had that discussion?**
A. There were never any documents going forward from the field, the regional office, the realty office in D.C., seeking funding for Kingman Reef. Excuse me, seeking funding for Kingman Reef. It was always about Palmyra.
**Q. And so what you're saying, I think in your answer, is you don't know how this reference to**

**Palmyra slash Kingman Reef got on the federal appropriations list?**
MS. FITZGERALD: I'm going to object to the question. You're mischaracterizing her testimony. You didn't even ask her that question. If you're asking her that question now, then please ask it.
MS. CANNATA: That's argumentative, Counsel. And it's not appropriate legal objection. However, I will ask the question because I want to get through this.
**Q. How did this get here? Pointing now to the document -- call your attention to the last page of previously marked Exhibit 21 where it references Palmyra Atoll slash Kingman Reef $8.25 million.**
**I'll represent, I think we don't disagree, that this is a document provided by the committees on appropriations of the United States Congress. How did it get here?**
MS. FITZGERALD: Objection; lack of foundation. You're asking Georgia to speak about a congressional document --
MS. CANNATA: You actually asked me to ask the question, Counsel. But go ahead, the objection is noted.
MS. FITZGERALD: Did you get my objection?



COURT REPORTER: Yes.
A. I don't know how it got there.
**Q. When you saw it in 2000 did you pick up the phone or write a memo or e-mail and say there's a mistake here, there shouldn't be a congressional appropriation for Kingman Reef?**
A. I don't believe there was an appropriation for Kingman Reef. There was no need to do that. It was always about Palmyra. And if you look on our briefing books, the land and water, where maybe in that particular year or from our planning documents that treated the two projects under the same reports, but laid out the distinction that they were indeed two separate projects. I think that's where this came from. This was a mistake. And everybody knows in all the discussions that money needed was Palmyra. Just because Kingman is typed on this list has no bearing on what people intended and what people were wanting and what was used, this money was used for. This was all used for Palmyra.
**Q. My question, you did say, I think, just now that this was a mistake; is that correct?**
A. I think your interpretation --
**Q. I'm sorry.**



A. -- is a mistake.
**Q. Let me just -- you pointed to the document and you said "this is a mistake." And my question is did you - and I didn't hear an answer to my question so I want to make sure you understood my question. I understand your explanation and I appreciate it.**
**Did you contact anyone in Congress or Fish & Wildlife and state "this is a mistake," the reference to Kingman Reef and Palmyra jointly on the congressional appropriations document? That's a yes or no.**
A. I knew --
**Q. That's a yes or no. Did you contact anyone about that?**
A. About -- I was saying that this was a mistake. I knew that this money was for Palmyra.
**Q. But did you contact anyone in Congress or Fish & Wildlife and say there's a mistake on this document, this is only for Palmyra?**
A. I knew and in the discussions, I think, if you look on even some of the committee reports and others, it talks about the acquisition of Palmyra.
**Q. If you look at what? I'm sorry.**
A. I think even if you look at some of the



background documents, budget documents and other documents that have been given to you, that all of the discussions have been about this money for Palmyra.
**Q. I'm sorry. I still need an answer to my question. Did you --**
A. I did not call Congress.
**Q. Did you contact anyone in your Service to say there's a mistake on this congressional appropriation document?**
A. No, I did not.
**Q. Thank you.**
**Let's look at Exhibit 109.**
MS. FITZGERALD: Ms. Cannata, I wouldn't mind a five-minute break some time soon.
MS. CANNATA: Sure. That's fine. Now is fine.
(A recess is taken.)
**Q. Exhibit 109. Ms. Shirilla, I've marked as 109 a letter dated May 13, 1999 to Ms. Jamie Rappaport Clark from Mr. Cook. Have you seen this document prior to today?**
A. Yes.
**Q. And did you receive it in or about the time it was written?**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KINGMAN REEF ATOLL INVESTMENTS, LLC a Hawaii limited liability company,

Plaintiff,

vs. No. CV05-00151JMS/BMK

THE UNITED STATES OF AMERICA; THE UNITED STATES Department of Interior; THE HONORABLE GALE A. NORTON, in her official capacity as Secretary of the Interior; THE UNITED STATES FISH & WILDLIFE SERVICE; STEVEN A. WILLIAMS, in his official Capacity as Director of United States Fish & Wildlife Service, et als.,

Defendants.

