IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

KINGMAN REEF ATOLL INVESTMENTS L.L.C., a Hawaii limited liability company,

Plaintiff,

vs.

THE UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF THE INTERIOR; GALE A. NORTON, in her official capacity as Secretary of the Interior; THE UNITED STATES FISH & WILDLIFE SERVICE; STEVEN A. WILLIAMS, in his Official capacity as the Director of the United States Fish & Wildlife Service; JOHN DOES 1-10, JANE DOES 1-10; AND DOE PARTNERSHIPS, CORPORATIONS GOVERNMENTAL UNITS, OR OTHER ENTITIES 1-10,

Defendants.

Civil No. CV05-00151 JMS/BMK

DEPOSITION OF RAMIL SALVADOR

Taken on behalf of Plaintiff at Brooks Tom Porter & Quitiquit, LLP, 841 Bishop Street, Suite 2125, Honolulu, Hawaii, commencing at 10:10 a.m. on May 24, 2007, pursuant to 30(b)(6) Notice.

Before: WILLIAM T. BARTON, RPR, CSR NO. 391

KRAI v. US, No. 06-828L (Fed. Cl.)
Def.'s Motion for a Protective Order
Exhibit 18

APPEARANCES:

For Plaintiff
Kingman Reef Atoll Investments, L.L.C.
CHRISTIAN P. PORTER, ESQ.
DONNA H. YAMAMOTO, ESQ.
Brooks Tom Porter & Quitiquit, LLP
841 Bishop Street, Suite 2125
Honolulu, Hawaii 96813
(808) 523-1171

For Defendants
THOMAS A. HELPER, ESQ.
ELIZABETH JOSEPHSON, ESQ.
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
(808) 541-2850



I N D E X


| EXAMINATION | Page |
|---|---|
| By Mr. Porter | 4 |

RAMIL SALVADOR

| Deposition Exhibits | | Marked |
|---|---|---|
| 167 | Notice | 8 |
| 168 | Notice | 8 |
| 169 | Handwritten notes | 20 |
| 170 | Organizational chart | 47 |
| 171 | OPNAV Instruction document | 53 |
| 172 | Regulations Governing Naval Defensive Sea Areas | 80 |
| 173 | Information Required Incident to Entry of Ships document | 84 |




(Disclosure presented to Counsel.)

RAMIL SALVADOR,

Called as a witness by Plaintiff, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. PORTER:

Q. Could you state your full name for the record, please.
A. Ramil Salvador.
Q. And you're a Lieutenant in the Navy?
A. Yes, sir.
Q. And, Lieutenant Salvador, how long have you been with the Navy?
A. I've been in 23 years now.
Q. And you probably traveled all over?
A. Yes, sir.
Q. How long have you been in Hawaii?
A. About 11 months.
Q. Were you previously -- do you use "station" or "duty"?
A. Station. I was with the Amphibious Construction Battalion 1 out of San Diego.
Q. That was prior to Hawaii?
A. Yes.



Q. How long were you in San Diego?
A. For that particular tour was three years.
Q. And, Lieutenant Salvador, have you had your deposition taken before, this process?
A. Well, this is the first time.
Q. This is called a deposition. And all it is, it's a pretty much informal setting, as you can see. We're just in my conference room.
I represent the plaintiffs in a lawsuit with the U.S. government and a bunch of other Defendants involving Kingman Reef.
It's my understanding that you're here to -- we'll mark, for the record, certain exhibits. But it's my understanding that you're here to testify on behalf of the Department of the Navy; is that correct?
A. That is correct, sir.
Q. Basically, all it is is my opportunity to just get answers to questions and find out what you know or you don't know. And try to get some information on Kingman Reef, which is the subject of the lawsuit.
And a deposition, basically, is an opportunity for the attorneys from both sides to

Page 6

ask questions of witnesses or people that might have knowledge of particular things.
And then what happens is the court reporter, who is seated to your left, will eventually come out with a little book or a transcript of what is said in the room. Then what happens is you'll get an opportunity to review that and make notes or corrections.
Do you understand that?
A. Yes, sir.
Q. And if you make corrections or changes that are substantive to your testimony, then both of us will have an opportunity to comment on that. So what we'd like to get today is your best answers to the questions.
Do you understand that?
A. Yes, sir.
Q. One of the things we can't do is talk over each other -- you're doing great -- because the court reporter can only take down one person at a time. That's just part of the logistics.
We need to have audible answers. Anything like motioning of your hands or uh-huh (affirmative) or nods, we may know what it means, but the court reporter has to have either a yes or

