IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al.,** | ) **No. 06-828L** |
| **Plaintiffs,** | ) **Judge Marian Blank Horn** |
| **v.** | ) |
| **THE UNITED STATES OF AMERICA; Defendant.** | ) |

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER PRECLUDING DEPOSITIONS UNDER RCFC 30(b)(6) AND THE DEPOSITION OF WILLIAM BROWN

CHRISTIAN P. PORTER
Brooks Tom Porter & Quitiquit, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Tel: 808-526-3011
Fax: 808-523-1171
Email: cporter@btpqlaw.com

OF COUNSEL:

Therese Y. Cannata, CA Bar No. 88032
Michael M. Ching, CA Bar No. 209426
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111
Tel: 415-409-8900
Fax: 415-409-8904
Email: tcannata@ccolaw.com

## TABLE OF CONTENTS

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER . . . . 1

RELEVANT PROCEDURAL HISTORY . . . . 3

DISCUSSION . . . . 4

I. Relevance and the Standards Applicable to a Motion for Protective Order . . . . . 4

II. The RCFC 30(b)(6) Notices Are Approximately Confined to the Permitted Scope of Limited Discovery in this Action . . . . 5

A. United States Fish and Wildlife Service . . . . 6

1. Relevance . . . . 6

2. Duplication . . . . 8

3. Plaintiffs Are Not Seeking Legal Opinions frm the Government Agencies . . . . 9

4. Plaintiffs Seek Institutional Knowledge Rather than Eyewitness Accounts of Facts Concerning the Ownership of Kingman Reef . . . . 10

B. The Department of Interior . . . . 11

C. Department of the Navy . . . . 12

D. The State Department . . . . 14

E. General Services Administration . . . . 14

F. William Brown . . . . 15

CONCLUSION . . . . 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Boston Edison Co. v. United States*, 75 Fed. Cl. 557 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Capital Props., Inc. v. United States*, 49 Fed. Cl. 607 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3D Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Doyle v. Eli Lilly & Co.*, Slip Copy, 2007 WL 2021828 (D. Neb. 2007) . . . . . . . . . . . . . . 4, 5, 7

*Ghandi v. Police Department Of the City of Detroit*, 74 F.R.D. 115 (D.C. Mich. 1977) . . . . . . 11

*Harris v. New Jersey*, Slip Copy, 2007 WL 2416429 (D. N.J 2007) . . . . . . . . . . . . . . . . . . . . . . 10

*Forest Products Northwest., Inc. v. United States*, 453 F.3d 1355 (Fed.Cir. 2006) . . . . . . . . . . . 5

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380 . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Pyramid Controls, Inc. v. Siemens Industrial Automations, Inc.*, 176 F.R.D. 269 (N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Raytheon Aircraft Co. v. United States,* Slip Copy, 2007 WL 2668725 (D.Kan. 2007) . . . . . . . 10

*Starlight International Inc. v. Herlihy*, 186 F.R.D. 626 (D. Kan. 1999) . . . . . . . . . . . . . . . . 10, 11

## DOCKETED CASES

*Kingman Reef Atoll Investments v. United States*, Civ No. 05-00151 . . . . . . . . . . . . . . . . . . . . . . 2

*Kingman Reef Atoll Investments v. United States*, Ninth Circuit No. 07-16817 . . . . . . . . . . . . . . 2

## FEDERAL STATUTES

Fed.R.Civ.P. 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed.R.Civ.P. 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 8, 9, 10, 11, 14

RCFC 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

RCFC 26(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

RCFC 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

## EXECUTIVE MATERIALS

Executive Order 8682 (Feb. 14, 1941) . . . . . . . . . . . . . . . . . . . . . . . . 6

Executive Order 13327 (Feb. 6, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 14

## SECONDARY SOURCES

6 Moore's Federal Practice § 26.101 at 26-240 . . . . . . . . . . . . . . . . . . . . 5

**MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Plaintiffs Kingman Reef Atoll Investments, L.L.C. and Kingman Reef Atoll Development, L.L.C. (Collectively referred to herein as "plaintiffs") submit this memorandum in opposition to defendant the United States of America's (hereinafter "defendant") motion for a protective order seeking to preclude all but one of the currently noticed depositions. Plaintiffs noticed RCFC 30(b)(6) depositions directed to the Department of the Navy, U.S. Fish and Wildlife, Department of the Interior, Department of State and the U.S. General Service Administration.[1] Plaintiffs also noticed the deposition of a former Department of the Interior employee, William Brown. By reference to the notices themselves and the meet and confer process, plaintiffs confirmed that the scope of each noticed deposition is very narrowly drawn to address the issue of ownership of Kingman Reef as well as related issues identified by this Court as permitted areas of limited discovery. Defendant nonetheless opposes the convening of any of these depositions based on blanket objections premised on relevance, duplication, undue burden and privilege. Defendant's objections are without merit.

