# EXHIBIT E

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al.,** | ) | **No. 06-828L** |
| **Plaintiffs,** | ) | **Judge Marian Blank Horn** |
| **v.** | ) | |
| **THE UNITED STATES OF AMERICA; Defendant.** | ) | |

NOTICE OF TAKING RULE 30(b)(6) DEPOSITION OF THE UNITED STATES OF AMERICA; U.S. DEPARTMENT OF NAVY UPON ORAL EXAMINATION

CHRISTIAN P. PORTER
Brooks Tom Porter & Quitiquit, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Tel: 808-526-3011
Fax: 808-523-1171
Email: cporter@btpqlaw.com

OF COUNSEL:

Therese Y. Cannata, CA Bar No. 88032
Michael M. Ching, CA Bar No. 209426
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111
Tel: 415-409-8900
Fax: 415-409-8904
Email: tcannata@ccolaw.com

TO: Kristine Tardiff
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Attorneys for Defendant

PLEASE TAKE NOTICE that Plaintiffs KINGMAN REEF ATOLL INVESTMENTS, L.L.C. and KINGMAN REEF ATOLL DEVELOPMENT, L.L.C., by and through their attorneys BROOKS TOM PORTER & QUITIQUIT, LLP, will take the deposition of THE UNITED STATES OF AMERICA; U.S. DEPARTMENT OF NAVY, by and through one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf, as to each and all of the matters listed below on the date and time indicated below:

| Deponent | Date and Location |
|---|---|
| The United States Navy<br>By its Rule 30(b)(6) Designee<br>c/o Kristine Tardiff<br>United States Department of Justice<br>Environmental & Natural Resources Division<br>Natural Resources Section<br>53 Pleasant Street, 4th Floor<br>Concord, NH 03301<br><br>and<br><br>The United States of America<br>By its Rule 30(b)(6) Designee<br>c/o Kristine Tardiff<br>United States Department of Justice<br>Environment & Natural Resources Division<br>Natural Resources Section<br>53 Pleasant Street, 4th Floor<br>Concord, NH 03301 | December 13, 2007 at 9:30 a.m.<br>Brooks Tom Porter &<br>Quitiquit, LLP<br>841 Bishop Street, Suite 2125<br>Honolulu, Hawaii 96813 |

I. DEFINITIONS

Unless context otherwise indicates, the following words and phrases shall have the meaning given here.

1. The terms "you" and/or "your" or shall mean and include the deponent, The United States Navy, their agents, attorneys, experts, consultants, employees, independent contractors, representatives, or other persons acting or purporting to act on their behalf, or any one of them.

2. The terms "defendant" or shall mean and include the Defendant The United States of America, their agents, attorneys, experts, consultants, employees, independent contractors, representatives, or other persons acting or purporting to act on their behalf, or any one of them.

3. The term "Kingman Reef" means that certain atoll, the subject of this lawsuit, is located approximately 900 nautical miles southwest of Hawaii in the Pacific Ocean and 33 nautical miles north of the Palmyra Atoll and essentially sits half-way between the Hawaiian Islands and Samoa at Latitude 6° 24' 37" North and Longitude 162° 22' West.

4. The term "Kingman Reef NWR" means the Kingman Reef National Wildlife Refuge established on January 18, 2001, by virtue of Defendant United States Department of the Interior's Order No. 3223.

5. The term "1934 Executive Order" means the Executive Order Placing Certain Islands in the Pacific Ocean Under the Control and Jurisdiction of the Secretary of the Navy dated December 29, 1934, executed by President Roosevelt.

6. The term "1941 Executive Order" means Executive Order 8682 Establishing naval defensive sea areas around and naval airspace reservations over the islands of Palmyra,

Johnston, Midway, Wake, and Kingman Reef of February 14, 1941, executed by President Roosevelt.

7. The term "Copra Co." means The Island of Palmyra Copra Company which was incorporated in the Territory of Hawaii.

8. The term "Palmyra Atoll" or "Palmyra" means the atoll located in the Northern Pacific Ocean at 5° 52'N 162° 6'W, southeast of Kingman Reef and north of Kiribati Line Island, located almost due south of the Hawaiian Islands, roughly halfway between Hawaii and American Samoa and being the atoll subject to the Palmyra Atoll National Wildlife Refuge.

9. The term "Plaintiff" shall mean Plaintiff Kingman Reef Atoll Investments, L.L.C., a Hawaii limited liability company and Kingman Reef Atoll Development L.L.C., a Hawaii limited liability company, its agents, attorneys, experts, consultants, employees, independent contractors, representatives, or other persons acting or purporting to act on their behalf, or any one of them and sometimes together with "Plaintiff's Predecessor", collectively "Plaintiff".

10. The term "Plaintiff's Predecessor" means the Copra Co., Ellen Fullard-Leo, E. Fullard-Leo, Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Leslie Fullard-Leo, their agents, attorneys, experts, consultants, employees, independent contractors, representatives, or other persons acting or purporting to act on their behalf, or any one of them.

