CANNATA,
CHING &
O'TOOLE LLP
Attorneys at Law

Therese Y. Cannata
tcannata@ccolaw.com

February 7, 2007

**By E-Mail and U.S. Mail**
Kristine Tardiff
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301

Re: : *Kingman Reef Atoll Investments, LLC v. The United States of America*
(United States Federal Court of Claims, Case No.: 06-828L)

Dear Ms. Tardiff:

We have made some progress in our discussions and I believe we can go still further toward resolving issue in dispute. In this letter we have focused on the pending depositions, both the Rule 30(b)(6) depositions and those directed to individual deponents. We will separately address the government's objections to written discovery.

As an initial matter, I have recapped below the issues that we believe are the subject of the outstanding discovery by both sides at this point in time. We are not limited by time period and it is not limited to an inquiry about plaintiffs' ownership rights. That stated, we obviously must keep the focus on ownership and we must take care to not to expand discovery beyond limited area now permitted by the court.

(1) The underlying question of ownership and title, including how title was (or was not) acquired by the plaintiffs (their predecessors in interest) and the Government. We note the related topics of the Government's claim of sovereignty, possession and control of the subject property as well as its concerns and communications with others about these issues.

(2) Plaintiffs' and the Government's claims and/or beliefs concerning ownership and title, including communications and writings in which the Government, for example, internally

> reviewed its claim of title or the claim of private ownership.
>
> (3) The *ultra vires* issue as to the 1934 Executive Order, including the extent to which the Government could use (or historically did use) this as a legal basis on which to claim sovereignty, administrative jurisdiction, title or ownership of the subject property.
>
> (4) The *terra nullius* theory, and again, this would include communications or writings in which the Government internally considered this issue in connection with its claim of title and ownership of the subject property. We agree that the relevance of this issue is to be determined.

I understand the government's current position to be that none of the proposed depositions are relevant and on that basis all must be withdrawn, regardless of the nature and scope of inquiry proposed. We will respond to that contention more fully below. However, we start this meet and confer process by enclosing *amended* deposition notices for all pending depositions, which are stamped "draft" because we have not yet set the dates or issued the subpoena. We have prepared with them a cover chart to assist us in tracking the issues.

**1. Amended Notices for the FRCP 30(b)(6) Depositions**

These notices have been substantially revised . Our purpose is to reduce and refine the scope of inquiry for the Rule 30(b)(6) notices. We have also added document requests to the Rule 30(b)(6) notices for the limited purpose of ensuring that there are no further documents from these particular witnesses that should be produced. Our expectation is that most if not all responsive documents have been produced or will be produced in response to the document requests propounded to the party defendants. We therefore want to emphasize that we are not asking for the government to re-produce any documents previously produced. At the same time, as we discuss in further detail below, we have some concern about the lack of responsive documents concerning selected issues.

**a. The Rule 30(b)(6) Notice Directed to the State Department**

The government takes the position in this case that the 1934 Executive Order is not evidence of ownership but rather confirms the government's right and title to Kingman Reef as of that date. At the same time, the government has not yet directly answered the penultimate question, which is how and when did the government acquire title to the subject property. And, of course, we acknowledge the parallel question in this dispute, which is how and when did the Fullard-Leo family (or its predecessors in interest) acquire title to Kingman

Reef. The historic documents that we've seen so far places the State Department at the epicenter of this inquiry.

Your principal comment here is that it is unlikely that we will find now in the State Department a witness who has "personal knowledge of these historical facts." I do not believe that this is relevant inquiry. Evidence gathered through discovery directed to institutional knowledge is quite different than that gathered by depositions of eyewitnesses. You have correctly noted that there are a number of historic (ancient) documents from representatives of various executive branch departments, including the State Department, that have surfaced in this case. And we concur that it is extremely unlikely that any of the authors of those documents are currently employed by the government.[1] I would go one step further and agree that if there were meetings about Kingman Reef in the 1920's or 1930's, it is unlikely that we are going to obtain a percipient witness of that event at this late date on the historical time line.

However, the absence of a direct percipient witness does not warrant the conclusion that the State Department does not have employees or representatives who can provide information concerning various topics that are reasonably calculated to the discovery of admissible evidence, including places where there might be important historic documents that could shed light (one way or the other) on the questions of ownership presented in this case.

