CANNATA,
CHING &
O'TOOLE LLP
Attorneys at Law

Therese Y. Cannata
tcannata@ccolaw.com

February 25, 2007

**By E-Mail and U.S. Mail**
Kristine Tardiff
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301

Re: : *Kingman Reef Atoll Investments, LLC v. The United States of America*
(United States Federal Court of Claims, Case No.: 06-828L)

Dear Ms. Tardiff:

I am responding here to your five letters concerning pending discovery. I want to thank you for your continued time and effort in this meet and confer process, which I believe continues to move us in a positive direction.

As an initial matter, I want to note where we have some consensus. We agree that the scope of inquiry can be further reduced to meet some of your objections and, once again, we have done that. Rather than send you an entire set of re-drafted depositions notices, we have created a single chart that now contains all pending requests (divided into a separate table for each department or agency deponent). A copy is enclosed. This is really the best we can do as a compromise, taking into account plaintiffs' need to complete discovery and the government's continued objections. We continue to disagree with the government about the larger question, which is whether there should be a deposition at all for these government departments and agencies.

We have an agreement (or we are very close) as noted below, concerning the deposition of Mr. Feder.

We have separated out all document requests into separate records only subpoena directed to those departments or agencies. In other words, we will now pursue all document requests separately. While I believe we may continue to have disputes concerning the depositions, I do not believe there is any dispute over the right of plaintiffs to request documents – though we understand that the Government may still have objections to

- who may have knowledge about the process by which the State Department determined that the Government had acquired sovereignty over Kingman Reef.

- who may have historic institutional knowledge about how the U.S. Attorney General in the Territory of Hawaii would know what to advise private citizens on how to document their claim to Kingman Reef.

- who may have some knowledge over whether, when and how the State Department determined that Kingman Reef was a public land as opposed to privately owned.

I note with interest that the Department of State has an Office of the Historian, who may well have the staff and expertise to serve as a designee for this deposition.

To simplify matters and to further demonstrate our willingness to compromise, we have again reduced the number of topics requested for this Rule 30(b)(6) deposition. We will separately direct a third party subpoena and document request to the State Department so that we can formally confirm that we have all of the documents. Of the categories remaining, there are now [six].

The goal of this deposition is twofold. We want to make certain that someone with sufficient knowledge and expertise about the subject matter referenced in the notice has specifically inquired and confirmed that all relevant documents have been located and produced. We then want to obtain a clearer understanding of how the State Department operated during a time when the Fullard-Leo family repeatedly notified the Government of their claim to private ownership of the subject property. Related to this, we want to understand the manner in which the State Department examined and analyzed the question of sovereignty and title to property when confronted with a claim of private property rights. Whether we receive direct or indirect information, discovery concerning these issues is reasonably calculated to lead to the discovery of admissible evidence.

Finally, if there is a topic that remains on the list, for which there is no person at the State Department qualified to testify, then you can simply indicate on the record that you duly inquired and this was the result. I have in mind the example of the topic pertaining to the governmental agency(s) or department(s) that processed a request by Pan American Airways to allow the private company to land planes on Kingman Reef. While the U.S. Navy may well have been involved in that request, other departments may also have been consulted. This is a reasonable topic to list, even if, at the end of the day, it turns out that the State Department had no part in those discussions with Pan American Airways.

**2. The Rule 30(b)(6) Notices Directed to the GSA**

I assume our offer of a stipulation is not acceptable but we will renew that suggestion as a way to reduce the scope of pending discovery. Turning to the substance, I cannot really offer more than what we have already stated. As we previously noted, the question, it would seem, is why Kingman Reef was not listed on what purported to be a complete list of federal property. In this regard, we intend to inquire about how the inventory was created, maintained, and updated. In 1949, when the GSA was created, the clear implication is that the Government was not disputing the Fullard-Leo's private ownership of Palmyra or Kingman Reef, where again, both properties were not on the list. Indeed, documents pre-dating the public notice in December 2000 confirm that the Government fully recognized and honored these private ownership rights. The Government, in this case, has suggested quite a different picture, noting the importance of the 1934 Executive Order. The inquiry to the GSA about the inventory of public lands is reasonably calculated to lead to the discovery of admissible evidence.