DEPOSITION OF
GEORGIA SHIRILLA
Volume II
Taken in behalf of Plaintiff

* * *

April 26, 2007
1000 NE Multnomah
Portland, Oregon
8:50 a.m.

ATKINSON-BAKER, INC.
COURT REPORTERS
www.depo.com
(800) 288-3376

REPORTED BY: GWEN A. DICKSON, RPR
FILE NO.: A1036C7

APPEARANCES:

For the Plaintiff:

CANNATA CHING & O'TOOLE
BY: THERESE Y. CANNATA, ESQ.
899 Ellis Street
San Francisco, CA 94109
415.409.8900

BROOKS TOM PORTER & QUITIQUIT
BY: DONNA H. YAMAMOTO, ESQ.
841 Bishop Street, #2125
Honolulu, HI 96813

For the Defendants:

US DEPARTMENT OF JUSTICE
BY: DONNA SHEEHAN FITZGERALD, ESQ.
601 D St., NW
Washington, DC 20004
202.305.0476

Also Present:
Mariel J. Combs, Esq.
Department of the Interior



INDEX

Georgia Shirilla


| EXAMINATION BY: | PAGE |
|---|---|
| Ms. Cannata | 242 |
| Ms. Fitzgerald | 353 |


EXHIBITS


| | | |
|---|---|---|
| No. 106 | GAO report e-mail | 250 |
| No. 107 | Sullivan e-mail | 250 |
| No. 108 | Cook 3/3/98 letter | 266 |
| No. 109 | Cook 5/13/99 letter | 266 |
| No. 110 | Smith handwritten note | 311 |
| No. 111 | Ryan e-mail | 317 |
| No. 112 | Briefing statement | 317 |
| No. 113 | Shirilla 4/10/00 e-mail | 321 |
| No. 114 | Smith meeting request | 326 |
| No. 115 | Fetter 4/18/00 e-mail | 329 |




EXHIBITS (cont'd)


| | | |
|---|---|---|
| No. 116 | Ryan 5/10/00 e-mail | 331 |
| No. 117 | Ryan 6/6/00 e-mail | 332 |
| No. 118 | Pacht 6/14/00 e-mail | 332 |
| No. 119 | Letter to Berry | 335 |
| No. 120 | Ryan 8/29/00 e-mail | 335 |
| No. 121 | Ha 12/16/00 e-mail | 335 |
| No. 122 | Environmental Assessment | 349 |
| No. 123 | Ha 12/8/00 e-mail | 349 |


PME Exhibits referenced:
Nos.: 12, 14, 20, 21A/B, 63



* * *

GEORGIA SHIRILLA,
called as a witness having been previously sworn/affirmed to tell the truth, the whole truth, and nothing but the truth by the Reporter, testifies as follows:

CONTINUED DIRECT EXAMINATION

BY MS. CANNATA:

**Q. Ms. Shirilla, you're still under oath and we're resuming today and I'm going to show you a previously marked Exhibit 22.**

MS. FITZGERALD: Counsel, can you make it clear for the record that Ms. Shirilla is reappearing this morning after a full day yesterday?

MS. CANNATA: Yes. The record -- the timing on the record is there but the record will reflect that Ms. Shirilla has kindly returned today to provide more deposition testimony and that we went and did a full day yesterday and we thank her for coming back.

**Q. And I have a question for you. You indicated that you drafted this or had some part in drafting it. Is that correct?**