Page 7

no or an answer to the question.
Do you understand that?
A. Yes, sir.
Q. If you don't understand my questions, because there may be terms that are more familiar to you in terms of Naval terms or different symbols and I may mix them up, if my question doesn't make sense, let me know. Otherwise, I'll assume that your answer is in response to my question and you understood the question.
Do you understand that?
A. Yes.
Q. And similarly, you're under oath today, just like if you were testifying in court, even though there is no judge here. So you have to testify to the best of your ability, unless one of your counsel instructs you not to answer.
Do you understand that?
A. Yes.
Q. And is there anything that would prevent you from going forward today and giving your testimony as to the matters in this case?
A. No.
Q. And let's see. Let me just mark first, just so we make sure we have the right person and

Page 8

we know what the proceeding -- that we're proceeding on the same basis, I'm just going to have marked as Exhibit -- we're accumulating exhibits from all the different depositions.
So I'm going have the court reporter mark this document, which is just the Second Amended Notice of Taking of Oral Deposition as Exhibit 167.
Then I'm going to have him mark the Second Amended Notice of Taking of Rule 30(b)(6) Deposition of the United States of America as 168.
(Whereupon, a Notice was marked as Exhibit 167 for Identification.)
(Whereupon, a Notice was marked as Exhibit 168 for Identification.)
(Discussion off the record.)
BY MR. PORTER:
Q. Back on the record. Let's clarify this. I'm going to hand you what's been marked Exhibit 167, which part of the title is incorrect. It says, Notice of taking your deposition. But in the actual caption is correct. It's the Second Amended Notice of Taking of Oral Deposition. If you can take a look at that document, sir.
And all that is is a document that just

Page 9

notices the deposition of Lieutenant Ramil Salvador.
Is that you?
A. Yes, sir.
Q. All right. You can put that down now. I'm going to hand you what has been marked as Exhibit 168. What we've done is Mr. Helper actually had a more recent Amended Notice that's called a Fourth Amended Notice of Taking Rule 30(b)(6) Deposition of United States of America.
Let me show you that document which has been marked as 168.
A. Do I need to go through this document?
Q. I just want to know if you have seen that document before?
A. Yes, sir.
Q. And just so we're on the same page, if you can keep that document in front of you, I want you to please turn to Page -- let's see if it's the same page on my copy.
Actually, it would be Page 3 of Exhibit 168. And Paragraph Number 4 underneath "Topics of Inquiry."
Do you see Paragraph 4, where it says, "The protocol employed by" --

Page 34

Q. Any other office that you're personally aware of, or as the designee for the government, any other office over at Pearl Harbor that would get the phone calls on Kingman Reef if there were calls for access?
A. No, sir.
Q. So were there any type of books or guidelines that you found that said if you get calls for access to any other areas, like -- strike that.
Let me start off first, does the Admin office or your office, or is it the Admiral that watches over a certain region of Pearl Harbor? I'm not sure how to phrase it, because I'm trying to figure out who does what.
Is there someone in the chain of command at Pearl Harbor that's responsible for the Hawaiian Islands first, as far as the Department of the Navy?
MR. HELPER: Objection.
A. Could you rephrase it?
Q. Does Pearl Harbor have some type of Naval jurisdiction, over where? The Hawaiian Islands? Beyond the Hawaiian Islands? How does it work?

Page 35

MR. HELPER: Objection. Calls for a legal conclusion.
A. I don't have any opinion with regards to that one.
Q. As far as in terms of controlling access to Kingman Reef, who has jurisdiction over controlling access to Kingman Reef, currently?
A. Right now, based on the instruction and what was turned over to the Department of the Interior, if they are asking for access to the reef, if we do get the requests right now, we would be forwarding that to the Department of the Interior.
However, if the request is for access to the Naval Defensive Sea Area, it would be the region who would be granting or disapproving that access.
Q. By "region," what do you mean by that?
A. The Navy region, who is the Entry Control Commander.
Q. As far as the access to the air space in or around Kingman Reef, is there any control over that?
A. Based on all the documents, too, the air space, they suspended the restriction.