First, the information sought is relevant and there is sound reason to believe that each of the identified deponents would have responsive information. The gist of defendant's argument is that there are no witness to present in response to the RCFC 30(b)(6) notices who have personal knowledge of the issues or facts listed in the notice.[2] Defendant incorrectly presumes that the State Department, for example, cannot be called upon to testify about institutional knowledge of

1 Throughout this brief, these entities shall be referred to as follows: Department of the Navy ("Navy"), U.S. Fish and Wildlife ("FWS"), Department of the Interior ("DOI"), Department of State ("State") and the U.S. General Service Administration ("GSA").

2 In this regard, Defendant contends:
" . . . historical facts relevant to the underlying question of title to or ownership of Kingman Reef are obtainable directly from the documents that have been disclosed or produced and are part of the record in this case. There are no individuals within the agencies with personal knowledge or involvement with the relevant historic events, most of which occurred 60 to 70 years ago." (Def's. Mot. at 1.)

facts. The standard of relevance is not so limited. Moreover, defendant's argument must fail where Rule 30(b)(6) deponent is called to testify on matters within the knowledge of the agency.

Second, the discovery sought here was not obtained through prior depositions taken in the District Court case.[3] Defendant contends, however, that if any of those witnesses mentioned ownership or had a personal observation to make about ownership, that should be counted as a fully completed round of discovery on the issue. (Def's. Mot. at 2.) Notably, the depositions taken in the District Court action were limited to issues of abandonment: Plaintiffs were specifically precluded from seeking discovery on the title and ownership of Kingman Reef. (*See* Declaration of Therese Y. Cannata, ("Cannata Decl.") ¶¶ 2, 3 and Exs. A and B.) The deponents designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure in the District Court action were not designated on title and ownership issues and consequently had neither the authority nor qualifications to testify on behalf of the agency on that issue. Indeed, none of the designees were able to offer a definitive statement on ownership and related issues.

Third, defendant incorrectly contends that the discovery seeks improper legal analysis, theories, opinions and conclusions regarding title and ownership of Kingman Reef. (Def's. Mot. at 2.) Plaintiffs, through counsel, made it very clear during the meet and confer process that plaintiffs were not seeking legal opinions, but rather, institutional knowledge regarding the claims of ownership of Kingman Reef. (Cannata Dec., ¶ 8 and Ex. G (January 25, 2007 letter from T. Cannata to K. Tardiff.)) As well, the discovery of "claims and decisions concerning ownership" was ordered by this Court as a relevant topic of discovery, and is therefore proper. (Def's. Mot. at 3; Cannata Dec. ¶ 8, and Ex. G.) Defendant does not disagree. (Def's. Mot. at 3.)

Finally, defendant asserts a blanket and nonspecific attorney-client privilege objection to any and all questions that might be asked of its Rule 30(b)(6) deponents and Mr. Brown. (Def's. Mot. at 2, 28.) Such a claim related to ownership issues was waived where defendant placed the

---

[3] *Kingman Reef Atoll Investments v. United States,* Civ No. 05-00151 JMS/BMK, WL 2630532 (D. Haw. 2007), on appeal at *Kingman Reef Atoll Investments v. United States,* No. 07–16817.

question "at issue" in its answer to the complaint and motion to dismiss under 12(b)(1). (*See* Answer to complaint ¶ 87, first and second affirmative defenses; *see also,* Doc. 15, p. 2; Def's. Mot. at 2.) Even assuming that there was a claim of privilege, defendant's premature objections to yet unasked questions should be denied without prejudice to defendant's right to object to particular questions at the deposition.

For all of these reasons, defendant's motion for protective order should be denied in its entirety and the depositions should proceed as noticed.[4]

**RELEVANT PROCEDURAL HISTORY**

As defendant notes, the court allowed discovery on all matters relevant to the following issues: (1) The underlying question of ownership and title, including how title was (or was not) acquired by the plaintiffs (their predecessors in interest) and the defendant, (2) Plaintiffs' and the defendant's claims and/or beliefs concerning its/their respective ownership and title, (3) the *ultra vires* issue as to the 1934 Executive Order ("E.O."), which includes the extent to which the Government could use (or historically did use) this as a legal basis on which it may claim sovereignty, administrative jurisdiction, title or ownership of Kingman Reef, and (4) the *terra nullius* theory in connection with a claim of title and ownership of Kingman Reef.