11. The term "this Lawsuit" shall mean and include that certain action filed by Plaintiff against Defendant in the United States Court of Federal Claims No. 06-828L.

12. The term "Guano Act" means the Guano Islands Act of 1856, 48 U.S.C. 1411 - 1419.

13. The term "QTA" means the federal Quiet Title Act, 28 U.S.C. 2409a.

14. The term "person" shall mean and include all natural persons, corporations, general partnerships, limited partnerships, joint ventures, trusts, estates, unincorporated business entities or associations, governmental bodies or entities, and any and all other legal entities.

15. The term "Third Party" shall include all natural person, corporations, general partnerships, limited partnerships, joint ventures, trusts, estates, unincorporated business entities or associations, governmental bodies or entities, and any and all other legal entities who are not a party to this action.

16. The term "The Nature Conservancy" as used herein means The Nature Conservancy, worldwide office located at 4245 North Fairfax Drive, Suite 100 Arlington, VA 22203-1606, its agents, attorneys, experts, consultants, employees, independent contractors, representatives, or other persons acting or purporting to act on their behalf, or any one of them.

17. The term "and", "or", as well as "and/or" shall be construed disjunctively, conjunctively, or both, as necessary to bring within the scope of the request all responses which might otherwise be construed to be outside the scope of the particular request.

## II. TOPICS OF INQUIRY

1. Your tasks and/or activities constituting your day-to-day exercise of jurisdiction and control over Kingman Reef.

2. The ownership interests in Palmyra and/or Kingman Reef.

3. The planned interdepartmental transfer of Kingman Reef from you to any other United States governmental agency or department.

4. The acquisition, purchase, transfer, sale of Kingman Reef, including but not limited to the status of ownership in said property.

5. The protocol employed by any person, entity or agency to control access to Kingman Reef.

6. The Guano Act, the 1934 Executive Order, the 1941 Executive Order and/or the Pickett Act vis-a-vis your relation to Kingman Reef.

7. Whether you, Defendant, U.S.Coast Guard and/or other branches of the military referred requests to access Kingman Reef to the named plaintiff in this lawsuit, Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio.

8. Inquiries for access to Kingman Reef between the years 1922 and 2000, including inquiries directed to the named plaintiff in this lawsuit, Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio for approval.

9. The appropriation of funds from the U.S. Congress to purchase Palmyra Atoll and Kingman Reef from Plaintiff or Plaintiff's Predecessor.

10. The landing of planes on, at, in or around Kingman Reef by Pan American Airways, including waters surrounding Kingman Reef, and any agreements to do so between you and/or Defendant and Pan American Airways.

11. Your and/or Defendant's challenge, if any, of Plaintiff's and/or Plaintiff's Predecessor's ownership of Kingman Reef at any time prior to December 31, 2000.

12. Your and/or Defendant's communications, prior to December 21, 2000, to Plaintiff or Plaintiff's Predecessor concerning Defendant's claimed ownership interest in Kingman Reef.

13. The deed filed and recorded on November 17, 2000, to Kingman Reef in the United States District Court for the District of Hawaii as Document No. 27, including Defendant's challenge, if any, to the validity of said deed or Defendant's objection, if any, to the

filing of said deed.

14. Your transport of Plaintiff, Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio to or over Kingman Reef.

15. The transport by the U.S. Coast Guard of Plaintiff, Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio to or over Kingman Reef.

16. Any and all evidence of assessments of real property taxes by the Territory of Hawaii to Plaintiff or its predecessors in interest for Kingman Reef, and/or the identity of persons who paid such real property taxes to the Territory of Hawaii for Kingman Reef.

17. From 1922 to 2001, the Territory of Hawaii's position on title to Kingman Reef.

18. From 1922 to 2001, the State of Hawaii's position on title to Kingman Reef.

19. From 1922 to 2001, Defendant's claims if any, to title to Kingman Reef.

20. Copra Co.'s claim of ownership to Kingman Reef through its agent Lorrin A. Thurston.

21. The letter dated October 3, 1997 to the U.S. Army Corps of Engineers at Fort Shafter, Hawaii, from Robert F. Smith, Pacific Islands Manager for U.S. Fish and Wildlife attached hereto as **Exhibit "1"**.

22. The report dated October 17, 1997 by the U.S. Department of Commerce, National Oceanic and Atmospheric Administration ("NOAA Report") attached hereto as **Exhibit "2,"** including but not limited to an explanation of Defendant's position on ownership in Kingman Reef as reflected in the NOAA Report.

23. Two letters dated October 26, 2000, attached hereto as **Exhibit "3"**, that the U.S. Congress provided additional funding for high-priority land acquisitions for, among others,

Kingman Reef.

24. The creation, implementation and execution of Executive Order 13089 on Coral Reef Protection signed on June 11, 1998.

25. The economic value of Kingman Reef.

26. The establishment and effect of the Kingman Reef Wildlife Refuge by Order 3223 signed on January 18, 2001 on Kingman Reef.