To illustrate this, I point to a document request (and there were only two here) as well as several "topics of inquiry" identified in the notice. First, consider Document Request No. 1 (to notice directed to State Department) for a specific document entitled *"The Sovereignty of Islands Claimed under the Guano Act and of the Northwest Hawaiian islands, Midway and Wake," unpublished typescript ms., 3 vols., 1932–1933*. We have learned about the existence of this document and believe that the State Department, being the likely originator of this document, may be able to produce the document or direct us to its present whereabouts. Similarly, we have asked for representatives of the State Department, who are knowledgeable about historic matters such as opinions, analysis and admissions (over the years) pertaining to U.S. sovereignty, private ownership, public lands and/or Executive Orders relating to lands and islands in the Pacific. These would be persons who have expertise or knowledge about the department's handling of affairs in, for example, the lead up to World War II, which is certainly a good way to describe the historic wave of events that lead to a series of Executive Orders pertaining to real property located in the Pacific.

Moving forward on the time line, we seek persons who have institutional knowledge

---

[1] We will put aside for the moment the remote possibility that there are any retired government employees who might have direct or indirect knowledge of such matters.

about the manner in which the government decided prior to 2001 that Kingman Reef was not privately owned. Related to this, there appears strong evidence that the Government took an inconsistent position on ownership over the years. Also, we have good reason to believe that historic events relating to U.S. interests in the Pacific, Palmyra and Kingman Reef caused a shift in the Government's view of certain title and ownership questions concerning Kingman Reef. I note that we are certain the question was asked but we are not certain as to how it was answered or which governmental departments were consulted or which might have assisted the Department of Interior or Navy in completing their inquiries. Turning to the interrogatory about whether the Government owned (owns) Kingman Reef, the sum and substance of the Government's response is:

- At some undisclosed moment in the history, potentially but not necessarily dating back to the mid-19th century and no later than the 1934 Executive Order, the Government acquired sovereignty over Kingman Reef.

- This caused Kingman Reef to become a public land (*i.e.* owned by the United States).

- There is no evidence that the United States ever transferred title to the subject property to private ownership.

- All facts on which this contention is based may be found in the historical records produced by the parties in the Hawaii District Court action.

See, Government's Response to Interrogatory No. 2 (pages 5-6). The Government's further position is that its acquisition of sovereignty over Kingman Reef may have been a gradual occurrence, raising the interesting question of whether a government can be a little bit sovereign over a land. Assuming that the Government considered this question in, for example, in 1934 and 2000, and rendered opinions about sovereignty and the related question of private ownership (*e.g.* admitting that the answer to this question was an unqualified **no**), plaintiffs in this action should be permitted to examine persons knowledgeable about the issue, files, internal memoranda, and other public records concerning such matters should be produced to testify about matters that are directly relevant to the claims in this action.

As an aside, we question the conclusion by the Government that sovereignty is irrelevant to this action. In this case, the issues are inseparable as is clearly referenced in what you've termed the "ancient" documents pertaining to the Government's analysis, for example, of the effect of Guano Act on this question.

For all of these reasons, the request to take the deposition of State Department

designees is proper. However, plaintiffs have reduced the number of topics of inquiry in an effort to focus on the areas of inquiry

**b. The Rule 30(b)(6) Notices Directed to the DOI and FWS**

We have revised the deposition notice for Fish & Wildlife Service ("FWS") and we are presenting one directed to the Department of Interior ("DOI"). We have eliminated the duplication to the best of my knowledge. I would also be prepared to stipulate that we will not revisit any areas already covered as so any witness for FWS, including Ms. Shirilla. I respond here to your objections as to any deposition directed to these witnesses. Ms. Shirilla was designated to testify about a number of issue that are not duplicated in the current notice. While it is correct that we were permitted some inquiry about ownership, it was clear from her testimony that the title search and analysis of ownership of Kingman Reef was done in consultation with persons in the DOI office in Washington D.C. and U.S. Navy. She was, in effect, reporting on her conclusions but the issue of the ownership of Kingman Reef was considered at a higher level. One further question we have is what the DOI shared with The Nature Conservancy ("TNC") concerning the ownership of Kingman Reef. We strongly suspect there remains to be discovered a thread of emails between TNC and DOI about this issue.