Turning to your second point, we are not repeating discovery already covered. In fact, Mr. Pacht's testimony identified issues that required further inquiry. As we noted, it is unclear what, if any, involvement the GSA had in the analysis of who owned Kingman Reef and what was necessary to transfer the property (or exactly what interest was being transferred). This is an appropriate area of inquiry because it pertains to title and ownership of Kingman Reef, including the potential that the Navy was not asserting ownership but rather administrative oversight of the subject property.

That stated, we once again have voluntarily reduced the number of topics for this deposition in order to avoid further debate on matters that will likely yield limited results.

**3. The Rule 30(b)(6) Notices Directed to DOI and FWS**

As I have stated before, it is not our intention to revisit any areas already covered at earlier depositions. In the Hawaii District Court action, we were expressly ordered to refrain from discovery concerning the ownership of Kingman Reef. The specific inquiry related to the issue of abandonment was to examine how the Government characterized the ownership of the property in documents leading up to the announcement of the Kingman Reef National Wildlife Refuge. However, due to the issue preclusion, the issue of ownership was not and could not be pursued.

You have referenced testimony by Ms. Shirilla about ownership issues and I want to briefly review the context and issues presented. The first deposition taken was of Mr. Cook of The Nature Conservancy. He volunteered, in an apparent effort to explain the 1997 documents containing clear admissions by the government that the Fullard-Leo family owned

Kingman Reef, that in 1998, Suzanne Case (also with The Nature Conservancy) was conducting a title search on Kingman Reef. This, according to several witnesses, was a major turning point for everyone working on efforts to establish the Kingman Reef Wildlife Refuge ("KRNWR"), because it presented an argument that the government felt it could make to deny the private ownership right, should that become necessary. Mr. Smith thereafter testified that after receiving this information, he confirmed with his supervisors that the Government agreed with Ms. Case's research. (Smith Dep. at 72.) Ms. Shirilla claimed to have done some kind of research though she was extraordinarily vague as to time and her purpose. The context of her statements was that she commenced her own title research after receiving information in early 2001 from the Fullard-Leo family's attorneys to the effect that they claimed ownership. It was entirely unclear whether she did this for her own personal reasons or in some official capacity. She spoke of gathering historic documents. And, as you noted, she obtained a legal opinion from the Solicitor's Office of the DOI but again this was apparently done after the fact (*i.e.* the taking). In this context, she testified that she confirmed what she already believed – that the Fullard-Leo family did not own the subject property. However, she was evasive at best when asked to explain her refusal to allow Mr. Smith in June 2000 to give the family advance notice of the announcement of the KRNWR. Mr. Smith also noted that Mr. Babbitt, the former Secretary of the Interior, took a personal interest steering the KRNWR project.

Several stark facts emerge here: (1) the Government was specifically aware of the private ownership claims to Kingman Reef and extensively analyzed those claims; (2) the Government specifically decided to keep secret from the Fullard-Leo family the plans to take the property until the last possible moment to prevent the potential that a lawsuit, for example, would halt plans to establish the KRNWR; and (3) Ms. Shirilla possessed neither the qualifications nor authority to decide these questions of title, ownership and what legal effect if such rights were ignored.

You have suggested that if there are no documents concerning, for example, the opinions about ownership, that the inquiry stops and no deposition should proceed. I submit that the absence of documents is precisely what necessitates the deposition in this case. The testimony is clear from three witnesses that Ms. Case shared her title search with members of the Government. It would appear that care was taken to leave no paper trail – though I still find that hard to fathom. It was, in any event, a "cathartic moment" according to Mr. Smith. Ms. Shirilla also testified that she relied on the information transmitted orally by Ms. Case. Given The Nature Conservancy's very high profile relationship with contacts as high as the Secretary of the Department of Interior, it seems likely that the information was widely shared and perhaps relied upon by the Government.