A. Could we maybe get a lamp?
**Q. Yeah, I'll call the front desk.**
**(Discussion held off the record.)**
**(Brief recess is taken.)**
**BY MS. CANNATA:**
**Q. Ms. Shirilla, would you kindly take a look at what's been marked as Exhibit 106 and 107.**
A. Yes. It's this one document. Correct?
**Q. Did I do this wrong?**
A. Here's 107. Sorry.
**Q. The first e-mail is dated October 16, 1997. Have you ever seen this e-mail prior to today, Ms. Shirilla?**
A. I don't believe so, no.
**Q. There is a reference to an information about Kingman Reef and if you look at -- the reason I showed you 106 is to put it in context. But if you look at Exhibit 107, it said: I found some stuff in our real estate division's file which I've asked my legal clerk to copy and mail to you.**
**Did you ever receive a packet of information from the Navy concerning Kingman Reef and the ownership of Kingman Reef?**
MS. FITZGERALD: I'm going to object for lack of foundation. There's been no foundation



laid that Georgia has ever seen Exhibit 107 or that this e-mail is being sent to Georgia.
MS. CANNATA: I understand. I'm not trying to imply that. Actually, I'm trying to imply that there's a packet in the U.S. government's possession from the Navy that seems to - like a file - about title and ownership to Kingman Reef. I'm trying to find out where it is and so I'm hoping that perhaps someone sent you a copy.
So it's really a search for this file. That's what I take it to mean. I may be incorrect but that's the purpose of my question.
MS. FITZGERALD: I'm going to object again. Your question is essentially testimony that there's some packet out there. You don't have any proof of that, for one, you're testifying regarding two e-mails which do not appear to have been sent to Georgia, do not have Georgia's name on them, and then you're asking Georgia to offer testimony on the e-mails. So I'm going to object to lack of foundation.
MS. CANNATA: Okay. Whatever. I'm trying to find out something so...
**Q. Did you ever at any point in time receive a packet from someone from the Navy regarding the**



**title and ownership of Kingman Reef, a packet of documents?**
A. I did not.
**Q. Did you ever receive any information from the Navy concerning the title and ownership of Kingman Reef?**
MS. FITZGERALD: Objection. Question is vague.
You can answer.
**Q. Go ahead.**
A. I had discussions about Kingman Reef.
**Q. Did you ever receive any documents from the Navy concerning title and ownership, historic documents I should say?**
A. They might have sent me a copy of the executive order, the 1934 executive order.
**Q. By the way, the 1934 executive order does not reference the word public land. Did you -- at the time that you received a copy of the 1934 executive order did you research what the Picket Act meant?**
MS. FITZGERALD: I'm going to object. The document is not being placed in front of Ms. Shirilla and you're asking her to provide testimony on a document that's she not seen.



**Q. Go ahead.**
A. I don't know the act by Picket Act, but I know that when those types of executive orders are issued and I think I mentioned yesterday that we have had those established many refuges in our system that those are federal lands.
**Q. Okay.**
A. That the executive of the United States through that order transfers custody, control or jurisdiction, whatever the case may be, to a specific federal agency for different purposes.
**Q. Okay. And did you, after seeing the 1934 executive order, seek a legal opinion concerning what it meant? Don't tell me what the legal opinion was because I have to lay a foundation if I'm going to try to suggest that that should be disclosed, but just did you see a legal opinion?**
A. I have talked to several attorneys about it.
**Q. In the Service?**
A. In the department.
**Q. Would you identify the persons to whom you spoke? Again, please do not reveal the content of your communications with them.**
A. I'm trying to think which ones. There

were two or three in the Washington office. I believe Larry Mellinger was one, I believe Robin Friedman was another. I don't know. I think it was one time talked to Allen Palisol.
**Q. Can you spell that?**
A. P-A-L-I-S-O-L, I believe. I might not be hundred percent on that one.
**Q. Okay. Anyone else?**
A. I had talked to an attorney representing the Navy.
**Q. Who is that?**
A. I'm drawing a blank of what her name was. I'm sorry Mariel is not here because I think she would remember her name.
I'm thinking -- I can't remember. Alice -- I don't remember her specific name.
**Q. Would Mr. Pacht probably know her name?**
A. Yes, I think he would.
**Q. Anyone else?**
A. I think there were others but I don't recall specific names of the other attorneys.
**Q. And these would have been attorneys that you consulted in general terms about the 1934 executive order?**
MS. FITZGERALD: Objection to the phrase