Page 36

Q. And do you know when that was suspended?
A. Not off the top of my head, sir.
Q. Is that something you learned through the review of the records?
A. Yes.
Q. And as far as the sea area, the Navy, you're talking about the Navy regent would have to give permission for access to the sea area?
A. As the Entry Control Commander, the Navy region as the Entry Control Commander would give access to the Naval Defensive Sea Area.
Q. Who would be the person in charge of giving that access now?
A. Again, this will be staff for Port Operations.
Q. Port Operations.
Who is in charge of Port Operations?
A. If I'm not mistaken, it's Commander Carter right now.
Q. Would your office, the Admin office, get involved in terms of granting or denying access to the sea area around Kingman Reef?
A. No, sir. It would be Port Operations.
Q. How long has Port Operations -- this is Port Operations at Pearl Harbor?

Page 37

A. Pearl Harbor.
Q. How long has Port Operations at Pearl Harbor been in charge of controlling access to the sea area around Kingman?
A. Based on all the documentation, it's been a while. I'm not really sure as far as how far back. Based on all the other correspondence that I've seen, it goes way back.
Q. How about, is there documentation or -- I mean, let me be more specific.
Are there some kind of logs that you know of where Port Operations keeps track of, you know, requests for access to the sea area around Kingman Reef?
A. No, sir.
Q. So do you know if they do exist or don't exist or you don't know?
A. I do not know.
Q. So if there were requests for access to the sea area around Kingman Reef going back to the 1940's or even 1920's or any time, going back to the 1940's forward, you don't know if there's logs or records kept?
A. No, sir.
Q. Do you know for a fact as to whether the

Page 38

Port Operations was in charge of entry to the sea area of Kingman Reef back in the 1940's?
A. No, sir, I don't know that. Again, the only ones that I've seen were all based on the correspondence that was basically granting access to third-party requests, again, through Port Ops; although I'm not really sure exactly as far as what dates.
Q. That's what I was going to ask.
Do you remember the approximate dates of that correspondence?
A. No, sir.
Q. Was this one --
A. If I'm not mistaken, you would have copies of those, anyway.
Q. Was Lieutenant Commander Miller the Admin Officer during that period of time?
A. No.
Q. This is prior to him? Do you know?
A. Yes.
Q. Is there somebody that maintains a list of who are the port officers going back in time through the years? How would I get that information?
A. I'm not sure exactly if there is.

Page 39

Q. What I'm looking for is with some corporations, they have like a human resources or a personnel department.
Is there an equivalent with the Department of the Navy?
A. The only thing I can think of right now would probably be the Naval Historical Center.
Q. And where is the Naval Historical Center?
A. If I'm not mistaken, it's in Washington, D.C.
Q. Is that some type of a public archive? Do you know if that's a private Naval archive?
A. I'm not really sure.
Q. Are you aware of any other sources that would have that information?
MR. HELPER: Objection. Vague and ambiguous.
A. No, sir.
Q. As far as the prior Admin Officers in your position through the years at Pearl Harbor, would you go to that same data source if you were trying to find out who were the prior Admin Officers, through the years?
A. Yes.

Page 40

Q. And as far as prior to Kingman Reef being designated as a national wildlife refuge and going back, let's say during the 1980's, do you know who controlled access to the reefs during the 1980's? I'm talking about the reefs at Kingman Reef.
A. Again, our documents indicated that access was actually controlled by the Navy.
Q. Do you know which department? You're talking about the same documents that were turned over to us?
A. The same documents that were turned over to you. For Kingman Reef, again, based on the instructions, the Op. Number Instructions 5500.11 Echo, as the Entry Control Commander, Navy Region, or I guess at that time it was called Naval Base Pearl Harbor.
Q. So it would be that same Entry Control Commander, that would be one --
A. That would be granting or denying access.
Q. So back then, it would have been, at least from the records that you reviewed and the same records that we have then, if they wanted controlling access to both the reef and the sea

Page 41

area, it came under the Entry Control Commander?
A. Yes, sir.
Q. And did you or anybody else come across any type of log communications that referenced Peter Savio's name? Do you remember seeing his name?
A. I've seen it in --
MR. HELPER: Objection. Lacks foundation and compound. Go ahead.
A. I've seen it in the interrogatories and the, I think it's the third -- no, I think it's in the interrogatories.
Q. Interrogatories?
A. Interrogatories, yes.
Q. Did you work on the interrogatory responses?
A. What do you mean by --
Q. Meaning did you answer any of the interrogatory questions, the responses to the interrogatory questions from our clients?
A. They asked me about, I think, Number 5, and I don't remember all the other numbers, sir.
Q. Do you know why the United States government Department of the Navy designated you individually as the designee for the areas?