On October 25, 2007, plaintiffs served its initial Rule 30(b)(6) notices to the FWS, State Department, Navy, GSA, and Mr. Brown. (*See* Cannata Decl. ¶¶ 4-7 and Exs. C-F.) The original notices included the following numbers of topics: FWS - 41, Navy – 34, State Department – 36, and GSA – 36. (*Id.*)[5] The original notices contained a separate request for

---

4 Plaintiffs recognize that the dates on which the depositions are currently noticed may need to be adjusted. The point here is that the current defined scope of deposition is appropriate.

5 The Rule 30(b)(6) deposition notice to the DOI was not included with the original requests, but instead, was included for the first time with the amended notices on February 28, 2008.

production of documents to each deponent.[6]

Between August 2007 and February 2008, through a series of phone conferences and correspondences, the parties met and conferred in good faith on defendant's objections to these notices. (Cannata Dec. ¶ 8 and Ex. G.) In response, plaintiffs significantly reduced the number of the topics of inquiry as follows: FWS – from 41 to 6, Navy – from 34 to 10, State Department – from 36 to 8, and GSA – from 36 to 5. (Def's. Mot. Ex. 1–5; *see also,* Cannata Dec. ¶¶ 4-7 and Exs. C-F.) Defendant standing on its general objections of relevance (i.e. witnesses lacking personal knowledge, questions beyond of the scope of allowable discovery) and duplication, refused to allow the Rule 30(b)(6) deposition to proceed.

On February 27, 2008, counsel for plaintiffs, Therese Cannata, sent a letter regarding the status of Mr. Brown's deposition, noting the intention of moving forward. (Cannata Dec. ¶ 8 and Ex. G.) On March 7, 2008, counsel for defendant, Kristine Tardiff, sent an email objecting to the taking of Mr. Brown's deposition, among other things. (*Id.*)

By agreement of counsel, plaintiffs served the amended Rule 30(b)(6) notices only on defendant's counsel, Ms. Tardiff, on February 28, 2008. (Def's. Mots. Exs. 1-6.) The parties are now at impasse, defendant filed the instant motion on March 11, 2008.

## DISCUSSION

### I. Relevance and the Standards Applicable to a Motion for Protective Order

Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. *See* Fed.R.Civ.P. 26(b)(1); Rules Court of Federal Claims 26(b)(1). Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. *Doyle v. Eli Lilly & Co.*, Slip Copy, 2007 WL 2021828 (D.Neb.,2007).

---

6 To streamline the discussion, plaintiffs withdrew the document requests from the Rule 30(b)(6) notices and served a revised version of the same on the individual agencies as a subpoena duces tecum. Defendant has also raised an objection to those requests which is unrelated to this motion.

Relevancy, for purposes of discovery, is defined as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, (1978). Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action. *Doyle,* 2007 WL 2021828.

RCFC 26(c) authorizes the court, for good cause shown, to issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Boston Edison Co. v. United States*, 75 Fed. Cl. 557, 562 (2007), *citing*, 6 *Moore's Federal Practice* § 26.101 at 26-240 ("To temper the liberal scope of discovery, Rule 26(c) empowers a district court to issue a protective order.) To meet the "good cause" standard of the rule so as to preclude a deposition, the party seeking a protective order must show, "that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." *Id.; Forest Prods. Northwest., Inc. v. United States*, 453 F.3d 1355, 1361 (Fed.Cir. 2006); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986) ( "Rule 26(c) places the burden of persuasion on the party seeking the protective order."); *Capital Props., Inc. v. United States*, 49 Fed. Cl. 607, 611 (2001).

As discussed below, no good cause exists to issue the order where the amended deposition notices are narrowly drawn and focused to include only inquiries allowed by this Court (*i.e.* ownership, opinions and positions on ownership, terra nullius, etc.) As well, there is no duplication where this is the first opportunity for plaintiffs to conduct complete discovery on the issue of title and ownership. Defendant has not offered evidence showing oppression or undue hardship that would entitle it to relief.