27. The effect that the Kingman Reef Wildlife Refuge (Order 3223) had on private property interests in Kingman Reef.

28. Communications between you and any other person, excluding attorney-client communications, concerning this Lawsuit.

29. Kingman Reef as public lands of the United States of America at any time prior to January 18, 2001, and lists of public lands and reports to the U.S. Congress that Kingman Reef was and is public lands.

30. Excerpts from The Department of State's memorandum dated November 9, 1934 regarding Kingman Reef attached hereto as **Exhibit "4"**.

31. The letters dated October 23, 2000, with attachment from Bruce Babbitt, Secretary of the Interior to the Honorable Ralph Regula, Chairman, Subcommittee on Interior and Related Agencies, Committee on Appropriations, House of Representatives, Washington, D. C. and the Honorable Slade Gorton, Chairman, Subcommittee on Interior and Related Agencies, Committee on Appropriations, United States Senate, Washington, D.C., attached hereto as **Exhibit "5"** and designated as "Exhibit Z-7" in the lower right corners.

32. Title investigations and opinions regarding the ownership of Kingman Reef and

Palmyra Atoll by The Nature Conservancy.

33. Kingman Reef as *Terra Nullius* and as unclaimed land prior to 1922.

34. Any claim of ownership by defendant to Kingman Reef by virtue of the Pickett Act.

DATED: San Francisco, California, October 25, 2007.

By ______________________________

Therese Y. Cannata, CA State Bar 88032
Attorney for Plaintiffs
KINGMAN REEF ATOLL INVESTMENTS, L.L.C. and KINGMAN REEF DEVELOPMENT, L.L.C.

# EXHIBIT 1

JAN-06-98 TUE 14:2

# United States Department of the Interior

FISH AND WILDLIFE SERVICE
PACIFIC ISLANDS ECOREGION
300 ALA MOANA BOULEVARD, ROOM 3108
BOX 50088
HONOLULU, HAWAII 96850
(808) 541-2749 ♦ (808) 541-2756 FAX

6 OCT 1997
HED
DHJ
SECY
ET-E

Either before or after his trip is UK with me.

OCT 3 1997

Rcvd 1/6/98

Lt. Colonel Ralph H. Graves
Honolulu District Engineer
U.S. Army Corps of Engineers
Building 230
Fort Shafter, HI 96858-5440

Dear Col. Graves:

I am writing ~~you in~~ the interest of good coordination regarding a project in which we share a mutual interest -- the cleanup of Palmyra Atoll. Enclosed please find a memorandum from the Director of the Fish and Wildlife Service (~~Service~~), Jamie Clark, which gives her approval for the Service to begin detailed planning toward (hopefully) acquisition of Palmyra Atoll and Kingman Reef as units of the National Wildlife Refuge System. Our efforts to date have been coordinated closely with Mr. Peter Savio, a local realtor who represents the interests of the majority owners. We are also working with Mr. Chuck Cook of The Nature Conservancy (TNC), and at this point foresee TNC actually tendering an offer for the property. If that is successful, the Service will repay TNC in the future with dollars appropriated by Congress through the Land and Water Conservation Fund. Chuck Cook

Please note that the third paragraph of Director Clark's memorandum focuses on the contaminant issues at Palmyra. The Service is eager to be of assistance to the Corps in any way needed to carry out the cleanup in an expeditious and environmentally sensitive manner. We just completed an enormous cleanup effort at Midway, where the Navy spent over $80 million in a three year effort. Working together with the Navy and its contractors, the Service used good conservation practices to minimize losses to seabirds, and cooperated with innovative techniques that made the cleanup go more smoothly and efficiently. One practice that really helped for a better project at Midway was using petroleum-soaked soil to make asphalt, rather than disposing of the soil in the landfill. On the natural resource side of the equation, black shade cloth was anchored to the ground where future projects were planned, so that birds were discouraged from nesting in the project area. There were a number of other special practices utilized for the Midway cleanup, and the Service would very much like to share some of our Midway experiences with you because we believe the cleanup efforts at Palmyra will benefit from our experiences at Midway.

I will be traveling to Palmyra on October 14, and will return on October 28. Perhaps we can discuss your cleanup plans either prior to or after my trip. Again, the Service is interested in full cooperation, including but not limited to the issuance of any Migratory Bird Treaty Act permits necessary to facilitate the cleanup.

Thank you for your efforts on behalf of a clean environment at Palmyra. I hope to hear from you or your staff soon.

Sincerely,

Robert P. Smith

Robert P. Smith
Pacific Islands Manager

Enclosure

# EXHIBIT 2

(36)

15.A.1.

UNITED STATES DEPARTMENT OF COMMERCE
National Oceanic and Atmospheric Administration

FILE COPY

RECEIVED

'97 OCT 20 A9:57

WESPAC

# MEMORANDUM

To: WPFMC - Kitty M. Simonds

From: GCSW - Judson J. Feder *[signature]*

Date: October 17, 1997

Subject: Fishery Management Jurisdiction over waters off Midway Atoll, Palmyra Island, and Kingman Reef

This responds to your September 4, 1997, letter to me about fishery management jurisdiction in the ocean around Midway Atoll, Palmyra Island, and Kingman Reef.