Also, I refer you to Exhibit 161 (also marked elsewhere as Exhibit 183), which was prepared by representatives of the FWS, there is a reference that representatives of the U.S. Navy and Interior Solicitors conducted a review of records concerning the ownership of Kingman Reef. There are other similar references on documents suggesting periodic title searches, over the many years between 1922 and 2001, concerning Kingman Reef.

As to both notices, the heart of the inquiry as now revised is the title search and analysis of ownership rights. We have also included some references to Palmyra because our discovery to date suggests that the analysis of ownership and title to Kingman Reef was, for a period of time (until very recently) linked to Palmyra. We are inquiring whether persons at the DOI or FWS reviewed the historic documents dating back to 1922, and if they spoke with persons in or outside of the government about these issues. To the extent that DOI had any oversight over public lands or access to federal records concerning public lands, we are inquiring about the institutional knowledge of these matters. If representatives of DOI or FWS communicated with Suzanne Case or other representatives of TNC, about the title and ownership of Kingman Reef, such exchanges are not privileged and certainly relevant to these proceedings. Though we've not received the information yet, someone had to complete the necessary research to confirm title and ownership of Kingman Reef, and in that research, we believe there may be admissions to the effect that it was thought to be privately owned (as we've seen hinted at in other documents).

**c. The Rule 30(b)(6) Notices Directed to the GSA**

Again, the notice to the General Services Agency ("GSA") has been modified and, again, limited in scope of inquiry. We noted with interest the response that Kingman Reef was not listed on the "worldwide inventory" but that does not render the inquiry into this topic completed. The GSA, according to Ms. Ryan, had oversight of maintaining this inventory. It was subsequently either disbanded or replaced, though we have very few details about this. The question, it would seem, is why Kingman Reef was not listed on what purported to be a complete list of federal property.

At the same time, we would agree that the inquiry could potentially be concluded on this issue if the Government were willing to enter into a stipulation, to the effect, that Kingman Reef was never identified as federal property or public land on any Government generated inventory or report prior to January 18, 2001. We would otherwise need to complete the inquiry with GSA on this issue.

A further topic of inquiry as to the GSA concerns a packet that Dennis Pacht prepared and forwarded to the GSA concerning the Navy's proposed transfer of Kingman Reef in 2000. It is unclear what, if any, involvement the GSA had in the analysis of who owned Kingman Reef and what was necessary to transfer the property (or exactly what interest was being transferred). This is an appropriate area of inquiry because it pertains to title and ownership of Kingman Reef, including the potential that the Navy was not asserting ownership but rather administrative oversight of the subject property. I note with interest that representatives of the Navy to date claim that they have no opinion as to who owns Kingman Reef.

**2. Amended Notices for The Nature Conservancy and Individual Depositions**

Regarding the individual deponents – Ms. Case, Mr. Feder, and Mr. Brown – we have also amended those notices, focusing on the scope of the document requests. We address here the relevancy objections. Rather than refer you to previous correspondence, I have prepared comments about the relevancy of each witness below.

**a. The Nature Conservancy and Suzanne Case**

Mr. Cook and Mr. Smith both spoke of an important turn of events in 1998 concerning the proposed purchase of Kingman Reef – a title analysis completed by Ms. Case and shared with representatives of the Government. I cannot state until we question Ms. Case whether a privilege attaches to her title analysis in the first instance. However, I believe there will be no debate that when she shared the information with persons outside of TNC, those communications were <u>not</u> privileged. Ms. Shirilla and Mr. Smith testified that they received information from Ms. Case and others at TNC about her title analysis of Kingman Reef

sometime in 1998. We will be inquiring further about who Ms. Case and others at TNC spoke to, and what written information or historic documents were shared.

I also find it hard to believe that if Ms. Case conducted legal research on the title to Kingman Reef, she did not find a way to share that information with the government beyond a phone call, which has to date generated no memoranda, emails or handwritten notes. Clearly, TNC was in contact with members of Congress and representatives of the Department of Interior, including the Fish & Wildlife Service about both properties. We know this based on testimony from government representatives, documents produced by the government, and to some extent from Mr. Cook's testimony. Moreover, it makes little sense that Ms. Case would spend time and resources of TNC conducting legal research on the title to Kingman Reef if TNC were not an active participant in the effort to acquire that property. Yet, Mr. Cook states that TNC had no interest in buying the property, never negotiated for its purchase and never spoke to anyone about it. (This has been contradicted by others but it is his testimony to date.) This, of course, returns us to the issue of privilege. Why, then, would Ms. Case be conducting legal research about a property that TNC had no interest in acquiring? The only rational conclusion is that she did so at the request of the government or to assist the government. It is also possible that TNC had plans to purchase Kingman Reef at one point in time but decided against it. Either way, it is inconceivable that TNC did not share the results of Ms. Case's apparently very important research with the government. Communications between TNC and the government are obviously not privileged.