Regarding questions about Congressional appropriations, you have suggested that representative of the FWS and DOI cannot testify as to the actions of Congress. I agree that executive branch agencies do not seek appropriations from Congress. However,

representatives of executive branch agencies have been known to speak with members of Congress and, in this case, Mr. Babbitt received a letter from Congress about the appropriation of funds for Palmyra and Kingman Reef. Ms. Shirilla had no explanation as to why there would be a need for funds to acquire Kingman Reef. The likely explanation, and this is only a theory, is that Mr. Cook and others decided to hedge their bets – if they were able to negotiate a last minute deal to purchase Kingman Reef, there would be funds, and if not, then the money would be applied entirely to the Government's interest in Palmyra. Mr. Savio has stated that Mr. Cook continued to discuss this issue on the day of closing escrow for Palmyra (in November 2000). The relevancy, to be clear, is that an offer to purchase real property might be viewed as the Government not owning it (or had reason to doubt the opinions of ownership). We remain hopeful that someone at a higher level in FWS or perhaps in DOI will be able to shed some light on this highly relevant topic.

Finally, the questions about historical documents or events become relevant if, as Ms. Shirilla testified, the Government conducted its own title investigation. So, while we concur with your comment that there are likely no percipient witnesses concerning historical documents, the purpose of listing it as a topic of inquiry in this particular deposition notice is to fully inquire about what the Government knew or believed when it acknowledged and then later denied private property rights to the subject property.

**4. The Rule 30(b)(6) Notices Directed to the Department of Navy**

Again, we have trimmed down the requests still further in response to a number of your objections. However, we remain convinced that this deposition is proper and well within the limits set by the Court in this action. Moreover, as reviewed below, we are not seeking to revisit areas already covered. In fact, we are trying to obtain new and different information that we were not allowed to pursue in the Hawaii District Court action.

Similar to our comments about the State Department, we believe that the Navy can be questioned about its institutional knowledge and in the context of this case, it is even more specific. Ms. Shirilla suggested that she relied in part on the claim by the Navy that it owned Kingman Reef, and she pointed to several documents authored by FWS representatives stating that the Navy owned the property. To date, no representative of the Navy has an opinion about the ownership of Kingman Reef – or at least they have been instructed to not offer one in their official capacities. Ms. Shirilla pointed to Mr. Pacht who had no opinion on the issue. Mr. Cassidy was the highest ranking government official to be questioned on the issue and he stated that he had no opinion on this question. However, in fairness, none of these witnesses were produced to testify about ownership – that is, the inquiry was incidental to other questions related to abandonment. We are now asking that the Navy designate persons who do in fact have knowledge about the title and ownership of Kingman Reef.

We are not revisiting areas already addressed. There was extensive exchange of

emails between the Navy and FWS representatives about access to Kingman Reef. Yet, the Navy produced Lt. Salvador who agreed that he had no expertise or information on the subject. The question of access is relevant to possession and control of the property, which in turn bears upon the question of ownership. Beyond access, we want to know more about the Navy's period inquiries into the title history of Kingman Reef. The documentary trail suggests that while the FWS and/or DOI claimed to have no difficulty concluding that the Navy owned the property, the Navy memoranda about title and ownership were less clear on the subject. These will be among the areas that we are now permitted to inquire.

You referenced certain historical documents, suggesting that we were essentially seeking authentication. I want to clarify the importance of asking qualified witnesses from the Navy about such documents. In 2000, the Government took the position that the Navy owned Kingman Reef. Between 1922 and 2001, the Navy and other federal agencies appear to have discussed and investigated the title and ownership of Kingman Reef. In this context, it appears that some of these historical documents were considered, accepted or perhaps ignored in deciding the question of title to the subject property. While there may be no living witness who can explain why the document was written at the time, percipient witnesses from the Navy may well be able to explain how these documents helped form opinions about title and ownership sufficient to allow the Government to take the position that private property claims should be ignored.