"in general terms."
**Q. About the 1934 executive order.**
A. Yes.
**Q. May I ask when you consulted these people? Again, do not disclose the content of the communications with them.**
A. I don't know when discussions started. I would guess 1999, 2000.
**Q. Okay.**
A. And 2000.
**Q. Did you receive any legal opinions from any of these individuals? Again, do not disclose the content of those.**
A. Oral opinions.
**Q. Did you receive any written opinions?**
A. Not that I recall.
**Q. Did you base your opinion or conclusion on title on advice received from counsel or on your own independent research or both?**
A. Both.
MS. FITZGERALD: I'm going to object. The question asks for attorney/client privileged information.
MS. CANNATA: I'm not asking her what the information was, I'm just asking her what formed



her opinion, not what -- not asking the content of what they told her that formed her opinion but just what formed it.
MS. FITZGERALD: But you're asking her what she did based on it and I think it's objectionable.
MS. CANNATA: I think -- for the record, I think that we can inquire about why someone did what they did; they can say on advice of counsel. And that's what I'm trying to sort out is whether she took action based on advice of counsel, which I think we're entitled to inquire about.
MS. FITZGERALD: Again, my objection is on the record.
MS. CANNATA: Sure.
**Q. So it was based on a combination as I understand it. Right?**
A. Could you restate the question?
**Q. Your opinion that you formed was based on a combination of your own independent research as well as the advice of counsel?**
MS. FITZGERALD: Objection; seeks attorney/client privileged information.
Just go ahead and answer.
A. I think I got lost in this. When you say



the opinion that I formed?
**Q. The opinion that you formed concerning the Fullard-Leo title to property or the United States government title to property; in other words, let me rephrase.**
**The opinion that you formed concerning the ownership of Kingman Reef was based upon your own independent research and the advice of counsel; is that accurate?**
A. It was first formed on my analysis and confirmed by others.
**Q. Okay. At the service who made the final decision concerning the opinion of title?**
**Does that question make sense? If it doesn't, I'll be happy to rephrase it?**
MS. FITZGERALD: I'm going to object because it assumes facts not in evidence.
**Q. Yes. And I understand that problem. I'm trying to find a way to get into the topic so I'm going to try this question, see if it makes sense.**
**Who, if anyone, at the Service made the final decision concerning the opinion of title to Kingman Reef?**
MS. FITZGERALD: Again, object; assumes

**budget for a particular year?**
A. Depending on what year it was.
**Q. He was the president at this time, I believe.**
A. Well, he started in --
**Q. President Clinton took office in 1992; is that right?**
A. That would be eight years. That's right.
**Q. And he left office in January of 2001. Correct?**
A. Is it January 1 or the 20th, 21st? I don't know.
**Q. In January of 2000.**
A. January of 2000, yes.
**Q. So President Clinton is -- was the president and it would have been in President Clinton's budget for whatever year the funds were appropriated. Right? The amount that Fish & Wildlife was requesting for Kingman Reef.**
A. No, not necessarily. I don't know if it was. I don't know if it was included in the president's budget.
**Q. Okay. Any other places that it would be besides --**
A. Oftentimes the president's budget has

Page 287

fewer projects than what is actually given money.
**Q. Okay. So how does Congress know what to do? What is communicated to them to tell them to add projects to the appropriations?**
A. Sometimes they decide on their own, sometimes there's lobbyists.
**Q. Does Fish & Wildlife have lobbyists?**
A. No.
**Q. So but in terms of the request by Fish & Wildlife for funds, the --**
A. Our requests go up through the channels in the budget process and is considered within the agency within the department if it should be a part of the president's budget.
**Q. And you said that often the president's budget is not -- there often has fewer projects that are actually -- than Fish & Wildlife is actually requesting money for. Right?**
A. For many years projects were added, some years projects are deleted.
**Q. Okay.**
A. It's not -- it varies from year to year.
**Q. And so how are they added or deleted if it's not in the president's budget?**
A. By Congress.