Page 50

District, or it's not the 14th Naval District?
MR. HELPER: Same objection.
A. All the records I've seen, the actual names and commands, actually, have changed. It was just all based on what I was getting to review.
Q. How about today, is Pearl Harbor referred to as the 14th Naval District?
A. No.
Q. What is Pearl Harbor referred to?
A. Well, when you say, "Pearl Harbor," Pearl Harbor is the actual location.
Q. Okay. What is the 14th Naval District?
MR. HELPER: Currently?
MR. PORTER: Yes.
A. Right now, again, it's the Entry Control Commander. It's Navy Region Hawaii.
Q. That's what it's called, Navy Region Hawaii?
A. The Entry Control Commander right now, yes.
Q. But do you know what the 14th Naval District used to be?
A. When you say, "used to be" --
Q. Let me ask you this: Do you have any

Page 51

knowledge as to what is meant on this Document 170, when it references the 14th Naval District, do you know what that means?
A. Besides knowing this is an organizational structure, no.
Q. Do you know who, if anyone, at Pearl Harbor would know the organizational structure of the Navy, Department of the Navy -- I'm sorry -- of Pearl Harbor?
MR. HELPER: Currently?
MR. PORTER: Yes.
MR. HELPER: I'm informed by my co-counsel, who is a lot more knowledgeable about Naval structure than I am, there is no entity called Pearl Harbor.
BY MR. PORTER:
Q. There is an entity -- I guess we've gone through that.
Does Pearl Harbor fall underneath some type of Naval District?
A. They don't have any districts. Our current structure are now based on Operational Commander and Administrative Commander. Right now, they are like regions now.
Q. So what is Pearl Harbor considered?

Page 52

A. Pearl Harbor is an area. So I'm not really getting what you're trying to say.
What is Pearl Harbor?
Q. Well, is it part of a region then?
MR. HELPER: Off the record?
MR. PORTER: Sure.
(Discussion off the record.)
BY MR. PORTER:
Q. Back on the record. Let me just clarify then.
Instead of Pearl Harbor, you are familiar with the term, "Navy Region Hawaii"?
A. Yes.
Q. And the Commander that you work with or that you're the Admin to, he's in charge of Navy Region Hawaii?
A. That's correct.
Q. Under Navy Region Hawaii currently, does Kingman Reef comes under Navy Region Hawaii?
A. Yes.
Q. And what other atolls or areas come under Navy Region Hawaii outside of the state of Hawaii?
A. Everything that was listed under the OPNAV instruction.

Page 53

Q. That's at --
A. 5500.11 Echo. Instructions from the Chief of Naval Operations.
Q. What I'm trying to find out is if this was a previously marked exhibit, because they went through all of these. It doesn't look like it.
(Whereupon, an OPNAV Instruction document was marked as Exhibit 171 for Identification.)
BY MR. PORTER:
Q. The court reporter has handed you what has been marked as Exhibit 171.
Do you recognize that document?
A. Yes.
Q. Can you just describe for the record what that document is?
A. This document, actually, is a regulations regarding to the issuance of entry authorization for Naval defensive sea areas.
Q. I think a little while ago, you were talking about a document that you were calling 5500.11 E.
Is this the document that you're referring to?
A. Yes.

Page 54

Q. And this document has a date on the first page of September 18, 1990?
A. That is correct.
Q. What is your understanding as to the purpose of this document?
A. Again, this is our governing instructions as far as the Entry Control Commander as far as procedures and guidelines granting access to Naval Defensive Sea Areas.
Q. If you look on Page -- it's actually the sixth page in from the front. It's actually a page numbered 2 on the bottom of the document. There's a reference in Paragraph C, B-5 to Kingman Reef Naval Defense Sea Area and Kingman Reef Naval Air Space Reservation.
Do you see that?
A. Yes.
Q. So it's your understanding that this regulation also would then govern or cover Kingman Reef, access to both the sea area and the reef, at least back in 1990?
A. Yes.
MR. HELPER: Objection. Let me object. Calls for a legal conclusion. And the document speaks for itself.

Page 55

BY MR. PORTER:
Q. Do you know if today -- not you -- I can't remember what we called it. Region. Navy Region Hawaii.
Does Navy Region Hawaii still follow this same regulation as far as access to Kingman?
A. Yes. Since it's not been canceled nor superseded by another instruction.
Q. How about prior instructions? Are you aware of any prior instructions, meaning prior to this date of September 18, 1990, as it related to Kingman Reef?
A. Yes. There were instructions prior to this. But this is actually revision to the prior instructions.
Q. That's what I was getting at.
Have you seen prior instructions? Instructions that predated this Document 5500?
A. Yes. I've seen the Charlie and Delta.
Q. I see what you're saying. So this Series 5500.11, there was a Charlie or C and a D version?
A. Yes. If there's a complete revision to the whole instruction, they would relabel it as the next alphabet.