## II. The RCFC 30(b)(6) Notices Are Appropriately Confined to the Permitted Scope of Limited Discovery in this Action

The amended Rule 30(b)(6) notices were substantially reduced in scope and number to

ensure compliance with the limited discovery ordered this Court. Thus, the topics of inquiry were reduced from 41 to 6 for FWS, 34 to10 for the Navy, 36 to 8 for the State Department, and 36 to 5 for the GSA. (*See* Cannata Decl. ¶¶ 4-7 and Exs. C-F, and Def's. Exs. 1, 3, 4, 5.) The notice to the DOI contains ten (10) topics of inquiry. Indeed, plaintiffs withdrew certain topics of inquiry that might have been permitted in an effort to meet defendant's stated concerns. The problem, as it turned out, was not the specific topics of inquiry but rather convening of the deposition at all. In other words, it appears that there was no amendment possible to meet the objections now presented by defendant. Nevertheless, the topics of inquiry, as now amended, are without question focused and tailored to the issues allowed by this Court.

**A. United States Fish and Wildlife Service**

Defendant offers four objections premised on relevance, duplication, and burden to the taking of the FWS deposition: (1) title investigations and opinions regarding Palmyra are irrelevant to the inquiry of Kingman Reef; (2) investigations and opinions on ownership of Kingman Reef are duplicative of the discovery taken in the District Court case; (3) legal opinions are not discoverable; and (4) the depositions are irrelevant and burdensome because there are no witnesses within the agencies with personal knowledge of historical events regarding Kingman Reef. (Def's. Mot. at 7-12.) None of defendant's objections has merit.

**1. Relevance**

Regarding the relevance of Palmyra, the documents produced in this case would suggest that ownership issues concerning Palmyra and Kingman Reef often overlapped. For example, Executive Order 8682, dated February 14, 1941, establishing the Naval Defensive Sea Areas and Naval Airspace Reservations covered both Kingman Reef and Palmyra, among others. As well, defendant argued in this case that "administrative control" was synonymous with government ownership. This view is inconsistent with the admitted ownership interests in the Fullard-Leo family of Palmyra, which was under the government's administrative control. Like Palmyra, Kingman Reef was administered by the Navy, and later DOI, yet defendant contests the

ownership of Kingman Reef. (Complaint, Appendix, Doc. 26, page 41– 42.) Further examples include:

- In 1991, representatives of FWS and The Nature Conservancy ("TNC") met with Peter Savio, agent for the Fullard-Leo family, to discuss the sale and development of both Palmyra and Kingman Reef. (Complaint, Appendix, Doc. 20.)

- In the Preliminary Project Proposal dated August 1997, the government specifically acknowledged that the Fullard-Leo family controlled access to Kingman Reef and the government was preparing plans to purchase the property from the Fullard-Leo family. (Complaint, Appendix, Docs. 22 and 23.)

- The letter dated, October 3, 1997, to the U.S. Army Corps of Engineers, Robert F. Smith, Pacific Islands Manager for FWS noted, among other things, that Director Clark had given FWS approval to begin detailed planning toward the acquisition of Palmyra Atoll and Kingman Reef as units of the National Wildlife Refuge System.

- A memorandum dated October 17, 1997, by Judson Feder, an attorney with National Oceanic and Atmospheric Administration ("NOAA") noting, "the Fullard-Leo family owns Palmyra Island and Kingman Reef." (Complaint, Appendix, Doc. 25.)

- The October 26, 2000, letters to Bruce Babbitt, then Secretary of the Interior, and Dan Glickman, then Secretary of Agriculture, stating that Congress provided additional funding for "high priority land acquisitions" including, but not limited to "Palmyra Atoll/Kingman Reef." (Complaint, Appendix, Doc. 28.)

- The June 18, 2006 commentary submitted to the Honolulu Advertiser by William Brown entitled "Sanctuary a victory long in making" discussing both Palmyra and Kingman Reef for inclusion into plans for coral reef protection. (Cannata Dec. ¶ 11 and Ex. J.)

Relevancy, is defined as "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer*, 437 U.S. at 351. Discovery should not be limited to the allegations concerning only Kingman Reef as defendant would suggest where the evidence concerning other property (Palmyra) clearly overlaps with decisions affecting the ownership and title of Kingman Reef. *See Doyle*, 2007 WL 2021828 (Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.)

The inquiry into Palmyra has shed some light on the ownership of Kingman Reef and could potentially offer more. Palmyra will certainly not be the focus of the inquiry but some discovery concerning Palmyra is appropriate insofar as it is reasonably calculated to lead to the

discovery of admissible evidence concerning the title and ownership of Kingman Reef.

**2. Duplication**

In the District Court action, the Court specifically precluded discovery on issues of ownership. Thus, the Rule 30(b)(6) depositions in the district court were not noticed for ownership issues. Similarly, the government designees were not offered for that purpose. Accordingly, plaintiffs are entitled to a designee specific on the issues of ownership, and related matters as ordered by this court.