The Secretary of Commerce has delegated to the Assistant Administrator for Fisheries, National Marine Fisheries Service (NMFS), the Secretary's Magnuson-Stevens Act[1] fishery management authority in the EEZ.[2] Since the Federal government has not transferred the submerged lands adjacent to Midway Atoll, Palmyra Island, or Kingman Reef to a state or local government or private entity, the shoreward boundary of the EEZ around those areas is the "baseline" from which the territorial sea is measured, i.e., the low-water mark. See, the Territorial Submerged Lands Act, 48 U.S.C. § 1704 et seq., which applies to Guam, the U.S. Virgin Islands, and American Samoa, but not to Midway Atoll, Palmyra Island, or Kingman Reef.

---

[1] 16 U.S.C. § 1801 et seq.

[2] According to Presidential Proclamation 5030 of March 10, 1983, the U.S. EEZ encompasses the 200 nautical mile zone from the baseline of United States overseas territories and possessions, as well as states. Under the Magnuson-Stevens Act, the shoreward boundary of the EEZ is the seaward boundary of each of the coastal states. 16 U.S.C. § 1802(11) Under the Magnuson-Stevens Act, the U.S. territories and possessions of the Western Pacific fall within the definition of "state." 16 U.S.C. § 1802(36)



Printed on Recycled Paper

Midway Atoll

E.O. 13022, signed by President Clinton on October 31, 1996, directed the U.S. Fish and Wildlife Service (FWS) to assume jurisdiction over Midway Atoll National Wildlife Refuge. As noted in your letter, the Refuge is bounded by 28°5" N. latitude, 177°70" W. longitude, 28°25" N. latitude, and 177°30" W. longitude. The Refuge covers about 302 square statute miles, much of which encompasses ocean waters; only about 1600 acres of the Refuge is emergent land. Although most national wildlife refuges do not encompass ocean waters, the President is not precluded by law from designating ocean waters as part of a refuge. Under 16 USC § 778dd(c), no one may take or possess fish within a refuge ". . . unless permitted either under subsection (d) of this section or by express provision of the law, proclamation, Executive order, or public land order establishing the area . . . ." Although NOAA has authority under the Magnuson-Stevens Act to regulate fishing within the EEZ around Midway Atoll, it is my legal opinion that the FWS has *concurrent* statutory authority to regulate activities within Refuge boundaries.

16 USC § 460k authorizes the Secretary of the Interior to allow recreational activities within Refuge boundaries ". . . only to the extent that is practicable and not inconsistent with other previously authorized Federal operations or with the primary objectives for which each particular area is established . . . ." Under 16 USC § 768dd(d)(1), the Secretary of the Interior may "permit the use of any area within the System for any purpose, including . . . fishing . . . ." From conversations with the director of the Midway Atoll Refuge, I understand FWS allows regulated recreational fishing within Refuge boundaries pursuant to an "Interim Public Use Program." The FWS might supplement the regulations, in turn, by written policy. Presumably, such policy would be given to Refuge visitors. No commercial fishing is allowed within the Refuge boundaries. Details about fishing restrictions in the Midway Atoll National Wildlife Refuge may be obtained from the FWS at P.O. Box 50088, Honolulu, HI 96850; telephone (808) 541-2749.

Palmyra and Kingman

The Fullard-Leo family owns Palmyra Island and Kingman Reef, and may claim ownership or jurisdiction over ocean resources and/or submerged lands seaward of the low-water mark.[3]

Palmyra Island and Kingman Reef are not part of the State of Hawaii, they are not surrounded by "state" waters, and Federal submerged lands around these areas were not conveyed to the Fullard-Leo family. It is the position of the Federal Government that the EEZ around Palmyra and Kingman extends shoreward to the low-water mark.

---

[3] The exact extent of the Fullard-Leo claims is not clear, probably extending to the lagoons and reefs surrounding the islands, and perhaps extending to the breadth of the "territorial" waters.

# EXHIBIT 3

Oct-26-00 04:07pm From-IN SUBCOMMITTEE +2022226906 T-191 P.08/09 F-261

21B

THAD COCHRAN, MISSISSIPPI
ARLEN SPECTER, PENNSYLVANIA
PETE V. DOMENICI, NEW MEXICO
CHRISTOPHER S. BOND, MISSOURI
SLADE GORTON, WASHINGTON
MITCH McCONNELL, KENTUCKY
CONRAD BURNS, MONTANA
RICHARD C. SHELBY, ALABAMA
JUDD GREGG, NEW HAMPSHIRE
ROBERT F. BENNETT, UTAH
BEN NIGHTHORSE CAMPBELL, COLORADO
LARRY CRAIG, IDAHO
KAY BAILEY HUTCHISON, TEXAS
JON KYL, ARIZONA