Regarding the Rule 30(b)(6) notice directed to TNC, we are prepared to stipulate that we will not revisit areas already covered at earlier depositions. Our purpose here is to inquire about specific issues that came to light after we completed that deposition. For example, Ms. Shirilla spoke of her contacts with TNC. We learned from other witnesses that representatives of TNC's Washington D.C. office were possibly involved in meetings or private communications with DOI representatives, and potentially others, concerning the purchase of Kingman Reef. We add to this the as yet unexplained reference in Congressional appropriations of funds allocated for the purchase of both Palmyra and Kingman Reef. And, on the issue of relevance, an offer directed to private owners to purchase real property cannot be reconciled with the proposition that the Government already owned it. More specifically, TNC witnesses may be percipient witnesses to admissions by the Government concerning the issue of ownership.

We raised all of these issues by letter dated December 4, 2007 to Mr. Fogg. He has not as yet responded.

**b. Deposition of Justin Feder**

I want to first note our agreement that it is not our intent to require NOAA or Mr. Feder to re-produce any documents. Similarly, it is not our intent to revisit areas already covered at previous the NOAA Rule 30(b)(6) depositions. In your letter concerning this deposition, you expressed a concern about those document requests referencing the Palmyra property. As we have previously stated, it is not our intent to pursue discovery related to any litigation other than the one now before us. Our interest in Palmyra is based on what we believe is a link between the two properties dating back to the 1930's and continuing into the "modern era" of this case. That is, the Government's analysis of property rights, including statements and opinions about who owned Kingman Reef, appear to be linked to Palmyra.

Regarding the issue of privilege, we observe that when the Government produced communications to and from Mr. Feder, it voluntarily waived any privilege that may have been attached to Mr. Feder's written communications. These documents have been marked and discussed at depositions without objections. The Government cannot produce the documents for one purpose but assert a privilege for different reasons. Accordingly, Mr. Feder's deposition is not one that would be convened merely to confirm that the inquiry is barred by the attorney-client privilege or work product immunity. On the other hand, we agree that by permitting the deposition to go forward, the Government has not waived objections as to particular questions that may be posed. That is, we cannot state until the question is asked and the objection is made whether there may be areas of inquiry for which the privilege has not been waived. However, we reach that determination by convening the deposition.

Turning to the issue of relevancy, the issue of ownership issue is the focus of discovery at this time. The Government has contended in this case that it always considered Kingman Reef to be federally owned land and denied ever taking an internal or public position that confirms the ownership rights of the Fullard-Leo family. The memorandum and correspondence that pertain to Mr. Feder contain an admission by a Government representative that the Government regarded the Fullard-Leo family as the owners of Kingman Reef. We anticipate that the Government will contend that Mr. Feder's opinion should be discarded as inadvertent or misinformed. It would be prejudicial to preclude an inquiry by plaintiffs about Mr. Feder's statements about ownership as well as his communications with others about such matters.

**c. Deposition of Mr. Brown**

We enclose for your ease of reference our letter dated November 27, 2007, which was our detailed response to the Government's objections to both the deposition of Mr. Brown and the document request directed to that witness. My understanding is that you object to this deposition on grounds of relevancy. Mr. Brown appears to have been directly involved

in the initiation of the proposal to designate Kingman Reef as a National Wildlife Refuge. We believe that he necessarily considered issues concerning ownership because there is clear shift, between 1997 and 1999, in the Government's opinion about this issue. That is, anyone involved in the planning of this project would have encountered the question of whether the Fullard-Leo family owned the subject property and whether it should be negotiated as part of the bid to buy property located nearby (*i.e.* the Palmyra purchase). We hope as well that Mr. Brown can shed some light on who authored certain reports and proposals appearing to originate in the DOI. To date, we been told that there is no record of who drafted a number of documents that contain admissions concerning ownership.

Beyond these comments, I do not have anything to add to my earlier letter, but we are certainly open to discussing issues that remain of concern to the government.