**5. Deposition of Judson Feder**

I believe we may have an agreement on this deposition. We will limit our inquiry at the deposition to the subject matter of the October 17, 1997 memorandum (including the memorandum itself) though we would obviously inquire whether Mr. Feder relied on any other documents in rendering that opinion. The answer to that question may lead to a slight though I doubt significant venture beyond the four corners of the October 17, 1997 memorandum.

Regarding the document request, I want to first note our agreement that it is not our intent to require NOAA or Mr. Feder to re-produce any documents. Similarly, it is not our intent to revisit areas already covered at previous NOAA Rule 30(b)(6) depositions. In your letter concerning this deposition, you expressed a concern about those document requests referencing the Palmyra property. As we have previously stated, it is not our intent to pursue discovery related to any litigation other than the one now before us. Our interest in Palmyra is based on what we believe is a link between the two properties dating back to the 1930's and continuing into the "modern era" of this case. That is, the Government's analysis of property rights, including statements and opinions about who owned Kingman Reef, appear to be linked to Palmyra. Our purpose is not to seek discovery related to Palmyra but rather to make sure that we phrase our discovery sufficient to capture all relevant discovery related to the ownership of Kingman Reef. That stated, we have, once again, significantly reduced the

scope of the document requests focusing on.

We thank you for your continued courtesy and cooperation in this matter.

Very truly yours,

CANNATA, CHING & O'TOOLE LLP

THERESE Y. CANNATA

TYC:hs
cc: Christopher P. Porter
Donna H. Yamamoto
800362.ltr.Tardiff.Resp.Discov M-C-Depos. 2-19-08.tyc.wpd

*Kingman Reef Atoll Investments, L.L.C., et al., v. United States of America*
(U.S. Court of Federal Claims, Case # 06-828L)

## JOINT SUBMISSION RE DISPUTED DISCOVERY MATTERS

The following is a chart of depositions and document requests that remain in dispute. If it is not listed here, the parties have agreed that the discovery will be provided.

**Deposition per Rule 30(b)(6): The State Department**

| **Deponent and Topic of Inquiry** | **Objection by Gov't** | **Reply by Plfts.** | **Court's Ruling** |
|---|---|---|---|
| 1. The annexation and claimed ownership by the Copra Co, and its successor's in interests, in Kingman Reef Atoll. | | | |
| 2. Kingman Reef as *terra nullius* and as unclaimed land prior to 1922. | | | |
| 3. The U.S. Government's views, opinions, claims, and studies concerning the ownership of Kingman Reef at any time prior to January 18, 2001. | | | |

| | | | |
|---|---|---|---|
| 4. The U.S. Government's assertion of jurisdiction and/or sovereignty over Kingman Reef and whether such assertions are claims of ownership to Kingman Reef. | | | |
| 5. Excerpts from The Department of State's memorandum dated November 9, 1934 regarding Kingman Reef, attached hereto as **Exhibit "1"**. | | | |
| 6. The Guano Act, the 1934 Executive Order, the 1941 Executive Order and/or the Pickett Act, regarding Kingman Reef. | | | |

| | | | |
|---|---|---|---|
| 7. Records, lists, memoranda, reports to Congress and/or any other form, of documentation of the public land holdings of defendant prior to January 18, 2001, including any such list or record reflecting Kingman Reef as public lands of the United States. | | | |
| 8. Title searches or other inquiries, including any requests for information, concerning the ownership of Kingman Reef | | | |

Deposition per Rule 30(b)(6): U.S. Navy

| Deponent and Topic of Inquiry | Objection by Gov't | Reply by Plfts. | Court's Ruling |
|---|---|---|---|
| 1. The ownership interests of any person or entity in Kingman Reef prior to 2001. | | | |

| | | | |
|---|---|---|---|
| 2. The Hydrographic Department's records, studies, surveys and/ or communications concerning Kingman Reef. | | | |
| 3. Title investigations and opinions regarding the ownership of Kingman Reef and Palmyra Atoll, including those by private parties such as The Nature Conservancy. | | | |
| 4. Kingman Reef as *terra nullius* and as unclaimed land prior to 1922. | | | |
| 5. Kingman Reef as public lands of the United States of America at any time prior to January 18, 2001, any lists of public lands, and/or reports to the U.S. Congress that Kingman Reef is or was public land | | | |