Page 288

**Q. And how does that process work?**
MS. FITZGERALD: Let me just put in an objection here.
First of all, we had a lot of testimony already this morning from Georgia regarding appropriations and I'm not sure why we're returning to the same subject again, but a lot of this has been asked and answered already.
MS. CANNATA: Actually, it hasn't been answered. She said I think but she doesn't know exactly how it works. I have to make a record on that because this is a 30(B)(6) deposition and it's my obligation to ask all the questions as opposed to sit back and say, well, she doesn't know. So I'm asking all the questions and if she has the answers, great, and if she doesn't then I come back to you and I say she didn't.
MS. FITZGERALD: That gets to my second point which is can you please point out to me where in the 30(B)(6) notice Georgia would be designated as somebody to speak to congressional appropriations?
MS. CANNATA: Yes, I can. Please look at number 19.
MS. FITZGERALD: What does that say?

Page 289

MS. CANNATA: Says that we've asked her to testify about the letter dated October 26, 2000 attached hereto as Exhibit 24.
COURT REPORTER: Slow down, please.
MS. CANNATA: -- that the U.S. Congress provide additional funding for high priority land acquisitions for, among others, Kingman Reef.
MS. FITZGERALD: And we've explained to you in a March 15 letter that Congress did not provide funds for the appropriation of purchase of Kingman Reef and Georgia is available and is able to respond to your questions regarding the letter and she is doing that, but what she is not able to do is provide testimony on behalf of Congress or provide testimony on other areas besides what is on the rule 30(B)(6) notice which is what you're getting into.
So you're asking her questions well beyond the rule 30(B)(6) notice and, quite frankly, our objections on this were noticed at least as to the issue regarding your questions about what Congress did or did not do. We've noticed that she was not going to be able to provide testimony on that. We provided you that notice on our March 15, 2007 letter and we provided that information to Judge

Page 290

Curran.
(The question is read back: And so how are they added or deleted if it's not in the president's budget?)
MS. FITZGERALD: Going to object. The question lacks foundation because Georgia cannot testify for Congress.
Go ahead and answer if you can, please, Georgia.
MS. CANNATA: Would you please read back the question so the question is before the witness without any objections?
(The question is read back.)
A. I can't speak for Congress.
**Q. How does Fish & Wildlife get that information to Congress?**
A. I just explained that Fish & Wildlife Service is a federal agency and that is made a part of the annual president's budget.
**Q. How did Congress -- have you ever -- do you know whether -- have you ever seen a document prepared by representatives of the Fish & Wildlife Service or the Department of Interior requesting funding for the acquisition of Palmyra Atoll and Kingman Reef?**



A. Have I ever seen a document from Fish & Wildlife to Congress requesting -- could you repeat it?
(The pending question is read back.)
A. No.
MS. FITZGERALD: I'm going to object as compound.
Go ahead and answer.
A. I have not.
**Q. Have you ever seen a document prepared by Fish & Wildlife Service requesting funding for Kingman Reef, for the acquisition of Kingman Reef?**
**Same question. She objected as compound so I'm separating it.**
A. Requesting funding from whom?
**Q. Congress.**
A. No.
**Q. Do you know -- can you tell me how Congress, if you know, was there a request for funding to acquire Palmyra Atoll and Kingman Reef in the presidential budget for the fiscal year 2000, if you know?**
A. I don't believe there was. I don't remember.
**Q. Was the request for funding, if you know**



**again, was the request for funding for acquisition of Palmyra and Kingman Reef added after the submission of presidential budget in fiscal year 2000?**
MS. FITZGERALD: Again, I'm going to object to this questioning as compound because you're putting Palmyra and Kingman Reef in together in the question and it's two different properties.
MS. CANNATA: Well, it isn't according to this exhibit. It's -- they are being treated -- it's Palmyra -- quote, Palmyra Atoll slash Kingman Reef. I can only tell you what the document says. Why the government puts it that way, I don't know. I'm trying to find out.
A. I have never seen any document, any request for funds that included any funding for the acquisition of Kingman Reef.
And just by the fact that Palmyra slash Kingman is written in some documents in early preliminary planning documents, I can assure you there was never any discussion within the federal government, within my agency about the need for any money to buy any property interest at Kingman Reef because it was already federally owned.
All of this money, when you see budget



documents that talk about money, was and did go to the acquisition of private property rights at Palmyra. So please don't be confused on that issue. There was never any discussion about getting funding for any private property rights, public federal monies because it was already federally owned.
**Q. When you say never a discussion you mean anywhere in the Fish & Wildlife Service; is that correct?**
A. And, I believe, outside within the department and I believe within the Navy.
**Q. May I ask how you would know whether or not the budget office or others in the Washington, D.C. central office did or did not have that conversation, a foundation for your conclusion that no one in the entire Fish & Wildlife organization nationwide had that discussion?**
A. There were never any documents going forward from the field, the regional office, the realty office in D.C., seeking funding for Kingman Reef. Excuse me, seeking funding for Kingman Reef. It was always about Palmyra.
**Q. And so what you're saying, I think in your answer, is you don't know how this reference to**