Page 56

So in this case, there was a complete revision to the Delta.
Q. I got you.
Do you know if there was an A or Alpha version of this document?
A. Oh, there would be an A, because actually, they would start at Alpha.
Q. I got you. And have you seen that document?
A. No.
Q. You haven't seen that document?
A. No.
Q. What is the earliest date of any such version of the Charlie or Delta that you've seen that's of this same, 171?
A. I don't recall the date.
Q. Does the Entry Control Commander come under the Admiral for Navy Region Hawaii?
A. Well, based on the instruction, the Entry Control Commander is the Admiral.
Q. Is the Admiral?
A. Yes.
Q. So the ultimate access in terms of granting access would come from the Admiral?
A. Yes.

Page 57

Q. And was the Entry Control Commander for Naval region Pearl Harbor in the 1990's, when this document came out, based in Pearl Harbor?
A. Yes.
Q. How about in the prior years, from the 1940's up until the 1990's, do you know if they were always based in Pearl Harbor?
A. Based on the Charlie and Delta that I've seen, the Entry Control Commanders actually changed. The Charlie one reflected it as Commander of Third Fleet.
Q. Okay.
A. Then when it got to the Delta, it was actually -- I take that back. I'm sorry. It was the Delta that had the COM Third Fleet before it became Naval Base Pearl Harbor.
Q. So COM Third Fleet is Pearl Harbor also?
A. I am not sure exactly at that time where COM Third Fleet is actually located at.
Q. I got you.
How about for a Charlie version of the document?
A. I don't recall who the Entry Control Commander was at that time.

I, RAMIL SALVADOR, hereby certify that I have read the foregoing typewritten pages; and corrections, if any, were noted by me; and the same is now an accurate and complete transcript of my testimony.

Dated at HONOLULU Hawaii
this 27th day of JUNE, 2007

Ramil Salvador

RAMIL SALVADOR

Signed before me this 27TH day of June, 2007.

LS

Witness to Deponent's Signature

Kingman Reef Atoll Investments, L.L.C. vs.
The United States of America, et al.
Civil No. CV05-00151 JMS/BMK, May 24, 2007
by William T. Barton, RPR, CSR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KINGMAN REEF v. U.S.A.

Civil No. CV05-00151

In Re: Deposition of RAMIL SALVADOR

Date Taken: MAY 24, 2007

CORRECTION SHEET

| PAGE | LINE | CORRECTION | REASON |
|---|---|---|---|
| 12 | 15-19 | I DID TALK TO SEVERAL PEOPLE WHO WERE IN THE POSITION TO CONTROL ACCESS OR APPROVE OR DENY ACCESS WHEN AN ACTUAL REQUEST WAS SUBMITTED. | NOT WHAT I SAID |
| 13 | 15-17 | ONE OF THE PERSONNEL WHO ACTUALLY APPROVES OR DENIES REQUEST SUBMITTED FOR KINGMAN REEF | NOT WHAT I SAID |
| 15 | 4 | IT WAS PROVIDED TO ME | " |
| 23 | 25 | DELETE "LIKE" | " |
| 26 | 11 | REPLACE "APPROPRIATE" WITH "ADMIN OFFICER" | " |
| 26 | 23 | REPLACE "WAS" WITH "WERE" | " |
| 27 | 10 | REPLACE "NOTE" WITH "KNOW" | " |
| 29 | 6 | REPLACE "NOT FIND" WITH "GO THROUGH" | " |
| 29 | 19 | DELETE "THE" BEFORE "ALL" | " |
| 30 | 21 | DELETE "THE MAJORITY OF THE TIMES" | " |
| 32 | 22 | DELETE "THE REASON WHY SHE WAS ALSO" | " |
| 32 | 23 | DELETE "THERE WAS BECAUSE" AND "QUITE" | " |
| 33 | 4 | DELETE WHOLE LINE | " |
| 33 | 5 | REPLACE "PART" WITH "ONE" | " |
| 35 | 24-25 | BASED ON ALL THE DOCUMENTS, THE RESTRICTION TO THE AIRSPACE WAS SUSPENDED. | " |
| 36 | 14 | REPLACE "STAFF FOR" WITH "STAFFED THROUGH" | " |

[signature]
Signature of Witness

27 June 07
Date

PLEASE BE ADVISED THAT THE DEPONENT SIGNED THE DEPOSITION ON 27 June 07 WITH THE ABOVE NOTED CORRECTIONS.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KINGMAN REEF v. U.S.A.