Nevertheless, defendant contends that FWS designee Gerogia Shirilla, satisfied the government's obligation to produce a witness from the FWS on title and ownership. Ms. Shirilla, however, possessed neither the qualifications nor authority to speak to the questions of title and ownership for the *agency*. For example, defendant argues that Ms. Shirilla was questioned on the conclusions she made regarding title and ownership of Kingman Reef. (Def's. Mot. at 8.) While true that Ms. Shirilla testified that she did undertake her own research regarding title and ownership (the timing and purpose of which remains unclear), Ms. Shirilla was vague if not evasive in response to questions regarding whether she actually spoke for the FWS on the ownership issue. (*See* Cannata Dec. ¶ 9 and Ex. H, at.251-266.) Ms. Shirilla testified that in the late 1990's, she formed a personal opinion or conclusion about the ownership of Kingman Reef. (*Id.* at 260:19 - 261:21.) She testified that she had discussions about ownership with Suzanne Case and representatives from the Department of Navy, as well as from attorneys in the DOI. (*Id.* at 93-95, 121-129, 251-253.) In connection with her conclusions, Ms. Shirilla ultimately rejected the term "opinion," instead describing her results as her "position," which was generally "shared by the agency." (*Id.* at 265:2-8.) She had no answer to the question of who in the DOI or FWS made the final decision concerning ownership. *Id.* at 258-259. Rather, Ms. Shirilla pointed to the environmental assessment as the document memorializing the "final decision" on title and ownership. (*Id.* at 265:26-25.) Ms. Shirilla then surmised that the regional director, Dave Allen or his predecessor, approved the opinion on title and ownership of

the FWS on Kingman Reef. (*Id.* at 266:1-11.) Thus, a witness with institutional knowledge of the FWS is necessary to speak for and explain *the agency's* position on title, whether based on the environmental assessment or otherwise. Ms. Shirilla could only offer her personal opinion at deposition – which for purposes of a Rule 30(b)(6) deponent was at best incomplete. Defendant should produce a further witness from the FWS or DOI, qualified to testify about the institutional knowledge on the issues of title and ownership.

**3. Plaintiffs Are Not Seeking Legal Opinions from the Government Agencies**

Defendant claims that "the topic of inquiry go well beyond the fact discovery and quite clearly seek testimony on Defendant's legal analysis, theories, opinions and conclusions." (Def's. Mot. at 10.) Defendant cites Request No. 2, which seeks information related to "[t]itle investigations, and opinions regarding the ownership of Kingman Reef and Palmyra Atoll, including communications with The Nature Conservancy and Suzanne Case." (Def's. Mot. Ex. 1, at 4.)

First, title investigations and opinions are consistent with an inquiry on "claims and decisions" concerning title and ownership as all agree were allowed by the Court. (Def's. Mot. at 3.) Second, plaintiffs are seeking information from persons in the department who would be familiar, for example, with the following:

- Record keeping system of the department;
- A witness who can assist with determining the identities of persons who may have been involved in certain historic decisions concerning Kingman Reef;
- A witness who is trained in analyzing, cataloging, searching or identifying historic documents for the department;
- A witness with expertise in the analysis and application of U.S. sovereignty and private ownership rights;
- A witness with knowledge about the process by which the agency determined that the Government had acquired sovereignty over Kingman Reef;
- A witness who may have historic institutional knowledge, or where to find information about how the U.S. Attorney General in the Territory of Hawaii would know what to advise private citizens on how to document their claim to Kingman Reef;

▸ A witness who may have some knowledge over whether, when and how the agency determined that Kingman Reef was a public land as opposed to privately owned.

Plaintiffs' goal is to make certain that someone with sufficient knowledge and expertise about the subject matter referenced in the notice is produced to obtain information about how the agency operated during a time when the Fullard-Leo family repeatedly notified the Government of their claim to private ownership of the subject property. Also relevant is the manner in which the agency viewed the question of sovereignty and title to property when confronted with a claim of private property rights. Whether plaintiffs' obtain direct or indirect information, discovery concerning these issues is reasonably calculated to lead to the discovery of admissible evidence.

**4. Plaintiffs Seek Institutional Knowledge Rather than Eyewitness Accounts of Facts Concerning the Ownership of Kingman Reef**

Defendant asserts that "it is inefficient, duplicative, and unduly burdensome to require Defendant to designate a Rule 30(b)(6) witness with no personal knowledge of the historic facts relevant to title and ownership to review the documents already in Plaintiffs' possession in order to testify as to facts that appear in those documents." (Def's. Mot. at 12.) Defendant goes on to argue that FWS did not have involvement with Kingman Reef until the 1990's and as such, would not have knowledge of any claims to the Reef in 1922 to 2001. (Def's. Mot. at 11.) This argument is contrary to well settled law.