ROBERT C. BYRD, WEST VIRGINIA
DANIEL K. INOUYE, HAWAII
ERNEST F. HOLLINGS, SOUTH CAROLINA
PATRICK J. LEAHY, VERMONT
FRANK R. LAUTENBERG, NEW JERSEY
TOM HARKIN, IOWA
BARBARA A. MIKULSKI, MARYLAND
HARRY REID, NEVADA
HERB KOHL, WISCONSIN
PATTY MURRAY, WASHINGTON
BYRON L. DORGAN, NORTH DAKOTA
DIANNE FEINSTEIN, CALIFORNIA
RICHARD J. DURBIN, ILLINOIS

STEVEN J. CORTESE, STAFF DIRECTOR
JAMES H. ENGLISH, MINORITY STAFF DIRECTOR

# United States Senate

COMMITTEE ON APPROPRIATIONS
WASHINGTON, DC 20510-6025

October 26, 2000

The Honorable Dan Glickman
Secretary of the Department of Agriculture
U.S. Department of Agriculture
14th St. & Independence Ave., S.W.
Washington, D.C. 20250

Dear Mr. Secretary:

The Congress provided an additional $179 million for high priority land acquisitions as part of Title VIII of the Department of the Interior and Related Agencies Appropriations Act, 2001. The Congress directed that $49 million of this amount be provided to the Forest Service, and that allocation of these funds to specific projects be determined at a later date by the House and Senate Committees on Appropriations. Attached you will find the project list for the Forest Service funds.

We appreciate your suggestions with regard to the allocation of Title VIII funds and have provided funding for many of the projects on the list that you submitted. Other projects on your list have not been included, either because purchase deals have not been completed, or because the limited funds available are required for other high priority projects.

We look forward to working with you to implement these acquisitions.

Sincerely,

Robert C. Byrd
Ranking Minority Member
Subcommittee on Interior
and Related Agencies
United States Senate

Slade Gorton
Chairman
Subcommittee on Interior
and Related Agencies
United States Senate

Ralph Regula
Chairman
Subcommittee on Interior
and Related Agencies
U.S. House of Representatives

Norm Dicks
Ranking Minority Member
Subcommittee on Interior
and Related Agencies
U.S. House of Representatives

FWS

| *Area (State)* | *Amount* |
|---|---|
| Attwater Prairie (TX) | $500,000 |
| Balcones Canyonlands NWR (TX) | 750,000 |
| Canaan Valley NWR (WV) | 7,000,000 |
| Centennial Valley NWR (MT) | 1,100,000 |
| Don Edwards SF Bay NWR (Cargill) (CA) | 8,000,000 |
| Great Meadows Complex (MA) | 2,000,000 |
| Great Swamp NWR (NJ) | 1,000,000 |
| Hakalau Forest (HI) | 500,000 |
| Harris Neck (GA) | 400,000 |
| J.N. Ding Darling NWR (FL) | 3,000,000 |
| Lake Umbagog NWR (NH) | 3,000,000 |
| Minnesota Valley NWR (MN) | 1,000,000 |
| Montezuma NWR (NY) | 500,000 |
| Nisqually NWR (WA) | 5,000,000 |
| Ottawa NWR (OH) | 1,000,000 |
| Palmyra Atoll/Kingman Reef (HI) | 8,250,000 |
| Patoka River Islands NWR (IN) | 500,000 |
| Pelican Island NWR (Montgomery tract) (FL) | 2,800,000 |
| Prime Hook NWR (DE) | 700,000 |
| Rachel Carson NWR (ME) | 2,000,000 |
| Rappahannock River NWR (incl. Mt. Landing Creek) (VA) | 2,000,000 |
| Rhode Island NWR Complex (RI) | 2,000,000 |
| San Diego NWR (CA) | 1,500,000 |
| Silvio Conte NWR (MA/VT) | 755,000 |
| Stewart McKinney NWR (CT) | 400,000 |
| Waccamaw NWR (SC) | 1,000,000 |
| Walkill River NWR (NJ) | 2,000,000 |
| Subtotal | $58,655,000 |

21

TED STEVENS, ALASKA, CHAIRMAN

AD COCHRAN, MISSISSIPPI
LEN SPECTER, PENNSYLVANIA
TE V. DOMENICI, NEW MEXICO
RISTOPHER S. BOND, MISSOURI
ADE GORTON, WASHINGTON
TCH McCONNELL, KENTUCKY
NRAD BURNS, MONTANA
CHARD C. SHELBY, ALABAMA
DD GREGG, NEW HAMPSHIRE
OBERT F. BENNETT, UTAH
N NIGHTHORSE CAMPBELL, COLORADO
RRY CRAIG, IDAHO
Y BAILEY HUTCHISON, TEXAS
N KYL, ARIZONA

ROBERT C. BYRD, WEST VIRGINIA
DANIEL K. INOUYE, HAWAII
ERNEST F. HOLLINGS, SOUTH CAROLINA
PATRICK J. LEAHY, VERMONT
FRANK R. LAUTENBERG, NEW JERSEY
TOM HARKIN, IOWA
BARBARA A. MIKULSKI, MARYLAND
HARRY REID, NEVADA
HERB KOHL, WISCONSIN
PATTY MURRAY, WASHINGTON
BYRON L. DORGAN, NORTH DAKOTA
DIANNE FEINSTEIN, CALIFORNIA
RICHARD J. DURBIN, ILLINOIS