We thank you for your continued courtesy and cooperation in this matter.

Very truly yours,

CANNATA, CHING & O'TOOLE LLP

THERESE Y. CANNATA

TYC:hs
cc: Christopher P. Porter
Donna H.Yamamoto
800362.ltr.Tardiff Discov M-C-Depos. 2-3-08.tyc.wpd

U.S. Department of Justice

90-1-23-12048

*Environment & Natural Resources Division*
*Natural Resources Section*

Cleveland Federal Building
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301

Direct Dial 603-230-2583
Facsimile 603-225-1577
E-Mail kristine.tardiff@usdoj.gov

February 15, 2008

**By Electronic Mail**

Therese Y. Cannata
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111
Email to: tcannata@ccolaw.com

Re: *Kingman Reef Atoll Investments, LLC v. United States*, No. 06-828L (Fed. Cl.)
Amended Rule 30(b)(6) Deposition Notice – State Department

Dear Ms. Cannata:

This letter addresses plaintiffs' request to take a Rule 30(b)(6) deposition of the State Department in connection with the limited discovery that has been allowed by the Court in this case. Plaintiffs' original Rule 30(b)(6) deposition notice to the State Department was served on October 25, 2007. Our objections to the original notice are set forth in my letter to Chris Porter of November 9, 2007, and we've also discussed some of our concerns and objections in our telephone calls during this meet and confer process. We are now in receipt of plaintiffs' amended deposition notice and related letter of February 7, 2008. This letter responds to those items.

To begin with, the extensive documents disclosures and production in the quiet title action and in this case indicate that the State Department's involvement with title, ownership and sovereignty issues regarding Kingman Reef is historic in nature. All State Department documents, which includes correspondence to and from the State Department and some internal memoranda, are from the 1930's or earlier. You state in your most recent letter that "[t]he historic documents that we've seen so far places the State Department at the epicenter" of the inquiry regarding title to and ownership of Kingman Reef. This "epicenter" was 60 to 70 years ago or more. The amended deposition notice reflects this significant fact by listing topics of inquiry that focus on these historic documents. For example, you are looking for a deponent to testify regarding communications with the Fullard-Leo family, Palmyra Copra Company and their representatives regarding annexation and their claimed ownership of Kingman Reef (Topics of Inquiry numbers 1-3), and similar historic facts or communications (Topics of Inquiry numbers 4-10, 13-17 and 21) . The documents in the record indicate that such communications – which are reflected in written correspondence – all occurred in the 1930's.

Plaintiffs appear to recognize a point that we've reiterated a number of times – that the State Department does not have a witness with any personal knowledge or direct involvement in events and/or correspondence that occurred some 60 years ago. The only thing that a Rule 30(b)(6) deponent from the State Department could do is to authenticate the documents that have been produced from the State Department, and we will stipulate to the authenticity of all ancient documents. To the extent that the State Department took a position on the topics listed in the amended deposition notice, that position is reflected in the documents that have been produced. With respect to the content of those documents, at Rule 30(b)(6) deponent could do no more than testify as to what the documents themselves state. Such a deponent cannot offer any legal analysis regarding the documents. Indeed, that is the role of the attorneys in this case. Accordingly, no purpose is served by a Rule 30(b)(6) deposition of the State Department. We therefore continue to be opposed to such a deposition on the ground that the testimony sought is unreasonably cumulative and duplicative and the information sought through this testimony is obtainable directly from the historic documents in question.

In addition, there are a number of topics of inquiry listed in the amended deposition notice to which a State Department witness simply cannot speak. For example, you continue to request that we produce a witness from the State Department to testify as to "the Territory of Hawaii, and later, the State of Hawaii's position on title to Kingman Reef" (Topic of Inquiry number 12). The State Department cannot testify as to Hawaii's position on this or any other issue. In addition, you continue to ask us to produce a State Department witness to testify as to the landing of planes at or near Kingman Reef by Pan American Airways, when all of the documents in the record indicates that this activity occurred in the 1930's pursuant to a revocable permit issued by the Navy. See, for example, FLD00099-FLD00110 and US0133. The historic facts are set forth in the documents themselves and a State Department witness cannot speak for the Department of the Navy.