| | | | |
|---|---|---|---|
| 6. The Guano Act, the 1934 Executive Order, the 1941 Executive Order and/or the Pickett Act related to Kingman Reef. | | | |
| 7. Inquiries for access to Kingman Reef between the years 1922 and 2000, including inquiries directed to the named plaintiff in this lawsuit, Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio for approval. | | | |
| 8. The landing of planes on, at, in or around Kingman Reef by Pan American Airways, including waters surrounding Kingman Reef, and any agreements to do so between you and/or Defendant and Pan American Airways. | | | |
| 9. The transport of Ainsley Fullard-Leo, Dudley Fullard-Leo and/or Peter Savio to or over Kingman Reef. | | | |

| | | | |
|---|---|---|---|
| 10. The planned interdepartmental transfer of Kingman Reef from the U.S. Navy to any other United States governmental agency or department. | | | |

**Deposition per Rule 30(b)(6): Department of Interior**

| Deponent and Topic of Inquiry | Objection by Gov't | Reply by Plfts. | Court's Ruling |
|---|---|---|---|
| 1. The acquisition, transfer and purchase of Palmyra and/or Kingman Reef from Plaintiff, including any communications concerning these topics with The Nature Conservancy, Suzanne Case, Chuck Cook, Robert Smith, William Brown, Peter Savio and the Fullard-Leo family. | | | |
| 2. The title and ownership of Palmyra and/or Kingman Reef. | | | |

| | | | |
|---|---|---|---|
| 3. The Guano Act, the 1934 Executive Order, the 1941 Executive Order and/or the Pickett Act, relating to Kingman Reef. | | | |
| 4. The U.S. Government's assertion of jurisdiction and/or sovereignty over Kingman Reef and whether such assertions are claims of ownership to Kingman Reef. | | | |
| 5. Kingman Reef as *terra nullius* and as unclaimed land prior to 1922. | | | |
| 6. The letter dated October 3, 1997 to the U.S. Army Corps of Engineers at Fort Shafter, Hawaii, from Robert F. Smith, Pacific Islands Manager for U.S. Fish and Wildlife attached hereto as **<u>Exhibit "1"</u>**. | | | |

| | | | |
|---|---|---|---|
| 7. The memorandum dated August 18, 1998 to the Director of the Department of Interior, attached hereto as <u>Exhibit "2"</u>, including who prepared the documents, all versions of the document, and any response. | | | |
| 8. Two letters dated October 26, 2000, attached hereto as <u>Exhibit "3"</u>, that the U.S. Congress provided additional funding for high-priority land acquisitions for, among others, Kingman Reef . | | | |
| 9. Kingman Reef as public lands of the United States of America at any time prior to January 18, 2001, and lists of public lands and reports to the U.S. Congress that Kingman Reef was and is public lands. | | | |

| | | | |
|---|---|---|---|
| 10. The letters dated October 23, 2000, with attachment from Bruce Babbitt, Secretary of the Interior to the Honorable Ralph Regula, Chairman, Subcommittee on Interior and Related Agencies, Committee on Appropriations, House of Representatives, Washington, D. C. and the Honorable Slade Gorton, Chairman, Subcommittee on Interior and Related Agencies, Committee on Appropriations, United States Senate, Washington, D.C., attached hereto as <u>Exhibit "4"</u> and designated as "Exhibit Z-7" in the lower right corners. | | | |