**Palmyra slash Kingman Reef got on the federal appropriations list?**
MS. FITZGERALD: I'm going to object to the question. You're mischaracterizing her testimony. You didn't even ask her that question. If you're asking her that question now, then please ask it.
MS. CANNATA: That's argumentative, Counsel. And it's not appropriate legal objection. However, I will ask the question because I want to get through this.
**Q. How did this get here? Pointing now to the document -- call your attention to the last page of previously marked Exhibit 21 where it references Palmyra Atoll slash Kingman Reef $8.25 million.**
**I'll represent, I think we don't disagree, that this is a document provided by the committees on appropriations of the United States Congress. How did it get here?**
MS. FITZGERALD: Objection; lack of foundation. You're asking Georgia to speak about a congressional document --
MS. CANNATA: You actually asked me to ask the question, Counsel. But go ahead, the objection is noted.
MS. FITZGERALD: Did you get my objection?



COURT REPORTER: Yes.
A. I don't know how it got there.
**Q. When you saw it in 2000 did you pick up the phone or write a memo or e-mail and say there's a mistake here, there shouldn't be a congressional appropriation for Kingman Reef?**
A. I don't believe there was an appropriation for Kingman Reef. There was no need to do that. It was always about Palmyra. And if you look on our briefing books, the land and water, where maybe in that particular year or from our planning documents that treated the two projects under the same reports, but laid out the distinction that they were indeed two separate projects. I think that's where this came from. This was a mistake. And everybody knows in all the discussions that money needed was Palmyra. Just because Kingman is typed on this list has no bearing on what people intended and what people were wanting and what was used, this money was used for. This was all used for Palmyra.
**Q. My question, you did say, I think, just now that this was a mistake; is that correct?**
A. I think your interpretation --
**Q. I'm sorry.**



A. -- is a mistake.
**Q. Let me just -- you pointed to the document and you said "this is a mistake." And my question is did you - and I didn't hear an answer to my question so I want to make sure you understood my question. I understand your explanation and I appreciate it.**
**Did you contact anyone in Congress or Fish & Wildlife and state "this is a mistake," the reference to Kingman Reef and Palmyra jointly on the congressional appropriations document? That's a yes or no.**
A. I knew --
**Q. That's a yes or no. Did you contact anyone about that?**
A. About -- I was saying that this was a mistake. I knew that this money was for Palmyra.
**Q. But did you contact anyone in Congress or Fish & Wildlife and say there's a mistake on this document, this is only for Palmyra?**
A. I knew and in the discussions, I think, if you look on even some of the committee reports and others, it talks about the acquisition of Palmyra.
**Q. If you look at what? I'm sorry.**
A. I think even if you look at some of the



background documents, budget documents and other documents that have been given to you, that all of the discussions have been about this money for Palmyra.
**Q. I'm sorry. I still need an answer to my question. Did you --**
A. I did not call Congress.
**Q. Did you contact anyone in your Service to say there's a mistake on this congressional appropriation document?**
A. No, I did not.
**Q. Thank you.**
**Let's look at Exhibit 109.**
MS. FITZGERALD: Ms. Cannata, I wouldn't mind a five-minute break some time soon.
MS. CANNATA: Sure. That's fine. Now is fine.
(A recess is taken.)
**Q. Exhibit 109. Ms. Shirilla, I've marked as 109 a letter dated May 13, 1999 to Ms. Jamie Rappaport Clark from Mr. Cook. Have you seen this document prior to today?**
A. Yes.
**Q. And did you receive it in or about the time it was written?**