Civil No. CV05-00151

In Re: Deposition of RAMIL SALVADOR

Date Taken: MAY 24, 2007

CORRECTION SHEET

| PAGE | LINE | CORRECTION | REASON |
|---|---|---|---|
| 37 | 6 | DELETE "AS FAR AS" | NOT WHAT I SAID |
| 40 | 14 | REPLACE "OP NUMBER INSTRUCTIONS" WITH "OPNAV INSTRUCTION" | " |
| 43 | 15-19 | NOT EXACTLY. BUT SINCE I"VE BEEN IN THE NAVY, THE GUIDELINES HAVE BEEN IN PLACE. IT USED | |
| | | TO BE THREE YEARS AND WAS CHANGED TO TWO YEARS. I WOULD SAY IT CHANGED WITHIN THE LAST 10 YEARS. | " |
| 51 | 24 | REPLACE WITH "NOW THEY ARE CALLED REGIONS" | " |
| 53 | 17 | DELETE "A" | " |
| 53 | 18 | DELETE "TO" | " |
| 54 | 7-8 | INSTRUCTIONS AS FAR AS THE ENTRY CONTROL COMMANDER'S PROCEDURES AND GUIDELINES IN | " |
| | | GRANTING..... | |
| 55 | 14 | BUT THIS IS AN ACTUAL REVISION.... | " |
| 56 | 6 | DELETE "BECAUSE" | " |
| 56 | 7 | DELETE "ACTUALLY" | " |
| 60 | 7 | DELETE "WE" AFTER REVIEWED | " |
| 60 | 9 | REPLACE "WAS" WITH "WERE" | " |
| 66 | 24 | DELETE "IT'S LIKE" | " |
| 70 | 3 | DELETE "TO" | " |
| 70 | 10 | REPLACE "FOR" WITH "PER" | " |

[signature] 27 June 07

Signature of Witness Date

PLEASE BE ADVISED THAT THE DEPONENT SIGNED THE DEPOSITION ON 27 June 07 WITH THE ABOVE NOTED CORRECTIONS.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KINGMAN REEF v. U.S.A.

Civil No. CV05-00151

In Re: Deposition of RAMIL SALVADOR

Date Taken: MAY 24, 2007

CORRECTION SHEET

| PAGE | LINE | CORRECTION | REASON |
|---|---|---|---|
| 73 | 25 | DELETE "THAT" | NOT WHAT I SAID |
| 74 | 23 | DELETE "AGAIN" AFTER "BASED ON" | " |
| 75 | 2 | ADD "AND" PRIOR TO "HE" AND DELETE "AND" AFTER "REQUEST" | " |
| 76 | 3 | INSERT "LONG" BETWEEN "LAST" AND "MAYBE" | " |
| 82 | 18-19 | NO. BECAUSE WE TRY NOT TO HAVE TOO MUCH PAPER COPIES. | " |
| 85 | 14 | DELETE "ACTUAL" | " |
| 92 | 23 | DELETE "WHEN I SAY REVIEWED" | " |
| 93 | 13 | ADD "THAT" AFTER "DOCUMENTS" | " |
| 101 | 4 | REPLACE "NAVAL" WITH "NAVY" | " |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

[signature] Signature of Witness

27 June 07 Date

PLEASE BE ADVISED THAT THE DEPONENT SIGNED THE DEPOSITION ON 27 June 07 WITH THE ABOVE NOTED CORRECTIONS.

ORIGINAL

Of Counsel:
BROOKS TOM PORTER & QUITIQUIT, LLP

Christian P. Porter, Hawaii Bar No. 3744
Donna H. Yamamoto, Hawaii Bar No. 5881
David W.H. Chee, Hawaii Bar No. 5776
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Ph: 808-526-3011
Fax: 808-523-1171
Email: cporter@btpqlaw.com

Therese Y. Cannata, CA Bar No. 88032
Michael M. Ching, CA Bar No. 209426
Cannata, Ching & O'Toole, LLP
899 Ellis Street
San Francisco, CA 94109
Ph: 415-409-8900
Fax: 415-409-8904
Email: tcannata@ccolaw.com

Jon M. Van Dyke, Hawaii Bar No. 1896
2515 Dole Street
Honolulu, Hawaii 96822
Ph: 956-8509
Fax: 956-5569
Email: jvandyke@hawaii.edu

Attorneys for Plaintiff
KINGMAN REEF ATOLL INVESTMENTS, L.L.C.