An agency has the affirmative duty to produce a representative who can answer questions that are both within the scope of the matter described in the notice and are "known or reasonably available" to the agency. Starlight Intl. Inc. v. Herlihy, 186 F.R.D. 626, 640 (D.Kan. 1999). A Rule 30(b)(6) designee does not give his personal opinion, but instead presents the agency's position on the topic. *Raytheon Aircraft Co. v. United States,* Slip Copy, 2007 WL 2668725 (D.Kan. 2007) The rule applies equally to government designees. *Harris v. New Jersey,* Slip Copy, 2007 WL 2416429 (D.N.J. 2007)) Personal knowledge of the deponent on subjects requested, is irrelevant. *Raytheon,* 2007 WL 2668725 (personal knowledge of the designated

subject matter by the selected deponent is of no consequence.)

**B. The Department of the Interior**

Defendant makes the same objections to the Rule 30(b)(6) notice to the DOI as it does concerning the deposition notice directed to the FWS. And, for the same reasons as stated above, defendant's arguments are unavailing. Defendant makes several more specific objections based on relevance and duplication, all of which fail.

First, defendant contends that FWS is part of the DOI, and as such, "the matters known or reasonably available to the [DOI] are the same matters known or reasonably available to the FWS and plaintiffs' request for a Rule 30(b)(6) deponent from Interior is unnecessarily duplicative of its request for such a deponent from the FWS." (Def's. Mot. at 13.)

Under Rule 30(b)(6), a party may take the deposition of an individual who is designated to testify on behalf of a governmental agency. The rule does not command that a Rule 30(b)(6) notice be directed to only the head of the agency. There is no evidence to suggest that every matter in FWS is either known and/or communicated to the DOI, and visa versa. Indeed, FWS is a governmental agency that has enough institutional autonomy from the DOI, so that it should be subject to its own process. *See e.g., Ghandi v. Police Dept. Of the City of Detroit,* 74 F.R.D. 115, 123 fn. 8 (D.C. Mich. 1977) (the F.B.I. is a governmental agency subject to Rule 30(b)(6) subpoena despite being under the Department of Justice.)

Second, defendant objects on grounds of relevance to an inquiry about the letter dated October 3, 1997 insofar as it relates to "the cleanup of Palmyra Atoll." (Def's. Mot. at 13.) Defendant omits the next sentence that discussed the ownership and acquisition of Kingman Reef, by coordinating "closely with Mr. Peter Savio . . . who represents the interest of the majority owners" (*i.e.* the Fullard-Leo family.) (Def's. Mot. Ex. 1.) The "acquisition" coupled with the discussions with the "majority owners" demonstrates DOI's understanding that plaintiffs owned Kingman Reef. Contrary to defendant's claim, Robert Smith's testimony on this letter is inadequate since the issue of ownership was precluded by the District Court, and thus, not

discussed in connection with this letter. In addition, the DOI (rather than FWS) may have a witness with information relevant to this letter.

Defendant objects to the August 18, 1998 briefing statement claiming that testimony was given by Mr. Smith and Ms. Shirilla regarding who prepared the document, and any response. (Def's. Mot. at 14.) Neither Mr. Smith nor Ms. Shirilla could state who prepared the document or any facts or circumstances surrounding the preparation of the document. (See Def's. Mot. Ex. 9, at 129, and Ex. 7 (errata) at 172 - 173.) A party does not fulfill its Rule 30(b)(6) obligations by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available to the agency. *Starlight Intl. Inc.,* 186 F.R.D. at 640. The briefing statement was presumably prepared by either FWS or DOI, and thus, reasonably knowable to those agencies. The testimony of Mr. Smith and Ms. Shirilla is insufficient.

Although defendant objects, issue of congressional appropriations to purchase "Palmyra/Kingman Reef" is relevant to ownership. The request to purchase would signal that defendant understood that a private entity – plaintiffs – owned Palmyra and Kingman Reef. The appropriation issue is relevant and the inquiry, proper.