STEVEN J. CORTESE, STAFF DIRECTOR
JAMES H. ENGLISH, MINORITY STAFF DIRECTOR

United States Senate
COMMITTEE ON APPROPRIATIONS
WASHINGTON, DC 20510–6025

October 26, 2000

The Honorable Bruce Babbitt
Secretary of the Interior
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Dear Mr. Secretary:

The Congress provided an additional $179 million for high priority land acquisitions as part of Title VIII of the Department of the Interior and Related Agencies Appropriations Act, 2001. The Congress directed that $130 million of this amount be provided to the Department of the Interior, and that allocation of these funds to specific projects be determined at a later date by the House and Senate Committees on Appropriations. Attached you will find the project lists.

Of the appropriations provided for Timucuan Ecological & Historic Preserve in Florida, the City of Jacksonville has committed to match on a dollar for dollar basis the first $1,000,000. Additionally, the City of Jacksonville has committed to match on a two for one dollar basis the second $1,000,000.

As for Sleeping Bear Dunes NL in Michigan, the funds provided in Title I of the Act combined with the $3,000,000 of the Title VIII funds are to be used to purchase both the Laporte property and the Barratt property.

The funds provided for Silvio Conte NWR are to be distributed as follows: $500,000 for land in Massachusetts and $255,000 for land in Vermont.

Within previously appropriated funds for land acquisition at Stewart B. McKinney NWR, the Committees direct the Fish and Wildlife Service to reprogram $1,600,000 from Ram Island to Calves Island. The Committees expect that these funds, combined with past appropriations for Calves Island, charitable contributions, and the $400,000 provided for the refuge under Title VIII, will complete the Calves Island purchase.

The Committee understands that a private corporation currently holds a license agreement for a fish transhipment operation in the Palmyra Atoll and that the purchase of the atoll by the Fish and Wildlife Service and by The Nature Conservancy will not terminate the current license. The Committees understand that the sale of the land is subject to the license agreement and expect the land owners to fulfill the terms of the agreement. The corporation is entitled to the full benefits of its current license. Additionally, the Committees stress that the corporation shall be treated by federal agents in the same professional manner as The Nature Conservancy or other entities operating on the atoll.

EXHIBIT "15"

Furthermore, the Committees understand that a formal request has been made to the Department of Interior's Inspector General to initiate a criminal and civil investigation regarding alleged Migratory Bird Treaty Act violations on the atoll. These allegations should, at a minimum, receive a preliminary review by the Inspector General within the next two months.

Of the $5,000,000 provided for the Nisqually NWR in Washington, $2,000,000 is to be provided for the East Bluff. Improved protection of the lower Nisqually watershed and Delta is greatly needed to maintain habitat quality at Nisqually NWR. Land protection of the forested and riparian bluffs on the eastern boundary of Nisqually NWR is needed to maintain wildlife corridors and protect water and habitat quality. These lands border the eastern shore of the Nisqually River and Salmon Creek. Forested bluff habitat is available to be purchased from Weyerhauser to provide permanent protection of the slope and top of the bluff, similar to what has been done on the western boundary of the Refuge. Protection is urgently needed, because these forested habitats are planned for development in the near future, unless they are purchased for land protection purposes.

The remaining $3,000,000 for the Nisqually NWR is to be used for the Black River Unit. The Black River lies south of Olympia, Washington on the edge of the densely populated Puget Sound region. The Black River Unit of the Nisqually NWR provides high quality habitat for coho and chinook salmon, steelhead trout as well as migratory birds and a diversity of other species. In addition, it provides recreational and wildlife-viewing opportunities to the growing population of Olympia. The Fish and Wildlife Service is currently working with eleven willing sellers owning over 500 acres along the Black River. These properties are adjacent to the Black River and are under the threat of being subdivided and developed as housing tracts unless they are purchased for land protection purposes.

We appreciate your suggestions with regard to the allocation of Title VIII funds and have provided funding for many of the projects on the list that you submitted. Other projects on your list have not been included, either because purchase deals have not been completed or because the limited funds available are required for other high priority projects.

We look forward to working with you to implement these acquisitions.

Sincerely,

Robert C. Byrd
Ranking Minority Member
Subcommittee on Interior
and Related Agencies
United States Senate

Slade Gorton
Chairman
Subcommittee on Interior
and Related Agencies
United States Senate

Ralph Regula
Chairman
Subcommittee on Interior
and Related Agencies
U.S. House of Representatives

Norm Dicks
Ranking Minority Member
Subcommittee on Interior
and Related Agencies
U.S. House of Representatives

# EXHIBIT 4

Reproduced at the National Archives

DEPARTMENT OF STATE
RECEIVED
AUG 16 1935
DIVISION OF
COMMUNICATIONS AND RECORDS

DEPARTMENT OF STATE

THE LEGAL ADVISER

November 9, 1934.