You are also requesting that we produce a Rule 30(b)(6) witness from the State Department to offer what amounts to a legal opinion as to the effect of certain government actions. For example, Topic of Inquiry number 20 seeks testimony about "[t]he effect that Kingman Reef Wildlife Refuge (Order 3223) had on private property interests in Kingman Reef." Topic of Inquiry numbers 19 seeks similar testimony. These requests are objectionable for a number of reasons. First, we are not required to produce a witness to provide you with legal analysis or a legal opinion regarding the "effect" of any action taken by the government in connection with Kingman Reef. That analysis is the job of the attorneys for the parties in the case. Second, the "effect" of Order 3223 is a merits inquiry in this case and is therefore beyond the scope of discovery that has been allowed by the Court. Other topics of inquiry listed in the amended deposition notice that go only to the merits rather than to jurisdictional issues included topic numbers 17 through 21.

Similarly, Topic of Inquiry number 11 seeks testimony on "[t]he effect of the Copra Co.'s claim of ownership to Kingman Reef through its agent Lorrin A. Thurston." Again, we are not required to produce a Rule 30(b)(6) witness to provide you with legal analysis or opinions. Moreover, this topic is addressed to actions taken by Mr. Thurston in 1922. To the extent that the State Department took a position on the "effect" of this action, that position is reflected in the documents that are in the record. A Rule 30(b)(6) deposition on this topic is therefore cumulative, duplicative and unnecessary.

Finally, we note that you also seek testimony from a State Department witness regarding Palmyra. *See* Topics of Inquiry numbers 2, 13 and 18. For the reasons set forth in our prior correspondence, we continue to object to Plaintiffs' requests to conduct discovery regarding Palmyra, which is not at issue in this case. As noted previously, the question of title to Palmyra was fully litigated between the Fullard-Leo family and the United States and resolved over 60 years ago. *See United States v. Fullard-Leo*, 331 U.S. 256 (1947). Plaintiffs have made no showing that conducting discovery again on a matter that they already litigated, and that is not at issue in this case, has any relevance to this case whatsoever. Moreover, the Court indicated in our last telephone conference that she was not allowing discovery on Palmyra.

The amended deposition notice to the State Department also requests that the State Department produce "[a] copy of the document entitled 'The Sovereignty of Islands Claimed under the Guano Act and of the Northwest Hawaiian islands, Midway and Wake,' unpublished typescript ms., 3 vols., 1932-1933 (continuously paginated)." We note that the excerpt of this document that references Kingman Reef is already part of the record in this case, having been included as part of Plaintiff KRAI's initial disclosures in the quiet title action. The bates range of that excerpt are KRE004763-KRE004771. The fax transmittal line at the top of the excerpt shows that the document was obtained from Wichita State University Library's Inter-Library Loan service (WSU-ILL, fax 316-375-3048), indicating that this document is available to the public through the library system. We have confirmed that a copy of the full document is located in the Ralph Bunche Library at the State Department in Washington, DC. Although the United States is not obligated to conduct factual research for Plaintiffs through sources available at or through public libraries, we have copied, and include for your reference, the title page, the table of contents for all three volumes, and the more detailed tables of contents for each of the three volumes. These pages are marked as US0322–US0346. We did not re-copy the pages referencing Kingman Reef that you already have, which are pages 43-47 (KRE004763-KRE004767) and pages 296-297 (KRE004768-KRE004769). If you would like to inspect the full document at the State Department, please let me know and we will make those arrangements for you.

For the reasons set forth in this letter and in our prior correspondence, we do not believe that a Rule 30(b)(6) deposition of the State Department is necessary or appropriate in this case. To the extent that the State Department took a position regarding title, ownership and sovereignty issues involving Kingman Reef, those positions are set forth in the historic records that have been located and produced from State Department records and the National Archives facilities.

Sincerely,

Kristine S. Tardiff

Kristine S. Tardiff
Trial Attorney

Enclosures (US0322-346; KRE004763-4767)
cc (by email): Christian P. Porter
Donna Yamamoto
Michael Ching

U.S. Department of Justice

90-1-23-12048

*Environment & Natural Resources Division*
*Natural Resources Section*

Cleveland Federal Building
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301

Direct Dial 603-230-2583
Facsimile 603-225-1577
E-Mail kristine.tardiff@usdoj.gov

February 15, 2008

**By Electronic Mail**

Therese Y. Cannata
Cannata, Ching & O'Toole LLP
100 Pine Street, Suite 1775
San Francisco, CA 94111
Email to: tcannata@ccolaw.com

Re: Amended Deposition Notice for Judson Feder in *Kingman Reef Atoll Investments, LLC v. United States*, No. 06-828L (Fed. Cl.)