**Deposition per Rule 30(b)(6): U.S. Fish & Wildlife Service**

| Deponent and Topic of Inquiry | Objection by Gov't | Reply by Plfts. | Court's Ruling |
|---|---|---|---|
| 1. The ownership interests of any person or entity in Kingman Reef prior to 2001. | | | |

| | | | |
|---|---|---|---|
| 2. Title investigations and opinions regarding the ownership of Kingman Reef and Palmyra Atoll, including communications with The Nature Conservancy and Suzanne Case. | | | |
| 3. Kingman Reef as *terra nullius* and as unclaimed land prior to 1922. | | | |
| 4. The Guano Act, the 1934 Executive Order, the 1941 Executive Order and/or the Pickett Act. | | | |
| 5. From 1922 to 2001, the U.S. Government's claims if any, to title to Kingman Reef. | | | |
| 6. The acquisition, purchase, transfer, sale of Kingman Reef, including but not limited to the status of ownership in said property. | | | |

Deposition per Rule 30(b)(6): General Services Administration

| Deponent and Topic of Inquiry | Objection by Gov't | Reply by Plfts. | Court's Ruling |
|---|---|---|---|
| 1. The claim that Kingman Reef was public land of the United States of America at any time prior to January 18, 2001, and/or reports to the U.S. Congress that Kingman Reef was or is public lands. | | | |
| 2. Any lists, inventories or reports of public lands of the United States created prior to January 2001. | | | |
| 3. The creation and maintenance of the U.S. General Services Administration's worldwide inventory of federal real property for each year that Kingman Reef Atoll appeared on said list. | | | |

| | | | |
|---|---|---|---|
| 4. The title and ownership of Kingman Reef. | | | |
| 5. The GSA's involvement, if any, in the sale, purchase, transfer of Palmyra and/or Kingman Reef. | | | |

**Michael Ching**

**From:** Tardiff, Kristine (USANH) [Kristine.Tardiff@usdoj.gov]
**Sent:** Friday, March 07, 2008 3:03 PM
**To:** Therese Cannata
**Cc:** Michael Ching; Donna Yamamoto; Chris Porter
**Subject:** Kingman Reef -- Discovery follow-up on William Brown and Judson Feder

Hi Therese,

In preparing our motion for a protective order that is due next week, we have again reviewed the most recent amendment to William Brown's deposition notice (served on 2/26/08). We still believe that the document requests are too broad and go well beyond the limited issues on which discovery has been permitted. The fact that Mr. Brown is not a party or a current employee of the Department of the Interior does not entitle Plaintiffs to go beyond the discovery limits imposed by the court in their subpoena and related notice to Mr. Brown. Our specific objections regarding the document requests are set forth in our prior correspondence.

By way of compromise, we are willing to produce any non-privileged documents in Mr. Brown's possession from his tenure at the Department of the Interior that refer or relate to title or ownership of Kingman Reef, or that refer or relate to the other issues on which discovery has been allowed by the Court. If there are any privileged documents in Mr. Brown's possession, we will provide you with a privilege log that identifies those documents and the privilege asserted.

At this point, we continue to oppose the deposition of Mr. Brown. We've seen no documents indicating that Mr. Brown, who was the Secretary's Science Advisor, rendered any opinion regarding title. Moreover, as we've stated in prior correspondence and discussions, the facts that are relevant to the underlying question of title to or ownership of Kingman Reef are the historic facts that appear in the documents that are part of the record. No purpose is served by the deposition of various current or former Interior employees, particularly in the absence of any documentation that connects Mr. Brown to title issues. Even assuming, for the sake of argument, that Mr. Brown (or other employees) had discussions with agency attorneys regarding title issues, those discussions and the analysis or opinions of counsel are privileged.

If plaintiffs are willing to limit the subpoena to just the document requests, as limited above, please advise. If not, we'll plan to address the subpoena and deposition notice as part of our motion for a protective order next week.

Also, my February 28th email raised some issues in need of clarification on the scope of Judson Feder's deposition, and also asked whether Plaintiffs were willing to conduct that deposition by telephone. I would appreciate hearing back from you on these issues. If we are not on the same page (particularly on the scope issue), it would be good to flesh that out and perhaps address that in the upcoming briefs as well.

Thank you,

Kris

Kristine S. Tardiff

U.S. Department of Justice

Environment & Natural Resources Div.

Natural Resources Section

T 603.230.2583

F 603.225.1577

kristine.tardiff@usdoj.gov