90-1-0-11563

Discovery

EXHIBIT
PENGAD 800-631-6989
168
5-24-07

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KINGMAN REEF ATOLL INVESTMENTS, L.L.C., a Hawaii limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; THE UNITED STATES DEPARTMENT OF INTERIOR; THE HONORABLE GALE A. NORTON, in her official capacity as Secretary of the Interior; THE UNITED STATES FISH & WILDLIFE SERVICE; STEVEN A. WILLIAMS, in his official capacity as Director of United States Fish & Wildlife Service; JOHN DOES 1-10, JANE DOES 1-10, and DOE PARTNERSHIPS, CORPORATIONS, GOVERNMENTAL UNITS or OTHER ENTITIES 1-10,<br><br>Defendants. | CIVIL NO. CV05-00151 JMS/BMK<br><br>FOURTH AMENDED NOTICE OF TAKING RULE 30(b)(6) DEPOSITION OF THE UNITED STATES OF AMERICA UPON ORAL EXAMINATION; EXHIBITS "1" -"4"; CERTIFICATE OF SERVICE<br><br>(No Trial Date Set) |

FOURTH AMENDED NOTICE OF TAKING
RULE 30(b)(6) DEPOSITION OF THE UNITED
STATES OF AMERICA UPON ORAL EXAMINATION

TO: Donna S. Fitzgerald, Esq.
Trial Attorney
Natural Resources Section, Environment
& Natural Resources Division
United States Department of Justice
P.O. Box 663

Washington, D.C. 20044-0663
Edward H. Kubo, Jr., Esq.
United States Attorney
Thomas A. Helper, Esq.
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Attorneys for Defendants

PLEASE TAKE NOTICE that Plaintiff KINGMAN REEF ATOLL INVESTMENTS, LLC, ("Plaintiff") by and through its attorneys BROOKS TOM PORTER & QUITIQUIT, LLP, will take the deposition of THE UNITED STATES OF AMERICA ("USA") by and through one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf, as to each and all of the matters listed below on the date and time indicated below:

| Deponent | Date and Location |
|---|---|
| The United States of America<br>By its Rule 30(b)(6) Designee<br>c/o the Honorable Alberto R. Gonzales<br>United States Attorney General<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | April 25, 2007 at 10:00 a.m.<br>Double Tree Hotel<br>1000 N.E. Multnomah<br>Portland, Oregon 97232<br>(503) 281-6111 |

and

The United States of America
By its Rule 30(b)(6) Designee
c/o Edward H. Kubo, Jr., United States Attorney General
State of Hawaii
PJKK Federal Building, Room 6-100
Honolulu, Hawaii 96850

## I. DEFINITIONS

Unless context otherwise indicates, the following words and phrases shall have the meaning given here.

1. The terms "you" and/or "your" or "Defendants" shall mean and include Defendants THE UNITED STATES OF AMERICA; THE UNITED STATES DEPARTMENT OF INTERIOR; THE HONORABLE GALE A. NORTON, in her official capacity as Secretary of the Interior; THE UNITED STATES FISH & WILDLIFE SERVICE; and STEVEN A. WILLIAMS, in his official capacity as Director of United States Fish & Wildlife Service, their agents, attorneys, experts, consultants, employees, independent contractors, representatives, or other persons acting or purporting to act on their behalf, or any one of them.

2. The term "Kingman Reef" means that certain atoll, the subject of this lawsuit, is located approximately 900 nautical miles southwest of Hawaii in the Pacific Ocean and 33 nautical miles north of the Palmyra Atoll and essentially sits half-way between the Hawaiian Islands and Samoa at Latitude 6° 24' 37" North and Longitude 162° 22' West.

3. The term "Copra Co." means The Island of Palmyra Copra Company which was incorporated in the Territory of Hawaii.

4. The term "Palmyra Atoll" or "Palmyra" means the atoll located in the Northern Pacific Ocean at 5° 52'N 162° 6'W, southeast of Kingman Reef and north of Kiribati Line Island, located almost due south of the Hawaiian Islands, roughly halfway between Hawaii and American Samoa and being the atoll subject to the Palmyra Atoll National Wildlife Refuge.