Defendant objects to the public land issue on the grounds that there were no documents or other lists maintained by either FWS or the Bureau of Land Management that included Kingman Reef as "public lands." (Def's. Mot. at 16.) Defendant goes on to contend that the absence of Kingman Reef listed as public lands is not relevant to the underlying question of title and ownership of Kingman Reef. (*Id.*) Plaintiffs respectfully disagree. The issue of public lands is directly related to ownership of both plaintiffs and particularly as a defense raised by defendant. (*See* Doc 15 p. 2.) To the extent that Kingman Reef was not officially considered "public land" bears directly on the issue of ownership.

**C. Department of the Navy**

Defendant offers the same objections as noted above based on relevancy and a lack of "personal knowledge" of any potential designee. (Def's. Mot. at 16, 17.) For the same reasons

as noted above, defendant's objections are without merit.

Relying on the testimony of Dennis Pacht, defendant makes the similar objection arguing that this request is cumulative and duplicative to the District Court discovery. (Def's. Mot. at 18.) Again, the issue of ownership being precluded by the District Court, Mr. Pacht was not designated to answer questions related to ownership. As well, while defendant is correct that Mr. Pacht did not receive an inquiry to research title of Kingman Reef, it is not entirely clear that the Navy was without such information. (*See* Def's. Mot. Ex. 16, at 56, 57.) Mr. Pacht testified that there might be more information on ownership outside of this department at Navy Region Hawaii, the Commander U.S.Pacific Fleet, Naval Facilities Engineering Command in Washington D.C., the Secretariat, and the Chief of Naval Operations. (Cannata Decl. ¶ 10 and Exs. I.)

Defendant's objection to topic numbers 7, 8, 9 (regarding request for access to Kingman Reef, Pan Am landings, and the transport of members of the Fullard-Leo family) are relevant insofar as it may lead to potential admissions by the government of plaintiffs' ownership in either the referrals or "fly-overs" and/or explain why, for example, the Pan Am landings ceased at the Fullard-Leo family's insistence. Defendant argues that this topic is duplicative of the testimony given by Commander Jeff Good. Commander Good, however, had no knowledge of the fly-overs, except that he knew the Coast Guard did take the Fullard-Leos to Kingman Reef. (Def's. Mot. Ex. 17 at 19, 23.)

Defendant objected to Request no. 10 on the ground that it is cumulative of the deposition testimony of Mr. Pacht. The request seeks information related to "the planned interdepartmental transfer of Kingman Reef from the U.S. Navy to any other United States governmental agency or department." (Def's. Mot. Ex. 3.) This issue is related to the planned transfer to the GSA, wherein, Mr. Pacht testified that the order to not proceed through the GSA came from Naval headquarters in Washington D.C. (Def's. Mot. at 73-74, *See also, Infra,* section E.) There is, therefore, relevant information as to why the transfer did not ultimately go through the GSA (or

another agency) that may have some relevance on the issue of title or ownership. (*See, Infra,* section E.)

**D. The State Department**

Defendant's primary objection to this Rule 30(b)(6) notice is that the State Department's involvement with title, ownership, and sovereignty of Kingman Reef is historic in nature, and therefore, there are no persons with personal knowledge of such events. (Def's, Mot. at 21.) As discussed above, the Rule 30(b)(6) notice seeks witnesses with institutional, rather than personal knowledge of events. In this case, the office of the Historian may have relevant information, among others. (*See*, www.state.gov/r/pa/ho.) Therefore, defendant's claim of relevance fails for similar reasons as set forth above. Defendant further contends that the notice seeks a legal opinion. This objection also fails for the reason stated in section II, A(3) above.

Defendant also objects to inquiry no. 7, claiming that "a State Department designee cannot testify regarding the records of other agencies." (Def's. Mot. at 23.) Request no. 7, however, is directed to information related to public lands, and relevant to the issue of ownership. The request does not seek information from a State Department designee regarding the workings of other government agencies. Rather, it seeks information known at the State Department concerning the ownership of Kingman Reef and pubic lands.

**E. General Services Administration**

Plaintiffs' inquiry of the GSA is related to discovering why, prior to 2001, Kingman Reef was not listed on the GSA worldwide inventory of federal property and/or any other such list. The specific inquiry centers on how the inventory was created, maintained, and updated. Defendant's claims that the inquiry is irrelevant since reporting of property in the public domain is exempt under E.O. 13327. (Def's. Mot. at 24.) Plaintiffs note, however, that E.O. 13327, executed in 2004, does not address the years prior to 2004 in connection with the reporting and maintenance requirements of the list. The relevant inquiry is the period before 2001. The request to the GSA about the inventory of public lands is reasonably calculated to lead to the

discovery of admissible evidence.