Dear Mr. Phillips:

The attached memorandum discusses at some length the status of various guano and other islands in the Pacific mentioned in the Navy's memorandum to the White House of October 16th, and its letter to the Department of the same date.

As appears therefrom this Department as well as the courts and the Attorney General have taken the position that the United States did not acquire sovereignty of, or title to, the guano islands under the Guano Islands Act of 1856 (reenacted as Sections 5570 to 5578 of the Revised Statutes). This Department has in the past stated that it has been the course of the Department to recognize such islands only while occupied for the purpose of procuring guano, and therefore upon the cessation of such occupancy they may become open again to discovery, possession, et cetera.

The Navy Department lists the status of the following islands as undetermined and claimed by both the United States and Great Britain: Jarvis, Baker, Howland, Washington and Christmas. While attributing Fanning to Great Britain, the facts regarding that island are similar to those in the case of

Christmas

811.0141/...

EXHIBIT
"23"

## KINGMAN'S REEF

(Kingman, Maria Shoal, Caldeu Reef, "Dangers Rock")

Kingman's Reef is situated about 33 miles north of Palmyra Island. At high tide it is submerged, save possibly for a few hundred square feet.

This Reef is said to have been first seen and reported by Captain Kingman on the American ship SHOOTING STAR.

It was included in Captain Taylor's list of alleged guano islands of February 12, 1857, under the name of "Dangers Rock" and was bonded by the United States Guano Company on February 8, 1860, and "Danger" or "Dangers" Rock appears in the lists of guano islands appertaining to the United States, compiled by the Treasury Department, with the usual notation on the list of August 23, 1867, that a certificate for it was issued to the United States Guano Company. There is no other record of such a certificate having been issued and it seems almost certain that no guano was ever removed from the Island.

On July 15, 1922, the Island of Palmyra Copra Company, a Hawaiian Corporation, notified the State Department that it had annexed Kingman's Reef in the name of the United States and for its own use on May 10, 1922.

No other action appears to have been taken with respect to the incorporation of the Island into the territory of Hawaii or the United States. [illegible]

While

While it does not appear that any other country has claimed Kingman's Reef, it might be well for this Government to take some affirmative action to show definitely that it is a part of the territory of the United States. The mere mention of it in an Act of Congress as American territory would be sufficient.

# EXHIBIT 5

THE SECRETARY OF THE INTERIOR

WASHINGTON

OCT 23 2000

Honorable Ralph Regula
Chairman, Subcommittee on Interior
and Related Agencies
Committee on Appropriations
House of Representatives
Washington, D.C. 20515

Dear Mr. Chairman:

I would like to take this opportunity to express my appreciation for your work on behalf of the Department of the Interior and for providing funding for the new Land Conservation, Preservation and Infrastructure Improvement Program in Title VIII of the recently enacted Interior and Related Agencies Appropriations Act.

Within this new program, the Congress provides $130.0 million in unallocated Federal land acquisition funds for the Department of the Interior. Enclosed is the Department's proposal for land acquisition priorities for this funding. This proposal represents the highest priority projects for the use of these funds and will protect valuable natural and cultural resources across the Nation. Please note that this list contains funding for the Dillionwood Tract in California. The President's FY 2001 budget requested funding for this project in the U.S. Forest Service, but the expected enactment of S. 2279 would expand the boundary of Sequoia National Park to include this tract. Thank you for your consideration of this proposal.

A similar letter has been sent to the Honorable Norman D. Dicks, Ranking Minority Member, Subcommittee on Interior and Related Agencies, Committee on Appropriations, House of Representatives, the Honorable Slade Gorton, Chairman, Subcommittee on Interior and Related Agencies, Committee on Appropriations, United States Senate, and the Honorable Robert C. Byrd, Ranking Minority Member, Subcommittee on Interior and Related Agencies, Committee on Appropriations, United States Senate.

If you have any questions on these projects, please do not hesitate to call me.

Sincerely,

Enclosure

EXHIBIT Z-7

THE SECRETARY OF THE INTERIOR

WASHINGTON

OCT 2 3

Honorable Slade Gorton
Chairman, Subcommittee on Interior
and Related Agencies
Committee on Appropriations
United States Senate
Washington, D.C. 20510

Dear Mr. Chairman:

I would like to take this opportunity to express my appreciation for your work on behalf of the Department of the Interior and for providing funding for the new Land Conservation, Preservation and Infrastructure Improvement Program in Title VIII of the recently enacted Interior and Related Agencies Appropriations Act.

Within this new program, the Congress provides $130.0 million in unallocated Federal land acquisition funds for the Department of the Interior. Enclosed is the Department's proposal for land acquisition priorities for this funding. This proposal represents the highest priority projects for the use of these funds and will protect valuable natural and cultural resources across the Nation. Please note that this list contains funding for the Dillionwood Tract in California. The President's FY 2001 budget requested funding for this project in the U.S. Forest Service, but the expected enactment of S. 2279 would expand the boundary of Sequoia National Park to include this tract. Thank you for your consideration of this proposal.