Dear Ms. Cannata:

On November 16, 2007, we provided you with a letter detailing our objections to the Notice of Deposition of Judson Feder, National Oceanic Atmospheric Administration ("NOAA") that was served on October 29, 2007. We are now in receipt of your letter of February 7, 2008, which addresses the proposed deposition of Mr. Feder, as well as the draft amended deposition notice provided to us on the same date. The purpose of this letter is to respond to the amended notice and letter of February 7.

In our letter of November 16, 2007, we provided detailed objections to the sixteen broadly framed document production requests set forth in the attachment to the first Notice of Deposition of Judson Feder. The amended deposition notice still contains thirteen document requests which remain objectionable for all of the reasons set forth in our letter of November 16, 2007. As noted in that letter, to the extent that these requests overlap with the subpoena from KRAI that NOAA previously responded to, these document requests are unreasonably cumulative and duplicative, and therefore unreasonably burdensome. You've indicated in your letter of February 7 that it is not your intent to require NOAA or Mr. Feder to re-produce any documents, yet the amended notice does not conform to this position. Defendant has not previously – and does not now – object to Plaintiffs' request for non-privileged documents regarding the ownership of Kingman Reef. However, as we've stated on a number of occasions, all such documents located in the search of NOAA's records were previously produced by NOAA in response to KRAI's subpoena. Accordingly, we continue to object to your inclusion of document requests that are duplicative of prior discovery.

In addition, the document production requests contained in the amended deposition notice remain overly broad and include numerous requests that go well beyond the scope of discovery that has been permitted by the Court in the takings action. For example, plaintiffs continue to seek

documents regarding Palmyra, which have no relevance whatsoever to the underlying question of title to or ownership of Kingman Reef. Moreover, we believe that Judge Horn made it quite clear in our last telephone conference with her that she was not allowing discovery on Palmyra in connection with this case. The amended deposition notice also continues to request documents regarding the establishment or protection of Kingman Reef as a National Wildlife Refuge (amended request numbers 4–10), and documents and communications that refer or relate to Kingman Reef (request numbers 3 and 10-13). These overly broad requests go well beyond the scope of discovery in this case and remain objectionable for the reasons detailed in our letter of November 16, 2007.

Further, because Mr. Feder is an attorney employed by NOAA in its General Counsel's office, his proposed deposition raises privilege concerns that need to be dealt with before any deposition of Mr. Feder occurs. In our letter of November 16, 2007, we asked plaintiffs to "identify the specific factual issues on which Mr. Feder's testimony is sought" in order to allow us to make an informed decision as to whether we could reach an agreement on his deposition. In your letter of February 7, 2008, you take the position that the government has waived any privileged attached to Mr. Feder's written communications by previously producing such communications. The only such written communication that you have identified for us that makes any reference to title and/or ownership issues is a memorandum dated October 17, 1997, from Mr. Feder to Kitty M. Simonds, WPFMC. We acknowledge that this memorandum was produced by NOAA in response to KRAI's subpoena and that the memorandum has been the subject of inquiry at prior depositions, including the deposition of Ms. Simonds that was taken by plaintiffs last year.

The October 17, 1997, memorandum does not represent the position of the United States with respect to the question of title to or ownership of Kingman Reef. We also disagree with plaintiffs' contention that this memorandum contains an admission of the government regarding title or ownership. However, we acknowledge that the attorney-client privilege with respect to the October 17, 1997, memorandum was arguably waived. For that reason, we are willing to produce Mr. Feder for a deposition that is limited to this memorandum. There has been no waiver with respect to any other matter. Accordingly, we will not produce Mr. Feder for a deposition on any other matter, including but not limited to the lengthy list of topics that is suggested by the overly broad list of document requests attached to the amended deposition notice. We would like written confirmation that plaintiffs agree that the scope of Mr. Feder's deposition will be so limited. In addition, given the limited scope of the deposition and Mr. Feder's location (Los Angeles area), a telephone deposition would seem to be appropriate to conserve the time and resources of both parties.

Sincerely,

/s/ Kristine S. Tardiff

Kristine S. Tardiff
Trial Attorney

cc (by email): Christian P. Porter
Donna Yamamoto
Michael Ching