5. The term "Plaintiff" shall mean Plaintiff Kingman Reef Atoll Investments, L.L.C., a Hawaii limited liability company, its agents, attorneys, experts, consultants, employees, independent contractors, representatives, or other persons acting or purporting to act on their behalf, or any one of them and sometimes together with "Plaintiff's Predecessor," collectively "Plaintiff."

6. The term "Plaintiff's Predecessor" means the Copra Co., Ellen Fullard-Leo, E. Fullard-Leo, Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Leslie Fullard-Leo, their agents, attorneys, experts, consultants, employees, independent contractors, representatives, or other persons acting or purporting to act on their behalf, or any one of them.

7. The term "this Lawsuit" shall mean and include that certain action filed by Plaintiff against Defendants in the United States District Court for the District of Hawaii in CV05-00151 JMS-BMK on March 4, 2005.

8. The term "person" shall mean and include all natural persons, corporations, general partnerships, limited partnerships, joint ventures, trusts, estates, unincorporated business entities or associations, governmental bodies or entities, and any and all other legal entities.

9. The term "and", "or", as well as "and/or" shall be construed disjunctively, conjunctively, or both, as necessary to bring within the scope of the request all responses which might otherwise be construed to be outside the scope of the particular request.

II. TOPICS OF INQUIRY

1. Any and all facts and documents upon which Defendants relied in asserting that Defendants did not attempt to purchase Kingman Reef.

2. The sale, purchase, acquisition and/or abandonment of any interests in Palmyra and/or Kingman Reef.

3. Communications between Defendants and other persons concerning the sale, purchase and/or abandonment of any interests in Palmyra and/or Kingman Reef.

4. The protocol employed by any person, entity or agency to control access to Kingman Reef.

5. Whether Defendants, the U.S. Navy, U.S. Coast Guard and/or other branches of the military referred requests to access Kingman Reef to the named Plaintiff in this Lawsuit, Plaintiff's Predecessor and/or Peter Savio.

6. Inquiries for access to Kingman Reef between the years 1922 and 2000, including inquiries directed to the named Plaintiff in this Lawsuit, Plaintiff's Predecessor and/or Peter Savio for approval.

7. Defendants' claim that they did not seek funds from the U.S. Congress to purchase Kingman Reef from Plaintiff or Plaintiff's Predecessor.

8. Defendants' claim that the U.S. Congress did not appropriate funds to purchase Kingman Reef from Plaintiff or Plaintiff's Predecessor.

9. Plaintiff's Predecessor's letter dated April 20, 1937 regarding Pan American Airways attached hereto as Exhibit "1".

10. Any agreement(s) between Pan American Airways and Defendants involving the landing of planes on, at, in or around Kingman Reef, including waters surrounding Kingman Reef.

11. Defendants' challenge, if any, of Plaintiff's and/or Plaintiff's Predecessor's ownership of Kingman Reef at any time prior to December 31, 2000.

12. The deed filed and recorded on November 17, 2000, to Kingman Reef in the United States District Court for the District of Hawaii as Document No. 27,

including Defendants' challenge, if any, to the validity of said deed or Defendants' objection, or the legal requirement to object, if any, to the filing of said deed.

13. Any and all funds allocated by the Congress of the United States to purchase Kingman Reef.

14. Whether Defendants, through the U.S. Navy, transported Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio to or over Kingman Reef.

15. Whether the U.S. Coast Guard transported Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio to or over Kingman Reef.

16. Whether Defendants, through the U.S. Coast Guard, transported Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio to or over Kingman Reef.

17. The letter dated October 3, 1997 to the U.S. Army Corps of Engineers at Fort Shafter, Hawaii, from Robert F. Smith, Pacific Islands Manager for FWS attached hereto as Exhibit "2".

18. The report dated October 17, 1997 by the U.S. Department of Commerce, National Oceanic and Atmospheric Administration ("NOAA Report") attached hereto as Exhibit "3".

19. The letter dated October 26, 2000, attached hereto as Exhibit "4", that the U.S. Congress provided additional funding for high-priority land acquisitions

for, among others, Kingman Reef.

DATED: Honolulu, Hawaii, APR 20 2007.

By ______________________

Christian Porter, Hawaii Bar No. 3744
Donna H. Yamamoto, Hawaii Bar No. 5881
David W.H. Chee, Hawaii Bar No. 5776
Therese Y. Cannata, CA Bar No. 88032
Michael M. Ching, CA Bar No. 209426
Jon M. Van Dyke, Hawaii Bar No. 1896
Attorneys for Plaintiff Kingman Reef
Atoll Investments, L.L.C.