Defendant's claim that inquiry into the sale and transfer of Kingman Reef to the GSA is needless harassment. (Def's. Mot. at 26.) Defendant cites Mr. Pacht's testimony to conclude that "GSA had no role in the transfer of Kingman Reef." (Id.) Mr. Pacht's testimony, besides the fact that he does not speak for the GSA, raises more questions. For example, Mr. Pacht claims that there were discussions concerning an appropriate disposal method for Kingman Reef and that the ultimate decision to take it out of GSA's authority came from Washington. (Def's. Mot. at 73-74.) It is unclear what, if any, involvement the GSA had in the analysis of who owned Kingman Reef and what was necessary to transfer the property (or exactly what interest was being transferred.) This is an appropriate area of inquiry because it pertains to title and ownership of Kingman Reef.

Defendant's remaining blanket objections based on lack of personal knowledge and relevance are unavailing as discussed above in sections II, A(4).

**F. William Brown**

Defendant objects generally to the relevance of Mr. Brown, stating "defendant has not seen (nor have Plaintiffs identified) any documents indicating that Mr. Brown, who was the Secretary's Science Advisor, rendered any opinion regarding title." (Def's. Mot. at 27-28.) Defendant characterizes Mr. Brown as a "random" former employee based on the absence of documents connecting him to title or ownership of Kingman Reef. (Id.)

Mr. Brown appears to have been directly involved in the decision to designate Kingman Reef as a National Wildlife Refuge. On June 18, 2006, Mr. Brown wrote a commentary note to the Honolulu Advertiser entitled "Sanctuary a victory long in making." (Cannata Decl. ¶ 11 and Ex. J.) There, Mr. Brown explains that he recommended "Palmyra Island and Kingman Reef" as an area for protection under Executive Order 13089 on Coral Reef Protection. (Id.) Mr. Brown was also involved with the execution of the Executive Order 3223 signed on January 18, 2001, which created the Kingman Reef National Wildlife Refuge. (Id.) Mr. Brown also appears to

have had substantial communications with Robert Smith regarding Kingman Reef, as he states: "Smith was an unabashed advocate for coral reef protection and an avalanche of information for the NWHI as well as Palmyra and Kingman." (Id.)

Stemming from his involvement with locating and designating Palmyra Atoll and Kingman Reef for inclusion into the wildlife reserve, Mr. Brown likely considered issues concerning ownership of the same. As well, Mr. Brown very likely had discussions with Mr. Smith on issues of ownership as well as the negotiation of and planned purchase of Palmyra Atoll and Kingman Reef from the Fullard-Leo family, among other things. Last but not least, working closely with Secretary Babbitt, Mr. Brown may be able to shed light on the appropriations issues surrounding Palmyra Atoll and Kingman Reef.

Defendant also objects to all document requests except for numbers 1, 2, 3 and 6, based on a claim of relevance and overly broad. Plaintiffs seek eight (8) categories of documents within Mr. Brown's possession, custody, and control. (Def's, Mot. Ex. 6.) Request no. 4 concerns appropriations. No. 5 concerns Executive order 3223. No. 7 relates to all documents concerning the Fullard–Leo family members, among others. No. 8 relates to any documents concerning this litigation. All these requests are relevant to the issues set forth by this court. As well, defendant cites to no evidence or authority explaining how or why responding to 8 requests are overbroad or burdensome.

Finally, defendant objects to Mr. Brown on a general claim of privilege concerning "conversations with agency attorneys." (Def. Mot at 28.) First, to the extent that Mr. Brown discussed issues related to Kingman Reef in his June 18, 2006 commentary, the issue is waived. Furthermore, defendant placed the issue of title and ownership in its answer to the complaint and its motion to dismiss under Rule 12(b)(1), and as such, it is "at issue". *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 276 (N.D. Ill. 1997). It would be patently unfair to deny plaintiffs discovery on this issue, while allowing defendant to defend on the same theory. Even assuming that some questions are objectionable, defendant is fully capable of

instructing Mr. Brown to decline to answer questions if defendant considers that a particular question invades an applicable privilege. There is no reason to prematurely preclude this deposition before anything is asked.

## CONCLUSION

For all the reasons stated herein, plaintiffs respectfully request that defendant's motion for protective order be denied in all respects.

Dated: March 20, 2008

CANNATA CHING & O'TOOLE LLP

s/ Therese Y. Cannata
THERESE Y. CANNATA
Attorneys for Plaintiffs KINGMAN REEF ATOLL INVESTMENTS L.L.C. and KINGMAN REEF ATOLL DEVELOPMENT LLC.