A similar letter has been sent to the Honorable Robert C. Byrd, Ranking Minority Member, Subcommittee on Interior and Related Agencies, Committee on Appropriations, United States Senate, the Honorable Ralph Regula, Chairman, Subcommittee on Interior and Related Agencies, Committee on Appropriations, House of Representatives, and the Honorable Norman D. Dicks, Ranking Minority Member, Subcommittee on Interior and Related Agencies, Committee on Appropriations, House of Representatives.

If you have any questions on these projects, please do not hesitate to call me.

Sincerely,

Enclosure

EXHIBIT Z-7

Enclosure
10/23/00

# DOI LWCF Proposal for $130 Million in Title VIII Funds

($ in Thousands)

| Bureau | Project | State | Title VIII Proposal |
|---|---|---|---|
| NPS | Great Sand Dunes NM | CO | 15,000 |
| FWS | Palmyra Atoll and Kingman Reef NWRs | Pac Is. | 5,250 |
| BLM | White Vulcan Pumice Mine | AZ | 1,000 |
| FWS | Quinault Settlement | WA | 10,000 |
| NPS | Pinnacles NM | CA | 3,000 |
| BLM | Petrified Forest | AZ | 2,000 |
| BLM & NPS | California Desert | CA | 15,000 |
| | BLM (Wilderness Inholdings) | | [10,000] |
| | NPS | | [5,000] |
| BLM | Steens Mountain | OR | 5,200 |
| FWS | Don Edwards NWR (Cargill addition) | CA | 5,000 |
| NPS | Saddleback Mountain | ME | 3,500 |
| NPS | Civil War Battlefields | Several | 13,169 |
| | Fredricksburg-Spotsylvania NMP | VA | [5,119] |
| | Manassas NBP | VA | [1,000] |
| | Monocacy NB | MD | [250] |
| | Gettysburg NMP | PA | [4,500] |
| | Stones River NB | TN | [1,300] |
| | Shenandoah Nat'l Heritage Area | VA | [1,000] |
| FWS | Cat Island NWR | LA | 2,500 |
| NPS | Fort Sumter NM | SC | 1,600 |
| BLM | Upper MO Nat'l Wild & Scenic River /Lewis & Clark Trail | MT | 3,000 |
| FWS | Pelican Island NWR | FL | 2,800 |
| FWS | Hakalau Forest NWR | HI | 3,000 |
| NPS | Santa Monica Mts. NRA | CA | 2,400 |
| BLM | Grand Staircase-Escalante NM | UT | 2,000 |
| FWS | San Diego NWR | CA | 3,000 |
| FWS | Great Meadows Complex | MA | 2,000 |
| NPS | Nez Perce NHP | ID | 2,300 |
| BLM | Grand Canyon-Parashant NM | AZ | 1,500 |
| FWS | Balcones Canyonlands NWR | TX | 2,750 |
| NPS | Black Canyon of the Gunnison/Curecanti NRA | CO | 700 |
| BLM | King Range NCA | CA | 1,000 |
| FWS | J.N. Ding Darling Complex | FL | 3,000 |
| NPS | Salt River Bay NHP | VI | 1,500 |
| NPS | Sequoia NP (Dillionwood) | CA | 5,000 |
| NPS | Timucuan E & H Pres | FL | 750 |
| NPS | Blue Ridge Parkway | VA/NC | 750 |
| NPS | Voyageurs NP | MN | 1,831 |
| NPS | Home of FDR | NY | 500 |
| FWS | Lake Umbagog NWR | NH/ME | 2,000 |
| | TOTAL, Title VIII LWCF Projects | | 130,000 |

EXHIBIT Z-7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KINGMAN REEF ATOLL INVESTMENTS, L.L.C., et al.,** | ) **No. 06-828L** |
| **Plaintiffs,** | ) **CERTIFICATE OF SERVICE** |
| **v.** | ) **RE: NOTICE OF TAKING RULE 30(b)(6) DEPOSITION OF THE UNITED STATES OF AMERICA; U.S. DEPARTMENT OF NAVY UPON ORAL EXAMINATION** |
| **THE UNITED STATES OF AMERICA; Defendant.** | ) ______________________/ |

**CERTIFICATE OF SERVICE**

CHRISTIAN P. PORTER
Brooks Tom Porter & Quitiquit, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813
Tel: 808-526-3011
Fax: 808-523-1171
Email: cporter@btpqlaw.com

OF COUNSEL:

Therese Y. Cannata, CA Bar No. 88032
Michael M. Ching, CA Bar No. 209426
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111
Tel: 415-409-8900
Fax: 415-409-8904
Email: tcannata@ccolaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that two copies of NOTICE OF TAKING RULE 30(b)(6) DEPOSITION OF THE UNITED STATES OF AMERICA; U.S. DEPARTMENT OF NAVY UPON ORAL EXAMINATION will be duly served upon the following parties at their last known address by first class U.S. Mail, postage prepaid on October 25, 2007:

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environmental & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
kristine.tardiff@usdoj.gov

**DATED**: San Francisco, California, October 25, 2007.

By ______________________
LINA CHENG